IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ST. BERNARD HOUSING RECOVERY<br>& DEVELOPMENT CORPORATION, Inc.<br>7214 St. Charles Avenue<br>Campus Box 902<br>New Orleans, LA<br> and<br>GLORIA IRVING<br>Fischer Senior Citizen Village<br>1805 Thayer Street<br>New Orleans, LA<br> and<br>STEPHANIE MINGO<br>Iberville<br>1594 1/2 Conti #E<br>New Orleans, LA<br> and<br>SHIRLEY MORRIS and<br>207 Marais Street<br>New Orleans, LA<br> and<br>CHANTEL YOUNG<br>207 Marais Street<br>New Orleans, LA<br><br>Plaintiffs,<br><br>v.<br><br>U.S DEPARTMENT OF HOUSING<br>AND URBAN DEVELOPMENT<br>451 7th Street, S.W.<br>Washington, DC  20410;<br> and<br>HOUSING AUTHORITY OF NEW ORLEANS<br>c/o U.S DEPARTMENT OF HOUSING<br>AND URBAN DEVELOPMENT, AS RECEIVER OF<br>HOUSING AUTHORITY OF NEW ORLEANS<br>451 7th Street, S.W.<br>Washington, DC  20410;<br> and | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br><br><br><br><br><br><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case: 1:07-cv-02231
Assigned To : Roberts, Richard W.
Assign. Date : 12/11/2007
Description: TRO/PI

CIVIL ACTION NO.

_____

ALPHONSO JACKSON, Secretary of the United )
States Department of Housing and Urban )
Development )
451 7th Street, S.W. )
Washington, DC 20410; )
    and )
ORLANDO CABRERA, Assistant Secretary of the )
United States Department of Housing and Urban )
Development )
451 7th Street, S.W. )
Washington, DC 20410; )
    and )
C. DONALD BABERS, Board of Commissioners, )
Housing Authority of New Orleans )
801 Cherry Street )
Ft. Worth, TX 76102; )
    and )
KAREN CATO-TURNER, Executive Administrator, )
Housing Authority of New Orleans )
909 SE 1st Avenue )
Miami, FL 33131; )
  )
    and )
And each individual defendant in his official capacity, )
  )
Defendants. )
  )

## COMPLAINT

## INTRODUCTION

    This suit is brought by four individual tenants of the St. Bernard public housing

project located in New Orleans, Louisiana ("St. Bernard"), and by a duly incorporated

non-profit development corporation that has been formed by the tenants of St. Bernard,

The St. Bernard Housing Recovery & Development Corporation, Inc. ("SBHR&DC"), to

rehabilitate, redevelop and reoccupy their homes in that public housing project as they are

entitled to do under applicable federal statutes and regulations. This suit is brought

against the background that there is a desperate and intensifying shortage of rental units

in New Orleans, and in particular rental units that are affordable to low income tenants even with available federal rent subsidies, following the devastation wrought by the twin hurricanes of Katrina and Rita that struck the area in August of 2005.

St. Bernard is a public housing complex located in New Orleans Parish that is owned and operated by the Housing Authority of New Orleans ("HANO"). HANO has been under administrative receivership of the United States Department of Housing and Urban Development ("HUD") since February of 2002 - five years and ten months before the filing of the instant Complaint three years and six months before the storms hit the City of New Orleans.

Despite the dearth of housing in New Orleans HANO/HUD has elected to demolish in excess of 4,000 public housing units in four damaged but repairable projects consisting of two and three story brick buildings, without making provision for the construction of replacement housing for the pre-storm residents. Included in that number are 1,436 public housing units at St. Bernard. HUD/HANO proposes to replace only 465 at St. Bernard, only 153 of which would be affordable to displaced located former residents. HANO/HUD has publicly announced and voted that it will commence demolition of the buildings at St. Bernard on or before December 15, 2007 despite the fact that it has no contract for reconstruction on site, and does not anticipate entering into such a contract until May of 2008.

SBHR&DC has prepared a redevelopment plan in conjunction with the AFL-CIO Investment Trust Corporation ("ITC") and the AFL-CIO Housing Investment Trust ("HIT") that would accomplish the restoration of 1,085 housing units on site as limited equity cooperative units, including 866 units that would be available for the 866

displaced families who occupied the premises prior to the hurricane. The cooperation

between the ITC, HIT and SBHR&DC is significant in that it demonstrates that the

tenants and their organization have the capacity to restore their units, and their plan is

financially viable. HIT has invested more than $5 billion dollars in the last four decades

to create or preserve over 85,000 units of single family or multifamily housing units

across the United States.

Despite the fact that federal law affords the tenants of a project being demolished

and disposed of by a housing authority the opportunity to bid on the project to preserve

the units, HANO/HUD and HUD itself have declined to consider the tenants' requests

and offers, have arbitrarily excluded the tenants from the planning of the future of the

complex in which they live and to bring forward their own plan for redevelopment, and

have elected to proceed with the demolition.

The gravamen of plaintiff's claim is that they have been unlawfully deprived of

their right to redevelop the St. Bernard project through their redevelopment entity or even

to have the opportunity to participate in the planning for redevelopment and the selection

process for a redeveloper.

The Plaintiffs seek the immediate intervention of this Court to preserve the

buildings that they believe they have the right to rehabilitate, or at the very least have

their plan to rehabilitate and redevelop thoughtfully considered by HANO/HUD and

HUD itself. There is no objective reason or legal requirement why demolition must

proceed by December 15, 2007. Indeed while HUD/HANO have publicly asserted that

that date for commencement of demolition was mandated by the Louisiana Housing

Finance Agency ("LHFA"), in truth it is a deadline that was self imposed by

4

HANO/HUD and not mandated by the LHFA. While the claims and anticipated responses by HANO/HUD to the issues raised in this complaint have some degree of complexity and require careful review and analysis, if the buildings are demolished while the litigation is pending, the plaintiff tenants and SBHR&DC will be left without remedy if they prevail - which they believe they ultimately will.

PARTIES

Plaintiffs:

1.      Plaintiff Gloria Irving is an individual who resided at the St. Bernard public housing development in New Orleans, Louisiana ("St. Bernard"), was involuntarily displaced as a result of Hurricane Katrina, and is currently residing at the Fischer Senior Citizen Village, 1805 Thayer Street, New Orleans, Louisiana. Ms. Irving is one of the founders and the Secretary of the Plaintiff corporation, SBHR&DC

2.      Plaintiff Stephanie Mingo is an individual who resided at the St. Bernard public housing development in New Orleans, Louisiana ("St. Bernard"), was involuntarily displaced as a result of Hurricane Katrina, and is currently residing at the Iberville public housing development, 15941/2 Conti #E, New Orleans, Louisiana. Ms. Mingo is one of the founders and the Vice-President of the Plaintiff corporation, SBHR&DC.

3.      Plaintiff Shirley Morris is an individual who resided at the St. Bernard public housing development in New Orleans, Louisiana ("St. Bernard"), was involuntarily

displaced as a result of Hurricane Katrina, and is currently residing at the Iberville public housing development in New Orleans. Ms. Morris is a resident participant of the Plaintiff corporation, SBHR&DC

4.     Plaintiff Chantel Young is an individual who resided at the St. Bernard public housing development in New Orleans, Louisiana ("St. Bernard"), was involuntarily displaced as a result of Hurricane Katrina, and is currently residing at the Iberville public housing development in New Orleans. Ms. Young is one of the founders and is a member of the Board of the Plaintiff corporation, SBHR&DC.

5.     The St. Bernard Housing Recovery & Development Corporation, Inc. ("SBHR&DC") is a Louisiana non-profit corporation founded by the residents of St. Bernard. The corporation's membership is open to all people who resided at St. Bernard at the time of Hurricane Katrina. The corporation was established for the purpose of serving as the vehicle to organize the residents together, to interact with HUD/HANO when appropriate and to work formally with other community groups and/or prospective developers to redevelop and rehabilitate St. Bernard. The domicile address of SBHR&DC is 7214 St. Charles Ave., Campus Box 902, New Orleans, Louisiana.

Defendants:

6.     Defendant U.S. Department of Housing and Urban Development ("HUD") is the agency of the United States government responsible for the oversight and enforcement of

Title 42, Chapter 8 of the United States Code and related federal regulations regarding

Low-Income Housing and has been charged by Congress with administrative oversight of

all local public housing authorities, including, without limitation, Defendant Housing

Authority of New Orleans. The headquarters of HUD are located at 451 7th Street S.W.,

Washington, D.C.

7.      Defendant Housing Authority of New Orleans ("HANO") is the agency

responsible for the implementation of the various programs contained in Title 42, Chapter

8 of the United States Code and the regulations promulgated by HUD regarding Low-

Income Housing within New Orleans Parish in the state of Louisiana.  The headquarters

of HANO is located at 4100 Touro Street, New Orleans, Louisiana.

8.      In February of 2002, HUD placed HANO under administrative receivership

whereby HUD appointees would serve as the receiver. The receivership remains in effect.

HUD has day to day control of the operations of HANO. In this configuration, HUD is

therefore the responsible agency for the implementation of programs in New Orleans, as

well as the oversight of such implementation. It is also responsible for the enforcement of

the requirements of Title 42, Chapter 8 of the United States Code and related federal

regulations regarding Low-Income Housing within New Orleans Parish (HUD sometimes

hereinafter referred in it capacity as HUD and sometimes in its capacity as receiver to

HANO).

9.      Defendant Alphonso Jackson ("Jackson or the HUD Secretary") is the Secretary

of HUD. He has held that position since March, 2004. All powers and functions of HUD

are under the supervision and control of Jackson. Jackson is named in his official

capacity as Secretary of HUD. Secretary Jackson has his office at 451 7th Street S.W.,

Washington, D.C.


10.      Defendant Orlando Cabrera ("Cabrera or the Assistant HUD Secretary") is the

Assistant Secretary, Public and Indian Housing, of HUD. He has held that position since

November, 2005. All powers and functions of the Assistant Secretary of Public and

Indian Housing of HUD are under the supervision and control of Cabrera. Cabrera is

named in his official capacity as Assistant Secretary of HUD. On information and belief

it is Cabrera who appointed Donald Babers and Karen Cato-Turner to their positions in

the HANO receivership described below. Assistant Secretary Cabrera has his office at

451 7th Street S.W., Washington, D.C


11.      Defendant C. Donald Babers ("Babers") serves as the sole Member/Chairman of

the Board of Commissioners of HANO and is an employee of HUD. He has held that

position since April of 2006. All powers and functions of the Board of Commissioners of

HANO have been vested in Babers. Babers is named in his official capacity as the Board

of Commissioners of HANO. Babers has his office at 801 Cherry Street, Burnett Plaza,

26th Floor, Fort Worth, Texas.

12.     Defendant Karen Cato-Turner is the Executive Administrator of HANO and is an employee of HUD. All powers and functions of the operations and administration of HANO are under the supervision and control of Cato-Turner. She is named in her official capacity as the Executive Administrator of HANO. Cato-Turner has her office at Bricknell Plaza Federal Building, 909 S.E. First Avenue, Room 500, Miami, Florida.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction of the claims asserted in this complaint pursuant to 28 U.S.C. sec.s 1331 (Federal question), 1343 (Civil rights and elective franchise), 1361 (Action to compel as officer of the United States to perform his duty), and 1367 (Supplemental jurisdiction).

14.     This Court has venue of the claims asserted in this complaint pursuant to 28 U.S.C. sec.s 1331, in that HUD has operational control of HANO as well as responsibility for oversight of its implementation of the federal statutes and regulations under the National Housing Act; HUD has its primary headquarters in Washington, D.C.; and Defendants Jackson and Cabrera have their offices in the District. The decisions that have been made in the past, including the naming of the HANO receiver, were made in this district.

## FACTS

15.     On October 8, 2007, plaintiff tenants (along with other tenants of St. Bernard) and SBHR&DC, after being otherwise unsuccessful in obtaining an audience with

HANO/HUD where their grievances would be considered and their desire to redevelop St. Bernard as limited equity cooperatives and to permit their return thereto, sent a ten page letter to Orlando Cabrera and C. Donald Babers formally informing them of their desire to redevelop the project and outlining their proposal for redevelopment.

16.    In the letter, the plaintiffs, inter alia, informed defendants Cabrera and Babers of the formation of SBHR&DC; discussed the avoidable negative impact that the demolition of the public housing units would have on the tenants of St. Bernard; informed them of their alliance with the AFL-CIO ITC and AFL-CIO HIT, and discussed in detail the redevelopment proposal they were preparing.  The letter also discussed and compared the limited equity project they were proposing to that which had been promulgated by HANO/HUD and proposed by Columba Residential, the entity provisionally approved by HANO/HUD to carry out its redevelopment plan.

17.    In the letter plaintiffs observed that 1,436 public housing units at St. Bernard were scheduled to be demolished and HUD/HANO proposed to replace them with 465 units on the premises, only 153 of which would be affordable to displaced former residents. In contrast, the SBHR&DC plan would accomplish the restoration of 1,085 housing units on site including 866 units that would be available for the 866 displaced families who occupied the premises prior to the hurricane.

18.    Neither Cabrera nor Babers, nor any other agent or employee of HUD or HANO responded in any manner to the letter of October 8, 2007.

19.    On October 9, 2007, HANO/HUD submitted a request to the Louisiana Housing

Finance Agency requesting that it approve a schedule for redevelopment of St. Bernard

that call for demolition to commence no later than December 15, 2007 despite the fact

that HUD/HANO has not entered into any contract for the reconstruction of the project,

nor would one be called for under the revised schedule for a full eight months until May

15, 2008. There was no public notice given of this request made by HANO/HUD to

LHFA at the time it was made, nor has such notice been given to date.

20.    On November 14, 2007, LHFA approved HANO/HUD's request and approved its

schedule. No public announcement of this vote was made by LHFA or HANO/HUD at

the time it was made.

21.    The text of the vote indicates that the December 15, 2007 date was promulgated at

the request of HANO/HUD. Plaintiffs counsel has not yet been able to obtain, although it

has sought through the normal freedom of information channels the email sent by

HANO/HUD to LHFA requesting imposition of the artificial deadline.

22.    Counsel for LHFA has confirmed, however, that the deadline was attributable to

HANO/HUD and was not a concern of the LHFA in an email sent to co-counsel for the

plaintiffs herein.

23.   Notwithstanding the fact that no response was forthcoming to the letter of October 8, 2007, SBHR&DC and the plaintiff tenants submitted a more detailed proposal to HANO/HUD and HUD on November 19, 2007.

24.   Neither Cabrera nor Babers, nor any other agent or employee of HUD or HANO responded in any manner to the proposal of November 19, 2007.

25.   On November 29, 2007, purportedly in an attempt to meet the deadline of December 15 to commence demolition, Mr. Babers sitting as a one person Board of Directors of HANO approved a no-bid, sole source contract, for $9 million to St. Bernard Development to demolish the buildings at St. Bernard. St. Bernard Development is an affiliate entity to Columbia Residential, the present designee of HUD/HANO to redevelop St. Bernard, and an entity with which Secretary Jackson has had a financial relationship. Plaintiffs have not yet been successful in obtaining either the referenced Tabs in the Agenda or the actual votes by freedom of information requests.

26.   The no-bid, sole source contract for demolition was awarded despite the fact that HANO/HUD had previously represented in the Request for Qualifications referenced in Paragraph 28 below that HANO/HUD would itself carry out  any demolition of the project, and would do so pursuant to a separate procurement.

27.   Unless the Court intervenes, demolition of St. Bernard will commence on or before December 15, 2007.

*HANO/HUD Conducted a Flawed Process to Craft a Demolition and New Construction Plan for St. Bernard, to Select a Development Partner to Carry Out Its Plan, Whose Result, at the Minimum, Creates a Serious Appearance of Favoritism and/or Other Impropriety.*

28.    On or about October 19, 2006, HUD/HANO issued a Request for Qualifications (RFQ) No. 06-120-10-17 seeking a development partner with HANO/HUD for the construction of a mixed income community where the public housing project had been on the site of St. Bernard. The return date for submissions in response thereto was January 5, 2007. There were parallel RFQ's issued for two other public housing projects at the same time, with the identical schedule for review.

29.    The RFQ did not permit developers to vary the development program developed by HANO that called for the elimination of 1436 units and their replacement with 465 units only one third (153 units) of which would be public housing units.

30.    The tenants of St. Bernard were not afforded the opportunity to come forward with their own proposal to rehabilitate the project to preserve their homes.

31.    An Evaluation Panel was established to review responses to the RFQ for St. Bernard and the other projects. Although no public notice of the members of the committee was made, it appears that the committee consisted of, possibly among others, Scott Keller Deputy Chief of Staff of HUD Secretary Jackson, Dominique Blom, Deputy Assistant Secretary of HUD, Margaret Stone of CSG Advisors, Paul Casey of the law

firm of Ballard Spahr Andrews & Ingersoll, LLP, Barbara Holston, Executive Director of the Fort Worth Housing Authority, and Kim Brown, a HANO employee.

32.    All proposals received were reviewed in private by this panel. No public hearings were held nor were the responses open to public review.

33.    After an initial round of qualification, the top two submissions as scored by the Panel were given the opportunity to meet in person with its members. This meeting was likewise conducted in private session.

34.    Fore Kids Foundation, Columbia Residential, and Baton Rouge Area Foundation (hereinafter, together "Columbia") were selected as the proposed development partner for St. Bernard. Because of the HUD receivership of HANO, HUD officials were necessarily involved in the selection process.

35.    It has been reported in the National Journal that the financial disclosure reports of the HUD Secretary reference a financial relationship between the HUD Secretary and Columbia Residential pursuant to which he was owed between $250,000 and $500,000 for work previously performed for Columbia Residential and in August 2001 the HUD Secretary recused himself from HUD matters having "a direct and predictable effect on the ability or willingness" of the company "to satisfy its obligations to compensate me for prior services rendered."

36.    Noting in the record of the selection panel indicates that the members were aware of this potential conflict of interest or addressed it in their deliberations.

37.    The original RFQ provided that the development partner would not have any role in the demolition of the existing buildings at St. Bernard. That position was confirmed in the pre-bidding meetings conducted by HANO/HUD as well as in written addenda to the RFQ posted on the HANO website.

38.    Notwithstanding this position, on November 29, 2007, HANO/HUD approved a no bid, sole source contract with St. Bernard Redevelopment, LLC for $9 million dollars to demolish these buildings.

39.    According to filings in the Louisiana Secretary of States Office, Columbia Residential is a Member or Manager of St. Bernard Redevelopment, LLC.

40. The entire process for devising the plan for St. Bernard and for selecting a development partner for St. Bernard and who would participate in the demolition of this project, has been performed in secret with the absolute minimum of public input or exposure or opportunity for tenant participation in the planning process or tenant opportunity to present its own proposal for redevelopment and rehabilitation of St. Bernard..\

*HUD's Failure to Meet Its Statutory Responsibilities*

41.    The National Housing Act in relevant part [42 USC 1347 (a)] states in relevant

part:

It is the policy of the United States:

(1)    to promote the general welfare of the Nation by employing the funds and
credit of the Nation, as provided in the United States Housing Act of 1937:

(A)    to assist States and political subdivisions of States to remedy the
unsafe housing conditions and the acute shortage of decent and safe
dwellings for low-income families;

(B)    to assist States and political subdivisions of States to address the
shortage of housing affordable to low-income families; and

(C)    consistent with the objectives of title 42 of the USC, to vest in
public housing agencies that perform well, the maximum amount of
responsibility and flexibility in program administration, with appropriate
accountability to public housing residents, localities, and the general
public;

(2)    that the Federal Government cannot through its direct action alone provide
for the housing of every American citizen, or even a majority of its citizens, but
it is the responsibility of the Government to promote and protect the
independent and collective actions of private citizens to develop housing and
strengthen their own neighborhoods;

(3)    that the Federal Government should act where there is a serious need that
private citizens or groups cannot or are not addressing responsibly; and

(4)    that our Nation should promote the goal of providing decent and
affordable housing for all citizens through the efforts and encouragement of
Federal, State, and local governments, and by the independent and collective
actions of private citizens, organizations, and the private sector.

42.    The actions of HANO and HUD (both in its own right and as receiver of HANO)

in the instant situation are part of a larger abrogation and disregard of these statutory

mandates related to preserving affordable housing in New Orleans from 2002 when HUD

declared itself the administrative receiver of HANO.

43.    HANO/HUD and HUD have been openly and publicly engaged in a systematic and unlawful plan to reduce the number of, or to eliminate entirely, public housing units available for occupancy in New Orleans. In 1996 there were approximately 14,000 public housing units in New Orleans. By August 28, 2005, when the hurricane Katrina landed in New Orleans, there were 7,100 public housing units, 5,146 of which were occupied. HANO/HUD is in the process of eliminating more than 4000 units in four major public housing projects in New Orleans including 1436 public housing units at St. Bernard

44.    HANO has not built a single new public housing unit in the City (one that is not a partial replacement for other units demolished) for over ten (10) years nor has HANO or HUD  replaced anything but a small percentage of  pubic housing units that have been demolished.

45.    Significantly, the actions of HANO/HUD in relation to public housing projects such as St. Bernard are not based on any analysis of the needs of the low income community, or the community at large, as required by law. They are instead taken in an arbitrary manner without knowledge of or regard for their consequences.

46.    Since 2002, when HUD declared itself the administrative receiver of HANO, neither HUD as a federal agency nor HUD as the receiver of HANO, has conducted a study of the housing market in New Orleans to determine whether there is sufficient housing for the low income sector of the community and/or whether there is

available other housing in which the low income population that is displaced by the removal of pubic housing units could reside.

47.    HANO/ HUD not only failed to conduct studies of these needs themselves, but have failed and refused to take cognizance and/or to analyze studies provided by others of these housing needs in New Orleans.

48.    HANO/ HUD has systematically ignored and/or willfully refused to meet its obligations imposed by statute, as well as HUD's own regulations, it has failed to consult with public housing residents and work with them to plan the future of public housing in New Orleans and to offer tenants residing therein the right to purchase any housing project that was being disposed of by HANO/HUD.

49.    HUD has further violated its obligations to preserve, to the greatest extent feasible, all housing that receives project based assistance under sections 8 or 9 of the United States Housing Act of 1937 within New Orleans. Public Law 109-148 – December 30, 2005.

50.    HANO/HUD and HUD have consistently maintained that the needs of low income New Orleans residents can be met by providing those who lived in public housing before Katrina with vouchers they could use to rent apartments in New Orleans rather than replacing the units in which they had previously lived that are scheduled for demolition.

51.   This position has been maintained despite that fact that HANO/HUD is perfectly aware of the fact that there are virtually no affordable rental units available in New Orleans for which these vouchers could reasonably be used.  The housing shortage in New Orleans is a general housing shortage with sky-rocketing rents in the market, not just in the low-income sector. Housing vouchers are not useful if there are no units available to rent in the city.

52.   In fact the shortage has now been exacerbated by the fact that FEMA has now commenced a program to evict New Orleans residents who are still living in FEMA trailers from that temporary housing and is requiring that they seek other living accommodations.

53.   Even before the actions of FEMA there has been an increasingly severe homeless problem in the City. In Pre-Katrina New Orleans there were approximately 6,200 homeless persons in a population of approximately 450,000 (1.4%), now there are approximately 12,000 homeless persons in a population of approximately 250,000 (4.8.%).

54.   Neither HANO/HUD nor HUD has taken any action, nor devised any plan of any sort, to address the housing needs of the low income public housing residents of New Orleans whose welfare is the subject of their statutory mandate.

*HANO/HUD and HUD Have Ignored Their Statutory Obligations in the Manner in which HANO/HUD's Five Year Plans and Annual Plans Were Developed and Approved*

55.    Every local public housing agency ("LPA") receiving federal funds, such as HANO, is required by law to prepare and submit every five fiscal years a Five Year Plan to the Secretary of HUD containing a statement of how it plans to meet the needs of low-income and very low income families in the area served by the LPA 42 USC 1437c-1(a) for his approval. Similarly, every LPA is required to submit to the Secretary each year an Annual Plan describing how it intends to meet its obligations to this population  42 USC 1437c-1 (b).

56.    The Annual Plan must contain an assessment of the housing needs of low-income and very low-income families residing in the jurisdiction served by the public housing agency, and of other low-income and very low-income families on the waiting list of the agency (including housing needs of elderly families and disabled families), and the means by which the public housing agency intends, to the maximum extent practicable, to address those needs.  42 USC 1437c-1(d).

57.    Since it assumed operational control of HANO, by its own admission in its most recent Five Year and Annual Plans, HUD has no information available to it concerning the housing needs of low-income and very low-income families residing in New Orleans, and has not based its planning on any such information.

58.    In developing a public housing agency plan, the Board of a public housing agency

(in the case at bar Defendant Babers) is required to conduct a public hearing to discuss

the public housing agency plan and to invite public comment regarding that plan before it

is submitted for HUD approval. 42 USC 1437c-1(f)(1).

59.    Neither HANO nor HUD as its receiver has ever conducted any public hearings of

any sort regarding any proposed Five Year and/or Annual Plan for New Orleans.

60.    HUD/HANO is precluded from adopting any plan and/or from submitting any

plan to HUD until HUD/HANO has conducted a public hearing; considered all public

comments received; and made any appropriate changes in the public housing agency

plan, in consultation with the resident advisory board. 42 USC 1437c-1(f)(3).

61.    Despite the fact that no public hearings were conducted, in violation of its

statutory obligations, in or about October 2006 Defendant Babers, acting as the one

person Board of Commissioners of HANO/HUD submitted its 5 Year Plan for Fiscal

Years 2006-2010 / Annual Plan for Fiscal Year 2007 for Fiscal Year Beginning 10/2006,

marked as 12/15/06 version 3 (the "Plan") to HUD for approval. (Available at

http://www.hano.org/Documents/annual-plan-2007.pdf.)

62.    Notwithstanding that HUD knew that HUD/HANO's Plan was submitted in

violation of its statutory obligations, HUD approved the Plan on or about February 9,

2007. In so doing HUD endorsed HANO and HUD's publicly announced policy decision

21

to demolish the public housing projects in New Orleans without regard to the impact of such policy on the needs of low income tenants of New Orleans generally, and the tenants of the public housing projects to be demolished in particular.

63.    In addition to failing to comply with the statutory requirements regarding conducting public hearings, the Plan on its face demonstrates failure and/or willful refusal of the HUD appointed one person Board of Commissioners to assess the housing needs of low-income and very low-income families residing in New Orleans.

64.    The Plan contains no information regarding the housing needs of the low income families in the jurisdiction and, to the extent any information is provided, the information reported is based upon 2000 census data.  It further reports that the waiting lists for public and Section 8 housing vouchers have been closed for 58 and 60 months, respectively, and that HANO has no intention of reopening these lists. Any person who became eligible for the HANO programs over the last five years, or who would become eligible in the future, therefore could not, and cannot, receive any assistance from HANO according to its own plan, and in violation of federal law.

65.    These failures demonstrate an absolute inability of and unwillingness of HUD and HANO/HUD to act as an effective housing authority and an inability and unwillingness of HUD to act (both in its capacity as HUD and in its capacity of receiver of HANO) in accordance with its statutory obligations to implement, and supervise the implementation of the provisions of the National Housing Act.

*HANO and HUD Have Disregarded Their Statutory Obligations In The
Design of The Plan to Demolish and Dispose of St Bernard As Well As the
Manner In Which It Was Adopted And Approved*

66.    In August, 2005, New Orleans was struck by Hurricane Katrina. As a safety

measure, the public housing developments in New Orleans, including St. Bernard, were

evacuated and most of the residents were relocated outside of New Orleans, mainly

outside the State of Louisiana.

67.    Once the properties were vacated, HANO/HUD, decided that it would not permit

the public housing tenants to return and would not repair the buildings. Instead, it elected

to use the storm and the forced evacuations as a convenient justification, to facilitate and

expedite its plan, previously arrived at, to significantly reduce the number of public

housing units it administers in New Orleans.

68.    HANO's decision to refuse to reopen units that could have been reoccupied and to

decline to repair units further exacerbate any flood damage sustained by these housing

developments, including St. Bernard.

69.    The decision to demolish the four major public housing projects was made despite

the fact that neither HANO nor HUD had assembled any information regarding the needs

of the low-income and very low-income families residing in New Orleans or any

information regarding the existence of whether there was any other housing available in

the community for this population to occupy after such demolition.

70.    On or about June 14, 2006, HUD Secretary Jackson publicly announced that HUD

and HANO would demolish more than 4,500 public housing units in New Orleans,

including the more than 1400 units in St. Bernard, and replace these projects with mixed-

income developments. This announcement predated the submission of a Five Year or

Annual Plan from HANO to HUD, predated the submission by HANO/HUD to HUD of

any application for permission to demolish these housing projects, and of necessity, any

approvals by HUD of the Five Year or Annual Plan and any request by HANO/HUD for

permission to demolish the structures.


71.    This decision to demolish the public housing projects, including St. Bernard, was

announced by HUD Secretary Jackson without any assessment of the needs of the low

income population of New Orleans, or any consideration of the impact the demolition

would have on these citizens, in violation of the provisions of 42 USC 1437.  It was also

made in total disregard of the tenants' rights to be consulted on the formations of a Five

Year Plan or an Annual Plan, or their rights to a hearing on any proposed plan for

demolition and disposition of the projects, or their rights to propose their own

redevelopment plan for St. Bernard that would save their homes.


72.    The demolition was announced by HUD Secretary Jackson despite the fact that

neither HUD nor HANO/HUD had any viable plans for relocation of the tenants in New

Orleans. In fact HANO and HUD (both in its own right and as receiver of HANO) knew

at the time that the decision was announced in June of 2006 that there was already a

desperate need for affordable housing units (as well as housing for all income levels) in New Orleans as a result of the devastation caused by Katrina.

73.    At the time Secretary Jackson made his announcement he was aware of the fact that this plan would require New Orleans citizens who were public housing residents to relocate to other cities and states outside of New Orleans and Louisiana.

74.    Following HUD's announcement, HANO/HUD continued to act in a manner designed to circumvent the requirements of applicable federal statutes and regulations to obtain HUD's desired result of demolishing more than 4,500 public housing units as quickly as practicable.

75.    In October, 2006, HANO filed a formal application with HUD for permission to demolish and to dispose of St. Bernard to implement the decision previously announced by Secretary Jackson.

76.    At the time the application was filed HANO had not received HUD approval of either a Five Year Plan or an Annual Plan as required by the National Housing Act. HUD's approval of such plans was a prerequisite for approval of an application to demolish and dispose of a public housing development. Neither HANO/HUD nor HUD, acting in its own capacity, consulted with the tenants and/or other members of the public as they were required to do by law as a prerequisite to the preparation of said plans.

77.    In October of 2006, HANO was working on a draft Five Year (2006-2011) and an Annual Plan (2006) but had not submitted them to HUD for approval. The drafts were incomplete and had not received local approvals as of the date of the HANO demolition/disposition application to HUD. The drafts of these two plans were combined in a single document (The Plan Document.). Upon information and belief this Plan Document was revised on at least one occasion but plaintiffs do not know when, if, and by whom, the revisions were made.

78.    The Plan Document was required to, and in fact did, reference the intention of HANO to demolish and dispose of the four major housing projects. HANO was also required to note the interaction it had with the tenants of the projects in preparation of the Plan Document, their comments on the plans, and report the manner in which the Plan Document was altered to meet questions asked and issues raised by the tenants during the consultative process.

79.    The Plan Document contains an attachment entitled "Recommendations made by the QHWRA Resident Advisory Board" ("RAB") with Recommendations dated October 26, 2006 and November 8, 2006.

80.    With regard to the single question raised by the RAB regarding the proposed demolition, the RAB asked how HUD/HANO could propose demolishing units, in particular, with "this kind of a waiting list". HUD/HANO responded to the inquiry as

follows: "Since the matter is in litigation, it is inappropriate to go into the particulars at this time."

81.    With regard to the resident consultation process the RAB asked: "Let me ask you what resident consultation means?  Because I just want to know.  Are we just going through the procedure or the process?" to which HANO responded: "Resident consultation is an important process.  HANO values the input of its residents and will closely consider comments and recommendations received."

82.    On or about November 29, 2006, HANO held a resident consultation meeting for the purported purpose of consulting with the residents regarding the disposition demolition process. At this meeting Babers stated that HANO would take into consideration only those suggestions that "can be incorporated into" HANO's plan.

83.    The above reported discussions do not constitute "consultation" as required by federal statute, but rather an artifice that seeks to hide the fact that no actual consultation took place.

84.    Nevertheless, HUD approved HANO's Five Year Plan for the years 2006-2011 and it's Annual Plan for the Year 2006 on February 7, 2007.

85.    On October 17, 2006, simultaneous with the submission of these plans to HUD, and before they were approved by HUD, HANO/HUD applied to HUD for permission to

demolish and dispose of the four major public housing projects in New Orleans, including St. Bernard.

86.    Over the ensuing year, on information and belief, HANO made periodic supplementation of the application for permission to demolish and dispose of the four major public housing projects. The final submission was made on September 20, 2007. Neither the periodic supplements nor this purported final submission have been made available by HANO/HUD for public review.

87.    HUD instantaneously approved this application, without any input from any other party, in a 31 page decision rendered on September 21, 2007, the day after the application was purportedly completed.

88.    HUD's action in approving the Five Year Plan, the Annual Plan and the Application for demolition and disposition were unlawful as none of these documents comported with the requirements of law nor were they adopted in a manner that was required by law.

89.    Congress has mandated that HUD must disapprove an application for demolition/disposition if the application was not developed in consultation with:

> (1) residents who will be affected by the proposed demolition or disposition;

(2) each resident advisory board and resident counsel, if any, of St.

Bernard; and

(3). appropriate governmental officials (each of 2 and 3 above being

selected/elected to represent the interests of the tenants and others.)

(42 USC 1437p(b).)

90.     The September 21 Approval Letter issued by HUD (the "Approval") reports that

the first tenant meeting on the subject of demolition was held on November 29, 2006,

over a month <u>after</u> the application for demolition/disposition was first received by HUD.

This conclusively demonstrates not only that the application was not developed in

consultation with the tenants as required by law but that HUD knew this critical fact at

the time it approved the Application. HUD had no choice but to disapprove the

application.

91.     The Approval states that meetings with the Mayor of New Orleans and other City

officials were held on December 7, 2006 and December 12, 2006.

92.     The Approval states that the demolition/disposition application package included

a letter of support from the Honorable C. Ray Nagin, Mayor of the City of New Orleans,

dated December 14. (Attached hereto as Exhibit 6). The Approval mischaracterizes the

Mayor's letter as a letter of support for HANO/HUD's demolition plan.

93.    The Mayor's support is expressly and fundamentally conditioned on the agreement of HANO and HUD that any demolition and reconstruction plan will permit every pre-Katrina resident of the projects scheduled to be demolished the right to return to New Orleans.  HUD, in its Approval specifically finds that given the shortage of housing in New Orleans, this could not be accomplished after demolition. HUD finds, however, as HANO erroneously asserted in is application for approval  that it is not required to relocate displaced public housing tenants in the community.

94.    HANO/HUD cannot fulfill their agreement with the Mayor, nor do they intend to honor the agreement. Its plans include reducing the number of public housing units in New Orleans, as is proposed in the St. Bernard development plan (eliminating 1,283 units), with no provisions to replace these units anywhere within New Orleans. Given this admission by HUD itself, the Mayor's letter cannot be considered a letter of support of the demolition proposal.

95.    Further, as HUD itself described in the Approval letter, the application for permission to demolish and dispose of the projects predates the meeting with local governmental officials and was not developed in consultation with, nor is it supported by, local governmental officials insofar as it does not guarantee the rights of displaced New Orleans citizens who resided in public housing projects scheduled to be demolished to return to their city.

96.    Federal law provides that in the event of a disposition by a Public Housing Authority of a public housing development such as St. Bernard, the residents should be afforded the opportunity in appropriate circumstances to purchase the development and redevelop it in a manner to preserve their homes. The tenants in this case have prepared a proposal for a limited equity cooperative that is financially viable and that can house the residents of St. Bernard who wish to return to their homes.

97.    In approving the demolition and disposition of St. Bernard, HUD stated that HANO/HUD need not comply with this legal requirement because HANO/HUD can rely on an exception to this requirement found in 24 CFR 970.9(3)(ii), which provides, *inter alia*, that HANO is not required to offer the development for purchase to the residents since HANO seeks to dispose of St. Bernard outside of the public housing program to privately finance or otherwise develop a facility "to benefit low-income families" (e.g. mixed-financing development under 24 CFR Section 941 subpart F).

98.    As is clear from the HANO/ HUD's plan for St. Bernard and is described in the approval finding, the proposed redevelopment is not part of a privately financed housing project. Of the $75 million cost of the redevelopment, $43 million will be raised using a federal low income housing credit program and another $25 million will come from a Community Development Block Grant (CDBG) grant. Of the $75 million, $67 million are raised through government subsidy programs.

99.    Moreover, the program is not aimed at developing a facility to benefit "low-income families". A project that previously contained 1,436 public housing units for very low income families is being demolished. In its place is proposed a mixed-income project that will only house 153 such families. Whatever the supposed benefits of this proposal, it is not to benefit "low-income families."

100.    24 CFR 970.21(c) (2) provides that if Federal financial assistance under the CDBG program is used in connection with demolition or disposition of public housing, as is proposed to be done by HANO/HUD in this situation, the project is subject to section 104(d) of the Housing and Community Development Act of 1974, 42 U.S.C. 5304(d) (as amended), including relocation payment provisions and the anti-displacement provisions.

101.    The anti-displacement provisions of this statute require that comparable replacement dwellings be provided within the community for the same number of occupants as could have been housed in the occupied and vacant, occupiable (sic) low- and moderate-income units demolished or converted to another use.

102.    The demolition and disposition program for the St. Bernard development, as approval of HUD, makes no provision for displaced residents to be provided comparable housing within either the redeveloped St. Bernard or in the community at large.

103.    The demolition and disposition program pursued by HANO under the HUD receivership and with the approval of HUD for the St. Bernard development does not comply with the requirements of law.

104. 24 CFR Section 941 subpart F provides that, in considering an application to demolish and dispose of property for redevelopment, HUD shall consider the quality of the HANO's past performance in implementing similar development projects and HANO's demonstrated administrative capabilities.

105. Noteworthy among HANO's past performance (including the time it has been under HUD receivership) in implementing similar developments is HANO's experience at another public housing project in New Orleans, the Imperial Drive project. Over a decade ago, HUD permitted HANO to demolish and dispose of the public housing units at Imperial Drive with the promise that the project would be replaced by a mixed income development. Imperial Drive was demolished and nothing was built in its place. The land upon which it stood remains a vacant lot today.

106. Pursuant to subpart F, HUD can require HANO to submit, *inter alia*, a market analysis of the viability of any proposed development. HUD has elected, for undisclosed reasons, not to request any such market analysis prior to approving the demolition of St. Bernard.

*The Columbia Residential Redevelopment Program is Not Financially Viable, and Is Premised on Unfunded Promises*

107.    According to the Columbia proposal, $43 million of low income housing tax credits as well as $27 million of Community Development Block Grant (CDBG) funds will be used for the construction of the 465 mixed income units that includes only 153 units of rebuilt public available for public housing tenants at a cost of $75 million.

108.    The proposal is based on artificially low costs of construction. In fact it would cost an additional $25 million dollars for the construction of the mixed use housing, and no sources of these funds have been identified.

109.    The accepted proposal from Columbia is premised on other neighborhood development off site that could supplement the 153 units of remaining affordable housing and purportedly rejuvenate the area. There is no discussion in the accepted proposal of where funding for off site development will come from; when the proposed development may be funded; or where the additional construction will take place. Nor is there any market analysis to demonstrate that the proposal is financially feasible. There is no identification of any potential owners, investors, or underwriters for the proposed neighborhood development.

110.    The Columbia proposal was further based on promises of additional public amenities such as a Professional Golf Association (PGA) golf course, a YMCA, parks

and open space. The golf course is proposed to be developed in the New Orleans City Park, land that is not under the control of either HUD or HANO. The proposal also includes founding two charter schools, one for pre-K through 8th grade and one for high school. As with the golf course, the creation of the schools is a matter for governmental authorities other than HUD and HANO and certainly not within the control of Columbia. The plan calls for a 45,000 square foot YMCA but the proponents do not explain how this will be financed, who will pay for it, when this facility will be built, and/or whether the YMCA has agreed to this proposal.

111.    Additional claimed community benefits from the Columbia project are purportedly to be funded by projected future profits from the operation of a golf course; however, the construction of the golf course is dependant upon raising millions of dollars from private sources, which have not been identified, nor have any donors been identified who will make donations to the construction.

112.  The Columbia plan is not practically and/or financially feasible yet it will result in the immediate demolition of St. Bernard.

## CAUSES OF ACTION

### Count I

(Unlawful Denial of Plaintiffs Opportunity to Purchase and Preserve St. Bernard)

113.    Plaintiffs repeat and re-allege the allegations contained in the forgoing paragraphs nos. 1-109 above, which are specifically incorporated herein.

114.    Pursuant to federal law, in the case of a proposed disposition of a public housing project, the public housing agency (HANO) shall, in appropriate circumstances, as determined by HUD, initially offer the property to any eligible resident organization, eligible resident management corporation, or nonprofit organization acting on behalf of the residents in order that it can be preserved as affordable housing for the tenants.

115.    It is the responsibility of the Assistant Secretary of HUD to ensure that the opportunity is afforded to affected tenants and any entity they establish for this purpose. 24 CFR 970.13.

116.    Plaintiffs are ready, willing and able to purchase the premises and redevelop them as a limited equity cooperative for occupancy by low-income families, and have filed a detailed redevelopment plan with HUD and HANO describing their proposal.

117.    HUD and HANO have declined to consider the tenants proposal and insist on going forward with their plan to demolish the premises and convey the same to Columbia for a mixed-income project that will reduce the number of public housing units on the site by a factor of 9.

118.    HUD in its capacity as the federal agency who is responsible for ensuring the proper implementation of the Nation Housing Act of 1937as well as in its capacity as receiver for HANO has determined that HANO was not required to offer any residents group the opportunity to purchase St. Bernard based on an exception to this requirement found in 24 CFR section 970.9(3)(ii), which provides, *inter alia*, that HANO is not required to offer the development for purchase to the residents groups since HANO seeks to dispose of St. Bernard outside of the public housing program to privately finance or otherwise develop a facility "to benefit low-income families" (e.g. mixed-financing development under 24 CFR Section 941 subpart F).

119.    HUD's determination in this regard is an unreliable and a self-fulfilling pretext.

120.    HUD and HANO's determination that St. Bernard would be disposed of was for the purpose of disposing of St. Bernard "outside of the public housing program" and to relieve HUD and HANO of their obligations to act as public housing authorities with regard to St. Bernard.

121.    HUD and HANO's determination was not, and could not reasonably be alleged to be, made "to benefit low-income families".

122.    HUD's and HANO's actions and omissions have violated the Plaintiffs' statutory rights and the statutory duties these governmental entities owe to the Plaintiffs.

## Count II

### (Unlawful Submission and Approval of Application for Demolition and Disposition of St. Bernard)

123.    Plaintiffs repeat and re-allege the allegations contained in the forgoing paragraphs nos. 1 to 119 above, which are specifically incorporated herein.

124.    Pursuant to federal law, prior to submitting an application to HUD to demolish and/or dispose of public housing, such as St. Bernard, HANO must fulfill certain obligations and take specific steps, including, without limitation, the following:

   a.    Develop the application for demolition and/or disposition in consultation with residents who will be affected by the proposed demolition and/or disposition (i.e., resident Plaintiffs);

   b.    Develop the application for demolition and/or disposition in consultation with the resident advisory board and resident counsel, if any, of St. Bernard; and

    c.      Develop the application for demolition and/or disposition in consultation with appropriate governmental officials. (Each of b. and c. above being selected/elected to represent the interests of the resident Plaintiffs and others.)

125.    HANO failed to fulfill these obligations and/or take these steps prior to submitting its application to HUD to demolish and dispose of St. Bernard.

126.    Pursuant to federal law, HUD must disapprove an application for demolition and/or disposition if the application was not developed in consultation with:

    a.      Residents who will be affected by the proposed demolition and/or disposition;

    b.      Each resident advisory board and resident counsel, if any, of St. Bernard; and

    c.      Appropriate governmental officials. (Each of b. and c. above being selected/elected to represent the interests of the resident Plaintiffs and others.)

127.    HUD approved HANO's application (prepared by HUD as receiver to HANO) to demolish and dispose of St. Bernard knowing that HANO failed to fulfill these obligations and/or take these steps.

128.    HUD's and HANO's actions and omissions have violated the Plaintiffs rights and

the duties these governmental entities owed to the Plaintiffs.

Count III

(HUD and HANO's Failure to Fulfill Their Statutory Obligations
Under the U.S. Housing Act of 1937 to the Detriment of Plaintiffs
Mandamus)

129.    Plaintiffs repeat and re-allege the allegations contained in the forgoing paragraphs

nos. 1-125, which are specifically incorporated herein.

130.    Pursuant to U.S. Housing Act of 1937, codified at 42 USC 1437 *et. seq.*, as

amended, HUD has an obligation to further the low-income housing policies of the

United States, including, without limitation, assisting state and local governmental bodies

in their efforts to promote, preserve and create desperately needed low-income housing.

131.    Pursuant to Public Law 109-148 – December 30, 2005, HUD has an obligation to

preserve, to the greatest extent feasible, all housing that receives project based assistance

under sections 8 or 9 of the United States Housing Act of 1937 within New Orleans.

132.    Pursuant to 42 USC 1437c-1, HANO has an obligation to promulgate Five Year

Plans to accomplish its mission as well as to annually assess the housing needs of low-

income and very low-income families residing in the jurisdiction served by the public

housing agency, and of other low-income and very low-income families on the waiting

list of the agency (including housing needs of elderly families and disabled families), and

40

the means by which the public housing agency intends, to the maximum extent practicable, to address those needs.

133.    HUD, in its capacity as the federal agency that is responsible for ensuring the proper implementation of the Nation Housing Act of 1937as well as in its capacity as receiver for HANO, through its actions and omissions has flagrantly disregarded these policies, Congressional mandates, and obligations.  Neither HUD nor HANO has taken any actions:

    a.    To promote low-income housing in New Orleans;

    b.    To preserve low-income housing in New Orleans;

    c.    To access the needs of the low-income and very low-income families in
        New Orleans; or

    d.    To access the means by which HANO intends, to the maximum extent
        practicable, to address those needs.

134.    Instead HUD acting on its own account as well as by and through HANO has sought to demolish and dispose of public housing with no assessment of, or consideration given to, the needs of the low-income and very low-income families in New Orleans.

135.    HUD's and HANO's actions and omissions have violated the Plaintiffs rights and the duties these governmental entities owe to the Plaintiffs.

Count IV

(HUD and HANO's Failure to Fulfill Their Statutory Obligations
Under the U.S. Housing Act of 1937 to the Detriment of Plaintiffs
Arbitrary and Capricious Action)

136.    Plaintiffs repeat and re-allege the allegations contained in the forgoing paragraphs

nos. 1-133, which are specifically incorporated herein.


137.    Defendants have acted arbitrarily, capriciously, abused their discretion, or

otherwise acted contrary to law by:


     a.  failing to fulfill their respective duties to promote low-income housing in

     New Orleans;

     b.  failing to fulfill their respective duties to remedy the current acute

     shortage of decent and safe dwellings for low-income families of New

     Orleans

     c.  submitting and failing to disapprove a public housing plan known to be in

     violation of federal law;

     d.  submitting and failing to disapprove an application for demolition and

     disposition known to be in violation of federal law; and

     e.  generally, failing to fulfill their respective duties to address the shortage of

     low-income housing in New Orleans.


113.    HUD's and HANO's actions and omissions have violated the Plaintiffs rights and

the duties these governmental entities owe to the Plaintiffs.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court to:

1)    Issue a temporary restraining order enjoining HANO and HUD, in its capacity as the federal agency that is responsible for ensuring the proper implementation of the Nation Housing Act of 1937 as well as in its capacity as receiver for HANO, from demolishing and/or disposing of the St Bernard public housing development, or any of the buildings contained therein, until further order of the Court.

2)    Issue a preliminary injunction enjoining HANO and HUD, in its capacity as the federal agency that is responsible for ensuring the proper implementation of the Nation Housing Act of 1937 as well as in its capacity as receiver for HANO, from demolishing and/or disposing of the St Bernard housing development, or any of the buildings contained therein, until further order of the Court.

3)    Issue a permanent injunction enjoining HANO and HUD, in its capacity as the federal agency who is responsible for ensuring the proper implementation of the Nation Housing Act of 1937 as well as in its capacity as receiver for HANO, from demolishing and/or disposing of the St Bernard housing development, or any of the buildings contained therein, until it has properly followed the statutory and regulatory

requirements for the adoption of a Five Year Plan and an Annual Plan for HANO, has offered the project to the plaintiffs to enable them to implement their proposal to convert the premises into a limited equity cooperative to preserve their housing for their occupancy.

4)    Issue an order rescinding the Housing Authority of New Orleans application for, and the U.S. Department of Housing and Urban Development's approval of, the demolition and/or disposition of St. Bernard.

5)    Issue an Order of Mandamus ordering U.S. Department of Housing and Urban Development, in its capacity as the federal agency that is responsible for ensuring the proper implementation of the Nation Housing Act of 1937 as well as in its capacity as receiver for HANO, and the Housing Authority of New Orleans to carry out their non-discretionary functions and to take the following steps:

a.    Assess the housing needs of low-income and very low-income families residing in New Orleans, and of other low-income and very low-income families on the waiting list of the agency (including housing needs of elderly families and disabled families), and the means by which the Housing Authority of New Orleans intends, to the maximum extent practicable, to address those needs;

b.      To develop a proposed Five Year Plan and an Annual Plan for
        New Orleans, to conduct a public hearing to discuss the plan and to
        invite public comment regarding that plan, and to consider the
        public comment and adjust the proposed plan based thereon;

c.      To refrain from adopting any plan and/or submitting any plan to
        U.S. Department of Housing and Urban Development until the
        Housing Authority of New Orleans has conducted a public
        hearing; considered all public comments received; and made any
        appropriate changes in any New Orleans Annual Plan, in
        consultation with the resident advisory board;

d.      In the event that the Housing Authority of New Orleans determines
        to make an application to the U.S. Department of Housing and
        Urban Development for the demolition and/or disposition of St.
        Bernard, to develop such application in consultation with: (1.)
        residents who will be affected by the proposed demolition or
        disposition; (2.) each resident advisory board and resident counsel,
        if any, of St. Bernard; and (3.) appropriate governmental officials
        of New Orleans.

e.   In the event that the Housing Authority of New Orleans, after

having made proper application to U.S. Department of Housing

and Urban Development consistent with all statutory and

regulatory requirements, including, without limitation those set

forth in a. – d. above, makes an application to dispose of St.

Bernard, the Housing Authority of New Orleans to initially offer

the property to the Saint Bernard Housing Recovery &

Development Corporation, Inc.

6)   Issue an Order setting aside the flawed RFQ adopted by HANO/HUD as it

relates to the selection of a developer for St. Bernard.

7)   i.   Issue and Order directing HANO/HUD to conduct a new process

under the direction of an independent court-appointed panel that would

provide plaintiffs with the opportunity to have their proposal for the

rehabilitation of the buildings at St. Bernard and creation of a limited

equity cooperative objectively evaluated and considered in conformance

with law and if it is deemed appropriate to have the opportunity to

implement their proposal.

or in the alternative:

    ii.    Issue an Order directing HUD/HANO to grant the St. Bernard Housing Recovery & Development Corporation, Inc. ("SBHR&DC") the opportunity to present a redevelopment plan for the St. Bernard housing project in accordance with 24 CFR 970.9(b).

or in the further alternative:

    iii.    Issue an Order directing HUD/HANO to directly designate the St. Bernard Housing Recovery & Development Corporation, Inc. ("SBHR&DC") as the redeveloper for the St. Bernard housing project.

8)    Award Plaintiffs attorneys' fees if appropriate; and

9)    Award Plaintiffs such other relief as it deems just and proper.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL IN THE ABOVE-ENTITLED MATTER ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

ST. BERNARD HOUSING RECOVERY& DEVELOPMENT CORPORATION, Inc.; GLORIA IRVING; STEPHANIE MINGO; SHIRLEY MORRIS; and CHANTEL YOUNG By their Attorneys;

Saul A. Schapiro, Esq.
BBO No. 444820
(Motion for *pro hac vice* pending)
ROSENBERG & SCHAPIRO, P.C.
44 School Street, Suite 800
Boston, MA 02108
Phone: (617) 723-7440
Fax: (617) 723-8849
sschapiro@rosen-schap.com

William J. Bethune, Esq.
D.C. Bar No. 66676
PEPPER HAMILTON, LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, DC 20005
Phone: (202) 220-1203
Fax: (202) 478-2118
bethunew@pepperlaw.com

_William Quigley (SAB)_

William Quigley, Esq.
Loyola University New Orleans
7214 St. Charles Avenue, Campus Box 902
New Orleans, LA 70118
Phone (504) 861-2709
Fax:    (504) 861-5440
duprestars@yahoo.com


_Tracie L. Washington (SAB)_

Tracie L. Washington, Esq.
THE LOUISIANA JUSTICE INSTITUTE
1631 Elysian Fields Avenue
New Orleans, LA 70117
Phone: (504) 872-9134
Fax: (504) 872-9878


Dated:  December 11, 2007

**I (a) PLAINTIFFS**

**DEFENDANTS**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

1 U.S. Government
   Plaintiff

2 U.S. Government
   Defendant

3 Federal Question
   (U.S. Government Not a Party)

4 Diversity
   (Indicate Citizenship of
   Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**A. _Antitrust_**

410 Antitrust

**B. _Personal Injury/
Malpractice_**

310 Airplane
315 Airplane Product Liability
320 Assault, Libel & Slander
330 Federal Employers Liability
340 Marine
345 Marine Product Liability
350 Motor Vehicle
355 Motor Vehicle Product Liability
360 Other Personal Injury
362 Medical Malpractice
365 Product Liability
368 Asbestos Product Liability

**C. _Administrative Agency
Review_**

151 Medicare Act

Social Security:
861 HIA ((1395ff)
862 Black Lung (923)
863 DIWC/DIWW (405(g)
864 SSID Title XVI
865 RSI (405(g)
Other Statutes
891 Agricultural Acts
892 Economic Stabilization Act
893 Environmental Matters
894 Energy Allocation Act
890 Other Statutory Actions (If
   Administrative Agency is Involved)

**D. _Temporary Restraining
Order/Preliminary
Injunction_**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

---

**E. _General Civil (Other)_**    **OR**    **F. _Pro Se General Civil_**

Real Property
210 Land Condemnation
220 Foreclosure
230 Rent, Lease & Ejectment
240 Torts to Land
245 Tort Product Liability
290 All Other Real Property

Personal Property
370 Other Fraud
371 Truth in Lending
380 Other Personal Property Damage
385 Property Damage Product Liability

Bankruptcy
422 Appeal 28 USC 158
423 Withdrawal 28 USC 157

Prisoner Petitions
535 Death Penalty
540 Mandamus & Other
550 Civil Rights
555 Prison Condition

Property Rights
820 Copyrights
830 Patent
840 Trademark

Federal Tax Suits
870 Taxes (US plaintiff or
   defendant
871 IRS-Third Party 26
   USC 7609

Forfeiture/Penalty
610 Agriculture
620 Other Food &Drug
625 Drug Related Seizure
   of Property 21 USC 881
630 Liquor Laws
640 RR & Truck
650 Airline Regs
660 Occupational
   Safety/Health
690 Other

Other Statutes
400 State Reapportionment
430 Banks & Banking
450 Commerce/ICC
   Rates/etc.
460 Deportation

470 Racketeer Influenced &
   Corrupt Organizations
480 Consumer Credit
490 Cable/Satellite TV
810 Selective Service
850 Securities/Commodities/
   Exchange
875 Customer Challenge 12 USC
   3410
900 Appeal of fee determination
   under equal access to Justice
950 Constitutionality of State
   Statutes
890 Other Statutory Actions (if
   not administrative agency
   review or Privacy Act

| **G.** *Habeas Corpus/ 2255* | **H.** *Employment Discrimination* | **I.** *FOIA/PRIVACY ACT* | **J.** *Student Loan* |
|---|---|---|---|
| 530 Habeas Corpus-General<br>510 Motion/Vacate Sentence | 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | 895 Freedom of Information Act<br>890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| **K.** *Labor/ERISA (non-employment)* | **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | **N.** *Three-Judge Court* |
|---|---|---|---|
| 710 Fair Labor Standards Act<br>720 Labor/Mgmt. Relations<br>730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>740 Labor Railway Act<br>790 Other Labor Litigation<br>791 Empl. Ret. Inc. Security Act | 441 Voting (if not Voting Rights<br>Act)<br>443 Housing/Accommodations<br>444 Welfare<br>440 Other Civil Rights<br>445 American w/Disabilities-<br>Employment<br>446 Americans w/Disabilities-<br>Other | 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment &<br>Enforcement of Judgment<br>153 Recovery of Overpayment of<br>Veteran's Benefits<br>160 Stockholder's Suits<br>190 Other Contracts<br>195 Contract Product Liability<br>196 Franchise | 441 Civil Rights-Voting<br>(if Voting Rights Act) |

## V. ORIGIN

| 1 Original<br>Proceeding | 2 Removed<br>from State<br>Court | 3 Remanded from<br>Appellate Court | 4 Reinstated<br>or Reopened | 5 Transferred from<br>another district<br>(specify) | 6 Multi district<br>Litigation | 7 Appeal to<br>District Judge<br>from Mag. Judge |
|---|---|---|---|---|---|---|

## VI.  CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $**<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>**YES**        **NO** |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction)    **YES**     **NO** | | If yes, please complete related case form. |

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  Listed below are tips for completing the civil cover sheet.  These tips coincide with the Roman Numerals on the Cover Sheet.

I.        COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C.,  and 99999 if plaintiff is outside the United States.

III.       CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

IV.       CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint.  You may select only <u>one</u> category.  You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.       CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.      RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.