# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ST. BERNARD HOUSING RECOVERY & DEVELOPMENT CORPORATION, INC, <u>et al.</u>, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 07-2231 (RWR) |
| v. | ) ) | FEDERAL DEFENDANTS' OPPOSITION TO |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <u>et al.</u>, | ) ) ) | PLAINTIFFS' MOTION FOR A TRO AND PI |
| Defendants. | ) ) ) | |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY AND REGULATORY FRAMEWORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   Plaintiffs Have No Likelihood of Success on the Merits. . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Plaintiffs Cannot Succeed on the Merits Because Their Claims
            Are Barred by Res Judicata. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    Identity of Interests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            2.    Adequate Representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            3.    Tactical Maneuvering. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            4.    Public Law Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            5.    Judgment on the Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            6.    Same Cause of Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      B.    Even if Res Judicata Did Not Apply, Plaintiffs' APA Claims Have
            No Likelihood of Success on the Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            1.    Plaintiffs Have No Likelihood of Success on Their First
                 Claim for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                 a.    Plaintiffs Acquisition Claim Should be Dismissed for Failure to
                      State a Claim on Which Relief Can be Granted. . . . . . . . . . . . . 20

                 b.    Plaintiffs Have Waived This Claim by Failing to Raise it to HUD
                      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

                 c.    HUD Properly Excepted HANO's Disposition From the
                      Requirement of 42 U.S.C. § 1437p(c) and 24 C.F.R. § 970.9. . . 24

2.    Plaintiffs' Attack on HUD's September 21, 2007 Decision Is Devoid of Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

3.    Plaintiffs' Third and Fourth Claims For Relief Are Likewise Meritless.  33

III.   Plaintiffs Have Not Met Their Burden of Showing That They Will Suffer Irreparable Harm if the Injunction Is Not Granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

A.    Plaintiffs' Delay in Seeking Injunctive Relief Undermines Their Claim of Irreparable Harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

B.    Plaintiffs Cannot Establish That They Will be Irreparably Harmed as a Result of the Scheduled Demolition. . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

IV.   An Order Enjoining the Demolition St. Bernard Would Substantially Harm Defendants and Other Parties, and Would Disserve the Public Interest. . . . . . . . . . . . . . . . . . . . . . . . 40

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

# INTRODUCTION[1]

This action is nothing but a clumsy effort at deception. The complaint is designed to create the impression that Plaintiffs are writing on a blank slate and that theirs is the only effort that has been mounted to prevent the demolition of the St. Bernard public housing development. This is entirely false, and Plaintiffs and their attorneys know this to be so. In fact, the exact claim that Plaintiffs are asserting in this case, that HUD's approval of Housing Authority of New Orleans' ("HANO") plan to demolish St. Bernard violated the terms of 42 U.S.C. § 1437p, has been litigated to conclusion in Anderson v. Jackson, No. 06-cv-3298 (E.D. La.) (Lemelle, J.). In Anderson, the district court explicitly rejected challenges brought under section 1437p to the Department of Housing and Urban Development's ("HUD") decision to approve HANO's demolition application. The Anderson plaintiffs have appealed that decision to the Fifth Circuit and they sought an order from the Court of Appeals staying St. Bernard's demolition while their appeal is pending, but that motion was denied.    There is no possible basis on which Plaintiffs in this case can credibly argue that they were unaware of Anderson. In fact, two of them were listed as witnesses for plaintiffs in Anderson. The same is true for Plaintiffs' counsel; two of them also have been counsel for the plaintiffs in Anderson since that suit was filed. Nonetheless, neither the complaint in this case, nor Plaintiffs' motion for emergency relief, make any mention whatsoever of Anderson.

The short of the business is that the issue of Defendants' compliance with section 1437p with respect to St. Bernard has been finally resolved by the district court in Anderson, that decision is pending before the Fifth Circuit, and the Court of Appeals has denied a request for the exact relief

---

[1] This brief is filed on behalf of the Federal Defendants - HUD, Secretary Alphonso Jackson, and Assistant Secretary Orlando Cabrera – referred to herein collectively as "HUD" or the "Federal Defendants."

1

that is the subject of this motion. What Plaintiffs are really after in this suit is to have this Court to assume the role of the Supreme Court and reverse the Fifth Circuit's denial of the <u>Anderson</u> plaintiffs' request for a stay of demolition. As we explain below, Plaintiffs' extraordinary request should be denied, and this action should be dismissed.

Dismissal is appropriate because the district court's decision in <u>Anderson</u> bars Plaintiffs claim in this case on *res judicata* grounds. For that same reason, Plaintiffs have no likelihood of success on the merits. Moreover, not only have Plaintiffs waited nearly twelve weeks (at least in this Court) to challenge HUD's decision approving HANO's application for the demolition of the St. Bernard housing project, but Plaintiffs also are unable to show that HUD failed to comply with any procedural or substantive requirement that is a prerequisite to such approval. The comprehensive, 31-page decision memorandum issued by HUD sets forth the reasons for HUD's approval of HANO's demolition application, and demonstrates unequivocally that HUD carefully followed all of the requirements of 42 U.S.C. § 1437p and the governing regulations in approving HANO's application, including 24 C.F.R. § 970.13.[2] HUD's decision was therefore in accordance with law. Moreover, Plaintiffs neither timely submitted a redevelopment plan, nor raised issues related to Plaintiffs' potential purchase of St. Bernard to HUD, and have therefore waived these issues in this Court. Plaintiffs therefore cannot succeed on the merits of their claim.

Finally, Plaintiffs cannot show that they will suffer irreparable harm if the Court declines to issue an injunction. Ironically, it is only if they succeed in delaying or preventing the demolition and redevelopment of the public housing project at issue that Plaintiffs will deprive themselves and

---

[2] HUD's decision also addressed and approved HANO's demolition application for three additional housing projects not at issue here, C.J. Peete, B.W. Cooper, and Lafitte.

hundreds of other families of the opportunity to live in improved public housing in New Orleans. In contrast, the balance of harm tips sharply in the Federal Defendants' favor, due to the harm that an injunction would cause to HUD and to the public at large.

## STATUTORY AND REGULATORY FRAMEWORK

Under the U.S. Housing Act of 1937, 42 U.S.C. § 1437 et seq., HUD provides monetary assistance to local public housing authorities ("PHAs"), such as HANO, for the development, operation, and maintenance of low-income housing. 42 U.S.C. §§ 1437b-1437i. HANO is required to comply with federal regulations governing the subsidies. See generally id. § 1437 et seq.

The Act establishes conditions for the demolition and disposition of public housing. See id. §§ 1437p, 1437v. Before a PHA may demolish a public housing development, it must certify to HUD, inter alia, that "the project or portion of the public housing project is obsolete as to physical condition, location, or other factors, making it unsuitable for housing purposes." Id. § 1437p(a)(1)(A)(I). In addition, HUD must disapprove the demolition application if, inter alia, it was not developed in consultation with the residents who will be affected, resident councils, and local government officials; or if HUD determines that the local housing authority's certification is inconsistent with other information available to the Secretary of HUD. Id. §§ 1437p(b)(2)(A)-(C)), 1437p(b)(1). 42 U.S.C. § 1437p(c) states that the PHA shall offer the property to a resident management corporation only "in appropriate circumstances as determined by the Secretary" (emphasis added). In this regard, 24 C.F.R. § 970.9(3)(ii) explains that "the [offer] requirements of this section do not apply [where] . . . [a] PHA seeks disposition outside the public housing program to privately finance or otherwise develop a facility to benefit low-

income families (e.g., . . . <u>mixed-finance housing</u> under 24 C.F.R. part 941 subpart F, or <u>other types of low-income housing</u>)" (emphases added).

Congress has vested the responsibility for managing, maintaining, and operating public housing developments in PHAs rather than in the federal government.  <u>See</u> <u>id.</u> § 1437.  Contrary to Plaintiffs' assertions, Compl. ¶ 8; Pls.' TRO Mot. at 6-8, HANO is not a part of HUD, but an independent state agency.  The Act authorizes the Secretary of HUD to assume the responsibilities of a PHA if it defaults on those responsibilities.  42 U.S.C. § 1437d(j)(3)(A)(iv).  In such cases, however, "the Secretary . . . <u>shall be deemed to be acting not in the official capacity of that person or entity, but rather in the capacity of the public housing agency, and any liability incurred . . . shall be the liability of the public housing agency.</u>"  <u>Id.</u> § 1437d(j)(3)(H) (emphasis added).  Thus, any actions undertaken by Mr. Babers and Ms. Cato-Turner in their HANO capacities to which they have been appointed by Secretary Jackson are deemed to be actions of HANO, and not HUD, and HUD cannot incur any liability based on such actions.  <u>Id.</u>  Likewise, HANO's actions are not HUD's, and HUD is not liable for any claims arising out of HANO's actions.

**PROCEDURAL BACKGROUND**

Prior to Hurricane Katrina, HANO had initiated plans to redevelop many of its outdated and dilapidated properties.  Hurricane Katrina caused further damage to a significant portion of HANO's housing stock, which sustained serious wind and flood damage in the storm.  HUD, working closely with HANO and other public housing authorities, provided public housing residents displaced by the hurricane with vouchers to cover the rent of a new, replacement apartment anywhere in the United States, including New Orleans.  After assessing the damage

4

and considering the long-term needs of its residents, HANO formulated a preliminary demolition and redevelopment plan which included replacing some of its most deteriorated and damaged housing projects with new lower-density, mixed-income housing.

Following the public announcement of the preliminary plan, in June 2006, eighteen pre-Katrina residents of public housing in New Orleans, including three former residents of St. Bernard, filed a putative class action in the District Court for the Eastern District of Louisiana ("EDLA") against HANO, HUD, and several officers of the agencies, seeking to enjoin the demolition and redevelopment of the projects (including St. Bernard), to compel the repair and reoccupancy of these projects, and to obtain monetary damages. See Complaint in Anderson v. Jackson, No. 06-cv-3298 (E.D. La.) (Lemelle, J.) [Docket No. 1].[3] Two of the individual Plaintiffs in the instant lawsuit – Stephanie Mingo and Gloria Irving – were listed as a potential witness either in the Anderson plaintiffs' Fed. R. Civ. P. 26(a) initial disclosures, or in their witness list for the class certification hearing in Anderson held on September 17, 2007 [Docket No. 433].

Following the class certification hearing, the district court dismissed all of the Anderson plaintiffs' claims, including their claims under § 1437p, except for those concerning whether former HANO residents are entitled to payment for their separately-metered utilities in addition to their housing vouchers. Anderson Order (September 18, 2007) [Docket No. 460]. The district court certified a class only with respect to the utility claims, declining to certify the class sought by the Anderson plaintiffs, and HANO filed a petition for interlocutory appeal. The Fifth Circuit

---

[3] Unless otherwise noted, references to specific documents in the record are to the docket in Anderson v. Jackson, No. 06-cv-03298 (E.D. La.) (Lemelle, J.). The docket sheet is attached as Exhibit ("Ex.") 1.

Court of Appeals granted the petition, and opening briefs in that appeal are due on January 8, 2008.  See Anderson v. Jackson, Docket No. 07-31008 (5th Cir.).

On September 21, 2007, HUD issued its decision approving HANO's application to demolish St. Bernard (and the other three developments).  The Anderson plaintiffs subsequently filed a motion for a temporary restraining order ("TRO") and preliminary injunction ("PI") to enjoin the demolition of the public housing developments that were the subject of their suit, including St. Bernard.  The district court denied the motion and dismissed the Anderson plaintiffs' claim that HUD's approval of HANO's application to demolish St. Bernard and the three other public housing projects violated the Administrative Procedure Act ("APA").  The Anderson plaintiffs then filed an appeal of the district court's denial of their preliminary injunction motion in the Fifth Circuit.  The Anderson plaintiffs also sought an emergency stay pending appeal of the district court's order denying their TRO and PI Motion, to thereby preclude the demolition of St. Bernard, scheduled to commence on December 15, 2007.  The Fifth Circuit denied the Anderson plaintiffs' stay motion on December 12, 2007.  See Anderson v. Jackson, Docket No. 07-31138 (5th Cir.).  Plaintiffs in the instant matter are now seeking an order effectively vacating the Fifth Circuit's decision to deny a stay pending appeal in Anderson.

## ARGUMENT

## I.    LEGAL STANDARD

The standard for issuance of the "extraordinary and drastic remedy" of a temporary restraining order or a preliminary injunction is very high.  Mazurek v. Armstrong, 520 U.S. 968,

972 (1997).[4]  Because it is an extraordinary remedy, the power to issue an injunction "should be sparingly exercised." Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (quotation marks omitted).  For Plaintiffs to prevail on their motion for injunctive relief they must demonstrate: (1) a substantial likelihood of success on the merits; (2) that they would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested (non-moving) parties; and (4) that the public interest would be furthered by the injunction.  CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).  Plaintiffs must satisfy all four factors, and the Court must also find that the four factors together justify the drastic intervention of a temporary restraining order or preliminary injunction.  See CityFed, 58 F.3d at 747; Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 304 (D.C. Cir. 2006).  Moreover, if Plaintiffs have little likelihood of succeeding on the merits of their claim, the Court need not address the other factors.  Apotex, Inc. v. Food & Drug Admin., 449 F.3d 1249, 1253-54 (D.C. Cir. 2006); CityFed, 58 F.3d at 746 (requiring the moving party to "demonstrate . . . a substantial likelihood of success on the merits"); City of Las Vegas v. Lujan, 891 F.2d 927, 935 (D.C. Cir. 1989) (affirming district court's denial of preliminary injunction without addressing irreparable injury because appellant had insufficient likelihood of success on the merits).

## II.    PLAINTIFFS HAVE NO LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs' complaint essentially contains three claims for relief, all brought under the APA: (1) the allegedly unlawful denial of Plaintiffs' opportunity to purchase St. Bernard in

---

[4] "The standard for temporary restraining order is the same as for a preliminary injunction." Barton v. Vennari, 2005 WL 1119797, *1 (D.D.C. 2005) (citing Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)).

violation of 24 C.F.R. § 970.13 (the "acquisition claim"); (2) the assertion that HUD's approval of HANO's application for the demolition of St. Bernard violated the APA; and (3) HUD's "failure [through inaction] to fulfill [its] statutory obligations under the U.S. Housing Act of 1937."[5]  Plaintiffs' claims in this Court are barred by *res judicata*.  Plaintiffs therefore have no likelihood of success on the merits.  Even if that were not the case, Plaintiffs cannot demonstrate any likelihood of prevailing on their claims under the APA.  This motion for a temporary restraining order and preliminary injunction should therefore be denied.

### A.    Plaintiffs Cannot Succeed on the Merits Because Their Claims Are Barred by *Res Judicata*

This suit and Anderson are identical and it is unthinkable that Plaintiffs made no mention of Anderson whatsoever.  As we explain below, the reason for that is simple; the decision in Anderson has a *res judicata* effect of Plaintiffs' claims.  Plaintiffs have attempted to avoid this *res judicata* effect by pretending that the litigation in Anderson did not occur.

The doctrine of *res judicata* holds that a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979); Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002).  *Res judicata* bars relitigation both of "issues that were" and of issues that "could have been" raised in the prior action.  Allen v. McCurry, 449 U.S. 90, 94 (1980); Drake, 291 F.3d at 66.  To determine whether the doctrine of *res judicata* applies to subsequent

---

[5]  Plaintiffs characterize this third claim as two separate causes of action (claims III and IV); however, these two claims are in essence the same thing: a generalized attack on HUD's alleged failure to fulfill its statutory obligations.  See Compl. ¶¶ 40-42.  To the extent Plaintiffs attempt to distinguish Count III as a request for "mandamus," such relief is not available in this matter.  See, e.g., Am. Chiropractic Ass'n v. Shalala, 108 F. Supp. 2d 1, 11 (D.D.C. 2000) (noting that availability of review under APA precludes alternate relief for a writ of mandamus).

litigation, a reviewing court must decide: (1) whether the parties are identical or in privity with each other in both suits; (2) whether the present claim is the same as a claim that was raised or might have been raised in the first proceeding; (3) whether a judgment was issued in the first action by a court of competent jurisdiction; and (4) whether the earlier decision was a final judgment on the merits.  See U.S. Indus. v. Blake Constr. Co., 765 F.2d 195, 205 n.21 (D.C. Cir. 1985); Federated Dep't Stores v. Moitie, 452 U.S. 394, 399 (1981).

Though litigants are not ordinarily bound by the judgment in a prior suit to which they were not parties, "there is an exception when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment."  Richards v. Jefferson County, 517 U.S. 793, 798 (1996).  Privity is an "elusive concept, without any precise definition of general applicability."  Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd., 331 F.2d 76, 83 (D.C. Cir. 1963); see also 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4449 at 351 (2d ed. 2002) ("As the preclusive effects of judgments have expanded to include nonparties in more and more situations, . . . it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper").  Although previously, courts tended not to find that parties were in privity absent a specific legal relationship between them, the term "is now used to describe various relationships between litigants that would not have come within the traditional definition of that term."  Richards, 517 U.S. at 798.

The federal courts, including the D.C. Circuit, "now generally hold a nonparty's claim precluded by a prior suit based upon a particular form of privity known as 'virtual representation.'"  Taylor v. Blakey, 490 F.3d 965, 970 (D.C. Cir. 2007).  As the D.C. Circuit has

9

explained,

> The idea is that some cases of successive litigation involve as a litigant a nonparty to the original action whose interests were adequately represented by a party to the original action. In those cases the party to the prior litigation is treated as the proxy of the nonparty, with the result that the nonparty is barred from raising the same claim.

Id. (internal citations and punctuation omitted). In Taylor, the D.C. Circuit held that virtual representation could be found upon a showing of (1) identity of interests; (2) adequate representation; and (3) either (a) a close relationship between the present parties and their putative representatives, or substantial participation by the present party in the first case; or (b) tactical maneuvering on the part of the present party to avoid preclusion by the prior judgment. Id. at 972.

### 1. Identity of Interests

To establish identity of interests, the present parties must have "wanted the same result" as their putative representatives and had "substantially the same incentive to achieve it." Id. Here, Plaintiffs seek precisely the same result as the Anderson plaintiffs: to prevent the scheduled demolition of public housing units in New Orleans, including St. Bernard. Though Plaintiffs may argue that they are only trying to prevent the demolition of the St. Bernard housing development, a plaintiff may not evade the *res judicata* effect of a final judgment simply by requesting a lesser-included portion of the relief that was previously denied. Certainly, Plaintiffs had the same incentive as the Anderson plaintiffs, all of whom were former residents of New Orleans public housing, and three of whom (Gilda Burbank, Cynthia Bell, Lolita Gibson) were former residents of St. Bernard. See Anderson Compl. ¶¶ 19-20, 35-38 [Docket No. 1-3]; see also id. at Prayer for Relief (seeking injunction preventing demolition of New Orleans public

housing developments).[6]  The <u>Anderson</u> plaintiffs advanced the same legal theory as Plaintiffs in this case: namely, that HANO's demolition application allegedly failed to comply with the procedural requirements set forth in Section 1437p of the U.S. Housing Act and its implementing regulations.

Identity of interests is also clear from other factors.  The <u>Anderson</u> plaintiffs identified Plaintiff Irving as an individual likely to have discoverable information that they could rely on to support their claims.  <u>Anderson</u> Pl. Rule 26(a)(1) Disclosures at 6 (April 11, 2007) [designated as confidential].  Moreover, all four individual Plaintiffs were members of the putative class in <u>Anderson</u> and the <u>Anderson</u> plaintiffs are presently seeking reversal of the district court's denial of class certification.  <u>See</u> Pl. App. Rule 23(f) Pet. (Docket No. 07-45) (5th Cir.).

Additionally, the <u>Anderson</u> plaintiffs designated Plaintiff Mingo as a proposed witness for a scheduled class certification hearing.  <u>Anderson</u> Pl. Witness & Exhibit List (Aug. 30, 2007) at 4 [Docket No. 433].  Plaintiff Mingo is also listed as the media spokesperson on a website that urged former housing residents to join the <u>Anderson</u> lawsuit by contacting attorney Bill Quigley, who is also counsel for the present case.  <u>See</u> http://www.survivorsvillage.com/timeline /index.html.  Further, Plaintiff Mingo was interviewed by reporters about the <u>Anderson</u> case outside the courthouse where the lawsuit was filed.  <u>See</u>

http://www.feedsfarm.com/article/2ffe4c 0cad8660471ec39dfl589a1b70cb9cc6af.html ("Pamela

---

[6]  In an attempt to avoid *res judicata*, Plaintiffs falsely represent that "none of the plaintiffs in that case [<u>Anderson</u>] were residents of St. Bernard."  Opp. to Related Case Notice at 2.  Plaintiffs' attempt to downplay the similarities with <u>Anderson</u> by claiming that the <u>Anderson</u> plaintiffs' claims were "primarily based on other laws," <u>id.</u>, similarly fails.  *Res judicata* turns not on whether claims were "primary," but on whether the claim proceeded to final judgment on the merits.

11

Mahogany and Stephanie Mingo, former residents of the St. Bernard housing project, talk to reporters outside a courthouse where a lawsuit was filed against the U.S. Department of Housing and Urban Development in New Orleans June 27, 2006."). It is thus apparent that Plaintiffs wanted the same result as the Anderson plaintiffs, to prevent St. Bernard's demolition. And the Plaintiffs in this case have exactly the same incentive to achieve that result — namely, a ruling that the HANO demolition application was procedurally deficient, and an injunction preventing HANO from proceeding with the scheduled demolition. Accordingly, Plaintiffs and the Anderson plaintiffs share essentially identical interests.

### 2.    Adequate Representation

Indicia of whether the present parties' interests were adequately represented by their putative representatives include whether Plaintiffs had notice of the prior case; whether the putative representatives "had an incentive to litigate zealously and [their] motives were substantially similar to" and at least as strong as Plaintiffs'; and whether Plaintiffs used the same counsel. Taylor, 490 F.3d at 973-75. As the preceding discussion establishes, there is no question about the fact that Plaintiffs were well aware of Anderson. It is also significant that Plaintiffs in their October 8, 2007 letter to HUD enclosed an affidavit filed in Anderson. See October 8, 2007 Letter at 5 n.11 (attaching affidavit filed in "Anderson v. Jackson (Civil Action No. 06-3298)"). Additionally, Plaintiffs Irving and Mingo were named as counterplaintiffs in the Anderson suit. Anderson Answer and Counterclaim (Jan. 22, 2007) at 18 [Docket No. 152]. Moreover, as explained above, the Anderson plaintiffs, as former housing residents — including former St. Bernard residents — certainly had an incentive to litigate zealously, and their motivation, legal theories, and relief sought were essentially the same as Plaintiffs'. Finally, as

12

in <u>Taylor</u>, Plaintiffs are using some of the same attorneys — Bill Quigley and Tracie Washington — as in the <u>Anderson</u> suit.  The fact that Plaintiffs are utilizing the same counsel "strongly suggests satisfaction with the attorney's performance in the prior case."  <u>Taylor</u>, 490 F.3d at 975; <u>see also</u> <u>Ruiz v. Comm'r of Dep't of Transp. of City of New York</u>, 858 F.2d 898, 903 (2d Cir. 1988) (identical counsel is of "singular significance").  In sum, the plaintiffs in <u>Anderson</u> provided adequate representation of Plaintiffs' interests.

### 3.    Tactical Maneuvering

"Tactical maneuvering by the second litigant, which in this context means conduct designed unfairly to obtain multiple bites of the litigatory apple, is indicative of virtual representation."  <u>Taylor</u>, 490 F.3d at 975.  There can be little doubt that the filing of this case resulted from tactical maneuvering by Plaintiffs and their counsel, in order to avoid the effect of an unfavorable judgment in <u>Anderson</u>.  As explained above, Plaintiffs were aware of the <u>Anderson</u> case since its inception and were actively involved in its prosecution.  Additionally, for the past year and a half, Plaintiffs have attended numerous public events and meetings to protest anticipated demolition, and have frequently been interviewed in press accounts of these events.[7]  Yet despite their acknowledged interest in preventing the demolition, Plaintiffs did not

---

[7] <u>See</u>, <u>e.g.</u>, Michelle Roberts, <u>HUD Aims to Raze Housing Projects</u>, Seattle Times (June 15, 2006), available at 2006 WLNR 10391250 ("Residents, who have been increasingly vocal in their demand to return to their housing projects, vowed to fight the plans.  'I want to live in St. Bernard, where I have history,' said Stephanie Mingo, who was camping across the street from the project before being given a unit in another building."); Gwen Filosa, <u>Public Housing Sits Empty and Waiting</u>, New Orleans Times Picayune (May 22, 2007), available at 2007 WLNR 9592313 (Plaintiff Irving attended New Orleans city council meeting to protest anticipated demolition); Emily Kern, <u>N.O. Residents Protest Demolition Proposal</u>, Baton Rouge Advocate (June 28, 2006), available at 2006 WLNR 23737913 (Plaintiffs Morris and Young attended public gathering to protest anticipated demolition).

seek to intervene in the Anderson case pursuant to Fed. R. Civ. P. 24, and they never indicated

that they sought to purchase St. Bernard until after the Anderson plaintiffs' demolition claims

were dismissed.  On September 18, 2007, the Anderson court dismissed nearly all demolition-

related claims.  Anderson Order (Sept. 18, 2007) [Docket No. 460].[8]  The first notice given by

the individual Plaintiffs of their interest in purchasing St. Bernard was on October 8, 2007.  See

October 8, 2007 Letter.

Moreover, Plaintiffs' counsel recently announced that the present lawsuit was filed as

part of an attempt to avoid the preclusive effects of the adverse judgment in Anderson.  Earlier

this week, in an interview with a local New Orleans television news station about the Anderson

case, Plaintiffs' counsel explained:

> "We're still fighting," said civil rights lawyer Bill Quigley, who was recently
> arrested while protesting at City Hall.  "We've appealed to the 5th Circuit Court
> of Appeal.  There's a state court action that is planned and probably another
> federal court action that is coming but at the moment it's a green light for
> demolition."

Housing Fight Flares Up Again at City Hall (Dec. 10, 2007), at http://www.wdsu.com/news/

14817411/detail.html.  The present suit is obviously the "[]other federal court action that is

coming."  Indeed, Plaintiffs' counsel announced the filing of the present action on a website

dedicated to publicizing the Anderson case.[9]  It is beyond dispute that the present case represents

---

[8] This order did not dismiss Plaintiffs' claim of actual demolition under the U.S. Housing
Act, which had previously been dismissed as unripe.  Anderson Order and Reasons (Feb. 6,
2007) at 12-14 [Docket No. 175].  The Anderson court later reinstated this claim, and (as
explained in the text) dismissed it on the merits.  Anderson Order (Nov. 19, 2007) [Docket No.
539].

[9] See http://justiceforneworleans.org/index.php?module=pagemaster&PAGE
_user_op=view_page&PAGE_id=32 ("Lawsuits: The federal class action on behalf of all
residents is before the U.S. Fifth Circuit court of appeal on the residents' request for an

14

an eleventh-hour attempt by Plaintiffs' counsel to evade the unfavorable <u>Anderson</u> ruling by

seeking redress in a new forum.  Recruiting additional plaintiffs to pursue essentially the same

relief in another court runs squarely contrary to *res judicata* principles, and Plaintiffs' counsel

should not be given a second bite at the apple to reward them for their tactical maneuvering.

### 4.    Public Law Case

Though not expressly required by the D.C. Circuit in <u>Taylor</u>, the fact that this is a public

law case, rather than one involving entirely private interests, further weighs in favor of finding

virtual representation.  As explained by another Court of Appeals:

> Although virtual representation may be used in the private law context, its use is
> particularly appropriate for public law issues. As the Supreme Court recently
> noted, when a case challenges a public action that has only an indirect impact on a
> party's interests, due process concerns are lessened.  In this situation, courts have
> wide latitude to establish procedures to limit the number of judicial proceedings.
>     Further, we note that in public law cases, the number of plaintiffs with
> standing is potentially limitless.  If parties were allowed to continually raise
> issues already decided, public law claims would assume immortality.  Concerns
> of judicial economy and cost to defendants, while present in every suit, are
> particularly important in this context.  There is another important consideration:
> in the public law context, if the plaintiff wins, by definition everyone benefits.
> Holding preclusion inapplicable in this context would encourage fence-sitting,
> because nonparties would benefit if the plaintiffs were successful but would not
> be penalized if the plaintiffs lost.

<u>Tyus v. Schoemehl</u>, 93 F.3d 449, 456 (8th Cir. 1996) (internal citations and punctuation

omitted).

This concern is particularly apt here.  Because the number of plaintiffs with standing –

while perhaps not limitless – is exceedingly large, Plaintiffs' counsel need only find one

---

injunction stopping the demolition.  A new federal suit was filed today in Washington DC by the
residents of St. Bernard development.  They have partnered with the AFL-CIO Housing Trust
and proposed a plan for St. Bernard that would guarantee that every person there when Katrina
hit can come back to the same type of subsidized unit.  That suit seeks an injunction.").

additional former public housing resident whose views on the scheduled demolition align with their own, in order to file additional lawsuits.  Indeed, as explained above, Plaintiffs' counsel has publicly announced the intent to do precisely that: specifically, in addition to the present case, "there is another state court action that is planned," to try and evade the effect of the adverse ruling in <u>Anderson</u>.  Accordingly, the fact that this case involves the adjudication of public rights makes a finding of virtual representation particularly appropriate.

In sum, because the three elements of virtual representation have been satisfied, Plaintiffs are in privity with the <u>Anderson</u> plaintiffs for *res judicata* purposes.  The only remaining questions are (1) whether the earlier <u>Anderson</u> decision represented a final judgment on the merits, and (2) whether the present claim is the same as a claim that was raised or might have been raised in the first proceeding.  As we now explain, the answer to both questions is yes.

**5.    Judgment on the Merits**

For *res judicata* purposes, "a final judgment on the merits is one that actually passes directly on the substance of a particular claim before the court, as distinguished from one that addresses mere matters of practice, procedure, jurisdiction, or form."  <u>Taylor</u>, 490 F.3d at 977 (internal citations and punctuation omitted).  Thus, a final judgment on the merits precludes "relitigating issues that were or could have been raised in [the previous] action."  <u>Allen</u>, 449 U.S. at 94.

Plaintiffs in <u>Anderson</u> asserted that demolition of the New Orleans public housing developments (including St. Bernard) could not proceed because HUD and HANO had allegedly failed to comply with U.S. Housing Act procedural requirements, as set forth in 42 U.S.C. § 1437p.  <u>Anderson</u> Compl. ¶¶ 93-96 (June 27, 2006) [Docket No. 1-3].  The district court

expressly found that HUD and HANO had complied with the procedural requirements of Section 1437p, and dismissed Plaintiffs' Housing Act claim.  <u>Anderson</u> Order (Nov. 19, 2007) [Docket No. 539] (noting "[a] review of HUD's [Decision Memorandum], shows no material deficiencies that would otherwise warrant a finding of arbitrary and capricious conduct").

In the present case, Plaintiffs allege that HUD should have denied HANO's demolition application because HANO allegedly failed to comply with a procedural requirement set forth in the regulations that implement Section 1437p.  This issue should have been raised by Plaintiffs' counsel in the <u>Anderson</u> case, because it would have provided Plaintiffs with an additional argument on their primary claim: that the demolition could not lawfully proceed because HUD and HANO had allegedly failed to comply with the Housing Act's procedural requirements.  However, Plaintiffs decided not to advance this argument prior to the <u>Anderson</u> court's final judgment on the merits of their Section 1437p claim.  Plaintiffs' counsel in <u>Anderson</u> had an opportunity to raise this argument as late as November 1, 2007, when Plaintiffs moved for entry of a TRO, asserting that HANO's demolition application was procedurally deficient.  <u>Anderson</u> Pl. Mot. for TRO (Nov. 15, 2007) [Docket No. 502].  However, they chose not to raise that argument.  The <u>Anderson</u> court's dismissal of the Section 1437p claim precludes relitigating the issue of whether the demolition application complied with Section 1437 and its regulations.

### 6.    Same Cause of Action

For *res judicata* purposes, a claim is the same as a previously-filed claim if they share a "common nucleus of facts."  <u>Taylor</u>, 490 F.3d at 977 (quoting <u>Apotex, Inc. v. FDA</u>, 393 F.3d 210, 217 (D.C. Cir. 2004)).  The primary factors underlying this determination are "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit,

17

and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id.

Here, as in Anderson, former public housing residents have filed suit against HUD and HANO alleging that the demolition application submitted by HANO for St. Bernard, and that was approved by HUD, was procedurally defective. The relief sought in both cases is identical: an injunction preventing the demolition of New Orleans public housing units, including St. Bernard. The relevant facts in this case are identical to the facts in Anderson. Though Plaintiffs may argue that they are asserting a different legal theory than in Anderson, "a different legal theory does not by itself demonstrate a difference in the nucleus of facts." Id. at 978. The Anderson plaintiffs advanced the legal theory that the HANO demolition application did not comply with the U.S. Housing Act and its implementing regulations; here, Plaintiffs are making the same claim, but have simply based it on a different Housing Act regulation. Because this claim arises from the same nucleus of facts as Anderson, for *res judicata* purposes, it is the same claim that the Anderson plaintiffs litigated and lost.

In sum, Plaintiffs had the same interests as the Anderson plaintiffs, and those interests were adequately represented — by some of the same counsel — in Anderson. Plaintiffs and their counsel have engaged in tactical maneuvering in order to avoid the preclusive effects of the adverse judgment on the merits in Anderson. Accordingly, for *res judicata* purposes, Plaintiffs are in privity with the plaintiffs in Anderson. Plaintiffs thus cannot succeed on the merits of their claim because the *res judicata* effect of the district court's decision in Anderson bars that claim from proceeding in this Court.

> **B.    Even if *Res Judicata* Did Not Apply, Plaintiffs' Claims Have No Likelihood of Success on the Merits**

18

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Id. § 704 (emphasis added). The APA provides for two types of relief. A court may "compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1), subject to the proviso that the "only agency action that can be compelled under the APA is action legally *required*." Norton v. Southern Utah Wilderness Alliance ("SUWA"), 542 U.S. 55, 63 (2004) (emphasis in original). A court may also "hold unlawful and set aside agency action, findings, and conclusions found to be [unlawful]." 5 U.S.C. § 706(2).

Under the express terms of the APA, this Court must uphold a final action taken by the agency unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A successful challenge to an agency's decision must clearly demonstrate that the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co., 463 U.S. 29, 43 (1983); see also Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 375 n.21 (1989) (citing applicable provisions of APA).

This Court's review is limited to determining whether the agency has "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle, 463 U.S. at 43 (internal citation omitted). Moreover,

19

where the issue involves "a factual dispute the resolution of which implicates substantial agency expertise," courts "must defer to 'the informed discretion of the responsible federal agencies.'" Marsh, 490 U.S. at 376-77 (quoting Kleppe v. Sierra Club, 427 U.S. 390, 412 (1976)); see also Soler v. G. & U., Inc., 833 F.2d 1104, 1107 (2d Cir. 1987) ("[A] reviewing court may neither weigh alternatives available to the agency and then determine which is the more reasonable, nor resolve conflicts in the [record] unless on its face it is hopelessly incredible.") (internal quotations and citations omitted).

1.     **Plaintiffs Have No Likelihood of Success on Their First Claim for Relief**

Plaintiffs argue that HUD improperly failed to provide them an opportunity to acquire and redevelop St. Bernard.  Plaintiffs have no likelihood of success on this claim for three independent reasons.  First, Plaintiffs did have the opportunity to submit an application to redevelop St. Bernard, but they simply failed to do so within the deadline.  Therefore, they have no cognizable claim on this issue.  Second, their argument is premised on an untenable interpretation of 24 C.F.R. § 970.9(b)(3)(ii) – an argument that they have waived because they failed to present it to HUD or HANO at the administrative level.  Finally, the substance of their regulatory argument is flawed because the regulation on its face does not require HUD or HANO to provide a resident organization the opportunity to purchase the property under these circumstances.

a.     **Plaintiffs' Acquisition Claim Should be Dismissed For Failure to State a Claim Upon Which Relief Can be Granted**

As an initial matter, Plaintiffs' claim that they have been illegally deprived of the opportunity to acquire and redevelop the St. Bernard public housing project should be dismissed

20

because it appears to be facially inaccurate and it fails to assert a legally cognizable claim.

According to the Complaint, HANO engaged in two separate and distinct processes with respect to St. Bernard's demolition. The first was the issuance of the Request for Qualifications ("RFQ") in which HANO sought a partner for the redevelopment of the St. Bernard site. Compl. ¶ 28. The return date for submissions in response to this RFQ was January 5, 2007. Id. Although Plaintiffs contend that the RFQ submissions were reviewed in private, they do not and cannot contend that the RFQ itself was not made publically available. Indeed, after HANO issued the RFQ for St. Bernard, "the RFQ was advertised for a total of seventy nine (79) days. The advertisement was published in the Times-Picayune on Thursday, October 19, 2006, Monday, October 23, 2006, and Tuesday, October 31, 2006. Additionally, the advertisement was published in the Wall Street Journal on Tuesday November 7, 2006, Wednesday, November 8, 2006, and Thursday, November 9, 2006." Letter dated March 28, 2007 from Jeffrey Riddel to C. Donald Babers, attached as Ex. 2.[10] The second process was that HANO selected a separate entity to undertake the actual demolition of the St. Bernard site. Id. ¶ 38. Despite an effort to merge these two processes together, Plaintiffs' argument regarding a lost opportunity appears to be based solely on the first of these two processes, as Plaintiffs are contending that they, and not Columbia Residential, should be the entity that redevelops the property. Plaintiffs allege that on October 8, 2007 – approximately ten months *after* the date that RFQ submissions were due and *after* HUD had approved HANO's demolition application – they sent a letter to HUD informing

_____

[10] "Additionally, the advertisement was published nationally in the publications and/or websites of NOAAH, HANO, PHADA, CLPHA, and NAHRO" and "the solicitation, in its entirety, was posted on the HANO website and made available for download. At least one hundred and fifty three (153) firms received the proposed package. A total of five (5) timely proposals were received by . . . January 5, 2007." Id.

21

it of their desire to redevelop the project.  Id. ¶ 15.  But Plaintiffs did not even send their actual

proposal; rather, they stated that it was only their "intent" to submit a proposal to purchase and

redevelop the St. Bernard property by December 10, 2007.  See Letter dated October 8, 2007 at

8.  Plaintiffs now appear to argue that HUD deprived them of an opportunity to acquire and

redevelop the property by failing to consider their untimely proposal.[11]

    There is no inherent duty on the part of an agency to accept an untimely application.  See

Universal City Studios LLP v. Peters, 402 F.3d 1238, 1244 (D.C. Cir. 2005) (rejecting plaintiffs'

claim that the Copyright Office should accept their untimely royalty claims, and finding that

plaintiffs were "entitled [ ] to nothing if they do not meet the terms of eligibility under the statute

and its implementing regulations").  "Filing deadlines, like statutes of limitations, necessarily

operate harshly and arbitrarily with respect to individuals who fall just on the other side of them,

but if the concept of a filing deadline is to have any context, the deadline must be enforced."

Metro-Goldwyn-Mayer Studios, Inc. v. Peters, 309 F. Supp. 2d 48, 61 (D.D.C. 2004).  Plaintiffs

did not submit an application to redevelop St. Bernard by January 5, 2007, when responses to the

RFQ were due.  Like others who failed to submit a timely application, Plaintiffs had no right to

have their tardy application considered.  Consequently, the Court should dismiss Count 1 of

---

[11] The RFQ procedure seeking a developer for St. Bernard was set forth by HANO, not
HUD.  Pursuant to 42 U.S.C. § 1437d(j)(3)(A)(iv), HUD cannot be made liable for actions
undertaken by HANO or by HUD officials acting in the capacity of HANO.  Thus, to the extent
that Plaintiffs find fault with the RFQ process, their claim lies against HANO, and not HUD.  A
claim against HANO challenging the RFQ process would provide Plaintiffs with an adequate
remedy at law that provides an alternate to relief under the APA.  Where a claim exists against
another party and pursuit of that claim could provide an adequate remedy in the case at issue, 5
U.S.C. § 704 would preclude a waiver of sovereign immunity.  See Turner v. Sec. of HUD, 449
F.3d 536, 539-42 (3d Cir. 2006) (finding that "adequate remedy" existed where plaintiff had the
opportunity to file her Fair Housing Act action against a third party).  Therefore, Plaintiffs'
acquisition claim should be dismissed for lack of jurisdiction.

Plaintiffs' Complaint.

        **b.**    **Plaintiffs Have Waived this Claim by Failing to Raise it to HUD**

Plaintiffs also failed to raise their acquisition claim with HUD and have therefore waived this issue.   Despite ample opportunity to do so, Plaintiffs failed to submit any proposed alternative redevelopment plan to HUD prior to HUD's approval of HANO's demolition application.   They also failed to raise the regulatory argument that they now make (based on their interpretation of 24 C.F.R. § 970.9(b)(3)(ii)), to HUD at the administrative level.   It is well settled that "parties seeking judicial review of agency action" must "raise their issues before the agency during the administrative process in order to preserve those issues for judicial review." Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin., 429 F.3d 1136, 1148 (D.C. Cir. 2005) (citation omitted).   "It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review."   Id. at 1149 (quoting Nuclear Energy Inst., Inc. v. EPA, 373 F.3d 1251, 1297 (D.C. Cir. 2004)).

The reasons for this rule are obvious.   First, courts are not authorized to second-guess agency decisions; rather the role of the court is to determine whether the agency's decision is arbitrary and capricious for want of reasoned decisionmaking.   Id. at 1150 (citing Motor Vehicle, 463 U.S. at 43) ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."))   Second, "simple fairness requires as a general rule that courts should not topple over administrative decisions unless the administrative body has erred against objection made at the time appropriate under its practice." Id. (quoting Tucker Truck Lines, Inc., 344 U.S. at 37 (internal alterations omitted)).

As Plaintiffs themselves acknowledge, they have been aware of the plans to demolish and redevelop several public housing projects in New Orleans, including St. Bernard, since June 2006. Compl. ¶ 70. Moreover, HANO issued a RFQ seeking a development partner for the construction of a mixed income community on the St. Bernard site in October 2006, with a return date of January 5, 2007. Id. ¶ 28. Nonetheless, by their own admission, Plaintiffs did not even announce their proposal for an alternative redevelopment plan to HUD until October 8, 2007. Id. ¶ 15. Nor, prior to that date, did Plaintiffs contend that the exception to the requirement that a public housing authority offer the property to an eligible resident organization outlined in 24 C.F.R. § 970.9(b)(3)(ii) was inapplicable in this case. By that time, HUD had already made the decision to approve the demolition application submitted by HANO after careful consideration of all the statutory and regulatory requirements, including a determination that the exception found in 24 C.F.R. § 970.9(b)(3)(ii) did in fact apply to this case. Prior to rendering its decision, HUD received several submissions from other groups opposing HANO's demolition plans and duly considered those submissions in rendering its demolition decision. Having waited until after HUD's decision on HANO's demolition application, Plaintiffs are in no position to complain that HUD failed to consider a proposal that was not before it at the time of its decision.

   **c.  HUD Properly Excepted HANO's Disposition From the Requirements of 42 U.S.C. § 1437p(c) and 24 C.F.R. § 970.9**

In any event, HUD properly determined that 24 C.F.R. § 970.9(3)(ii) applied, and that HANO was not required to provide the St. Bernard resident organization an opportunity to purchase the property. Decision Memorandum at 27. 42 U.S.C. § 1437p(c) states that the PHA shall offer the property only "*in appropriate circumstances as determined by the Secretary*"

24

(emphasis added).  The pertinent regulation likewise provides that where a PHA applies to dispose of a development, "[t]he PHA shall, *in appropriate circumstances as determined by the Assistant Secretary*, initially offer the property . . . to any . . . eligible resident management corporation."  24 C.F.R. § 970.9 (emphasis added).[12]  Given the express language of the statute and the regulation, which provide the Secretary with unfettered discretion to determine the "appropriate circumstances" in which the regulation will be applied, the Court's analysis stops here.  Whether HANO was required to offer St. Bernard to the resident management corporation is committed to HUD's discretion by law, and is therefore unreviewable by this Court.  See 5 U.S.C. § 701(a) (excluding review of agency action that is "committed to agency discretion by law"); Heckler v. Chaney, 470 U.S. 821, 830 (1985) (finding review precluded under § 701(a)(1) "if the statute [governing the agency's actions] is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion").

Even assuming HUD's determination was subject to review, the express language of 24 C.F.R. § 970.9(3)(ii) precludes Plaintiffs' arguments.  Plaintiffs contend that the regulation's exception does not apply because the proposed development is neither (1) privately financed nor (2) for the benefit of low-income families.  Pls.' TRO Mot. at 12-13.  Plaintiffs' interpretation, however, appears to ignore those portions of the regulation that they do not like.  24 C.F.R. § 970.9(3)(ii) states "the [offer] requirements of this section do not apply [where] . . . [a] PHA seeks disposition outside the public housing program to privately finance or otherwise develop a

---

[12]  That the regulation specifies certain situations that "have been determined not to present an appropriate opportunity for purchase by a resident organization," 24 C.F.R. § 970.9(3), does not mean that the ultimate determination is not committed to the Secretary's discretion as there is no indication that this is an exhaustive list.

25

facility to benefit low-income families (e.g., . . . <u>mixed-finance housing</u> under 24 C.F.R. part 941

subpart F, or <u>other types of low-income housing</u>)" (emphases added); <u>see also</u> 24 C.F.R. §

941.604 (regulatory definition of "mixed-finance").  Thus, the exception is not limited to

"privately funded" developers, Pls.' TRO Mot. at 20, but also encompasses other plans to

develop a facility to benefit low-income families, including mixed-finance housing and other

types of low-income housing.[13]  Indeed, Plaintiffs admit that the proposed St. Bernard

redevelopment includes mixed-finance housing.  Compl. ¶ 98.

      HANO's demolition application for St. Bernard included just such a proposal that would

benefit low-income families.  "The planned redevelopment site will include a <u>mixed-income</u>

residential community comprising approximately one-third market-rate units, <u>one-third low-</u>

<u>income housing tax credits units and one-third public housing units</u>."  Decision Memorandum at

23 (emphasis added).  Thus, contrary to Plaintiffs' assertion that the redevelopment is not for the

benefit of low-income families, Pls.' TRO Mot. at 13, on its face the St. Bernard development

plan contemplates that two-thirds of the units will be available to low-income families.[14]  HUD

therefore properly determined that the exception in 24 C.F.R. § 970.9(3)(ii) applied.

      HUD's determination is entitled to "great deference."  <u>Udall v. Tallman</u>, 380 U.S. 1, 16

(1965); <u>see also</u> <u>Blanding v. DuBose</u>, 454 U.S. 393, 401 (1981) ("[W]e have frequently stated

---

      [13]  In any event, the proposed redevelopment of St. Bernard in actuality involves several million dollars of private financing.  Compl. ¶ 98.  Thus, HANO's disposition would satisfy any private financing condition.

      [14]  Plaintiffs' argument that redevelopment that reduces public housing units cannot benefit low-income families, Pls.' TRO Mot. at 12-13, ignores 42 U.S.C. § 1437p(d), which *requires* that the number of replacement public housing units be "significantly fewer than the number of units demolished."

that courts should grant deference to the interpretation given statutes and regulations by the officials charged with their administration."); <u>Paradissiotis v. Rubin</u>, 171 F.3d 983, 987 (5th Cir. 1999) ("An agency's application of its own regulations receives an even greater degree of deference than the <u>Chevron</u> standard, and must prevail unless plainly inconsistent with the regulation.") (quoting <u>Consarc Corp v. United States Treasury Dep't</u>, 71 F.3d 909, 914 (D.C. Cir. 1995)).

Accordingly, this Court "must defer to the Secretary's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994) (quoting <u>Gardebring v. Jenkins</u>, 485 U.S. 415, 430 (1988)). Here, the Secretary has interpreted this regulation to mean that the exception is not limited to "privately funded" developers, but also encompasses other plans to develop a facility to benefit low-income families, including mixed-finance housing and other types of low-income housing. Thus, HUD's interpretation of this regulation is consistent with its terms, while Plaintiffs' interpretation is contrary to the regulation's language. HUD's interpretation is entitled to great deference, and Plaintiffs have therefore demonstrated no likelihood of success on the merits for their claim that HUD violated the APA by approving the demolition application, despite the fact that Plaintiffs were not offered an opportunity to purchase St. Bernard.

> **2.      Plaintiffs' Attack on HUD's September 21, 2007 Decision is Devoid of Merit**

Plaintiffs' Count II is premised on their claim that HUD approved HANO's demolition application in violation of the APA because the exception found in 24 C.F.R. § 970.9(3)(ii) allegedly did not apply. Pls.' TRO Mot. at 13. As discussed above, Plaintiffs are wrong – HUD

properly found that the regulatory exception applied.  Plaintiffs also claim that HANO failed to meet certain "statutory consultation requirements," and that the demolition application was deficient.  Pls.' TRO Mot. at 13.  The record reflects, however, that HANO satisfied all of 42 U.S.C. § 1437p's requirements.

Plaintiffs mischaracterize the Section 1437p application and approval process.  Pls.' TRO Mot. at 9-11.  On October 16, 2006, HUD's Special Application Center ("SAC") received an incomplete demolition application from HANO relating to the St. Bernard, B.W. Cooper, C.J. Peete, and Lafitte housing projects.  Fifth Declaration of Ainars Rodins ("Rodins Decl.") ¶ 5, attached as Ex. 3.  On October 20, 2006, the SAC informed HANO that it would not begin processing the demolition portion of its application until information regarding HANO's justification for the demolition, tenant relocation, and resident consultation had been submitted to the SAC.  Id. ¶ 6.  On March 13, 2007, in response to the October 20, 2006 letter to HANO, the SAC received from HANO several binders of supplemental application materials, including an inspection report from ECM Consultants, Inc., a letter from New Orleans Mayor Ray Nagin regarding HANO's consultation with the city, and information concerning resident consultation in the form of meetings held on November 29 and December 6, 2006, and a series of tenant outreach meetings conducted in March 2007.  Id. ¶ 7.  Thereafter, the SAC received additional, supplemental materials from HANO, including but not limited to:  an environmental assessment; a physical condition assessment report of the affected properties by Jeffrey Paris of Draper & Associates; a soil sampling report by PPM; the HANO Board Resolution; and additional information regarding resident consultation.  Id.  The SAC also received from the National Housing Law Project a report by Professor John Emmanuel Fernandez and a declaration by

David Martinez.  Id.

The SAC had originally intended to begin an expedited review of HANO's application once complete information regarding HANO's justification for demolition, tenant relocation, and resident consultation had been received.  Id. ¶ 9.  However, because financing for HANO's redevelopment plan depended, at least in part, on the demolition process, i.e., bid solicitation, etc., commencing by October 1, 2007, in order for approval to be meaningful, the SAC determined that it would need to approve HANO's application, if at all, before that date.  Id.  In order to render a decision by then, the SAC determined that it would begin review on an expedited basis of HANO's supplemental application materials before having received all of them.  Id.  This expedited review began in late August 2007.  Id.  After reviewing all HANO's required documentation, including documents that were not received until September 20, 2007, and having determined that HANO's application met the standards set forth in Section 18 of the U.S. Housing Act and 24 C.F.R. Part 970, the SAC approved HANO's demolition application on September 21, 2007.  HUD set forth its analysis of the relevant factors in a comprehensive, 31-page opinion.  Id. ¶ 10 & Ex. A ("Decision Memorandum").

The decision memorandum issued by HUD explained that HANO had certified that each of the housing projects that is the subject of the demolition application (including St. Bernard) is obsolete as to physical condition and unsuitable for housing purposes, and that no reasonable program of modifications is cost-effective to return the projects to useful life.  Decision Memorandum at 5-15.  As explained in detail, each of the projects suffers from many serious deficiencies, including among numerous others: (i) site buildings and apartment densities dramatically exceed current practice; (ii) utility distribution networks are damaged and unsafe;

(iii) exterior shells require substantial replacement and repair; (iv) the buildings do not conform to current building codes; and (v) a significant number of units suffer from serious water damage, including mold.  Id. at 8.  These deficiencies represent just a small sampling of the conditions plaguing all four housing developments.  Id.  The decision explained in detail why it found certain submissions, such as the report by Draper & Associates, particularly compelling, and why it gave less weight to the opinions of Professor Fernandez and David Martinez submitted by the National Housing Law Project.  Id. at 5-7.

HUD's decision memorandum also included detailed cost estimates for the rehabilitation of each of the properties, which substantially exceeded the amount required to justify demolition, rather than rehabilitation, under the applicable regulations.  Id. at 15-18.  The memorandum explained that HANO had certified that it would offer comparable housing to all residents who resided in the units proposed for demolition prior to Hurricane Katrina, as well as provide funds for relocation and counseling for all such families.  Id. at 25-26.

In addition, the decision explained HANO's consultations with residents, as required by statute.  Id. at 26-27.  HUD specifically noted that HANO sent notification by mail (using pre-Katrina mailing addresses as well as FEMA and Katrina Disaster Housing Assistance Program mailing addresses) to all affected HANO residents, Resident Organizations, and Resident Advisory Boards regarding a meeting on the proposed demolition and disposition of HANO properties on November 29, 2006.  Decision Memorandum at 26.  HANO allowed all attendees to sign in and provide comments, and provided a list of affected properties along with frequently asked questions and answers.  Id.  The meeting was attended by over 200 people, including attorneys representing Plaintiffs in this case, and over 70 interested persons from the community,

including representatives of political, advocacy, and community groups and other organizations.

Id. at 27.   In addition to the November 29 meeting, HANO held a meeting with resident leaders

on December 6, 2006, that provided another opportunity for residents and leaders to receive

information about the proposed demolition and ask questions.  Id.  HANO's application provided

copies of the notification and sign-in sheets of those meetings as well.

Moreover, and as noted in the decision memorandum, HANO conducted a series of

outreach meetings in March 2007 for displaced HANO residents living in other cities, including

Houston, San Antonio, Dallas, and Fort Worth.  Id.  At these meetings, which were attended by

approximately 500 people, HANO representatives explained that they wanted the residents to

return home and provided information regarding travel arrangements and stipends to facilitate

their return.  Id.  Furthermore, HANO has selected a contractor to conduct an independent survey

of 100% of pre-Katrina HANO residents in order to determine their housing preferences.   Id.

HUD considered each of these efforts to consult with residents in its consideration of HANO's

application for demolition.

Although Plaintiffs imply that HUD's review process was a sham, they point to no

specific information that HUD should have considered but failed to consider in conducting its

review.[15]  It is well settled that, "[a]bsent a showing to the contrary, it is presumed the agency

---

[15]  Plaintiffs' contention that the Decision Memorandum was issued "the next day," after the final piece of HANO's demolition application was submitted to HUD, Pls.' TRO Mot. at 11, fundamentally mischaracterizes HUD's review process.  HUD engaged in an intensive review over a period of several weeks before issuing a decision.  Moreover, courts have repeatedly rejected challenges to agency action based on allegations that an agency did not take enough time to consider the available evidence.  In National Nutritional Foods v. FDA, for example, the plaintiffs contended that it was physically impossible for the newly-appointed Commissioner of the Food and Drug Administration to have reviewed and considered the thousands of pages of comments and objections to proposed regulations in the short period of time prior to the

considered all evidence in the record when making its determination." J. Andrew Lange, Inc. v. Fed. Aviation Admin., 208 F.3d 389, 394 n.7 (2d Cir. 2000) (citing Nat'l Nutritional Foods Ass'n v. Food & Drug Admin., 491 F.2d 1141, 1146 (2d Cir. 1974) (Friendly, J.); see also Hercules, Inc. v. EPA, 598 F.2d 91, 123 (D.C. Cir. 1978) ("[A] strong presumption of regularity supports the inference that when administrative officials purport to decide weighty issues within their domain they have conscientiously considered the issues.") (quoting Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 417-19 (1971)).

In short, there is no question that HANO's efforts comported with the statutory requirements, and Plaintiffs' attack on the September 21, 2007 decision is meritless. See Project B.A.S.I.C. v. Kemp, 721 F. Supp. 1501, 1512 (D.R.I. 1989) (concluding that, despite PHA's "bare-bones, lackadaisical efforts to develop its application in consultation with tenants and tenant councils," HUD's decision to approve a demolition application was not arbitrary or capricious because the administrative record indicated "some effort to gain input from tenants").

---

publication of the final regulations. 491 F.2d 1141, 1142-43 (2d Cir. 1974) The court denied the plaintiffs' motion to obtain discovery, including the deposition of the Commissioner, reasoning that it would suffice if the Commissioner had "considered the summaries of the objections and of the answers . . . and conferred with his staff." Id. at 1146. The court concluded that "absent the most powerful preliminary showing to the contrary, effective government requires us to presume that he did." Id.; see also, e.g., Hercules, Inc. v. EPA, 598 F.2d 91, 123 (D.C. Cir. 1978) (fact that the final decision was largely in accord with the staff's position does not, without more, establish that the Administrator considered only the staff view and not others); Comm. to Pres. Am. Color Television v. United States, 706 F.2d 1574, 1578 (Fed. Cir. 1983) (fact that only a few hours elapsed between receipt of the extensive report and execution of settlement agreements raises no presumption that the Secretary failed to "make a reasoned decision based on all of the required information"); Birnberg v. Washington Metro. Area Transit Auth., 389 F. Supp. 340, 343 (D.D.C. 1975) (rejecting contention that directors failed to give appropriate weight to public hearings and concluding that "the Board of Directors must be presumed to have read and properly considered all items in the record in making their decision").

The numerous resident consultations conducted by HANO in this case were more than adequate to satisfy the statutory requirement. The record reflects HUD's reasoned and deliberate consideration of HANO's demolition application. Accordingly, Plaintiffs' APA claim attacking the September 21, 2007 decision memorandum should be denied.

### 3.    Plaintiffs' Third and Fourth Claims for Relief Are Likewise Meritless

Plaintiffs' TRO Motion provides absolutely no argument regarding their likelihood of success on the merits for their third and fourth claims for relief. Likely, this is because there is none. Plaintiffs' third and fourth claims for relief generally decry HUD's "failure to fulfill [its] statutory obligations under the U.S. Housing Act of 1937." Compl. ¶¶ 129-137. Such allegations do not state a claim under the APA. Simply put, Plaintiffs' generalized complaint that HUD failed to fulfill its statutory obligations does not identify a discrete action that the agency was required to take. These APA claims are therefore precluded by the Supreme Court's decision in SUWA. 542 U.S. at 55, 63.

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*," and not when the agency simply allegedly failed to fulfill its general statutory objectives. Id. at 64 (emphasis in original). This limitation "rules out judicial direction of even discrete agency action that is not demanded by law." Id. at 65. Moreover, "[g]eneral deficiencies in compliance . . . lack the specificity requisite for agency action." SUWA, 542 U.S. at 67.

Accordingly, in SUWA, a unanimous Supreme Court dismissed an APA claim that sought to compel the Interior Department to ban off-road vehicles in a wilderness area, because the statute at issue simply directed the agency to preserve the character of the wilderness. Id. at

33

65-67.  Similarly, the U.S. Housing Act provides HUD with great discretion in determining how to implement broad statutory mandates, and Plaintiffs have failed to identify discrete actions that the agency was required by law, but failed to, take.  The APA simply does not allow Plaintiffs to "seek wholesale improvement of [HUD] by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." Lujan v. Nat'l Wildlife Fund, 497 U.S. 871, 891 (1990).  APA relief is therefore not available for Plaintiffs' third and fourth claims for relief.

## III. PLAINTIFFS HAVE NOT MET THEIR BURDEN OF SHOWING THAT THEY WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS NOT GRANTED

The D.C. Circuit has repeatedly recognized that the issuance of preliminary injunctive relief is dependent upon a showing of concrete irreparable injury.  See, e.g., Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).  To constitute irreparable harm "the injury must be both certain and great; it must be actual and not theoretical."  Id.  As this Circuit has emphasized:

> The key word in this consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

NTEU v. United States, 927 F.2d 1253, 1255 (D.C. Cir. 1991).  Here, several factors undermine Plaintiffs' claim of irreparable harm.  First, Plaintiffs waited almost three months after the demolition of the St. Bernard housing project was approved before filing a request for emergency relief with this court, let alone filing a complaint alerting the Court to the complex factual background of this case.  Moreover, Plaintiffs will not suffer any irreparable injury

stemming directly from the demolition that they seek to enjoin.  Finally, Plaintiffs have adequate alternative remedies at law which preclude the necessity of an injunction.

A.    **Plaintiffs' Delay in Seeking Injunctive Relief Undermines Their Claim of Irreparable Harm**

Plaintiffs have waited nearly 12 weeks after HUD's September 21, 2007 approval of the demolition application to seek emergency relief by this Court.  This lengthy delay undermines Plaintiffs' claim that they will suffer irreparable harm if the Court declines to grant the injunction.  Because irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction," Bell & Howell: Mamiya Co. v. Masel Supply, 719 F.2d 42, 45 (2d Cir. 1983) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948, at 431 (1973)), any delay by a plaintiff in seeking preliminary relief is a relevant factor when considering whether the plaintiff has met his burden to show irreparable harm.  "[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."  Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (internal quotation marks and citation omitted).

Indeed, "[a]n unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm."  Newdow v. Bush, 355 F. Supp. 2d 265, 292 (D.D.C. 2005);  Fund for Animals v. Frizzell, 530 F.2d 982, 987 (D.C. Cir. 1975) (plaintiffs had waited 44 days until after final regulations were issued although they had notice of a public comment period); see also Citibank, 756 F.2d at 276-77 (ten-week delay in seeking an injunction against a trademark infringement "undercuts the sense of urgency" which is the raison d'etre for a preliminary injunction and suggests that no irreparable injury was threatened); Mylan Pharm. v. Shalala, 81 F. Supp. 2d 30, 43-44 (D.D.C. 2000)

35

(noting that an over two month delay "further militates against a finding of irreparable harm");

Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 903 (7th Cir. 2001) ("Delay in pursuing a

preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face

irreparable harm if a preliminary injunction is not entered."); Gonannies, Inc. v. Goupair.Com,

Inc., 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) ("Evidence of an undue delay in bringing suit

may be sufficient to rebut the presumption of irreparable harm.") (citations omitted); Continental

Oil Co. v. Crutcher, 434 F. Supp. 464, 471-72 (E.D. La. 1977) (citing "long delay" in filing

motion for injunctive relief in denying preliminary injunction).

　　　Plaintiffs cannot legitimately claim surprise at HANO's schedule to demolish the St.

Bernard housing project.  After HUD approved HANO's application to demolish the St. Bernard

property, Plaintiffs sent a letter to HUD on October 8, 2007 indicating that they were interested

in submitting a proposal to purchase and redevelop the St. Bernard property and that it was their

"intent" to submit a proposal by December 10, 2007.  See Letter dated October 8, 2007 at 8.  In

this letter, Plaintiffs requested a prompt meeting to discuss their proposal, because in their

words, "demolition of the buildings is *imminent*."  Id. (emphasis added).  Despite allegedly

receiving no response from HUD on this "imminent" issue, and despite every indication that the

demolition would proceed in December (including the well-publicized November 16, 2007

denial of a similar motion for a TRO and PI that had been filed by Plaintiffs' counsel in

Anderson).[16]  Indeed, counsel for the Anderson plaintiffs (which included Tracie Washington

_____

　　　[16]  Among counsel for Plaintiffs are William Quigley and Tracie L. Washington, both of
whom are counsel of record for the plaintiffs in Anderson v. Jackson, 06-3289 (E.D. La.), who
filed a motion for a temporary restraining order and preliminary injunction on November 1,
2007, to enjoin the demolition of the St. Bernard housing project.  Within hours of the District
Court's denial of the Anderson plaintiffs' motion to enjoin the demolition in that case, the New

and Bill Quigley) were informed during the November 16, 2007 telephonic status conference with the EDLA court that demolition was slated to commence in mid-December. Plaintiffs nonetheless waited until the eleventh hour to present their emergency motion to this Court.

The critical importance of irreparable injury derives from the fact that "[p]reliminary injunctions are issued to forestall imminent and irreversible injury to the plaintiffs' rights." Comic Strip, Inc. v. Fox Television Stations, Inc., 710 F. Supp. 976, 981 (S.D.N.Y. 1989). Consequently, "[d]elay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action." Citibank, 756 F.2d at 276. Where the delay is significant, it "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Id. at 277 (citation omitted). The fact that Plaintiffs – without any explanation whatsoever – waited almost three months after they learned that HUD had approved HANO's demolition application before moving for a temporary restraining order in this Court is strong evidence that they will not experience imminent irreparable injury if their motion is denied.

Further, the fact that during the past three months, Plaintiffs may have sought to propose purchasing the property or to replace Columbia Residential as the entity that *redevelops* the property does not account for their delay in seeking to enjoin the actual demolition. The demolition is a separate and distinct process from the redevelopment of the property and is even

---

Orleans Times-Picayune had reported the story. Gwen Filosa, Judge won't hold up public housing razing: Demolition may start as soon as next month, New Orleans Times-Picayune, Nov. 16, 2007, available at 2007 WLNR 22725523.

accomplished by a different contractor.[17]   Accordingly, Plaintiffs have failed to satisfy their

burden of showing irreparable harm.

    **B.**    **Plaintiffs Cannot Establish That They Will Be Irreparably Harmed as a Result of the Scheduled Demolition**

    Plaintiffs claim that they will suffer irreparable injury from the alleged denial of their

opportunity to purchase the St. Bernard property and from the approval of HANO's application

to demolish the property.  However, in both instances, Plaintiffs have not established any actual

irreparable harm that will flow from the demolition itself, nor can they deny that adequate

remedies exist as an alternative to a preliminary injunction.

    First, to the extent that Plaintiffs claim that they face irreparable harm from the alleged

unlawful approval of HANO's demolition application and related documents (Counts II-IV), this

exact argument has already been rejected by the District Court in Anderson when it denied a

motion to enjoin the demolition and found that "[t]here is no absolute or unfettered private right

of action regarding demolition. . . . Even if HUD's conduct [in approving the demolition] was

procedurally flawed, Plaintiffs' postdeprivation remedies at law could adequately address

Plaintiffs' concerns."  November 16, 2007 Order in Anderson v. Jackson at 2-3 [Docket No.

539]; see also Transcript of November 15, 2007, hearing before Anderson court at 17, attached

as Ex. 4 (relying in part on Vieux Carre Property Owners, Residents and Associates, Inc. v.

Brown, 948 F.2d 1436 (5th Cir. 1991), for the proposition that a postdeprivation process or

damages would afford adequate relief to plaintiffs in the present situation).

---

    [17]  According to Plaintiffs' complaint, the St. Bernard Development corporation (which Plaintiffs allege is an affiliate entity to Columbia Residential) is the entity which was awarded the contract to demolish the buildings at St. Bernard.  Compl. ¶ 25.

Moreover, Plaintiffs have not established that demolition of the existing buildings on the site of the St. Bernard housing project – buildings which HUD, in its September 21, 2007 decision memorandum, deemed to be obsolete and unsuitable for housing purposes – would somehow prevent, let alone work an irreversible effect upon, Plaintiffs' ability to purchase and redevelop that site (Count I).  Plaintiffs bear the burden of showing that their injury is "certain, great and actual - not theoretical."  Wisc. Gas Co., 758 F.2d at 674 (emphasis added); see Almurbati v. Bush, 366 F. Supp. 2d 72, 78 (D.D.C. 2005), (quoting Milk Indus. Found. v. Glickman, 949 F. Supp. 882, 897 (D.D.C. 1996) ("To obtain injunctive relief, the petitioners must show that the threatened injury is not merely 'remote and speculative.'")).  Thus, the bare allegations that Plaintiffs make here are insufficient to prove irreparable injury.  See Roth v. Rufus, 2003 WL 25152300, *1 (D.D.C. June 2, 2003) (same).  In any event, the alleged harm that Plaintiffs will suffer if they are deprived of the opportunity to redevelop the St. Bernard property is speculative at best.  It appears that Plaintiffs' redevelopment plan is premised on their obtaining historical rehabilitation tax credits and their ability to obtain all the public funding that was obtained by Columbia Residential.  See October 8, 2007 Letter at 5-6.  Plaintiffs' ability to obtain historical rehabilitation tax credits, however, is "subject to the [St. Bernard] property being awarded Federal Historic Register designation."  Id. at 6.  Moreover, with regard to Plaintiffs' claim of lost opportunity to purchase the property, there is no reason why a claim for monetary damages or a post-deprivation process would not provide an adequate remedy at law.

Furthermore, the individual Plaintiffs will suffer no injury if the demolition of St. Bernard proceeds as planned.  It is well-established that the residents of public housing have no cognizable right to particular public housing units.  See Lindsey v. Normet, 405 U.S. 56, 74

39

(1972) (no constitutional right to "access to dwellings of a particular quality"); Jaimes v. Toledo Metro. Hous. Auth., 758 F.2d 1086, 1096 (6th Cir. 1985) (same); Smith v. Town of Clarkton, 682 F.2d 1055, 1067-68 (4th Cir. 1982) (finding no constitutional or statutory right for individual citizens to have housing meeting a particular standard and no concomitant duty on the part of political entities to provide housing); Acevedo v. Nassau County, 500 F.2d 1078, 1080-81 (2d Cir. 1974) (same); Edwards v. Dist. of Columbia, 628 F. Supp. 333, 343 (D.D.C. 1985) (no constitutional right "to be housed in a particular unit of a particular qualitative character"), aff'd on other grounds, 821 F.2d 651 (D.C. Cir. 1987); Hanrahan v. Hous. & Redev. Auth. of Duluth, 912 F. Supp. 428, 435 (D. Minn. 1995) (plaintiff had no protected property interest in any particular public housing unit), aff'd, 86 F.3d 1159 (8th Cir. 1996); Schmidt v. Boston Hous. Auth., 505 F. Supp. 988, 996 (D. Mass. 1981) (no federally protected right to low-income public housing). These Plaintiffs cannot demonstrate that the deprivation of something to which they have no legal right constitutes an irreparable injury. See Lujan, 504 U.S. at 560 (defining "injury in fact" as "an invasion of a legally protected interest"); Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (to have a property interest in a benefit, a person must have a legitimate claim of entitlement to it); James v. City of Dallas, 254 F.3d 551, 563 (5th Cir. 2001) (plaintiff cannot obtain injunctive relief absent a showing that the sought-after relief will prevent the injury of which plaintiff complains). The individual Plaintiffs in this case are all receiving federally-assisted housing benefits and they are in fact all residing in other public housing developments in New Orleans. See Complaint ¶¶ 1-4. Thus, Plaintiffs have failed to establish that they will be irreparably harmed by the demolition of St. Bernard.

**IV.    AN ORDER ENJOINING THE DEMOLITION OF ST. BERNARD WOULD SUBSTANTIALLY HARM DEFENDANTS AND OTHER PARTIES, AND**

**WOULD DISSERVE THE PUBLIC INTEREST**

Even if Plaintiffs had demonstrated that they would be irreparably harmed absent an injunction, an injunction is nevertheless inappropriate in this case because of the harm that will befall thousands of other public housing residents, the Defendants, and the public at large, if an injunction were to be granted.

First, if Plaintiffs succeed in delaying or preventing the demolition of St. Bernard, they may well cause hundreds of other displaced HANO residents to lose the only housing voucher assistance for which they are eligible once the disaster-related housing assistance they are currently receiving is no longer available. <u>See</u> Declaration of David Vargas attached hereto as Exhibit 5. In his declaration, David Vargas, the Director of HUD's Office of Housing Voucher Programs explained how the current disaster voucher funding is set to run out in late 2008, but that former public housing residents who were displaced by Hurricane Katrina would be entitled to a special demolition voucher *if* their former public housing project is indeed demolished. <u>See id.</u> ¶¶ 3-5, 8. However, if the demolition is enjoined, many of the displaced former public housing residents of St. Bernard would be unlikely to receive housing assistance from another source. <u>Id.</u> ¶ 9. Thus, the interests that other former residents of St. Bernard have in continued public housing assistance outweighs any possible harm to the Plaintiffs.

Further, the harm that Defendants and the public at large will suffer substantially outweighs the harms asserted by the Plaintiffs. In cases involving federal agencies, "the government's interest is in large part presumed to be in the public interest." <u>United States v. Rural Elec. Convenience Coop. Corp.</u>, 922 F.2d 429, 440 (7th Cir. 1991); <u>Local 1106, Nat'l Fed'n of Fed. Employees v. Laird</u>, 318 F. Supp. 153, 155 (D.D.C. 1970) (public interest in

41

permitting the Secretary of Defense to exercise the managerial discretion vested in him by statute weighed against granting preliminary injunction to prevent closure of defense facility); Schulz v. U.S. Boxing Ass'n, 105 F.3d 127, 134-35 (3d Cir. 1997) (considering statutes and regulations as authoritative source of public policy in considering effects of preliminary injunction on public interest).

HUD is tasked with providing housing that is decent, safe and sanitary, and in good repair. See 42 U.S.C. § 1437(a)(1)(A) ("It is the policy of the United States . . . to assist States and political subdivisions of States to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families."). By statute, HUD is also obligated to reduce the concentration of low-income housing and develop sustainable mixed-income communities. See, e.g., id. § 1437p(d) (implementing the goal of reducing the concentration of low-income public housing by providing that replacement housing is permitted on-site following the demolition of obsolete housing "*if* the number of replacement public housing units is significantly fewer than the number of units demolished") (emphasis supplied); id. § 1437v(a)(3) (calling for "housing that will avoid or decrease the concentration of very low-income families"). Courts have recognized that "shift[ing] the model of public housing . . . from that of densely clustered low income housing to a model of economic integration, with social services available to residents, with attendant public services restored, and without isolation of the development from the rest of the city" is a legitimate public policy goal. Darst-Webbe Tenant Ass'n Bd. v. St. Louis Housing Auth., 417 F.3d 898, 903 (8th Cir. 2005); see also Charleston Hous. Auth. v. USDA, 419 F.3d 729, 742 (8th Cir. 2005) (same).

In contrast to these significant public policy goals, Plaintiffs appear to be arguing that the

St. Bernard project should be redeveloped in a manner that recreates the identical income-mix and concentration of poverty as the pre-Hurricane Katrina site.  See October 8 Letter at 2 (noting that their proposal will allow all former public housing residents the right to return to their pre-Katrina St. Bernard units).  Plaintiffs are advocating a result that is clearly not in the best interest of the public.  The extensive record that was created in Anderson is replete with evidence that the housing project at issue is a dilapidated and substandard pocket of concentrated poverty and racial segregation.  Indeed, as the Anderson Court explicitly stated, "Ironically, it appears that Plaintiffs' efforts to return to developments that were populated entirely with African-Americans pre-Katrina may actually perpetuate segregation more so than HANO's plans for demolitions and redevelopment."  February 6 Order at 17 [Docket No. 175].

Even before Hurricane Katrina, HANO was actively pursuing a course of redevelopment and revitalization of its functionally and economically obsolete projects.  The devastation wrought by Hurricane Katrina only accelerated the need for redevelopment.  The adamant opposition voiced by many current and former HANO residents regarding the prospect of returning to obsolete public housing in New Orleans further demonstrates that enjoining HANO's redevelopment effort will not serve the public interest.  See Gwen Filosa, HANO Protest Becomes Scuffle, New Orleans Times Picayune, April 5, 2006, available at 2006 WLNR 5707109, at *3 (quoting Sonya Davis, who used a Section 8 voucher to move out of St. Bernard months prior to Katrina, as saying that St. Bernard was "a drug-infested, crime-ridden murder trap" and "[i]f you put that thing back up, the whole city is going down"); Declaration of Ann Lott, President and CEO of the Dallas Housing Authority, attached as Exhibit 6, ¶¶ 3, 15 (estimating that half of displaced HANO families do not want to return to public housing in New

Orleans); Declaration of Guy Rankin, CEO of the Harris County Housing Authority, attached as

Exhibit 7 ¶¶ 5-8 (explaining that majority of former HANO residents now residing in Houston

area do not wish to return to public housing in New Orleans); Deposition of Donna Johnigan,

attached hereto as Exhibit 8 at 9, 337-38 (estimating that 30-40% of the displaced residents have

made the decision to live elsewhere, including "a lot of young women who stepped up to the

plate and said here's an opportunity for me to do something better for myself and my children");

Demolition Begins, Stops on B.W. Cooper Housing Development (Dec. 13, 2007), at

http://www.wwltv.com/local/stories/wwl121207tpdemolition.cb258e1.html ("'All these outside

people coming here, protesting the demolition of public housing, are here because they don't

want people in public housing living in their neighborhoods,' said Norman Taylor, community

liaison for B.W. Cooper [, who] said the complex's residents are entirely behind the

redevelopment, and have been involved from the start. 'They're actually helping design the floor

plans' for the redeveloped units, he said.").

   In addition, the impact of any delay in demolition is particularly critical because delay

could cause HANO to lose hundreds of millions of dollars in funding and tax credits, and it

could also  jeopardize the entire redevelopment effort.  See HANO Mem. in Opp. to Pl. Mot. for

TRO and PI in Anderson, [Docket No. 514].  Where the risk of harm threatens the entire

redevelopment effort, the balance of hardship weighs heavily in favor of denying the injunction.

"[E]ven where denial of a preliminary injunction will harm the plaintiff, the injunction should

not be issued where it would work a great and potentially irreparable harm to the party

enjoined."  Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969); see also Allison v.

Froehlke, 470 F.2d 1123, 1126 (5th Cir. 1972) (upholding denial of preliminary injunction where

defendants would face an increase in construction costs of $49,000 per month); <u>Reese v. Miami-Dade County</u>, 242 F. Supp. 2d 1292, 1309 (S.D. Fla. 2002), <u>aff'd</u>, 2003 WL 22025458 (11 th Cir. July 14, 2003) (denying injunction to prevent redevelopment of public housing project where PHA would "suffer provable damages in the event the project is halted or delayed by a preliminary injunction"); <u>Southern Monorail Co. v. Robbins & Myers, Inc.</u>, 666 F.2d 185, 186-87 (5th Cir. 1982) (affirming denial of injunction where defendant faced potentially greater loss from issuance of injunction than plaintiff could show if injunction were denied).

As explained previously, all individual Plaintiffs are currently residing in New Orleans public housing.  Courts have declined to find irreparable injury when plaintiffs have been unable to show that they would be deprived of housing benefits as a result of redevelopment efforts. In <u>Reese</u>, for example, the district court found that plaintiffs seeking to enjoin the demolition and redevelopment of public housing units had failed to demonstrate irreparable injury where they presented no evidence that they would be prohibited from applying for the new post-demolition units.  242 F. Supp. 2d at 1309; <u>see also</u> <u>id.</u> at 1301 ("If plaintiffs qualify for housing within the new [public housing units], they are entitled to apply like everyone else.").  Moreover, in weighing the balance of harms, the court in <u>Reese</u> noted that defendants "have demonstrated a legitimate interest in pursuing its HOPE VI Revitalization Plan as approved and would suffer provable damages in the event the project is halted or delayed by a preliminary injunction."  <u>Id.</u> Because Plaintiffs have not shown that they will lose public housing benefits or any other benefit to which they are entitled if this Court declines to grant the injunction, this Court should deny

Plaintiffs' motion.[18]

## **CONCLUSION**

For the foregoing reasons, the Federal Defendants respectfully request that this Court

deny Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction.


Dated: December 13, 2007

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General


JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney
JOHN G. INTERRANTE
PA Bar # 61373
Assistant United States Attorney



   /s/ Heather Phillips
MICHAEL SITCOV
HEATHER PHILLIPS
DANIEL RIESS
VARU CHILAKAMARRI
LESLEY FARBY
Attorneys
United States Department of Justice

---

[18]  Plaintiffs have not been able to demonstrate a likelihood of success on the merits of their claim or show that the balance of harms favors issuing an injunction, and the consequences of such an injunction could be disastrous for HANO and for the thousands of public housing residents who would be deprived of the improved public housing to which they are entitled. Therefore, were the Court to issue an order enjoining the demolition and redevelopment of St. Bernard, the Federal Defendants oppose a waiver of security.

Civil Division, Rm. 7220
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 514-3481
Fax: (202) 616-8470
Email: lesley.farby@usdoj.gov
*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on Plaintiffs' counsel of record via the Court's ECF system this 13th day of December 2007.

   /s/ Heather Phillips
Heather Phillips

47

APPEAL, CLASS, PROTO

# U. S. District Court
## Eastern District of Louisiana (New Orleans)
## CIVIL DOCKET FOR CASE #: 2:06-cv-03298-ILRL-ALC

Anderson et al v. Jackson et al
Assigned to: Judge Ivan L. R. Lemelle
Referred to: Magistrate Judge Alma L. Chasez

Case in other court:          USCA, 07-31008

Cause: 42:3601 Fair Housing Act

Date Filed: 06/27/2006
Jury Demand: Both
Nature of Suit: 443 Civil Rights: Accommodations
Jurisdiction: Federal Question

**Plaintiff**

**Yolanda Anderson**          represented by **William Patrick Quigley**
Loyola Law School Clinic
7214 St. Charles Ave.
New Orleans, LA 70118
(504) 861-5590
Email: duprestars@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
Jenner & Block
330 N. Wabash Ave.
Chicago, IL 60611-7603
312-840-7241
*TERMINATED: 11/06/2007*

**Adam H. Morse**
Jenner & Block
330 N. Wabash Ave.
Chicago, IL 60611-7603
312-840-8627
Email: amorse@jenner.com
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
Advancement Project
1730 M Street, NW
Suite 901

Washington, DC 20036
202-728-9557
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
Jenner & Block
330 N. Wabash Ave.
Chicago, IL 60611-7603
312-840-7298
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
Howrey, LLP
321 N. Clark St.
Suite 3400
Chicago, IL 60610
312-846-5645
Email: crowsong@howrey.com
*TERMINATED: 05/21/2007*

**Jill Tauber**
Advancement Project
1730 M Street, NW
Suite 901
Washington, DC 20036
202-728-9557
Email:
jtauber@advancementproject.org
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
Jenner & Block
330 N. Wabash Ave.
Chicago, IL 60611-7603
312-923-2650
Email: jward@jenner.com
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
Advancement Project
1730 M Street, NW
Suite 901
Washington, DC 20036
202-728-9557
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
Jenner & Block
330 N. Wabash Ave.
Chicago, IL 60611-7603
312-840-8659
Email: lfitzsimmons@jenner.com
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
Advancement Project
1730 M Street, NW
Suite 901
Washington, DC 20036
202-728-9557
Email:
mdixon@advancementproject.org
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
Jenner & Block
330 N. Wabash Ave.
Chicago, IL 60611-7603
312-923-4524
Email: rbricker@jenner.com
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
Loyola University School of Law
7214 St. Charles Ave.
New Orleans, LA 70118
504-861-5597
Email: jmitchel@loyno.edu

**Tracie L. Washington**
The Louisiana Justice Institute
1631 Elysian Fields Ave.
New Orleans, LA 70117
504-304-7947
Email: tlwesq@cox.net
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Gilda Burbank**                    represented by **William Patrick Quigley**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Allen Harris                          represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Donna Johnigan**                    represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Odessia Lewis**                    represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)

*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Emelda May**                    represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)

*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sylvia Moten**                 represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**

(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Emelda Paul**
*TERMINATED: 01/22/2007*

represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Hilda Johnson**                represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cynthia Bell**                    represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lolita Gibson**
*TERMINATED: 09/28/2007*

represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)

*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nicole Banks**
*TERMINATED: 10/16/2007*

represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Judith Watson**                                        represented by**William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Gloria Williams**                    represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mary Ann Wright**                    represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Catrice Doucet**                    represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Linda DeGruy**                                    represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)
*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kim Paul**
*in their own right and as
representatives of all similarly
situated displaced New Orleans,
Louisiana public housing residents
TERMINATED: 10/16/2007*

represented by **William Patrick Quigley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abby J. Clark**
(See above for address)
*TERMINATED: 11/06/2007*

**Adam H. Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anita Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anne C. Fitzpatrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel A. Crowson**
(See above for address)

*TERMINATED: 05/21/2007*

**Jill Tauber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Fee Ward, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Judith A. Browne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lara E. FitzSimmons**
(See above for address)
*TERMINATED: 10/22/2007*

**Monique L. Dixon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ross B. Bricker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Royal Judson Mitchell, Jr.**
(See above for address)

**Tracie L. Washington**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Alphonso - Jackson**
*Secretary of the United States
Department of Housing and Urban
Development*

represented by **Heather Renee Phillips**
U.S. Dept of Justice, Federal Programs
Branch, DC
Civil Division
20 Massachusetts Ave. NW
Rm. 7214
Washington, DC 20530

(202) 616-0679
Fax: (202) 616-8470
Email: heather.phillips@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Martin Riess**
U. S. Department of Justice, Federal
Programs Branch
Civil Division
20 Massachusetts Avenue, NW
Washington, DC 20530
(202) 353-3098
Fax: (202) 616-8460
Email: daniel.riess@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Lesley Farby**
U. S. Department of Justice
Civil Division
20 Massachusetts Avenue, NW
Rm. 7119
Washington, DC 20530
202-514-3481
Email: lesley.farby@usdoj.gov

**Varu Chilakamarri**
U.S. Dept of Justice, Federal Programs
Branch, DC
Civil Division
20 Massachusetts Ave. NW
Rm. 7214
Washington, DC 20530
202-616-8489
Fax: 202-616-8470
Email:
varudhini.chilakamarri@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Housing and**         represented by **Heather Renee Phillips**
**Urban Development**                                           (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Daniel Martin Riess**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lesley Farby**
(See above for address)

**Varu Chilakamarri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Housing Authority of New Orleans**          represented by **Rachel Wendt Wisdom**
Stone Pigman Walther Wittmann,
LLC
546 Carondelet St.
New Orleans, LA 70130-3588
(504) 581-3200
Email: rwisdom@stonepigman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashlee Megan Robinson**
Stone Pigman Walther Wittmann,
LLC
546 Carondelet St.
New Orleans, LA 70130-3588
(504) 581-3200
Email: arobinson@stonepigman.com
*ATTORNEY TO BE NOTICED*

**Heather Shauri Lonian**
Stone Pigman Walther Wittmann,
LLC
546 Carondelet St.
New Orleans, LA 70130-3588
504-581-3200
Fax: 504-593-0951
Email: hlonian@stonepigman.com

**Michael Q. Walshe, Jr.**
Stone Pigman Walther Wittmann,
LLC

546 Carondelet St.
New Orleans, LA 70130-3588
(504) 581-3200
Email: mwalshe@stonepigman.com

**Walter F. Wolf, III**
Stone Pigman Walther Wittmann, LLC
546 Carondelet St.
New Orleans, LA 70130-3588
(504) 581-3200
Email: wwolf@stonepigman.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**C. Donald Babers**
*Board of Commissioners, Housing Authority of New Orleans*

represented by **Rachel Wendt Wisdom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashlee Megan Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Heather Shauri Lonian**
(See above for address)

**Michael Q. Walshe, Jr.**
(See above for address)

**Walter F. Wolf, III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**William C. Thorson**
*Executive Administrator Appointing Authority Housing Authority of New Orleans; and each individual defendant in his official capacity*

represented by **Rachel Wendt Wisdom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashlee Megan Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Heather Shauri Lonian**
(See above for address)

**Michael Q. Walshe, Jr.**
(See above for address)

**Walter F. Wolf, III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Third Party Plaintiff**

**Housing Authority of New Orleans**          represented by **Rachel Wendt Wisdom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashlee Megan Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Heather Shauri Lonian**
(See above for address)

**Michael Q. Walshe, Jr.**
(See above for address)

**Walter F. Wolf, III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Third Party Plaintiff**

**C. Donald Babers**          represented by **Rachel Wendt Wisdom**
*Board of Commissioners, Housing*                (See above for address)
*Authority of New Orleans*                        *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashlee Megan Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Heather Shauri Lonian**
(See above for address)

Michael Q. Walshe, Jr.
(See above for address)

Walter F. Wolf, III
(See above for address)
*ATTORNEY TO BE NOTICED*

**Third Party Plaintiff**

**William C. Thorson**
*Executive Administrator Appointing
Authority Housing Authority of New
Orleans; and each individual
defendant in his official capacity*

represented by **Rachel Wendt Wisdom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashlee Megan Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Heather Shauri Lonian**
(See above for address)

Michael Q. Walshe, Jr.
(See above for address)

Walter F. Wolf, III
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Third Party Defendant**
**Mayday NOLA**

**Third Party Defendant**
**Garelle Smith**

**Third Party Defendant**
**Endesha Jukali**

**Third Party Defendant**

**Cynthia Thompson Jordan**


**Third Party Defendant**

**Shadrika Zeno**


**Third Party Defendant**

**Latica Russell**


**Third Party Defendant**

**Gloria Irving**


**Third Party Defendant**

**Sharon Jasper**


**Third Party Defendant**

**Shawanda Miller**


**Third Party Defendant**

**Rose Guy**


**Third Party Defendant**

**Elaine Gibson**


**Third Party Defendant**

**Phyllis Lewis**


**Third Party Defendant**

**Stephanie Mingo**


**Counter Claimant**

**Housing Authority of New Orleans**    represented by **Rachel Wendt Wisdom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashlee Megan Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Heather Shauri Lonian**
(See above for address)

**Michael Q. Walshe, Jr.**
(See above for address)

**Walter F. Wolf, III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**C. Donald Babers**
*Board of Commissioners, Housing
Authority of New Orleans*

represented by **Rachel Wendt Wisdom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashlee Megan Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Heather Shauri Lonian**
(See above for address)

**Michael Q. Walshe, Jr.**
(See above for address)

**Walter F. Wolf, III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**William C. Thorson**
*Executive Administrator Appointing
Authority Housing Authority of New
Orleans; and each individual
defendant in his official capacity*

represented by **Rachel Wendt Wisdom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashlee Megan Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Heather Shauri Lonian**
(See above for address)

**Michael Q. Walshe, Jr.**
(See above for address)

**Walter F. Wolf, III**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**
**Allen Harris**

**Counter Defendant**
**Donna Johnigan**

**Counter Defendant**
**Odessia Lewis**

**Counter Defendant**
**Emelda May**

**Counter Defendant**
**Sylvia Moten**

**Counter Defendant**
**Yolanda Anderson**

**Counter Defendant**
**Emelda Paul**

**Counter Defendant**
**Hilda Johnson**

**Counter Defendant**

**Cynthia Bell**


**Counter Defendant**

**Lolita Gibson**
*TERMINATED: 09/28/2007*


**Counter Defendant**

**Nicole Banks**


**Counter Defendant**

**Judith Watson**


**Counter Defendant**

**Gloria Williams**


**Counter Defendant**

**Mary Ann Wright**


**Counter Defendant**

**Catrice Doucet**


**Counter Defendant**

**Linda DeGruy**


**Counter Defendant**

**Gilda Burbank**


**Counter Defendant**

**Kim Paul**
*in their own right and as*
*representatives of all similarly*
*situated displaced New Orleans,*
*Louisiana public housing residents*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/27/2006 | **1** | COMPLAINT against all defendants (Filing fee $ 350.) filed by all plaintiffs. (Attachments: # **1** Civil Cover Sheet)(lag, ) Modified on 7/7/2006 (lag, ). (Entered: 06/28/2006) |
| 06/27/2006 | 2 | Summons Issued as to Alphonso - Jackson, U.S. Department of Housing and Urban Development, Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (lag, ) (Entered: 06/28/2006) |
| 06/29/2006 | **3** | EXPARTE/CONSENT MOTION to Substitute pages in the complaint by all plaintiffs. (Attachments: # **1** Exhibit)(lag, ) (Entered: 07/07/2006) |
| 07/07/2006 | **4** | ORDER denying **3** Motion to Substitute pages in the complaint. However, ordered that Clerk seal the lease attached to complaint and file the attached document as exhibit A. Signed by Judge Ivan L. R. Lemelle on 7/6/06. (lag, ) (Entered: 07/07/2006) |
| 07/18/2006 | **5** | EXPARTE/CONSENT MOTION for Extension of Time to Answer re **1** Complaint by Housing Authority of New Orleans. (lag, ) (Entered: 07/21/2006) |
| 07/19/2006 | **6** | ORDER granting **5** Motion for Extension of Time to Answer as to Housing Authority of New Orleans answer due 9/5/2006. . Signed by Judge Ivan L. R. Lemelle. (lag, ) (Entered: 07/21/2006) |
| 07/24/2006 | **7** | EXPARTE/CONSENT MOTION for John F. Ward, Jr. to Appear Pro Hac Vice (Filing fee $5.) on behalf of all plaintiffs. (Attachments: # **1** Oath of Applicant# **2** Certificate of Admission)(blg, ) (Entered: 07/27/2006) |
| 07/24/2006 | **8** | EXPARTE/CONSENT MOTION for Ross B. Bricker to Appear Pro Hac Vice (Filing fee $5.) on behalf of all plaintiffs. (Attachments: # **1** Oath of Applicant# **2** Certificate of Admission)(blg, ) (Entered: 07/27/2006) |
| 07/25/2006 | **9** | ORDER granting **7** Motion to Appear Pro Hac Vice as to John Fee Ward, Jr. Signed by Judge Ivan L. R. Lemelle on 7/25/06. (blg, ) (Entered: 07/27/2006) |
| 07/25/2006 | **10** | ORDER granting **8** Motion to Appear Pro Hac Vice as to Ross B. Bricker. Signed by Judge Ivan L. R. Lemelle on 7/25/06. (blg, ) (Entered: 07/27/2006) |
| 07/28/2006 | **11** | SUMMONS Returned Executed; William C. Thorson served on 6/30/2006, answer due 7/20/2006. (cms, ) (Entered: 07/28/2006) |
| 07/28/2006 | **12** | SUMMONS Returned Executed; C. Donald Babers served on 6/30/2006, answer due 7/20/2006. (cms, ) (Entered: 07/28/2006) |
| 07/28/2006 | **13** | SUMMONS Returned Executed; Housing Authority of New Orleans served on 6/30/2006, answer due 7/20/2006. (cms, ) (Entered: |

| | | |
|---|---|---|
| | | 07/28/2006) |
| 08/07/2006 | **14** | NOTICE to Court and Special Appearance by C. Donald Babers, William C. Thorson. (Lonian, Heather) Modified on 8/10/2006 (lag, ). (Entered: 08/07/2006) |
| 08/10/2006 | **15** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages by all plaintiffs. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 08/10/2006) |
| 08/10/2006 | **16** | DEFICIENT MOTION for Preliminary Injunction by all plaintiffs. Motion Hearing set for 9/20/2006 09:00 AM before Magistrate Judge Ivan L.R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing # **3** Affidavit of R. Bricker # **4** Exhibit A-Q to Declaration of R. Bricker# **5** Exhibit R-BB to Declaration of R. Bricker)(Bricker, Ross) Modified on 8/11/2006 (lag, ). (Entered: 08/10/2006) |
| 08/10/2006 | **17** | DEFICIENT MOTION for Hearing re **16** MOTION for Preliminary Injunction *and Motion for Expedited Discovery* by all plaintiffs. Motion Hearing set for 9/20/2006 09:00 AM before Magistrate Judge Ivan L.R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing)(Bricker, Ross) Modified on 8/11/2006 (lag, ). (Entered: 08/10/2006) |
| 08/11/2006 | 18 | NOTICE OF DEFICIENT DOCUMENT: re **16** DEFICIENT MOTION for Preliminary Injunction by all plaintiffs. Motion Hearing set for 9/20/2006 09:00 AM before Magistrate Judge Ivan L.R. Lemelle. (Attachments: # (1) Memorandum in Support # (2) Notice of Hearing # (3) Affidavit of R. Bricker# (4) Exhibit A-Q to Declaration of R. Bricker# (5) Exhibit R-BB to Declaration of R. Bricker)(Bricker, Ross) Modified on 8/11/2006 (lag, ).. Reason(s) of deficiency: Pleadings over 25 pages/Reply brief over 10 pages. For corrective information, see section(s) D07 on http://www.laed.uscourts.gov/cmecf/Deficiency/deficiency.htm **Attention: Document must be refiled in its entirety within five (5) working days. Otherwise, it may be stricken by the court without further notice. Deficiency remedy due by 8/18/2006.** (lag, ) (Entered: 08/11/2006) |
| 08/11/2006 | 19 | NOTICE OF DEFICIENT DOCUMENT: re **17** DEFICIENT MOTION for Hearing re **16** MOTION for Preliminary Injunction *and Motion for Expedited Discovery* by all plaintiffs. Motion Hearing set for 9/20/2006 09:00 AM before Magistrate Judge Ivan L.R. Lemelle. (Attachments: # (1) Memorandum in Support # (2) Notice of Hearing)(Bricker, Ross) Modified on 8/11/2006 (lag, ).. Reason(s) of deficiency: Two or more documents filed as one. For corrective information, see section(s) D04 on http://www.laed.uscourts.gov/cmecf/Deficiency/deficiency.htm **Attention: Document must be refiled in its entirety within five (5)** |

| | | |
|---|---|---|
| | | **working days. Otherwise, it may be stricken by the court without further notice. Deficiency remedy due by 8/18/2006.** (lag, ) (Entered: 08/11/2006) |
| 08/15/2006 | 20 | ORDER granting **15** Motion for Leave to File Excess Pages . Signed by Judge Ivan L. R. Lemelle on 8/10/06. (lag, ) (Entered: 08/15/2006) |
| 08/15/2006 | 21 | MOTION for Preliminary Injunction by all plaintiffs. Motion Hearing set for 9/20/2006 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing # **3** Affidavit of R. Bricker# **4** Exhibit A-Q to Declaration of R. Bricker# **5** Exhibit R-BB to Declaration of R. Bricker)(Bricker, Ross) (Entered: 08/15/2006) |
| 08/16/2006 | 25 | EXPARTE/CONSENT MOTION for Extension of Time to Answer re **1** Complaint by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (lag, ) (Entered: 08/21/2006) |
| 08/17/2006 | 22 | MOTION to Expedite *Discovery* by all plaintiffs. Motion Hearing set for 9/6/2006 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing # **3** Certification of Counsel)(Bricker, Ross) (Entered: 08/17/2006) |
| 08/17/2006 | 23 | MOTION for Evidentiary Hearing re **21** MOTION for Preliminary Injunction by all plaintiffs. Motion Hearing set for 9/6/2006 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing)(Bricker, Ross) Modified on 8/18/2006 (blg, ). (Entered: 08/17/2006) |
| 08/17/2006 | 29 | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice as to Anita Sinha (Filing fee $5.) by all plaintiffs. (lag, ) (Entered: 08/23/2006) |
| 08/17/2006 | 31 | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice as to Monique L. Dixon (Filing fee $5.) by all plaintiffs. (lag, ) (Entered: 08/23/2006) |
| 08/17/2006 | 33 | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice as to Judith A. Browne (Filing fee $5.) by all plaintiffs. (lag, ) (Entered: 08/23/2006) |
| 08/21/2006 | 24 | ORDER granting **23** MOTION for Evidentiary Hearing re **21** MOTION for Preliminary Injunction; **21** MOTION for Preliminary Injunction is reset for 10/5/2006 09:00 AM in open court before Judge Ivan L. R. Lemelle.. Signed by Judge Ivan L. R. Lemelle on 8/17/06.(lag, ) (Entered: 08/21/2006) |
| 08/21/2006 | 26 | ORDER granting **25** Motion for Extension of Time to Answer as to Housing Authority of New Orleans answer due 10/6/2006; C. Donald Babers answer due 10/6/2006; William C. Thorson answer due 10/6/2006. . Signed by Judge Ivan L. R. Lemelle on 8/17/06. (lag, ) (Entered: 08/21/2006) |
| 08/21/2006 | 30 | ORDER granting **29** Motion to Appear Pro Hac Vice as to Anita Sinha. |

| | | |
|---|---|---|
| | | . Signed by Judge Ivan L. R. Lemelle on 8/17/06. (lag, ) (Entered: 08/23/2006) |
| 08/21/2006 | **32** | ORDER granting **31** Motion to Appear Pro Hac Vice as to Monique L. Dixon. . Signed by Judge Ivan L. R. Lemelle on 8/17/06. (lag, ) (Entered: 08/23/2006) |
| 08/21/2006 | **34** | ORDER granting **33** Motion to Appear Pro Hac Vice as to Judith A. Browne. . Signed by Judge Ivan L. R. Lemelle on 8/17/06. (lag, ) (Entered: 08/23/2006) |
| 08/22/2006 | **27** | MOTION for Reconsideration ; by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 9/6/2006 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Notice of Hearing # **2** Memorandum in Support # **3** Exhibit 1# **4** Exhibit 2)(Phillips, Heather) (Entered: 08/22/2006) |
| 08/23/2006 | 28 | Correction of Docket Entry by Clerk re **27** MOTION for Reconsideration ; Document does not include "s/" with typed name on signature line. (lag, ) (Entered: 08/23/2006) |
| 08/23/2006 | **35** | ORDER Setting/Resetting ORAL argument on **22** MOTION to Expedite *Discovery*: Motion Hearing set for 9/6/2006 11:00 AM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez.(car, ) (Entered: 08/25/2006) |
| 08/29/2006 | **36** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **22** MOTION to Expedite *Discovery*. (Attachments: # **1** Exhibit 1# **2** Exhibit 2)(Phillips, Heather) (Entered: 08/29/2006) |
| 08/29/2006 | **37** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **27** MOTION for Reconsideration ;. (Attachments: # **1** Exhibit A# **2** Exhibit B)(Bricker, Ross) (Entered: 08/29/2006) |
| 08/29/2006 | **38** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **22** MOTION to Expedite *Discovery*. (lag, ) (Entered: 08/31/2006) |
| 09/01/2006 | **39** | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandum in Further Support of Plaintiffs' Motion for Expedited Discovery* by all plaintiffs. (Attachments: # **1** Proposed Order # **2** Proposed Pleading Reply Memorandum in Further Support of Plaintiffs' Motion for Expedited Discovery)(Bricker, Ross) (Entered: 09/01/2006) |
| 09/05/2006 | **40** | EXPARTE/CONSENT MOTION for Leave to File *Reply memorandum in support of federal defendants' motion to reconsider* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order # **2** Proposed Pleading Reply Memorandum in Support of Federal Defendants Motion to Reconsider)(Phillips, Heather) (Entered: 09/05/2006) |

| | | |
|---|---|---|
| 09/05/2006 | **41** | EXPARTE/CONSENT MOTION for Leave to File *Sur-Reply* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order # **2** Proposed Pleading Sur-Reply Memorandum)(Phillips, Heather) (Entered: 09/05/2006) |
| 09/05/2006 | **42** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Motion to Compel and for Extension of Time* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order on motion to expedite hearing# **2** Proposed Memorandum/Motion to compel and for extension of time# **3** Exhibit 1 to Proposed Motion to compel and for extension)(Phillips, Heather) Modified on 9/6/2006 (lag, ). (Entered: 09/05/2006) |
| 09/05/2006 | **43** | MOTION to Certify Class by all plaintiffs. Motion Hearing set for 9/20/2006 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing) (Bricker, Ross) Modified on 9/6/2006 (lag, ). (Entered: 09/05/2006) |
| 09/05/2006 | **44** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages *with Respect to Motion to Dismiss* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order)(Phillips, Heather) (Entered: 09/05/2006) |
| 09/05/2006 | **45** | MOTION to Dismiss for Lack of Jurisdiction by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 9/20/2006 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Exhibit 1# **3** Exhibit 2# **4** Notice of Hearing)(Phillips, Heather) (Entered: 09/05/2006) |
| 09/06/2006 | 46 | Correction of Docket Entry by Clerk re **42** MOTION to Expedite *Hearing on Motion to Compel and for Extension of Time* ; Signature on document must match filer. (lag, ) (Entered: 09/06/2006) |
| 09/06/2006 | **47** | Request/Statement of Oral Argument by all plaintiffs regarding **43** MOTION to Certify Class. (lag, ) (Entered: 09/06/2006) |
| 09/06/2006 | 48 | Correction of Docket Entry by Clerk re **43** MOTION to Certify Class ; Request for Oral Argument should be filed as separate document; Re-docketed as doc. no. 47. (lag, ) (Entered: 09/06/2006) |
| 09/06/2006 | 49 | Correction of Docket Entry by Clerk re **45** MOTION to Dismiss for Lack of Jurisdiction, **44** MOTION for Leave to File Excess Pages *with Respect to Motion to Dismiss* ; Signature on document must match filer - Attorney advised of signature requirements. (lag, ) (Entered: 09/06/2006) |
| 09/06/2006 | **50** | ERROR: DOCKETED AS SEPARATE DOCUMENT. MOTION to Compel by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Lonian, Heather) Modified on 9/7/2006 (gec, ). Substitute sheet attached on 9/7/2006 (gec, ). Modified on 9/7/2006 (gec, ). (Entered: 09/06/2006) |

| 09/06/2006 | 51 | EXPARTE/CONSENT MOTION to Expedite *Motion to Compel* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order)(Lonian, Heather) Added Proposed Pleading on 9/7/2006 (gec, ). Modified on 9/7/2006 (gec, ). (Entered: 09/06/2006) |
| --- | --- | --- |
| 09/06/2006 | 52 | MOTION to Stay *Consideration of Plaintiffs' Motion for Class Certification* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 10/4/2006 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing)(Riess, Daniel) (Entered: 09/06/2006) |
| 09/06/2006 | 57 | Minute Entry for proceedings held before Judge Alma L. Chasez : Motion Hearing held on 9/6/2006 re **22** MOTION to Expedite *Discovery* filed by plaintiffs. Ruling as set forth in doc. (car, ) (Entered: 09/12/2006) |
| 09/07/2006 | 53 | EXPARTE/CONSENT MOTION to Expedite *Motion to Stay Plaintiffs' Motion for Class Certification* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order)(Phillips, Heather) (Entered: 09/07/2006) |
| 09/07/2006 | 54 | Correction of Docket Entry by Clerk re **50** MOTION to Compel, filed as a separate document. Motion to Compel attached to appropriate document, EXPARTE/CONSENT MOTION to Expedite Motion to Compel, Doc. No. 51. (gec, ) (Entered: 09/07/2006) |
| 09/07/2006 | 59 | Minute Entry for proceedings held before Judge Ivan L. R. Lemelle : Telephone Conference held on 9/7/2006; Evidentiary hrg on Mtn for Preliminary Injunction & Mtn for Class Certification is continued w/out date; **42**, **51**, **53** MOTIONS to Expedite along with underlying motions **52** are denied as moot; Oral argument on Mtn to Reconsider & Mtn to Dismiss is set for 10/5/06 9:00 AM. (lag, ) (Entered: 09/13/2006) |
| 09/08/2006 | 55 | ORDER granting **40** Motion for Leave to File reply memo. Signed by Judge Ivan L. R. Lemelle on 9/7/06. (lag, ) (Entered: 09/08/2006) |
| 09/08/2006 | 56 | REPLY to Response to Motion filed by Alphonso - Jackson, Housing Authority of New Orleans re **27** MOTION for Reconsideration. (lag, ) (Entered: 09/08/2006) |
| 09/12/2006 | 58 | ORDER granting **44** Motion for Leave to File Excess Pages . Signed by Judge Ivan L. R. Lemelle on 9/11/06. (lag, ) (Entered: 09/13/2006) |
| 09/19/2006 | 60 | MOTION to Dismiss *Or, In The Alternative, For Summary Judgment* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion Hearing set for 10/5/2006 09:00 AM before Judge Ivan L. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Exhibit A# **3** Exhibit B# **4** Statement of Contested/Uncontested Facts # **5** Notice of Hearing)(Wisdom, Rachel) (Entered: 09/19/2006) |

| | | |
|---|---|---|
| 09/19/2006 | **61** | Request/Statement of Oral Argument by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson regarding **60** MOTION to Dismiss *Or, In The Alternative, For Summary Judgment*. (Wisdom, Rachel) (Entered: 09/19/2006) |
| 09/19/2006 | **62** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages *with proposed order* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) (Entered: 09/19/2006) |
| 09/19/2006 | **63** | ORDER granting **39** Motion for Leave to File reply memo in further support of plas' mtn for expedited discovery. Signed by Judge Alma L. Chasez on 9/18/06. (car, ) (Entered: 09/20/2006) |
| 09/19/2006 | **65** | ORDER granting **41** Motion for Leave to File sur-reply. Signed by Judge Alma L. Chasez on 9/18/06. (car, ) (Entered: 09/20/2006) |
| 09/19/2006 | **66** | Sur-Reply by Alphonso - Jackson, U.S. Department of Housing and Urban Development to plas' reply to opp to plas' mtn for expedited discovery. (car, ) (Entered: 09/20/2006) |
| 09/20/2006 | **64** | Response/Reply memo in further support of mtn for expedited discovery by all plaintiffs. (car, ) (Entered: 09/20/2006) |
| 09/21/2006 | **67** | ORDER granting **62** Motion for Leave to File Excess Pages . Signed by Judge Ivan L. R. Lemelle. (lag, ) (Entered: 09/22/2006) |
| 09/27/2006 | **68** | MOTION to Continue by all plaintiffs. Motion Hearing set for 10/18/2006 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Affidavit # **3** Exhibit # **4** Notice of Hearing)(Bricker, Ross) (Entered: 09/27/2006) |
| 09/27/2006 | **69** | EXPARTE/CONSENT MOTION to Expedite *Consideration of Motion to Continue Hearing on Motion for Summary Judgment* by all plaintiffs. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 09/27/2006) |
| 09/27/2006 | **70** | EXPARTE/CONSENT MOTION for Leave to File *Excess Pages, with proposed order* by all plaintiffs. (Attachments: # **1** Proposed Order)(Bricker, Ross) Proposed Pleading added on 9/28/2006 (lag, ). Modified on 9/28/2006 (lag, ). (Entered: 09/27/2006) |
| 09/27/2006 | **71** | ERROR: DOCKETED AS SEPARATE DOCUMENT - RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **45** MOTION to Dismiss for Lack of Jurisdiction, **60** MOTION to Dismiss *Or, In The Alternative, For Summary Judgment*. (Bricker, Ross) Modified on 9/28/2006 (lag, ). (Entered: 09/27/2006) |
| 09/28/2006 | 72 | Correction of Docket Entry by Clerk re **71** Response/Memorandum in Opposition to Motion; Reply filed as separate document; Reply attached to appropriate document, Motion for Leave to File, doc. no. 70. (lag, ) (Entered: 09/28/2006) |

| 09/28/2006 | **73** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **68** MOTION to Continue. (Wisdom, Rachel) (Entered: 09/28/2006) |
|---|---|---|
| 10/02/2006 | **74** | EXPARTE/CONSENT MOTION for Leave to File *Reply In Support of Motion to Dismiss* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) Proposed Pleadings added on 10/3/2006 (lag, ). Modified on 10/3/2006 (lag, ). (Entered: 10/02/2006) |
| 10/02/2006 | **75** | ERROR: DOCKETED AS SEPARATE DOCUMENT - REPLY to Response to Motion filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **74** MOTION for Leave to File *Reply In Support of Motion to Dismiss*, **60** MOTION to Dismiss *Or, In The Alternative, For Summary Judgment*. (Attachments: # **1** Exhibit A)(Wisdom, Rachel) Modified on 10/3/2006 (lag, ). (Entered: 10/02/2006) |
| 10/03/2006 | 76 | Correction of Docket Entry by Clerk re **75** Reply to Response to Motion; Reply filed as a separate document; Reply attached to the appropriate document, Motion for Leave to File, doc. no. 74. (lag, ) (Entered: 10/03/2006) |
| 10/03/2006 | **77** | ORDER granting **70** Motion for Leave to File Memo in Opp in Excess of Page Limit. Signed by Judge Ivan L. R. Lemelle on 9/28/06. (lag, ) (Entered: 10/03/2006) |
| 10/03/2006 | **78** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **45** MOTION to Dismiss for Lack of Jurisdiction, **60** MOTION to Dismiss *Or, In The Alternative, For Summary Judgment*. (lag, ) (Entered: 10/03/2006) |
| 10/03/2006 | **79** | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandum in Support of Federal Defendants' Motion to Dismiss* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order # **2** Proposed Pleading Reply Memorandum in Support of Federal Defendants' Motion to Dismiss)(Riess, Daniel) (Entered: 10/03/2006) |
| 10/04/2006 | **80** | ORDER Resetting Hearing on **27** MOTION for Reconsideration, **45** MOTION to Dismiss for Lack of Jurisdiction, **60** MOTION to Dismiss *Or, In The Alternative, For Summary Judgment* for 10/25/2006 09:00 AM before Judge Ivan L. R. Lemelle with Oral Argument; **68** MOTION to Continue, **69** MOTION to Expedite Consideration of Motion to Continue Hearing are denied as moot. Signed by Judge Ivan L. R. Lemelle on 10/3/06.(lag, ) (Entered: 10/04/2006) |
| 10/10/2006 | **81** | ORDER granting **74** Motion for Leave to File reply memo. Signed by Judge Ivan L. R. Lemelle on 10/4/06. (lag, ) (Entered: 10/12/2006) |
| 10/10/2006 | **82** | REPLY to Response to Motion filed by Housing Authority of New |

|            |    |                                                                                                                                                                                                                                                                                                                                                                                                                                       |
|------------|----|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |    | Orleans, C. Donald Babers, William C. Thorson re **60** MOTION to Dismiss *Or, In The Alternative, For Summary Judgment*. (Attachments: # **1** Exhibit)(lag, ) (Entered: 10/12/2006)                                                                                                                                                                                                                                                       |
| 10/10/2006 | 83 | ORDER granting **79** Motion for Leave to File reply memo. Signed by Judge Ivan L. R. Lemelle on 10/4/06. (lag, ) (Entered: 10/12/2006)                                                                                                                                                                                                                                                                                                   |
| 10/10/2006 | 84 | REPLY to Response to Motion filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **45** MOTION to Dismiss for Lack of Jurisdiction. (lag, ) (Entered: 10/12/2006)                                                                                                                                                                                                                                              |
| 10/17/2006 | 85 | DEFICIENT MOTION to Compel *Production of Plaintiffs' Current Leases* by Housing Authority of New Orleans. Motion Hearing set for 11/1/2006 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Exhibit A# **2** Exhibit B# **3** Exhibit C# **4** D# **5** Rule 37 Certificate# **6** Notice of Hearing)(Wisdom, Rachel) Modified on 10/18/2006 (lag, ). (Entered: 10/17/2006)                                             |
| 10/17/2006 | 86 | EXPARTE/CONSENT MOTION for Leave to File *Brief in Excess of Page Limit* by all plaintiffs. (Attachments: # **1** Proposed Order # **2** Proposed Pleading)(Bricker, Ross) (Entered: 10/17/2006)                                                                                                                                                                                                                                            |
| 10/17/2006 | 87 | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **60** MOTION to Dismiss *Or, In The Alternative, For Summary Judgment*. (Attachments: # **1** Statement of Contested/Uncontested Facts # **2** Affidavit DeGruy# **3** Affidavit Burbank# **4** Affidavit Davenport# **5** Affidavit Jennings# **6** Affidavit Williams# **7** Affidavit Wright# **8** Affidavit Bricker)(Bricker, Ross) (Entered: 10/18/2006)                      |
| 10/18/2006 | 88 | NOTICE by all plaintiffs re **87** Response/Memorandum in Opposition to Motion, *Notice of Filing Exhibits*. (Attachments: # **1** Exhibit A - H# **2** Exhibit I - X# **3** Exhibit Y - OO# **4** Exhibit PP - EEE# **5** Exhibit FFF - MMM)(Bricker, Ross) (Entered: 10/18/2006)                                                                                                                                                             |
| 10/18/2006 | 89 | NOTICE OF DEFICIENT DOCUMENT: re **85** Motion to Compel,. Reason(s) of deficiency: Memorandum or Notice of Hearing not provided (Memorandum in Support must be a separate attachment to Motion). For corrective information, see section(s) D12 on http://www.laed.uscourts.gov/cmecf/Deficiency/deficiency.htm **Attention: Document must be refiled in its entirety within five (5) working days. Otherwise, it may be stricken by the court without further notice. Deficiency remedy due by 10/25/2006.** (lag, ) (Entered: 10/18/2006) |
| 10/18/2006 | 90 | Cross MOTION for Partial Summary Judgment by all plaintiffs. Motion Hearing set for 11/15/2006 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Notice of Hearing # **2** Memorandum in Support # **3** Statement of Contested/Uncontested Facts )(Bricker, Ross) Modified on 10/19/2006 (lag, ). (Entered: 10/18/2006)                                                                                                      |

| | | |
|---|---|---|
| 10/18/2006 | **91** | Request/Statement of Oral Argument by all plaintiffs regarding **90** Cross MOTION for Partial Summary Judgment. (lag, ) (Entered: 10/19/2006) |
| 10/19/2006 | 92 | Correction of Docket Entry by Clerk re **90** Cross MOTION for Partial Summary Judgment; Request for Oral Argument should be filed as a separate document; Docketed as doc. no. 91. (lag, ) (Entered: 10/19/2006) |
| 10/19/2006 | **93** | DEFICIENT NOTICE by Alphonso - Jackson, Housing Authority of New Orleans re **27** MOTION for Reconsideration ;, **45** MOTION to Dismiss for Lack of Jurisdiction *Second Declaration of Ainars Rodins*. (Attachments: # **1** Affidavit Second Ainars Declaration)(Phillips, Heather) Modified on 10/20/2006 (lag, ). (Entered: 10/19/2006) |
| 10/19/2006 | **94** | ERROR: WRONG EVENT - NOTICE by Housing Authority of New Orleans re [89] Notice of Deficient Filing,, *Refiling of motion to compel to correct deficiency*. (Attachments: # **1** Separate supporting memorandum# **2** Exhibit A# **3** Exhibit B# **4** Exhibit C# **5** Exhibit D# **6** Rule 37 Certificate# **7** Notice of Hearing)(Wisdom, Rachel) Modified on 10/20/2006 (lag, ). (Entered: 10/19/2006) |
| 10/19/2006 | **95** | MOTION to Compel Production of Pla's Current Leases by Housing Authority of New Orleans. Motion Hearing set for 11/1/2006 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Certificate# **3** Exhibit # **4** Notice of Hearing)(lag, ) (Entered: 10/20/2006) |
| 10/19/2006 | **98** | ORDER granting **86** Motion for Leave to File document in excess of page limit. Signed by Judge Ivan L. R. Lemelle on 10/18/06. (lag, ) (Entered: 10/20/2006) |
| 10/19/2006 | **99** | ORDER denying **91** Request/Statement of Oral Argument . Signed by Judge Ivan L. R. Lemelle on 10/18/06.(lag, ) (Entered: 10/20/2006) |
| 10/20/2006 | 96 | Correction of Docket Entry by Clerk re **94** Notice ; Wrong event selected; should have been filed as Motion to Compel; Re-docketed as doc. no. 95 (lag, ) (Entered: 10/20/2006) |
| 10/20/2006 | 97 | NOTICE OF DEFICIENT DOCUMENT: re **93** Notice. Reason(s) of deficiency: Leave of court is required to file this document. For corrective information, see section(s) D18 on http://www.laed.uscourts.gov/cmecf/Deficiency/deficiency.htm **Attention: Document must be refiled in its entirety within five (5) working days. Otherwise, it may be stricken by the court without further notice. Deficiency remedy due by 10/27/2006.** (lag, ) (Entered: 10/20/2006) |
| 10/22/2006 | **100** | EXPARTE/CONSENT MOTION for Leave to File *20-page Reply Memorandum* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order |

| | | |
|---|---|---|
| | | Granting leave to File 20-page reply memorandum# **2** Reply In Support Of Motion To Dismiss And Alternative Request For Summary Judgment)(Wisdom, Rachel) (Entered: 10/22/2006) |
| 10/23/2006 | **120** | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice as to Lara E. FitzSimmons (Filing fee $5.) by all plaintiffs. (Attachments: # **1** Affidavit # **2** Certificate)(lag, ) (Entered: 11/01/2006) |
| 10/23/2006 | **122** | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice as to Adam H. Morse (Filing fee $5.) by all plaintiffs. (Attachments: # **1** Affidavit # **2** Certificate)(lag, ) (Entered: 11/01/2006) |
| 10/24/2006 | **101** | EXPARTE/CONSENT MOTION for Leave to File *Supplemental Authority* by all plaintiffs. (Attachments: # **1** Affidavit of D. Martinez# **2** Affidavit of J. Fernandez# **3** Proposed Order)(Bricker, Ross) (Entered: 10/24/2006) |
| 10/24/2006 | **102** | ORDER granting **100** Motion for Leave to File 20-page reply. Signed by Judge Ivan L. R. Lemelle on 10/23/06. (lag, ) (Entered: 10/25/2006) |
| 10/24/2006 | **103** | REPLY to Response to Motion filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **60** MOTION to Dismiss *Or, In The Alternative, For Summary Judgment*. (lag, ) (Entered: 10/25/2006) |
| 10/24/2006 | **105** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **95** MOTION to Compel. (Attachments: # **1** Exhibit)(lag, ) (Entered: 10/26/2006) |
| 10/25/2006 | **104** | Minute Entry for proceedings held before Judge Ivan L. R. Lemelle : Motion Hearing held on 10/25/2006 re **45** MOTION to Dismiss for Lack of Jurisdiction filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development; **60** MOTION to Dismiss *Or, In The Alternative, For Summary Judgment* filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson; **27** MOTION for Reconsideration filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development; Motions are taken under advisement. (Court Reporter Wendy Ricard.) (lag, ) (Entered: 10/26/2006) |
| 10/26/2006 | **106** | EXPARTE/CONSENT MOTION to Appear as Counsel of Record by all plaintiffs. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 10/26/2006) |
| 10/26/2006 | **107** | ORDER granting **101** Motion for Leave to File supplemental memo. Signed by Judge Ivan L. R. Lemelle on 10/25/06. (lag, ) (Entered: 10/27/2006) |
| 10/26/2006 | **109** | ORDER that supplemental memo be filed by 10/27/06 & responsive memo be filed by 10/30/06; Telephone Conference set for 11/2/2006 03:30 PM before Judge Ivan L. R. Lemelle.. Signed by Judge Ivan L. R. Lemelle on 10/25/06.(lag, ) (Entered: 10/27/2006) |

| 10/27/2006 | 108 | ORDER granting 106 Motion to Appear as to Gabriel A. Crowson. Signed by Judge Ivan L. R. Lemelle on 10/26/06. (lag, ) (Entered: 10/27/2006) |
|---|---|---|
| 10/27/2006 | 110 | ORDER Setting/Resetting oral argument on 95 MOTION to Compel prod of plas' current leases: Motion Hearing set for 11/1/2006 11:00 AM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez on 10/26/06.(car, ) (Entered: 10/27/2006) |
| 10/27/2006 | 111 | Supplemental Memorandum filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development, in Support of 45 MOTION to Dismiss for Lack of Jurisdiction. (Attachments: # 1 Demolition or Disposition of Public Housing Projects)(Riess, Daniel) (Entered: 10/27/2006) |
| 10/27/2006 | 112 | Supplemental Memorandum by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson to 60 Motion to Dismiss or in the alter, Motion for Summary Judgment. (Wisdom, Rachel) Modified on 10/30/2006 (lag, ). (Entered: 10/27/2006) |
| 10/27/2006 | 113 | Supplemental Memorandum by all plaintiffs in opposition to 45, 60 Motions to Dismiss . (Bricker, Ross) Modified on 10/30/2006 (lag, ). (Entered: 10/27/2006) |
| 10/30/2006 | 114 | Correction of Docket Entry by Clerk re 112 Supplemental Memorandum ; document improperly linked to document no. 109; Linked to appropriate document, Motion to Dismiss, doc. no. 60 (lag, ) (Entered: 10/30/2006) |
| 10/30/2006 | 115 | Correction of Docket Entry by Clerk re 113 Supplemental Memorandum ; Document was improperly linked to doc. no. 109; Linked to appropriate document nos. 45, 60, Motions to Dismiss (lag, ) (Entered: 10/30/2006) |
| 10/30/2006 | 116 | RESPONSE/MEMORANDUM in Support filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re 60 MOTION to Dismiss *Or, In The Alternative, For Summary Judgment filed pursuant to Court's Order dated 10/25/06*. (Attachments: # 1 Exhibit A: Excerpt From 1998 Overhaul to U.S. Housing Act of 1937)(Wisdom, Rachel) (Entered: 10/30/2006) |
| 10/30/2006 | 117 | RESPONSE/MEMORANDUM in Support filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re 45 MOTION to Dismiss for Lack of Jurisdiction, 27 MOTION for Reconsideration ; *filed pursuant to Court's 10/25/06 Order*. (Phillips, Heather) (Entered: 10/30/2006) |
| 10/30/2006 | 118 | Supplemental Memorandum filed by all plaintiffs, in Opposition of 45 MOTION to Dismiss for Lack of Jurisdiction, 60 MOTION to Dismiss *Or, In The Alternative, For Summary Judgment filed pursuant to Court's 10/25/06 Order*. (Bricker, Ross) (Entered: 10/30/2006) |

| 10/30/2006 | **121** | ORDER granting **120** Motion to Appear Pro Hac Vice as to Lara E. FitzSimmons. . Signed by Judge Ivan L. R. Lemelle on 10/27/06. (lag, ) (Entered: 11/01/2006) |
|---|---|---|
| 10/30/2006 | **123** | ORDER granting **122** Motion to Appear Pro Hac Vice as to Adam H. Morse. . Signed by Judge Ivan L. R. Lemelle on 10/27/06. (lag, ) (Entered: 11/01/2006) |
| 10/31/2006 | **119** | ORDER dismissing as moot **95** Motion to Compel . Signed by Judge Alma L. Chasez. (car, ) (Entered: 11/01/2006) |
| 11/02/2006 | **125** | Minute Entry for proceedings held before Judge Ivan L. R. Lemelle : Telephone Conference held on 11/2/2006. Counsel are advised of deadlines set forth in document. (lag, ) (Entered: 11/07/2006) |
| 11/06/2006 | **124** | EXPARTE/CONSENT MOTION for Leave to File *Supplement to Exhibit GG to R. Bricker Declaration* by all plaintiffs. (Attachments: # **1** Exhibit GG1# **2** Proposed Order)(FitzSimmons, Lara) (Entered: 11/06/2006) |
| 11/08/2006 | **126** | ORDER granting **124** Motion for Leave to Supplement Exhibit GG with Exhibit GG1. Signed by Judge Ivan L. R. Lemelle on 11/6/06. (gec, ) (Entered: 11/08/2006) |
| 11/10/2006 | **127** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **90** Cross MOTION for Partial Summary Judgment. (Attachments: # **1** Statement of Contested/Uncontested Facts # **2** Attachment 1# **3** Attachment 2# **4** Attachment 3# **5** Attachment 4# **6** Attachment 5)(Wisdom, Rachel) Notice of Manual Attachment added on 11/15/2006 (gec, ). (Entered: 11/10/2006) |
| 11/14/2006 | **128** | **DEFICIENT** MOTION for Extension of Deadlines by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion Hearing set for 11/16/2006 11:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Proposed Order # **2** Notice of Hearing request for expedited hearing# **3** order for expedited hearing)(Wisdom, Rachel) Modified on 11/15/2006 (gec, ). (Entered: 11/14/2006) |
| 11/15/2006 | 129 | NOTICE OF DEFICIENT DOCUMENT: re **128** Motion for Extension of Deadlines. Reason(s) of deficiency: Attachment, MOTION FOR EXPEDITED HEARING, should have been a separate document. For corrective information, see section(s) D02 on http://www.laed.uscourts.gov/cmecf/Deficiency/deficiency.htm **Attention: Document must be refiled in its entirety within five (5) working days. Otherwise, it may be stricken by the court without further notice. Deficiency remedy due by 11/22/2006.** (gec, ) (Entered: 11/15/2006) |
| 11/15/2006 | **130** | **DEFICIENT** MOTION for Extension of Deadlines by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. |

| | | |
|---|---|---|
| | | Motion Hearing set for 11/16/2006 11:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) Modified on 11/17/2006 (gec, ). (Entered: 11/15/2006) |
| 11/15/2006 | **131** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Motion To Extend Submission Date for Joint Report* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) (Entered: 11/15/2006) |
| 11/17/2006 | 132 | NOTICE OF DEFICIENT DOCUMENT: re **130** Motion for Extension of Deadlines,. Reason(s) of deficiency: Incorrect, illegible or incomplete document or improper formatting of PDF. MEMORANDUM IN SUPPORT AND NOTICE OF HEARING NOT ATTACHED. For corrective information, see section(s) D01 on http://www.laed.uscourts.gov/cmecf/Deficiency/deficiency.htm **Attention: Document must be refiled in its entirety within five (5) working days. Otherwise, it may be stricken by the court without further notice. Deficiency remedy due by 11/27/2006.** (gec, ) (Entered: 11/17/2006) |
| 11/17/2006 | **133** | MOTION for Extension of Deadlines by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion Hearing set for 11/16/2006 11:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing # **3** Proposed Order)(Wisdom, Rachel) (Entered: 11/17/2006) |
| 11/20/2006 | **134** | EXPARTE/CONSENT MOTION for Temporary Restraining Order by all plaintiffs. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Exhibit # **4** Exhibit # **5** Exhibit # **6** Exhibit)(Bricker, Ross) (Entered: 11/20/2006) |
| 11/20/2006 | **135** | ORDER granting **133** Motion for Extension of Deadlines, denying as moot **131** Motion to Expedite. Signed by Judge Ivan L. R. Lemelle on 11/16/06. (lag, ) (Entered: 11/20/2006) |
| 11/21/2006 | **136** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **134** MOTION for Temporary Restraining Order *filed Ex Parte by Plaintiffs*. (Attachments: # **1** Exhibit A# **2** Exhibit B# **3** Exhibit C)(Wisdom, Rachel) (Entered: 11/21/2006) |
| 11/21/2006 | **137** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **134** MOTION for Temporary Restraining Order. (Attachments: # **1** Third Rodins Declaration)(Riess, Daniel) (Entered: 11/21/2006) |
| 11/21/2006 | **138** | ORDER denying **134** Motion for Temporary Restraining Order. Signed by Judge Ivan L. R. Lemelle. (lag, ) (Entered: 11/22/2006) |
| 11/22/2006 | **139** | DEFICIENT MOTION to Alter Judgment **138** Order on Motion for Temporary Restraining Order by all plaintiffs. Motion Hearing set for |

| | | |
|---|---|---|
| | | 1/3/2007 10:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Notice of Hearing)(Bricker, Ross) Modified on 11/27/2006 (lag, ). (Entered: 11/22/2006) |
| 11/22/2006 | **140** | EXPARTE/CONSENT MOTION to Expedite *Motion to Alter or Amend Judgment* by all plaintiffs. (Attachments: # **1** Proposed Order)(Bricker, Ross) Modified on 11/27/2006 (lag, ). (Entered: 11/22/2006) |
| 11/27/2006 | 141 | Correction of Docket Entry by Clerk re **140** MOTION to Expedite *Motion to Alter or Amend Judgment* ; Motion should be designated as "Exparte/Consent" (lag, ) (Entered: 11/27/2006) |
| 11/27/2006 | **142** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **139** MOTION to Alter Judgment **138** Order on Motion for Temporary Restraining Order MOTION to Alter Judgment **138** Order on Motion for Temporary Restraining Order. (Riess, Daniel) (Entered: 11/27/2006) |
| 11/27/2006 | **143** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **139** MOTION to Alter Judgment **138** Order on Motion for Temporary Restraining Order MOTION to Alter Judgment **138** Order on Motion for Temporary Restraining Order. (Wisdom, Rachel) (Entered: 11/27/2006) |
| 11/29/2006 | **144** | MOTION to Alter Judgment **138** Order on Motion for Temporary Restraining Order by all plaintiffs. Motion Hearing set for 1/3/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing)(Bricker, Ross) (Entered: 11/29/2006) |
| 11/29/2006 | **145** | EXPARTE/CONSENT MOTION to Expedite *Motion to Alter or Amend Judgment* by all plaintiffs. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 11/29/2006) |
| 11/30/2006 | **146** | ORDER Status Conference set for 12/5/2006 09:00 AM before Judge Ivan L. R. Lemelle; each party shall submit settlement position by 12/4/06. Signed by Judge Ivan L. R. Lemelle.(lag, ) (Entered: 11/30/2006) |
| 11/30/2006 | **147** | ORDER denying **144** Motion to Alter Judgment; denying **145** Motion to Expedite. Signed by Judge Ivan L. R. Lemelle on 11/29/06. (lag, ) (Entered: 11/30/2006) |
| 11/30/2006 | **148** | ORDER denying as moot **140** MOTION to Expedite *Motion to Alter or Amend Judgment*. Signed by Judge Ivan L. R. Lemelle.(lag, ) (Entered: 11/30/2006) |
| 12/05/2006 | **149** | Minute Entry for proceedings held before Judge Ivan L. R. Lemelle : Status Conference held on 12/5/2006. Parties are to submit suppl confidential settlement proposals by 12/14/06 & 12/15/06 as set forth in |

| | | document. (lag, ) (Entered: 12/06/2006) |
|---|---|---|
| 12/15/2006 | **150** | STATUS REPORT *REGARDING MEETINGS* by all parties. (Attachments: # **1** Exhibit HANO A-D# **2** Exhibit HANO E will be filed manually# **3** Exhibit Plaintiffs' 1 will be filed manually# **4** Exhibit Plaintiffs' 2# **5** Exhibit Plaintiffs' 3# **6** Exhibit Plaintiffs' 4# **7** Exhibit Plaintiffs' 5# **8** Exhibit Plaintiffs' 6# **9** Exhibit Plaintiffs' Exhibit 7)(Wisdom, Rachel) (Entered: 12/15/2006) |
| 12/20/2006 | **151** | Minute Entry for proceedings held before Judge Ivan L. R. Lemelle : Settlement Conference held on 12/20/2006. Parties shall submit proposals to Court by 12/29/06; Further Settlement Conference set for 12/29/2006 10:00 AM before Judge Ivan L. R. Lemelle. (lag, ) (Entered: 12/22/2006) |
| 01/22/2007 | **152** | ANSWER to Complaint with Jury Demand, THIRD PARTY COMPLAINT against Mayday NOLA, Garelle Smith, Endesha Jukali, Cynthia Thompson Jordan, Shadrika Zeno, Latica Russell, Gloria Irving, Sharon Jasper, Shawanda Miller, Rose Guy, Elaine Gibson, Phyllis Lewis, Stephanie Mingo, COUNTERCLAIM against all plaintiffs by Defendants Housing Authority of New Orleans, C. Donald Babers, William C. Thorson.(Wisdom, Rachel) Modified on 1/23/2007 (lag, ). (Entered: 01/22/2007) |
| 01/22/2007 | **153** | MOTION for Temporary Restraining Order by Housing Authority of New Orleans. Motion Hearing set for 2/28/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Proposed Order # **2** Notice of Hearing # **3** Memorandum in Support # **4** Affidavit # **5** Exhibit A# **6** Exhibit B# **7** Exhibit C# **8** Exhibit D# **9** Exhibit E# **10** Exhibit F# **11** Errata G# **12** Exhibit H# **13** Exhibit I# **14** Exhibit J)(Wisdom, Rachel) Modified on 1/23/2007 (lag, ). (Entered: 01/22/2007) |
| 01/22/2007 | **154** | EXPARTE/CONSENT MOTION to Expedite *Hearing of Motion for Temporary Restraining Order* by Housing Authority of New Orleans. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) (Entered: 01/22/2007) |
| 01/22/2007 | **156** | Minute Entry for proceedings held before Judge Ivan L. R. Lemelle : Status Conference held on 1/22/2007. Ordered that plas file memo in opp to Mtn for TRO by 1/25/07 at 12:00 PM. (lag, ) (Entered: 01/23/2007) |
| 01/22/2007 | **159** | STIPULATION of Dismissal without prejudice by plaintiffs & defendants dismissing Emelda Paul. (lag, ) (Entered: 01/25/2007) |
| 01/23/2007 | 155 | Correction of Docket Entry by Clerk re **153** MOTION for Temporary Restraining Order ; Set hearing date incorrectly in entry; Motion is set for 2/28/07 at 9:00 AM before Judge Ivan L.R. Lemelle (lag, ) (Entered: 01/23/2007) |
| 01/24/2007 | **157** | Witness List by Housing Authority of New Orleans. (Wisdom, Rachel) |

| | | |
|---|---|---|
| | | (Entered: 01/24/2007) |
| 01/24/2007 | **158** | EXPARTE/CONSENT MOTION for Writ of Habeas Corpus ad testificandum as to Garelle Smith by Housing Authority of New Orleans. (Attachments: # **1** Proposed Order # **2** Exhibit Proposed Writ of Habeas Corpus Ad Testificandum)(Wisdom, Rachel) (Entered: 01/24/2007) |
| 01/25/2007 | **160** | Witness List by Housing Authority of New Orleans. (Wisdom, Rachel) (Entered: 01/25/2007) |
| 01/25/2007 | **161** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **153** MOTION for Temporary Restraining Order. (Attachments: # **1** Affidavit of R. Elliott# **2** Affidavit of D. Everard# **3** Affidavit of L. Flavin# **4** Affidavit of H. Prejean# **5** Affidavit of J. Rodrigue# **6** Affidavit of M. Swanson)(Bricker, Ross) (Entered: 01/25/2007) |
| 01/25/2007 | **162** | ERROR: WRONG EVENT - Statement by all plaintiffs *Plaintiffs' Witness List for Hearing on Motion for Temporary Restraining Order*. (Bricker, Ross) Modified on 1/26/2007 (lag, ). (Entered: 01/25/2007) |
| 01/25/2007 | **163** | Witness List by all plaintiffs. (lag, ) (Entered: 01/26/2007) |
| 01/26/2007 | 164 | Correction of Docket Entry by Clerk re **162** Statement ; Wrong Event used. Should have been filed as "Witness List"; Re-filed by Clerk, doc. no. 163. (lag, ) (Entered: 01/26/2007) |
| 01/26/2007 | **165** | ORDER re **159** Stipulation of Dismissal that Emelda Paul's claims agst dfts are dismissed w/o prej. Signed by Judge Ivan L. R. Lemelle on 1/25/07.(lag, ) (Entered: 01/26/2007) |
| 01/26/2007 | **166** | MOTION to Strike **163** Witness List *Portions of Witness list* by Housing Authority of New Orleans. Motion Hearing set for 3/14/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing)(Wisdom, Rachel) (Entered: 01/26/2007) |
| 01/26/2007 | **167** | EXPARTE/CONSENT MOTION to Expedite *Hearing On Motion To Strike Portions of Plaintiffs' Witness List* by Housing Authority of New Orleans. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) (Entered: 01/26/2007) |
| 01/28/2007 | **168** | EXPARTE/CONSENT MOTION for Leave to File *13-Page Reply Memorandum* by Housing Authority of New Orleans. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) Proposed Pleading added on 1/29/2007 (lag, ). (Entered: 01/28/2007) |
| 01/28/2007 | **169** | ERROR: SHOULD HAVE BEEN FILED AS ATTACHMENT - REPLY to Response to Motion filed by Housing Authority of New Orleans re **153** MOTION for Temporary Restraining Order, **168** MOTION for Leave to File *13-Page Reply Memorandum*. (Attachments: # **1** Exhibit A# **2** Exhibit B# **3** Exhibit C# **4** Exhibit D# **5** |

| | | Exhibit F# **6** Exhibit cover sheet for cd of audio recording to be filed manually)(Wisdom, Rachel) Modified on 1/29/2007 (lag, ). (Entered: 01/28/2007) |
|---|---|---|
| 01/29/2007 | 170 | Correction of Docket Entry by Clerk re **169** Reply to Response to Motion; Document should have been filed as Attachment to Motion for Leave to File, doc. no. 168. (lag, ) (Entered: 01/29/2007) |
| 01/30/2007 | **171** | MOTION to Strike **163** Witness List *Portions of Witness list* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 3/14/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing)(Riess, Daniel) (Entered: 01/30/2007) |
| 01/31/2007 | **172** | ORDER granting **168** Motion for Leave to File reply memo. Signed by Judge Ivan L. R. Lemelle on 1/29/07. (lag, ) (Entered: 02/02/2007) |
| 01/31/2007 | **173** | REPLY to Response to Motion filed by Housing Authority of New Orleans re **153** MOTION for Temporary Restraining Order. (Attachments: # **1** Exhibit A# **2** Exhibit B# **3** Exhibit C# **4** Exhibit D# **5** Exhibit F# **6** Notice of Manual Attachment)(lag, ) (Entered: 02/02/2007) |
| 02/06/2007 | **174** | Minute Entry for proceedings held before Judge Ivan L. R. Lemelle : Telephone Conference held on 2/6/2007; **153** MOTION for Temporary Restraining Order filed by Housing Authority of New Orleans is denied ; All related motions **166**, **171**, **154**, **158**, **167** are denied as moot. Parties shall submit joint case management order and dates by 2/9/07 as set forth in document. (lag, ) (Entered: 02/08/2007) |
| 02/06/2007 | **175** | ORDER denying **21** Motion for Preliminary Injunction; denying as moot **27** Motion for Reconsideration ; granting in part and denying in part **45** Motion to Dismiss for Lack of Jurisdiction; granting in part and denying in part **60** Motion to Dismiss or alternatively for Summary Judgment; denying **90** Motion for Partial Summary Judgment. Signed by Judge Ivan L. R. Lemelle. (lag, ) (Entered: 02/08/2007) |
| 02/13/2007 | **176** | Proposed Case Management Order by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson, Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Exhibit A-1# **2** Exhibit A-2# **3** Exhibit A-3# **4** Exhibit A-4# **5** Exhibit A-5)(Wisdom, Rachel) Modified on 2/14/2007 (lag, ). (Entered: 02/13/2007) |
| 02/13/2007 | **177** | Proposed Case Management Order by all plaintiffs. (Bricker, Ross) Modified on 2/14/2007 (lag, ). (Entered: 02/13/2007) |
| 02/21/2007 | **178** | MOTION to Alter Judgment re **175** Order by Yolanda Anderson, Gilda Burbank, Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice |

| | | |
|---|---|---|
| | | Doucet, Linda DeGruy, Kim Paul . Motion Hearing set for 3/14/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing)(Bricker, Ross) Modified on 2/22/2007 (lag, ). (Entered: 02/21/2007) |
| 02/21/2007 | **179** | Request/Statement of Oral Argument by all plaintiffs regarding **178** MOTION to Alter Judgment. (lag, ) (Entered: 02/22/2007) |
| 02/22/2007 | 180 | Correction of Docket Entry by Clerk re **178** MOTION to Alter Judgment ; Not all parties were selected; ALSO - Request for Oral Argument should be separate document, re-docketed as doc. no. 179. (lag, ) (Entered: 02/22/2007) |
| 03/01/2007 | **181** | EXPARTE/CONSENT Emergency MOTION for Protective Order by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Proposed Order)(Riess, Daniel) Modified on 3/2/2007 (lag, ). (Entered: 03/01/2007) |
| 03/05/2007 | **182** | ERROR: SHOULD HAVE BEEN FILED AS ATTACHMENT - MOTION to Quash *and for Entry of Protective Order Staying Discovery* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** L.R. 37.1 Certificate# **3** Exhibit A# **4** Exhibit B# **5** Exhibit C# **6** Exhibit D)(Lonian, Heather) Modified on 3/6/2007 (lag, ). (Entered: 03/05/2007) |
| 03/05/2007 | **183** | EXPARTE/CONSENT MOTION to Expedite *Motion to Quash Depositions and for Entry of Protective Order Staying Discovery* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Lonian, Heather) Additional attachment(s) added on 3/6/2007 (lag, ). (Entered: 03/05/2007) |
| 03/05/2007 | **184** | ERROR: SHOULD HAVE BEEN FILED AS ATTACHMENT - Request/Statement of Oral Argument by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson regarding **182** MOTION to Quash *and for Entry of Protective Order Staying Discovery*. (Lonian, Heather) Modified on 3/6/2007 (lag, ). (Entered: 03/05/2007) |
| 03/06/2007 | 185 | Correction of Docket Entry by Clerk re **182** MOTION to Quash *and for Entry of Protective Order Staying Discovery*, **184** Request/Statement of Oral Argument; Should have been filed as "Proposed Pleadings" attached to Motion to Expedite Hearing. (lag, ) (Entered: 03/06/2007) |
| 03/06/2007 | **186** | ORDER Setting/Resetting Oral Hearing on **181** Emergency MOTION for Protective Order : Motion Hearing set for 3/14/2007 11:00 AM before Magistrate Judge Alma L. Chasez. Signed by Judge Alma L. Chasez on 3/5/07.(ala, ) (Entered: 03/06/2007) |

| 03/06/2007 | **187** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **181** Emergency MOTION for Protective Order. (Bricker, Ross) (Entered: 03/06/2007) |
|---|---|---|
| 03/06/2007 | **188** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **178** MOTION to Alter Judgment **175** Order . (Riess, Daniel) Modified on 3/7/2007 (lag, ). (Entered: 03/06/2007) |
| 03/06/2007 | **189** | MEMORANDUM filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **178** MOTION to Alter Judgment **175** Order . (Wisdom, Rachel) Modified on 3/7/2007 (lag, ). (Entered: 03/06/2007) |
| 03/06/2007 | **190** | ORDER denying **179** Request/Statement of Oral Argument. Signed by Judge Ivan L. R. Lemelle on 3/5/07.(lag, ) (Entered: 03/07/2007) |
| 03/08/2007 | **191** | ORDER granting **183** Motion to Expedite Motion to Quash Depositions and for Entry of Protective Order Staying Discovery. Signed by Judge Alma L. Chasez on 3/7/2007. (caa, ) (Entered: 03/08/2007) |
| 03/08/2007 | **192** | MOTION to Quash Depositions & MOTION for Protective Order Staying Discovery by Housing Authority of New Orleans, C. Donald Babers & William C. Thorson. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 3/14/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Certificate# **3** Exhibit A# **4** Exhibit B# **5** Exhibit C# **6** Exhibit D)(caa, ) (Entered: 03/08/2007) |
| 03/08/2007 | **193** | Request/Statement of Oral Argument by Housing Authority of New Orleans, C. Donald Babers & William C. Thorson regarding **192** MOTION to Quash MOTION for Protective Order. (caa, ) (Entered: 03/08/2007) |
| 03/09/2007 | **194** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **192** MOTION to Quash MOTION for Protective Order. (Bricker, Ross) (Entered: 03/09/2007) |
| 03/09/2007 | **195** | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandum Supporting Motion for Protective Order* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Pleading (Reply Memorandum)# **2** Proposed Order)(Riess, Daniel) (Entered: 03/09/2007) |
| 03/12/2007 | **196** | EXPARTE/CONSENT MOTION for Leave to File by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order # **2** Exhibit Reply In Support of Motion To Quash and For Protective Order)(Wisdom, Rachel) (Entered: 03/12/2007) |

| 03/14/2007 | 197 | ORDER granting **196** Motion for Leave to File. Signed by Judge Alma L. Chasez on 3/13/07. (ala, ) (Entered: 03/16/2007) |
|---|---|---|
| 03/14/2007 | 199 | Minute Entry for proceedings held before Judge Alma L. Chasez : Motion Hearing held on 3/14/2007 re **192** MOTION to Quash MOTION for Protective Order filed by C. Donald Babers, William C. Thorson, Housing Authority of New Orleans, **181** Emergency MOTION for Protective Order filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development. The motions are hereby taken under advisement. (ala, ) (Entered: 03/16/2007) |
| 03/16/2007 | 198 | RESPONSE/MEMORANDUM in Support filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **192** MOTION to Quash MOTION for Protective Order. (ala, ) (Entered: 03/16/2007) |
| 03/16/2007 | 200 | EXPARTE/CONSENT MOTION to Expedite *Hearing on Motion to Bifurcate Class Proceedings From Merits Discovery And Proceedings* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) (Entered: 03/16/2007) |
| 03/16/2007 | 201 | MOTION to Bifurcate *Class Proceedings from Merits Discovery and Proceedings* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion Hearing set for 4/11/2007 09:00 AM before Judge Ivan L.R. Lemelle. (Attachments: # (1) Notice of Hearing # **2** Memorandum in Support # **3** Exhibit A# **4** Exhibit B)(Wisdom, Rachel) Modified on 3/19/2007 (lag, ). (Entered: 03/16/2007) |
| 03/19/2007 | 202 | Correction of Docket Entry by Clerk re **201** MOTION to Bifurcate *Class Proceedings from Merits Discovery and Proceedings* ; Motion was not set for a valid hearing date; Motion reset to 4/11/07 9:00 AM before Judge Ivan L.R. Lemelle. (lag, ) (Entered: 03/19/2007) |
| 03/19/2007 | 203 | STIPULATION by all plaintiffs *and defendants Housing Authority of New Orleans, C. Donald Babers and William C. Thorson*. (Attachments: # **1** Affidavit Proposed Confidential Undertaking)(Dixon, Monique) (Entered: 03/19/2007) |
| 03/21/2007 | 204 | ORDER Settlement Conference set for 3/27/2007 09:00 AM before Magistrate Judge Alma L. Chasez. Signed by Judge Alma L. Chasez on 3/20/07.(ala, ) (Entered: 03/21/2007) |
| 03/21/2007 | 205 | ORDER denying **200** Motion to Expedite hrg on Mtn to Bifurcate. Signed by Judge Ivan L. R. Lemelle. (lag, ) (Entered: 03/22/2007) |
| 03/22/2007 | 206 | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **201** MOTION to Bifurcate *Class Proceedings from Merits Discovery and Proceedings*. (Bricker, Ross) (Entered: 03/22/2007) |
| 03/22/2007 | 207 | MOTION to Compel by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia |

| | | |
|---|---|---|
| | | Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 4/11/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit A# **3** Exhibit B# **4** Exhibit C# **5** Exhibit D# **6** Exhibit E# **7** Exhibit F# **8** Exhibit G# **9** Exhibit H# **10** Exhibit I# **11** Exhibit J# **12** Exhibit K# **13** Exhibit L# **14** Exhibit M# **15** Exhibit N# **16** Exhibit O# **17** Exhibit P# **18** Exhibit Q# **19** Exhibit R# **20** Exhibit S# **21** Notice of Hearing # **22** Proposed Order)(Bricker, Ross) (Entered: 03/22/2007) |
| 03/22/2007 | **208** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Plaintiffs' Motion to Compel* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 03/22/2007) |
| 03/26/2007 | **209** | **\*\*DEFICIENT\*\*** RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans re **207** MOTION to Compel *and Request for Attorneys' Fees*. (Lonian, Heather) Modified on 3/27/2007 (dmg, ). (Entered: 03/26/2007) |
| 03/26/2007 | **210** | CASE MANAGEMENT ORDER / SCHEDULING ORDER: Hearing on **43** MOTION to Certify Class set for 9/17/2007 9:00 AM; Final Pretrial Conference set for 11/15/2007 09:00 AM before Judge Ivan L. R. Lemelle. Jury Trial set for 11/26/2007 08:30 AM before Judge Ivan L. R. Lemelle.. Signed by Judge Ivan L. R. Lemelle. (Attachments: # **1** Pretrial Notice Form)(lag, ) (Entered: 03/27/2007) |
| 03/27/2007 | **211** | Stipulated PROTECTIVE ORDER. Signed by Judge Ivan L. R. Lemelle.(lag, ) (Entered: 03/28/2007) |
| 03/27/2007 | **212** | Minute Entry for proceedings held before Judge Alma L. Chasez : Settlement Conference held on 3/27/2007. Settlement Conference set for 7/10/2007 09:30 AM before Magistrate Judge Alma L. Chasez. (ala, ) (Entered: 03/29/2007) |
| 03/29/2007 | **213** | EXPARTE/CONSENT MOTION to Amend/Correct *(Motion for Clarification)* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Memorandum Supporting Motion for Protective Order# **2** Plaintiffs' Brief Opposing Motion for Protective Order# **3** Reply Memorandum Supporting Motion for Protective Order# **4** Proposed Order)(Riess, Daniel) (Entered: 03/29/2007) |
| 04/01/2007 | **214** | EXPARTE/CONSENT MOTION to Expedite *Motion for Attorneys' Fees* by Housing Authority of New Orleans. (Attachments: # **1** Proposed Order # **2** Proposed Pleading # **3** Proposed Pleading)(Lonian, |

| | | Heather) (Entered: 04/01/2007) |
|---|---|---|
| 04/02/2007 | 215 | ORDER dismissing as moot **181** Motion for Protective Order; **192** Motion to Quash; and **192** Motion for Protective Order. Signed by Judge Alma L. Chasez. (ala, ) (Entered: 04/03/2007) |
| 04/03/2007 | 216 | ERROR: SHOULD BE ATTACHMENTS - MOTION to Strike *Plaintiffs' Jury Demand for Claims Against the Federal Defendants* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 4/25/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support)(Riess, Daniel) Modified on 4/4/2007 (lag, ). (Entered: 04/03/2007) |
| 04/03/2007 | 217 | EXPARTE/CONSENT MOTION to Expedite *Hearing on Motion to Strike Plaintiffs' Jury Demand for Claims Against the Federal Defendants* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order # (2) Proposed Motion # **3** Proposed Memo in Support)(Riess, Daniel) Modified on 4/4/2007 (lag, ). (Entered: 04/03/2007) |
| 04/04/2007 | 218 | Correction of Docket Entry by Clerk re **216** MOTION to Strike *Plaintiffs' Jury Demand for Claims Against the Federal Defendants* ; SINCE THERE IS NO NOTICE OF HEARING ON MOTION TO STRIKE, MOTION & MEMO IN SUPPORT SHOULD BE ATTACHED AS "PROPOSED PLEADINGS" TO MOTION TO EXPEDITE. (lag, ) (Entered: 04/04/2007) |
| 04/04/2007 | 219 | ERROR: SHOULD BE ATTACHMENTS - MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court re **215** Order on Motion for Protective Order, Order on Motion to Quash, *and for Entry of a Protective Order* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 4/11/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Exhibit)(Riess, Daniel) Modified on 4/5/2007 (lag, ). (Entered: 04/04/2007) |
| 04/04/2007 | 220 | EXPARTE/CONSENT MOTION to Expedite *Rule 72(a) Motion to Review the Magistrate Judge's March 30, 2007 Order and for Entry of a Protective Order* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order # **2** Proposed Pleading # **3** Proposed Pleading)(Riess, Daniel) Additional attachment(s) added on 4/5/2007 (lag, ). (Entered: 04/04/2007) |
| 04/05/2007 | 221 | Correction of Docket Entry by Clerk re **219** MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court re **215** Order on Motion for Protective Order, Order on Motion to Quash, *and for Entry of a Protective Order* ; SINCE THERE IS NO NOTICE OF HEARING ON MOTION TO REVIEW MAG'S ORDER, MOTION AND MEMO IN SUPPORT SHOULD BE ATTACHMENTS TO MOTION TO |

| | | |
|---|---|---|
| | | EXPEDITE (DOC. NO. 220) AS "PROPOSED PLEADINGS." (lag, ) (Entered: 04/05/2007) |
| 04/05/2007 | 222 | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandum in Further Support of Plaintiffs' Motion to Compel and in Opposition to HANO's Motion for Attorneys' Fees* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order # **2** Proposed Pleading Reply Memorandum in Further Support of Plaintiffs' Motion to Compel and in Opposition to HANO's Motion for Attorneys' Fees)(Bricker, Ross) (Entered: 04/05/2007) |
| 04/05/2007 | 223 | ORDER Setting/Resetting ORAL argument on **207** MOTION to Compel : Motion Hearing set for 4/11/2007 11:00 AM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez on 4/4/07.(car, ) (Entered: 04/05/2007) |
| 04/05/2007 | 224 | MOTION for Attorney Fees by Housing Authority of New Orleans. (Attachments: # **1** Memorandum in Support)(car, ) (Entered: 04/05/2007) |
| 04/05/2007 | 225 | ORDER granting the mtn for expedited hrg and Setting/Resetting oral argument Hearing on **224** MOTION for Attorney Fees : Motion Hearing set for 4/11/2007 11:00 AM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez on 4/4/07.(car, ) (Entered: 04/05/2007) |
| 04/05/2007 | 226 | ORDER denying **213** Motion to Amend/Correct Motion for Clarification. Signed by Judge Ivan L. R. Lemelle on 4/3/07. (lag, ) (Entered: 04/05/2007) |
| 04/05/2007 | 227 | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **220** MOTION to Expedite *Rule 72(a) Motion to Review the Magistrate Judge's March 30, 2007 Order and for Entry of a Protective Order* . (Bricker, Ross) Modified on 4/6/2007 (lag, ). (Entered: 04/05/2007) |
| 04/05/2007 | 228 | ORDER denying **220** Motion to Expedite hrg on Rule 72(a) Mtn to Review Mag's order. Signed by Judge Ivan L. R. Lemelle. (lag, ) (Entered: 04/06/2007) |
| 04/05/2007 | 229 | ORDER denying **217** Motion to Expedite hrg on Mtn to Strike jury demand. Signed by Judge Ivan L. R. Lemelle. (lag, ) (Entered: 04/06/2007) |
| 04/10/2007 | 230 | DEFICIENT NOTICE of Hearing on Motion filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 4/25/2007 before Judge Ivan L. R. Lemelle., (Riess, Daniel) Modified on 4/11/2007 (lag, ). (Entered: 04/10/2007) |

| 04/10/2007 | 231 | DEFICIENT NOTICE of Hearing on Motion filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 4/25/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Riess, Daniel) Modified on 4/11/2007 (lag, ). (Entered: 04/10/2007) |
| --- | --- | --- |
| 04/11/2007 | 232 | ORDER granting 222 Motion for Leave to File reply memo. Signed by Judge Alma L. Chasez on 4/10/07. (car, ) (Entered: 04/12/2007) |
| 04/11/2007 | 233 | REPLY Memo in support of Motion filed by all plaintiffs re 207 MOTION to Compel. (car, ) (Entered: 04/12/2007) |
| 04/11/2007 | 237 | Minute Entry for proceedings held before Judge Alma L. Chasez : Motion Hearing held on 4/11/2007 re 224 MOTION for Attorney Fees filed by Housing Authority of New Orleans - DENIED; 207 MOTION to Compel continued to 4/18/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (car, ) (Entered: 04/13/2007) |
| 04/12/2007 | 234 | DEFICIENT NOTICE of Appearance by Varu Chilakamarri on behalf of Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Chilakamarri, Varu) Modified on 4/13/2007 (lag, ). (Entered: 04/12/2007) |
| 04/12/2007 | 235 | MOTION to Strike *Plaintiffs' Jury Demand* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 5/9/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # 1 Memorandum in Support # 2 Notice of Hearing)(Phillips, Heather) (Entered: 04/12/2007) |
| 04/13/2007 | 236 | Correction of Docket Entry by Clerk re 235 MOTION to Strike *Plaintiffs' Jury Demand* ; Signature on Motion & Memo in Support do not match filer. Attorney is advised of this signature requirement. No further action is required for this document. (lag, ) (Entered: 04/13/2007) |
| 04/16/2007 | 238 | MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court re 215 Order on Motion for Protective Order, Order on Motion to Quash, by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 5/9/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # 1 Memorandum in Support # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Notice of Hearing)(Riess, Daniel) (Entered: 04/16/2007) |
| 04/16/2007 | 239 | EXPARTE/CONSENT MOTION to Appear as Counsel of Record by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # 1 Proposed Order)(Riess, Daniel) (Entered: 04/16/2007) |
| 04/16/2007 | 256 | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice (Filing fee $5.) by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann |

| | | |
|---|---|---|
| | | Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Exhibit)(lag, ) (Entered: 04/25/2007) |
| 04/18/2007 | **240** | ORDER Setting/Resetting Hearing on **207** MOTION to Compel : Motion Hearing set for 4/25/2007 11:00 AM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez.(car, ) (Entered: 04/18/2007) |
| 04/18/2007 | **241** | MOTION for Protective Order by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 5/9/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit First Requests for Production# **3** Exhibit 30(b)(6) Dep Notice# **4** Exhibit Jackson Dep Notice# **5** Exhibit Second Requests for Production# **6** Exhibit Interrogatories# **7** Exhibit Requests for Admission# **8** Affidavit Lane Declaration# **9** Affidavit Henderson Declaration# **10** Notice of Hearing)(Riess, Daniel) Modified on 4/19/2007 (lag, ). (Entered: 04/18/2007) |
| 04/18/2007 | **242** | EXPARTE/CONSENT MOTION to Expedite *Consideration of Motion for Protective Order* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Riess, Daniel) (Entered: 04/18/2007) |
| 04/18/2007 | **243** | MOTION to Compel by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 5/9/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit # **3** Exhibit B# **4** Exhibit C# **5** Exhibit D# **6** Proposed Order # **7** Notice of Hearing)(Bricker, Ross) (Entered: 04/18/2007) |
| 04/18/2007 | **244** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Plaintiffs' Motion to Compel* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 04/18/2007) |
| 04/19/2007 | 245 | Correction of Docket Entry by Clerk re **241** MOTION for Protective Order ; Motion was not set for a valid hearing date. Motion is reset to be heard 5/9/07 11:00 AM before Magistrate Alma Chasez. (lag, ) (Entered: 04/19/2007) |
| 04/20/2007 | **246** | DEFICIENT RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban |

| | | |
|---|---|---|
| | | Development re **243** MOTION to Compel. (Chilakamarri, Varu) Modified on 4/23/2007 (lag, ). (Entered: 04/20/2007) |
| 04/20/2007 | **247** | ORDER granting the **242** MOTION to Expedite *Consideration of Motion for Protective Order* filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development. **241** MOTION for Protective Order set for 4/25/2007 04:00 PM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez.(car, ) (Entered: 04/23/2007) |
| 04/20/2007 | **248** | ORDER granting **244** MOTION to Expedite *Hearing on Plaintiffs' Motion to Compel* filed by Allen Harris, Gilda Burbank, Gloria Williams, Judith Watson, Odessia Lewis, Yolanda Anderson, Hilda Johnson, Mary Ann Wright, Kim Paul, Donna Johnigan, Lolita Gibson, Emelda May, Cynthia Bell, Sylvia Moten, Nicole Banks, Linda DeGruy, Catrice Doucet. **243** MOTION to Compel set for 4/25/2007 04:00 PM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez.(car, ) (Entered: 04/23/2007) |
| 04/20/2007 | **249** | ORDER Setting/Resetting Hearing on **207** MOTION to Compel : Motion Hearing set for 4/25/2007 04:00 PM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez.(car, ) (Entered: 04/23/2007) |
| 04/20/2007 | **257** | ORDER granting **256** Motion to Appear Pro Hac Vice as to Abby J. Clark.. Signed by Judge Ivan L. R. Lemelle on 4/19/07. (lag, ) (Entered: 04/25/2007) |
| 04/23/2007 | **250** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Motion To Compel* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) (Entered: 04/23/2007) |
| 04/23/2007 | **251** | MOTION to Compel *Rule 26 Disclosure* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 5/9/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # (2) Exhibit A# **3** Local Rule 37.1 Certificate# **4** Notice of Hearing)(Wisdom, Rachel) Modified on 4/24/2007 (lag, ). Corrected Exhibit A added on 4/26/2007 (car, ). Modified on 4/26/2007 (car, ). (Entered: 04/23/2007) |
| 04/23/2007 | **252** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **243** MOTION to Compel. (Riess, Daniel) (Entered: 04/23/2007) |
| 04/23/2007 | **253** | EXPARTE/CONSENT MOTION to Substitute *Exhibit and to Place Document Under Seal* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. |

| | | |
|---|---|---|
| | | Chasez. (Attachments: # **1** Proposed Order # **2** Proposed Pleading)(Lonian, Heather) (Entered: 04/23/2007) |
| 04/24/2007 | 254 | Correction of Docket Entry by Clerk re **251** MOTION to Compel *Rule 26 Disclosure* ; Incorrect hearing date was set in entry. Corrected hearing date. Motion is set for hearing 5/9/2007 11:00 AM before Magistrate Alma Chasez. (lag, ) (Entered: 04/24/2007) |
| 04/24/2007 | **255** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **241** MOTION for Protective Order. (Bricker, Ross) (Entered: 04/24/2007) |
| 04/25/2007 | **258** | ORDER granting **239** Motion to Appear as to Varu Chilakamarri. Signed by Judge Ivan L. R. Lemelle on 4/24/07. (lag, ) (Entered: 04/25/2007) |
| 04/25/2007 | **259** | ORDER granting **253** Motion to Substitute exhibit A attached to mtn to compel **251** and remove the orig, to be placed under seal. Signed by Judge Alma L. Chasez on 4/24/07. (car, ) (Entered: 04/26/2007) |
| 04/25/2007 | **267** | Minute Entry for proceedings held before Judge Alma L. Chasez : Motion Hearing held on 4/25/2007 re **207** MOTION to Compel filed by Allen Harris, Gilda Burbank, Gloria Williams, Judith Watson, Odessia Lewis, Yolanda Anderson, Hilda Johnson, Mary Ann Wright, Kim Paul, Donna Johnigan, Lolita Gibson, Emelda May, Cynthia Bell, Sylvia Moten, Nicole Banks, Linda DeGruy, Catrice Doucet, **241** MOTION for Protective Order filed by U.S. Department of Housing and Urban Development, Alphonso - Jackson, **243** MOTION to Compel filed by Allen Harris, Gilda Burbank, Judith Watson, Gloria Williams, Odessia Lewis, Yolanda Anderson, Hilda Johnson, Kim Paul, Mary Ann Wright, Donna Johnigan, Lolita Gibson, Emelda May, Cynthia Bell, Nicole Banks, Sylvia Moten, Linda DeGruy, Catrice Doucet - ruling set forth in doc. (car, ) (Entered: 05/02/2007) |
| 04/26/2007 | **260** | ORDER granting **250** MOTION to Expedite *Hearing on Motion To Compel* filed by C. Donald Babers, William C. Thorson. **251** MOTION to Compel *Rule 26 Disclosure* set for 5/2/2007 11:00 AM before Magistrate Judge Alma L. Chasez w/oral argument.. Signed by Judge Alma L. Chasez.(car, ) (Entered: 04/26/2007) |
| 04/26/2007 | **261** | EXPARTE/CONSENT MOTION to Appear as Counsel of Record by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order)(Riess, Daniel) (Entered: 04/26/2007) |
| 04/30/2007 | **262** | EXPARTE/CONSENT Joint MOTION for Protective Order *Protecting Privacy Act Materials* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Riess, Daniel) (Entered: 04/30/2007) |

| | | |
|---|---|---|
| 05/01/2007 | 263 | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re 238 MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court re 215 Order on Motion for Protective Order, Order on Motion to Quash. (Bricker, Ross) Modified on 5/2/2007 (lag, ). (Entered: 05/01/2007) |
| 05/01/2007 | 264 | MOTION to Dismiss Party Yolanda Anderson, Donna Johnigan, Kim Paul, Catrice Doucet, and Judith Watson *Voluntarily and Without Prejudice* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion Hearing set for 5/23/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # 1 Memorandum in Support # 2 Exhibit A# 3 Exhibit B# 4 Proposed Order # 5 Notice of Hearing)(Bricker, Ross) (Entered: 05/01/2007) |
| 05/01/2007 | 265 | EXPARTE/CONSENT MOTION to Expedite *Plaintiffs' Motion to Dismiss Party Yolanda Anderson, Donna Johnigan, Kim Paul, Catrice Doucet, and Judith Watson Voluntarily and Without Prejudice* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # 1 Proposed Order)(Bricker, Ross) (Entered: 05/01/2007) |
| 05/01/2007 | 266 | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re 251 MOTION to Compel *Rule 26 Disclosure*. (Bricker, Ross) (Entered: 05/01/2007) |
| 05/02/2007 | 268 | ORDER granting 261 Motion to Appear as to Lesley Farby. Signed by Judge Ivan L. R. Lemelle on 4/27/07. (lag, ) (Entered: 05/02/2007) |
| 05/02/2007 | 269 | Minute Entry for proceedings held before Judge Alma L. Chasez : Motion Hearing held on 5/2/2007 re 251 MOTION to Compel *Rule 26 Disclosure* filed by C. Donald Babers, William C. Thorson, Housing Authority of New Orleans - ruling set forth in doc. (car, ) (Entered: 05/04/2007) |
| 05/07/2007 | 270 | ORDER denying 265 Motion to Expedite Hearing on Motion to Dismiss. Signed by Judge Ivan L. R. Lemelle on 5/2/07. (gec, ) (Entered: 05/07/2007) |
| 05/07/2007 | 271 | ORDER granting 262 Motion for Privacy Act Protective Order. Signed by Judge Alma L. Chasez on 5/3/07. (car, ) (Entered: 05/07/2007) |
| 05/07/2007 | 272 | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandum for Federal Defendants' 72(a) Motion* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # 1 Proposed Order # 2 Proposed Pleading Reply Brief for Federal |

| | | |
|---|---|---|
| | | Defendants' 72(a) Motion)(Phillips, Heather) (Entered: 05/07/2007) |
| 05/09/2007 | **273** | MOTION for Protective Order by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 5/30/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Notice of Hearing)(Bricker, Ross) (Entered: 05/09/2007) |
| 05/09/2007 | **274** | EXPARTE/CONSENT MOTION to Expedite *Plaintiffs' Motion for Entry of Protective Order* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 05/09/2007) |
| 05/10/2007 | **275** | ORDER granting the **274** MOTION to Expedite *Plaintiffs' Motion for Entry of Protective Order*; **273** MOTION for Protective Order set for 5/16/2007 11:00 AM before Magistrate Judge Alma L. Chasez. Signed by Judge Alma L. Chasez.(car, ) (Entered: 05/11/2007) |
| 05/11/2007 | **276** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **273** MOTION for Protective Order. (Attachments: # **1** Exhibit A# **2** Exhibit B# **3** Exhibit C# **4** Exhibit D)(Wisdom, Rachel) (Entered: 05/11/2007) |
| 05/11/2007 | **277** | MOTION to Compel *Discovery Responses* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 5/30/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit 1# **3** Exhibit 2# **4** Exhibit 3# **5** Exhibit 4# **6** Rule 37.1 Certificate# **7** Notice of Hearing)(Wisdom, Rachel) Modified on 5/14/2007 (lag, ). (Entered: 05/11/2007) |
| 05/11/2007 | **278** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **273** MOTION for Protective Order. (Phillips, Heather) (Entered: 05/11/2007) |
| 05/11/2007 | **279** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Motion to Compel Discovery* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) (Entered: |

| | | 05/11/2007) |
|---|---|---|
| 05/11/2007 | **280** | DEFICIENT EXPARTE/CONSENT MOTION to Withdraw Gabriel A. Crowson as Attorney *for Plaintiffs* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Order)(Bricker, Ross) Modified on 5/14/2007 (lag, ). (Entered: 05/11/2007) |
| 05/14/2007 | 281 | Correction of Docket Entry by Clerk re **277** MOTION to Compel *Discovery Responses* ; Motion was set for hearing on invalid hearing date. Motion is reset for hearing on 5/30/07 11:00 AM before Magistrate Judge Alma L. Chasez. (lag, ) (Entered: 05/14/2007) |
| 05/14/2007 | **282** | ORDER denying **178** Motion to Alter Judgment. Signed by Judge Ivan L. R. Lemelle on 5/10/07. (lag, ) (Entered: 05/14/2007) |
| 05/14/2007 | **283** | ORDER granting **272** Motion for Leave to File reply memo. Signed by Judge Ivan L. R. Lemelle on 5/8/07. (lag, ) (Entered: 05/14/2007) |
| 05/14/2007 | **284** | REPLY to Response to Motion filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **238** MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court. (lag, ) (Entered: 05/14/2007) |
| 05/14/2007 | **285** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **264** MOTION to Dismiss Party Yolanda Anderson, Donna Johnigan, Kim Paul, Catrice Doucet, and Judith Watson *Voluntarily and Without Prejudice*. (Farby, Lesley) (Entered: 05/14/2007) |
| 05/15/2007 | **286** | ORDER denying **238** MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court. Signed by Judge Ivan L. R. Lemelle. (lag, ) (Entered: 05/15/2007) |
| 05/15/2007 | **287** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **264** MOTION to Dismiss Party Yolanda Anderson, Donna Johnigan, Kim Paul, Catrice Doucet, and Judith Watson *Voluntarily and Without Prejudice*. (Attachments: # **1** Exhibit A# **2** Exhibit B# **3** Exhibit C# **4** Exhibit D# **5** Exhibit E# **6** Exhibit F)(Lonian, Heather) (Entered: 05/15/2007) |
| 05/16/2007 | **288** | ORDER granting **279** MOTION to Expedite hrg filed by C. Donald Babers, William C. Thorson, Housing Authority of New Orleans on **277** MOTION to Compel *Discovery Responses*: Motion Hearing set for 5/16/2007 11:00 AM before Magistrate Judge Alma L. Chasez. Signed by Judge Alma L. Chasez.(car, ) (Entered: 05/16/2007) |
| 05/16/2007 | **289** | MOTION for Clarification or in Alternative Rule 72(a) Motion by Yolanda Anderson. Motion referred to Magistrate Alma L. Chasez. |

| | | |
|---|---|---|
| | | Motion Hearing set for 6/6/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Notice of Hearing)(Bricker, Ross) Modified on 5/17/2007 (lag, ). (Entered: 05/16/2007) |
| 05/16/2007 | **290** | EXPARTE/CONSENT MOTION for Extension of Time to Complete Discovery *Motion to Extend Deadlines for Expert Discovery* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Notice of Hearing)(Bricker, Ross) Modified on 5/17/2007 (lag, ). (Entered: 05/16/2007) |
| 05/16/2007 | **291** | EXPARTE/CONSENT MOTION to Withdraw Gabriel A. Crowson as Attorney by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 05/16/2007) |
| 05/17/2007 | **292** | ORDER dismissing as moot **273** Motion for Protective Order and **277** Motion to Compel. Signed by Judge Alma L. Chasez. (car, ) (Entered: 05/17/2007) |
| 05/17/2007 | 293 | Correction of Docket Entry by Clerk re **289** MOTION for Appeal of Magistrate Judge Decision to District Court; Wrong motion relief selected. Motion should have been filed as Motion for Miscellaneous Relief - for Clarification or in the alternative, Rule 72(a) motion; Motion for Clarification should be referred to and set for hearing before the Magistrate. Motion is reset for hearing for 6/6/07 11:00 AM before Magistrate Judge Alma L. Chasez (lag, ) (Entered: 05/17/2007) |
| 05/17/2007 | 294 | Correction of Docket Entry by Clerk re **290** MOTION for Extension of Time to Complete Discovery *Motion to Extend Deadlines for Expert Discovery*; Exparte /Consent motion should not be set for hearing. Corrective action taken by clerk. (lag, ) (Entered: 05/17/2007) |
| 05/18/2007 | **295** | EXPARTE/CONSENT MOTION for Leave to File *Reply in Support of Plaintiffs' Motion for Voluntary Dismissal* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Pleading Reply in Support of Motion for Voluntary Dismissal# **2** Proposed Order)(Bricker, Ross) (Entered: 05/18/2007) |

| | | |
|---|---|---|
| 05/20/2007 | **296** | EXPARTE/CONSENT MOTION for Leave to File *Surreply Memorandum in Support of Opposition to Motion to Dismiss Five Named Plaintiffs Without Prejudice* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order # **2** Proposed Pleading)(Wisdom, Rachel) (Entered: 05/20/2007) |
| 05/21/2007 | **297** | ORDER granting **291** Motion to Withdraw as Attorney. Attorney Gabriel A. Crowson terminated. Signed by Judge Ivan L. R. Lemelle on 5/17/07. (lag, ) (Entered: 05/21/2007) |
| 05/23/2007 | **298** | DEFICIENT MOTION to Compel *Production of Plaintiffs' Damage Calculations*, MOTION for Sanctions by Housing Authority of New Orleans. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 6/13/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit A# **3** Exhibit B# **4** Exhibit C# **5** Exhibit D# **6** Rule 37.1 Certificate# **7** Notice of Hearing)(Robinson, Ashlee) Modified on 5/24/2007 (lag, ). (Entered: 05/23/2007) |
| 05/23/2007 | **299** | DEFICIENT EXPARTE/CONSENT MOTION to Expedite *Hearing on Motion to Compel* by Housing Authority of New Orleans. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Robinson, Ashlee) Modified on 5/24/2007 (lag, ). (Entered: 05/23/2007) |
| 05/23/2007 | **300** | ORDER granting **290** Motion for Extension of Time to Complete Discovery. Signed by Judge Ivan L. R. Lemelle on 5/22/07. (lag, ) (Entered: 05/23/2007) |
| 05/23/2007 | **301** | ORDER granting **295** Motion for Leave to File reply. Signed by Judge Ivan L. R. Lemelle on 5/21/07. (lag, ) (Entered: 05/23/2007) |
| 05/23/2007 | **302** | REPLY to Response to Motion filed by all plaintiffs re **264** MOTION to Dismiss Party Yolanda Anderson, Donna Johnigan, Kim Paul, Catrice Doucet, and Judith Watson *Voluntarily and Without Prejudice*. (lag, ) (Entered: 05/23/2007) |
| 05/23/2007 | **303** | ORDER granting **296** Motion for Leave to File surreply. Signed by Judge Ivan L. R. Lemelle on 5/21/07. (lag, ) (Entered: 05/23/2007) |
| 05/23/2007 | **304** | Supplemental Memorandum filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson, in Opposition of **264** MOTION to Dismiss Party Yolanda Anderson, Donna Johnigan, Kim Paul, Catrice Doucet, and Judith Watson *Voluntarily and Without Prejudice*. (lag, ) (Entered: 05/23/2007) |
| 05/24/2007 | **305** | MOTION to Compel *Production of Plaintiffs' Damage Calculations*, MOTION for Sanctions by Housing Authority of New Orleans. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 6/13/2007 11:00 AM before Magistrate Judge Alma L. Chasez. |

| | | |
|---|---|---|
| | | (Attachments: # **1** Memorandum in Support # **2** Exhibit A# **3** Exhibit B# **4** Exhibit C# **5** Exhibit D# **6** Local 37.1 Certificate# **7** Notice of Hearing)(Lonian, Heather) (Entered: 05/24/2007) |
| 05/24/2007 | **306** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Motion to Compel* by Housing Authority of New Orleans. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Lonian, Heather) (Entered: 05/24/2007) |
| 05/25/2007 | **307** | EXPARTE/CONSENT MOTION to Appear as Counsel of Record by Housing Authority of New Orleans. (Attachments: # **1** Proposed Order)(Lonian, Heather) (Entered: 05/25/2007) |
| 05/25/2007 | **308** | ORDER Setting Oral Hearing on **289** MOTION for Clarification or in the alternative, Rule 72(a): Motion Hearing set for 6/6/2007 11:00 AM before Magistrate Judge Alma L. Chasez. Signed by Judge Alma L. Chasez on 5/24/2007.(caa, ) (Entered: 05/25/2007) |
| 05/29/2007 | **309** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **289** MOTION for Clarification or in the alternative, Rule 72(a) motion. (Attachments: # **1** January 31 Order# **2** Letter from Plaintiffs' Counsel# **3** Notice of 30(b)(6) Deposition)(Riess, Daniel) (Entered: 05/29/2007) |
| 05/30/2007 | **310** | ORDER granting **307** Motion to Appear as to Ashlee M. Robinson. Signed by Judge Ivan L. R. Lemelle on 5/29/07. (lag, ) (Entered: 05/31/2007) |
| 06/04/2007 | **311** | ORDER Setting/Resetting oral argument on **305** MOTION to Compel *Production of Plaintiffs' Damage Calculations*, MOTION for Sanctions: filed by Housing Authority of New Orleans. Motion Hearing set for 6/6/2007 11:00 AM before Magistrate Judge Alma L. Chasez. Signed by Judge Alma L. Chasez on 6/1/07.(car, ) (Entered: 06/04/2007) |
| 06/04/2007 | **312** | EXPARTE/CONSENT MOTION for Leave to File *Supplemental Memorandum in Support of Motion to Compel Production of Plaintiffs' Damage Calculation and Motion for Sanctions* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order # **2** Proposed Pleading # **3** Exhibit A# **4** Exhibit B)(Lonian, Heather) (Entered: 06/04/2007) |
| 06/05/2007 | **313** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **305** MOTION to Compel *Production of Plaintiffs' Damage Calculations* MOTION for Sanctions. (Attachments: # **1** Exhibit A)(Bricker, Ross) Modified on 6/6/2007 (lag, ). (Entered: 06/05/2007) |
| 06/06/2007 | 314 | Correction of Docket Entry by Clerk re **313** Response/Memorandum in Opposition to Motion ; Opposition was improperly linked. It should have only been linked to Motion to Compel, not Motion for Leave to File. Clerk removed improper linkage. No further action is required for |

| | | this document. (lag, ) (Entered: 06/06/2007) |
|---|---|---|
| 06/06/2007 | 315 | Minute Entry for proceedings held before Judge Alma L. Chasez : Status Conference held on 6/6/2007 re depo of Linda Dugruy. (car, ) (Entered: 06/08/2007) |
| 06/06/2007 | 316 | Minute Entry for proceedings held before Judge Alma L. Chasez : Motion Hearing held on 6/6/2007 re **305** MOTION to Compel *Production of Plaintiffs' Damage Calculations* MOTION for Sanctions filed by Housing Authority of New Orleans, **289** MOTION for Clarification, or in the alternative, Rule 72(a) motion filed by Yolanda Anderson: ruling set forth in doc. (car, ) (Entered: 06/08/2007) |
| 06/07/2007 | 317 | ORDER granting **312** Motion for Leave to File suppl memo & exhs. Signed by Judge Alma L. Chasez. (car, ) (Entered: 06/08/2007) |
| 06/07/2007 | 318 | Supplemental Memorandum filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson in support of **305** MOTION to Compel *Production of Plaintiffs' Damage Calculations* MOTION for Sanctions. (car, ) Exhs A, B added on 6/8/2007 (car, ). Modified on 6/8/2007 (car, ). (Entered: 06/08/2007) |
| 06/07/2007 | 319 | Correction of Docket Entry by Clerk re **318** Supplemental Memorandum, exhs A & B added to this entry. (car, ) (Entered: 06/08/2007) |
| 06/20/2007 | 320 | EXPARTE/CONSENT MOTION to Expedite *Motion for Rule 72 Relief* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order # **2** Proposed Pleading # **3** Proposed Pleading # **4** Proposed Pleading # **5** Proposed Pleading # **6** Exhibit A# **7** Exhibit B# **8** Exhibit C# **9** Exhibit D# **10** Exhibit E# **11** Exhibit F)(Lonian, Heather) (Entered: 06/20/2007) |
| 06/20/2007 | 328 | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice (Filing fee $5.) by all plaintiffs. (Attachments: # **1** Exhibit # **2** Exhibit)(lag, ) (Entered: 06/27/2007) |
| 06/21/2007 | 321 | EXPARTE/CONSENT MOTION to Amend/Correct **210** Order by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order)(Lonian, Heather) Modified on 6/22/2007 (lag, ). (Entered: 06/21/2007) |
| 06/21/2007 | 322 | Second MOTION to Compel *Discovery Responses* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 7/11/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit A# **3** Exhibit B# **4** Local Rule 37.1 Certificate# **5** Notice of Hearing)(Wisdom, Rachel) (Entered: 06/21/2007) |
| 06/21/2007 | 323 | EXPARTE/CONSENT MOTION to Expedite *Hearing On Second Motion to Compel Discovery Responses* by Housing Authority of New |

| | | |
|---|---|---|
| | | Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) (Entered: 06/21/2007) |
| 06/22/2007 | **324** | MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court re **316** Motion Hearing,, Terminate Motions, by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion Hearing set for 7/11/2007 9:00AM before Judge Ivan L.R. Lemelle. (Attachments: # **1** Memorandum in Support Memo in Support of Plaintiffs' Rule 72(a) Motion for Fair Housing Act Discovery# **2** Proposed Order Proposed Order for Fair Housing Act Discovery# **3** Notice of Hearing Notice of Hearing on Plaintiffs' Rule 72(a) Motion for Fair Housing Act Discovery)(Bricker, Ross) Modified on 6/25/2007 (lag, ). (Entered: 06/22/2007) |
| 06/22/2007 | **325** | EXPARTE/CONSENT MOTION to Expedite *Plaintiffs' Motion under Rule 72(a) for Discovery Related to Plaintiffs' Fair Housing Act Claim* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Order)(Bricker, Ross) Modified on 6/25/2007, (lag, ). (Entered: 06/22/2007) |
| 06/25/2007 | 326 | Correction of Docket Entry by Clerk re **324** MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court ; Motion Hearing time was not entered. Motion Hearing set for 7/11/07 9:00 AM before Judge Ivan L.R. Lemelle. (lag, ) (Entered: 06/25/2007) |
| 06/25/2007 | 327 | Correction of Docket Entry by Clerk re **325** MOTION to Expedite *Plaintiffs' Motion under Rule 72(a) for Discovery Related to Plaintiffs' Fair Housing Act Claim* ; Motion should have been designated as "Exparte/Consent" by selecting "yes" when prompted. Corrective action taken by clerk. (lag, ) (Entered: 06/25/2007) |
| 06/25/2007 | **331** | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice (Filing fee $5.) by all plaintiffs. (Attachments: # **1** Exhibit)(lag, ) (Entered: 06/29/2007) |
| 06/26/2007 | **329** | ORDER granting **328** Motion to Appear Pro Hac Vice as to Jill Tauber.. Signed by Judge Ivan L. R. Lemelle on 6/25/07. (lag, ) (Entered: 06/27/2007) |
| 06/29/2007 | **330** | ORDER granting **321** Motion to Amend/Correct Case Management Order. Signed by Judge Ivan L. R. Lemelle on 6/28/07. (lag, ) (Entered: 06/29/2007) |

| | | |
|---|---|---|
| 06/29/2007 | **332** | ORDER granting **331** Motion to Appear Pro Hac Vice as to Anne C. Fitzpatrick.. Signed by Judge Ivan L. R. Lemelle. (lag, ) (Entered: 06/29/2007) |
| 07/03/2007 | **333** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **324** MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court . (Attachments: # **1** Exhibit # **2** Exhibit # **3** Exhibit # **4** Exhibit)(Riess, Daniel) Modified on 7/5/2007 (lag, ). (Entered: 07/03/2007) |
| 07/03/2007 | **334** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **322** Second MOTION to Compel *Discovery Responses*. (Attachments: # **1** Exhibit A# **2** Exhibit B# **3** Exhibit C# **4** Exhibit D)(Bricker, Ross) (Entered: 07/03/2007) |
| 07/05/2007 | **335** | ORDER denying Request for Oral Argument on **320** Motion for Rule 72 Relief. Signed by Judge Ivan L. R. Lemelle on 7/3/07.(lag, ) (Entered: 07/06/2007) |
| 07/10/2007 | **336** | ERROR: SHOULD BE ATTACHMENT - RESPONSE/MEMORANDUM in Support filed by all plaintiffs re **324** MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court . (Attachments: # **1** Exhibit A# **2** Exhibit B# **3** Exhibit C)(Bricker, Ross) Modified on 7/11/2007 (lag, ). (Entered: 07/10/2007) |
| 07/10/2007 | **337** | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandunm in Further Support of Plaintiffs' 72(a) Motion for Discovery Related to Plaintiffs' Fair Housing Act Claim* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Order # **2** Memorandum in Support # **3** Exhibit A# **4** Exhibit B# **5** Exhibit C)(Bricker, Ross) (Entered: 07/10/2007) |
| 07/10/2007 | **338** | ORDER granting **195** Motion for Leave to File reply brief. Signed by Judge Alma L. Chasez. (car, ) (Entered: 07/11/2007) |
| 07/10/2007 | **339** | REPLY Memo in support of Motion filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **181** Emergency MOTION for Protective Order. (car, ) (Entered: 07/11/2007) |
| 07/11/2007 | 340 | Correction of Docket Entry by Clerk re **336** Response/Memorandum in Support of Motion; Should be filed as attachment to Motion for Leave to File Reply. Already re-filed correctly by attorney - see doc. no. 337. (lag, ) (Entered: 07/11/2007) |
| 07/11/2007 | **341** | EXPARTE/CONSENT MOTION to Expedite *Hearing on HANO's Motion For Rule 37 Sanctions Against Plaintiffs Bell, Banks and Paul For Failure to Appear for Depostion* by Housing Authority of New |

| | | |
|---|---|---|
| | | Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed (Wisdom, Rachel) Modified on 7/12/2007 (lag, ). (Entered: 07/11/2007) |
| 07/11/2007 | **342** | MOTION for Sanctions *Against Plaintiffs Bell, Banks and Paul for Failure to Appear at Deposition* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 8/1/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit A# **3** Exhibit B# **4** Exhibit C# **5** Exhibit D# **6** Exhibit E# **7** Exhibit F# **8** Notice of Hearing)(Wisdom, Rachel) Modified on 7/12/2007 (lag, ). (Entered: 07/11/2007) |
| 07/11/2007 | **348** | Minute Entry for proceedings held before Judge Alma L. Chasez : Motion Hearing held on 7/11/2007 granting **322** Second MOTION to Compel *Discovery Responses* filed by C. Donald Babers, William C. Thorson, Housing Authority of New Orleans, dismissing as moot **323** MOTION to Expedite *Hearing On Second Motion to Compel Discovery Responses* filed by C. Donald Babers, William C. Thorson, Housing Authority of New Orleans (car, ) (Entered: 07/13/2007) |
| 07/12/2007 | **343** | Consent MOTION for Extension of Deadlines *for Objections to Expert Testimony* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 8/8/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support of Unopposed Motion to Extend the Deadline for Objections to Expert Testimony# **2** Proposed Order # **3** Notice of Hearing)(Chilakamarri, Varu) Modified on 7/13/2007 (lag, ). (Entered: 07/12/2007) |
| 07/12/2007 | **344** | EXPARTE/CONSENT Consent MOTION to Expedite *Hearing on Federal Defendants' Unopposed Motion for Extension of Deadline for Objections to Expert Testimony* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order)(Chilakamarri, Varu) (Entered: 07/12/2007) |
| 07/12/2007 | 345 | Correction of Docket Entry by Clerk re **341** MOTION to Expedite *Hearing on HANO's Motion For Rule 37 Sanctions Against Plaintiffs Bell, Banks and Paul For Failure to Appear for Depostion* ; Not all filers were selected. Additional filers - C. Donald Babers, William C. Thorson - added by clerk. Attachment was not described. Corrective action taken by clerk. No further action is necessary on this pleading. (lag, ) (Entered: 07/12/2007) |
| 07/12/2007 | 346 | Correction of Docket Entry by Clerk re **342** MOTION for Sanctions *Against Plaintiffs Bell, Banks and Paul for Failure to Appear at Deposition* ; Motion was set for incorrect hearing date. Motion is reset for hearing on 8/1/07 11:00 AM before Magistrate Judge Alma L. Chasez. Also, not all filers were selected. Additional filers - C. Donald Babers, William C. Thorson - were added by clerk. No further action is |

| | | |
|---|---|---|
| | | necessary on this pleading. (lag, ) (Entered: 07/12/2007) |
| 07/12/2007 | **347** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **320** MOTION to Expedite *Motion for Rule 72 Relief*. (Attachments: # **1** Exhibit A)(Bricker, Ross) (Entered: 07/12/2007) |
| 07/13/2007 | **349** | ORDER granting the **341** MOTION to Expedite *Hearing on HANO's Motion For Rule 37 Sanctions Against Plaintiffs Bell, Banks and Paul For Failure to Appear for Depostion* filed by C. Donald Babers, William C. Thorson, Housing Authority of New Orleans. **342** MOTION for Sanctions *Against Plaintiffs Bell, Banks and Paul for Failure to Appear at Deposition* set for 7/18/2007 11:00 AM before Magistrate Judge Alma L. Chasez w/oral argument.. Signed by Judge Alma L. Chasez on 7/12/07.(car, ) (Entered: 07/13/2007) |
| 07/13/2007 | **350** | MOTION for Sanctions *Under Rule 37 Against Plaintiffs Bell, Banks and Paul for Failure to Appear for Depositions and Failure to Respond to Interrogatories* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 8/1/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit A# **3** Exhibit B# **4** Exhibit C# **5** Proposed Order # **6** Notice of Hearing)(Chilakamarri, Varu) (Entered: 07/13/2007) |
| 07/13/2007 | **351** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Federal Defendants' Motion for Sanctions Under Rule 37 Against Plaintiffs Bell, Banks and Paul* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Proposed Order)(Chilakamarri, Varu) Modified on 7/16/2007 (lag, ). (Entered: 07/13/2007) |
| 07/13/2007 | **354** | ORDER granting **325** Motion to Expedite hrg on **324** Motion under Rule 72(a) to be heard 7/6/07 9:00 AM. Signed by Judge Ivan L. R. Lemelle on 7/6/07. (lag, ) (Entered: 07/16/2007) |
| 07/13/2007 | **355** | ORDER granting **337** Motion for Leave to File reply. Signed by Judge Ivan L. R. Lemelle on 7/11/07. (lag, ) (Entered: 07/16/2007) |
| 07/13/2007 | **356** | REPLY to Response to Motion filed by all plaintiffs re **324** MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court re **316** Order. (Attachments: # **1** Exhibit A# **2** Exhibit B# **3** Exhibit C)(lag, ) (Entered: 07/16/2007) |
| 07/13/2007 | **357** | ORDER denying **320** Motion to Expedite hrg on Motion for Rule 72 Relief; denying **324** MOTION for APPEAL OF MAGISTRATE JUDGE DECISION to District Court. Signed by Judge Ivan L. R. Lemelle on 7/6/07. (lag, ) (Entered: 07/16/2007) |
| 07/16/2007 | **352** | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandum In Support or Rule 72 Relief* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order |

| | | |
|---|---|---|
| | | # **2** Exhibit)(Wisdom, Rachel) Modified on 7/17/2007 (lag, ). (Entered: 07/16/2007) |
| 07/16/2007 | 353 | Correction of Docket Entry by Clerk re **351** MOTION to Expedite *Hearing on Federal Defendants' Motion for Sanctions Under Rule 37 Against Plaintiffs Bell, Banks and Paul* ; Motion should be designated "Exparte/Consent" by selecting "yes" when prompted. Corrective action was taken by clerk. (lag, ) (Entered: 07/16/2007) |
| 07/17/2007 | 358 | Correction of Docket Entry by Clerk re **352** MOTION for Leave to File *Reply Memorandum In Support or Rule 72 Relief* ; Not all filers were selected. Additional filers - C. Donald Babers, William C. Thorson - were added by clerk. (lag, ) (Entered: 07/17/2007) |
| 07/17/2007 | **359** | ORDER granting **351** MOTION to Expedite Hearing on **350** MOTION for Sanctions *Under Rule 37 Against Plaintiffs Bell, Banks and Paul for Failure to Appear for Depositions and Failure to Respond to Interrogatories*. Motion Hearing set for 7/18/2007 11:00 AM before Magistrate Judge Alma L. Chasez. Signed by Judge Alma L. Chasez on 7/16/07.(tbl) (Entered: 07/17/2007) |
| 07/17/2007 | **360** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **350** MOTION for Sanctions *Under Rule 37 Against Plaintiffs Bell, Banks and Paul for Failure to Appear for Depositions and Failure to Respond to Interrogatories*, **342** MOTION for Sanctions *Against Plaintiffs Bell, Banks and Paul for Failure to Appear at Deposition*. (Attachments: # **1** Exhibit A)(Bricker, Ross) (Entered: 07/17/2007) |
| 07/17/2007 | **361** | DEFICIENT Amended MOTION to Certify Class by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Exhibit 1-4# **4** Exhibit 5-7# **5** Exhibit 8-10# **6** Exhibit 11-14# **7** Exhibit 15-26# **8** Exhibit 27-32# **9** Exhibit 33-41)(Bricker, Ross) Modified on 7/18/2007 (lag, ). (Entered: 07/17/2007) |
| 07/17/2007 | **362** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages *for the Memorandum in Support of Plaintiffs' Amended Motion for Class Certification* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Order # **2** Exhibit)(Bricker, Ross) (Entered: 07/17/2007) |
| 07/18/2007 | **363** | MOTION to Amend/Correct **210** Order by Alphonso - Jackson, U.S. Department of Housing and Urban Development, Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion Hearing |

| | | |
|---|---|---|
| | | set for 8/8/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Proposed Order # **2** Memorandum in Support)(Farby, Lesley) Modified on 7/19/2007 (lag, ). (Entered: 07/18/2007) |
| 07/18/2007 | **364** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Unopposed Motion to Amend Case Management Order* by Alphonso - Jackson, U.S. Department of Housing and Urban Development, Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order)(Farby, Lesley) (Entered: 07/18/2007) |
| 07/18/2007 | **365** | Minute Entry for proceedings held before Judge Alma L. Chasez : Motion Hearing held on 7/18/2007 re **350** MOTION for Sanctions *Under Rule 37 Against Plaintiffs Bell, Banks and Paul for Failure to Appear for Depositions and Failure to Respond to Interrogatories* filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development, **342** MOTION for Sanctions *Against Plaintiffs Bell, Banks and Paul for Failure to Appear at Deposition* filed by C. Donald Babers, William C. Thorson, Housing Authority of New Orleans - A Report and Recommendation will be issued recommending that the three plaintiffs' claims be dismissed. (car, ) (Entered: 07/20/2007) |
| 07/20/2007 | **366** | REPORT AND RECOMMENDATIONS that the claims of Nicole Banks, Cynthia Bell, and Kim Paul, be dismissed with prejudice pursuant to Rule 37(b)(2)(C) and (d) of the Federal Rules of Civil Procedure. Objections to R&R due by 8/2/2007. Signed by Judge Alma L. Chasez.(car, ) (Entered: 07/20/2007) |
| 07/20/2007 | **367** | ***ERROR*** (Duplicate Entry of Doc No. 366) REPORT AND RECOMMENDATIONS; recommending that defendants' Motions (342 & 350) be granted. Objections to R&R due by 8/2/2007. Signed by Judge Alma L. Chasez on 7/19/2007.(cak, ) Modified on 7/20/2007 (car, ). (Entered: 07/20/2007) |
| 07/23/2007 | **368** | ORDER granting **235** Motion to Strike plas' jury demand. Signed by Judge Ivan L. R. Lemelle on 7/20/07. (lag, ) (Entered: 07/23/2007) |
| 07/23/2007 | **369** | ORDER granting **344** Consent MOTION to Expedite Hearing on **343** Consent MOTION for Extension of Deadlines *for Objections to Expert Testimony* : Motion Hearing set for 7/19/2007 09:00 AM before Judge Ivan L. R. Lemelle.. Signed by Judge Ivan L. R. Lemelle on 7/19/07.(lag, ) (Entered: 07/23/2007) |
| 07/23/2007 | **370** | ORDER granting **343** Motion for Extension of Deadlines for Objections to Expert Testimony. Signed by Judge Ivan L. R. Lemelle on 7/19/07. (lag, ) (Entered: 07/23/2007) |
| 07/23/2007 | **371** | ORDER granting **364** MOTION to Expedite Hearing on **363** MOTION to Amend/Correct **210** Order ; Motion Hearing set for 7/19/2007 09:00 AM before Judge Ivan L. R. Lemelle.. Signed by Judge Ivan L. R. Lemelle on 7/19/07.(lag, ) (Entered: 07/23/2007) |

| 07/23/2007 | 372 | ORDER granting 363 Motion to Amend Case Management Order as set forth in document. Signed by Judge Ivan L. R. Lemelle on 7/19/07. (lag, ) (Entered: 07/23/2007) |
|---|---|---|
| 07/23/2007 | 373 | ORDER granting 352 Motion for Leave to File reply. Signed by Judge Ivan L. R. Lemelle on 7/19/07. (lag, ) (Entered: 07/23/2007) |
| 07/23/2007 | 374 | REPLY to Response to Motion filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re 320 MOTION to Expedite *Motion for Rule 72 Relief*. (lag, ) (Entered: 07/23/2007) |
| 07/23/2007 | 375 | ORDER granting 362 Motion for Leave to File Excess Pages. Signed by Judge Ivan L. R. Lemelle on 7/19/07. (lag, ) (Entered: 07/23/2007) |
| 07/23/2007 | 376 | EXPARTE/CONSENT MOTION to Expedite *Motion to Conduct Medical Examinations of Plaintiffs* by Housing Authority of New Orleans. Motion(s) referred to Alma L. Chasez. (Attachments: # 1 Proposed Order # 2 Proposed Pleading # 3 Proposed Pleading # 4 Proposed Pleading)(Lonian, Heather) (Entered: 07/23/2007) |
| 07/23/2007 | 377 | Second MOTION for Summary Judgment by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion Hearing set for 10/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # 1 Memorandum in Support # 2 Statement of Contested/Uncontested Facts # 3 Notice of Hearing # 4 Exhibit A# 5 Exhibit B# 6 Exhibit C# 7 Exhibit D# 8 Exhibit E# 9 Exhibit F# 10 Exhibit G# 11 Exhibit H# 12 Exhibit I# 13 Exhibit J# 14 Exhibit K# 15 Exhibit L# 16 Exhibit M# 17 Exhibit N# 18 Exhibit O# 19 Exhibit P# 20 Exhibit Q# 21 Exhibit R)(Lonian, Heather) (Entered: 07/23/2007) |
| 07/23/2007 | 378 | Request/Statement of Oral Argument by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson regarding 377 Second MOTION for Summary Judgment. (Lonian, Heather) (Entered: 07/23/2007) |
| 07/23/2007 | 379 | MOTION for Summary Judgment by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 10/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # 1 Memorandum in Support # 2 Statement of Contested/Uncontested Facts # 3 Notice of Hearing # 4 Exhibit 1# 5 Exhibit 2# 6 Exhibit 3)(Riess, Daniel) (Entered: 07/23/2007) |
| 07/23/2007 | 380 | MOTION for Partial Summary Judgment by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion Hearing set for 10/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # 1 Memorandum in Support # 2 Notice of Hearing # 3 Proposed Order # 4 Statement of Contested/Uncontested Facts # 5 Exhibit A# 6 Exhibit |

| | | |
|---|---|---|
| | | B# **7** Exhibit C# **8** Exhibit D# **9** Exhibit E# **10** Exhibit F# **11** Exhibit G# **12** Exhibit H# **13** Exhibit I# **14** Exhibit J# **15** Exhibit K)(Bricker, Ross) (Entered: 07/24/2007) |
| 07/24/2007 | **381** | Request/Statement of Oral Argument by all plaintiffs regarding **380** MOTION for Partial Summary Judgment. (Bricker, Ross) (Entered: 07/24/2007) |
| 07/24/2007 | **382** | Amended MOTION to Certify Class by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion Hearing set for 9/17/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Notice of Hearing # **4** Exhibit 1-4# **5** Exhibit 5-7# **6** Exhibit 8-10# **7** Exhibit 11-14# **8** Exhibit 15-26# **9** Exhibit 27-32# **10** Exhibit 33-41)(Bricker, Ross) (Entered: 07/24/2007) |
| 07/26/2007 | **383** | ORDER Setting Hearing on **379** MOTION for Summary Judgment, **377** Second MOTION for Summary Judgment, **380** MOTION for Partial Summary Judgment : Motion Hearing set for 10/19/2007 09:00 AM before Judge Ivan L. R. Lemelle WITH ORAL ARGUMENT. Signed by Judge Ivan L. R. Lemelle on 7/25/07.(lag, ) (Entered: 07/26/2007) |
| 07/26/2007 | **384** | MOTION to conduct med exam of plas by Housing Authority of New Orleans. Motion(s) referred to Alma L. Chasez. (Attachments: # **1** Memorandum in Support)(car, ) (Entered: 07/27/2007) |
| 07/26/2007 | **385** | Request/Statement of Oral Argument by Housing Authority of New Orleans regarding **384** MOTION conduct med exam of plas. (car, ) (Entered: 07/27/2007) |
| 07/26/2007 | **386** | ORDER re **376** MOTION to Expedite *Motion to Conduct Medical Examinations of Plaintiffs* filed by Housing Authority of New Orleans: **384** MOTION conduct med exam of plas set for 8/1/2007 11:00 AM before Magistrate Judge Alma L. Chasez w/oral argument; any opp due 7/31/07. Signed by Judge Alma L. Chasez.(car, ) (Entered: 07/27/2007) |
| 08/01/2007 | **387** | Minute Entry for proceedings held before Judge Alma L. Chasez : Motion Hearing held on 8/1/2007 re **384** MOTION conduct med exam of plas filed by Housing Authority of New Orleans: ruling set forth in doc. (car, ) (Entered: 08/02/2007) |
| 08/09/2007 | **388** | EXPARTE/CONSENT MOTION to Amend/Correct **210** Order by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 08/09/2007) |

| | | |
|---|---|---|
| 08/09/2007 | **389** | Joint MOTION for Sanctions *Under Rule 37 Against Plaintiff Lolita Gibson for Failure to Appear for Noticed Deposition* by Alphonso - Jackson, U.S. Department of Housing and Urban Development, Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 8/29/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit 1# **3** Exhibit 2# **4** Exhibit 3# **5** Proposed Order # **6** Notice of Hearing)(Riess, Daniel) (Entered: 08/09/2007) |
| 08/10/2007 | **390** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages *for Brief in Opposition to Plaintiffs' Amended Motion for Class Certification* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order # **2** Proposed Pleading Opposition Brief to Plaintiffs' Amended Motion for Class Certification# **3** Proposed Pleading Index to Exhibits to Opposition Brief# **4** Proposed Pleading Exhibits 1-2# **5** Proposed Pleading Exhibits 3-4# **6** Proposed Pleading Exhibits 5-6# **7** Proposed Pleading Exhibits 7-8# **8** Proposed Pleading Exhibits 9-10# **9** Proposed Pleading Exhibits 11-12# **10** Proposed Pleading Exhibit 13# **11** Proposed Pleading Exhibit 14# **12** Proposed Pleading Exhibit 15a# **13** Proposed Pleading Exhibit 15b# **14** Proposed Pleading Exhibits 16-17# **15** Proposed Pleading Exhibits 18-24)(Chilakamarri, Varu) (Entered: 08/10/2007) |
| 08/10/2007 | **391** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages *for Opposition to Amended Motion for Class Certification* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order # **2** Proposed Pleading # **3** Exhibit 1-7# **4** Exhibit 8-15# **5** Exhibit 16-24# **6** Exhibit 25-29# **7** Exhibit 30)(Lonian, Heather) (Entered: 08/10/2007) |
| 08/13/2007 | **392** | ORDER Setting Oral Argument on **389** Joint MOTION for Sanctions *Under Rule 37 Against Plaintiff Lolita Gibson for Failure to Appear for Noticed Deposition* : Motion Hearing set for 8/29/2007 11:00 AM before Magistrate Judge Alma L. Chasez. Signed by Judge Alma L. Chasez on 8/10/2007.(caa, ) (Entered: 08/13/2007) |
| 08/14/2007 | **393** | ORDER granting **388** Motion to Amend Case Management Order as set forth in pleading. Signed by Judge Ivan L. R. Lemelle on 8/13/07. (lag, ) (Entered: 08/14/2007) |
| 08/14/2007 | **394** | ORDER granting **390** Motion for Leave to File Excess Pages. Signed by Judge Ivan L. R. Lemelle on 8/13/07. (lag, ) (Entered: 08/14/2007) |
| 08/14/2007 | **395** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **382** Amended MOTION to Certify Class. (Attachments: # **1** Exhibit Index# **2** Exhibit 1-2# **3** Exhibit 3-4# **4** Exhibit 5-6# **5** Exhibit 7-8# **6** Exhibit 9-10# **7** Exhibit 11-12# **8** Exhibit 13# **9** Exhibit 14# **10** Exhibit 15 part A# |

| | | |
|---|---|---|
| | | **11** Exhibit 15 part B# **12** Exhibit 16-17# **13** Exhibit 18-24)(lag, ) (Entered: 08/14/2007) |
| 08/14/2007 | **396** | ORDER granting **391** Motion for Leave to File Excess Pages. Signed by Judge Ivan L. R. Lemelle on 8/13/07. (lag, ) (Entered: 08/14/2007) |
| 08/14/2007 | **397** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **382** Amended MOTION to Certify Class. (Attachments: # **1** Exhibit 1-7# **2** Exhibit 8-15# **3** Exhibit 16-24# **4** Exhibit 25-29# **5** Exhibit 30)(lag, ) (Entered: 08/14/2007) |
| 08/15/2007 | **398** | Minute Entry for proceedings held before Judge Alma L. Chasez : Telephone Conference held on 8/15/2007. Plaintiffs' request to have their IME's by Dr. Culver recorded is denied. (gec, ) (Entered: 08/17/2007) |
| 08/17/2007 | **399** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans re **380** MOTION for Partial Summary Judgment. (Attachments: # **1** Statement of Contested/Uncontested Facts # **2** Exhibit A - E# **3** Exhibit F - N# **4** Exhibit O - X)(Robinson, Ashlee) (Entered: 08/17/2007) |
| 08/17/2007 | **400** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **380** MOTION for Partial Summary Judgment. (Attachments: # **1** Statement of Contested/Uncontested Facts Response to Plaintiffs' Statement of Uncontested Material Facts# **2** Exhibit Ex. 1, Declaration of Jereon Brown)(Farby, Lesley) (Entered: 08/17/2007) |
| 08/17/2007 | **401** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **379** MOTION for Summary Judgment. (Attachments: # **1** Statement of Contested/Uncontested Facts # **2** Exhibit 1-4# **3** Exhibit 5-10# **4** Exhibit 11-16)(Bricker, Ross) (Entered: 08/17/2007) |
| 08/18/2007 | **402** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **377** Second MOTION for Summary Judgment. (Attachments: # **1** Statement of Contested/Uncontested Facts # **2** Exhibit 1-5# **3** Exhibit 6-8# **4** Exhibit 9# **5** Exhibit 10# **6** Exhibit 11-12# **7** Exhibit 13-14# **8** Exhibit 15-17# **9** Exhibit 18-25# **10** Exhibit 26-31# **11** Exhibit 32-38# **12** Exhibit 39-42)(Bricker, Ross) (Entered: 08/18/2007) |
| 08/20/2007 | **403** | EXPARTE/CONSENT MOTION to Amend/Correct **210** Order , by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 08/20/2007) |

| | | |
|---|---|---|
| 08/20/2007 | **404** | RESPONSE/MEMORANDUM in Opposition filed by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul re **389** Joint MOTION for Sanctions *Under Rule 37 Against Plaintiff Lolita Gibson for Failure to Appear for Noticed Deposition*. (Attachments: # **1** Exhibit A)(Bricker, Ross) (Entered: 08/20/2007) |
| 08/27/2007 | **405** | DEFICIENT MOTION to Exclude *Testimony of Andrew Beveridge* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Exhibit 1# **2** Exhibit 2# **3** Exhibit 3a# **4** Exhibit 3b# **5** Notice of Hearing)(Farby, Lesley) Modified on 8/28/2007 (lag, ). (Entered: 08/27/2007) |
| 08/27/2007 | **406** | DEFICIENT MOTION to Exclude *Testimony of John Fernandez* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Exhibit 1# **2** Exhibit 2# **3** Exhibit 2# **4** Notice of Hearing)(Farby, Lesley) Modified on 8/28/2007 (lag, ). (Entered: 08/27/2007) |
| 08/27/2007 | **407** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages *regarding Motion to Exclude Testimony and Opinions of Plaintiffs' Proposed Experts* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order # **2** Proposed Pleading # **3** Proposed Pleading # **4** Proposed Pleading # **5** Exhibit 1# **6** Exhibit 2# **7** Exhibit 3# **8** Exhibit 4# **9** Exhibit 5# **10** Exhibit 6# **11** Exhibit 7# **12** Exhibit 8# **13** Exhibit 9# **14** Exhibit 10# **15** Exhibit 11 # **16** Proposed Request for Oral Arugment)(Robinson, Ashlee) Modified on 8/28/2007 (lag, ). (Entered: 08/27/2007) |
| 08/27/2007 | **408** | ERROR: SHOULD BE ATTACHED AS "PROPOSED PLEADING" - Request/Statement of Oral Argument by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson regarding **407** MOTION for Leave to File Excess Pages *regarding Motion to Exclude Testimony and Opinions of Plaintiffs' Proposed Experts*. (Robinson, Ashlee) Modified on 8/28/2007 (lag, ). (Entered: 08/27/2007) |
| 08/27/2007 | **409** | DEFICIENT MOTION to Exclude *Testimony of David Martinez* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Exhibit 1# **2** Exhibit 2# **3** Exhibit 3a# **4** Exhibit 3b# **5** Notice of Hearing)(Farby, Lesley) Modified on 8/28/2007 (lag, ). (Entered: 08/27/2007) |
| 08/27/2007 | **410** | DEFICIENT MOTION to Exclude *Testimony of Denese Shervington* by Alphonso - Jackson, U.S. Department of Housing and Urban |

| | | |
|---|---|---|
| | | Development. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Notice of Hearing)(Farby, Lesley) Modified on 8/28/2007 (lag, ). (Entered: 08/27/2007) |
| 08/27/2007 | **411** | MOTION to Exclude *the Testimony of Ann Lott* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Notice of Hearing # **4** Exhibit A# **5** Exhibit B)(Bricker, Ross) (Entered: 08/27/2007) |
| 08/27/2007 | **412** | MOTION to Exclude *the Testimony of Dr. Thomas D. Boston* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Notice of Hearing # **4** Exhibit A# **5** Exhibit B)(Bricker, Ross) (Entered: 08/27/2007) |
| 08/27/2007 | **413** | MOTION to Exclude *Miestchovich's Expert Testimony* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Notice of Hearing # **4** Exhibit A (Part 1)# **5** Exhibit A (Part 2)# **6** Exhibit B)(Bricker, Ross) (Entered: 08/27/2007) |
| 08/27/2007 | **414** | MOTION to Exclude *Paris's Expert Testimony* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Notice of Hearing # **4** Exhibit A (Part 1)# **5** Exhibit A (Part 2)# **6** Exhibit B# **7** Exhibit C)(Bricker, Ross) (Entered: 08/27/2007) |
| 08/27/2007 | **415** | Request/Statement of Oral Argument by all plaintiffs regarding **414** MOTION to Exclude *Paris's Expert Testimony*, **413** MOTION to Exclude *Miestchovich's Expert Testimony*, **411** MOTION to Exclude *the Testimony of Ann Lott*, **412** MOTION to Exclude *the Testimony of Dr. Thomas D. Boston*. (Bricker, Ross) (Entered: 08/27/2007) |

| | | |
|---|---|---|
| 08/28/2007 | 416 | Correction of Docket Entry by Clerk re **408** Request/Statement of Oral Argument; Should be filed as "Proposed Pleading" to Motion for Leave to File Excess Pages. Corrective action taken by clerk. (lag, ) (Entered: 08/28/2007) |
| 08/28/2007 | **417** | ORDER granting **403** Motion to Amend Case Management Order to extend deadline. Signed by Judge Ivan L. R. Lemelle on 8/27/07. (lag, ) (Entered: 08/28/2007) |
| 08/29/2007 | **418** | ORDER granting **407** Motion for Leave to File Excess Pages. Signed by Judge Ivan L. R. Lemelle. (lag, ) (Entered: 08/29/2007) |
| 08/29/2007 | **419** | MOTION to Exclude testimony & opinions of plas' proposed experts by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Exhibit 1# **3** Exhibit 2# **4** Exhibit 3# **5** Exhibit 4# **6** Exhibit 5# **7** Exhibit 6# **8** Exhibit 7# **9** Exhibit 8# **10** Exhibit 9# **11** Notice of Hearing # **12** Exhibit 10 # **13** Exhibit 11)(lag, ) (Entered: 08/29/2007) |
| 08/29/2007 | **420** | Request/Statement of Oral Argument by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson regarding **419** MOTION to Exclude testimony & opinions of plas' proposed experts. (lag, ) (Entered: 08/29/2007) |
| 08/29/2007 | **421** | MOTION to Exclude *Expert Testimony of Andrew A. Beveridge* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing # **3** Exhibit 1# **4** Exhibit 2# **5** Exhibit 3a# **6** Exhibit 3b)(Farby, Lesley) (Entered: 08/29/2007) |
| 08/29/2007 | **422** | MOTION to Exclude *Expert Testimony of John Fernandez* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing # **3** Exhibit 1# **4** Exhibit 2# **5** Exhibit 3)(Farby, Lesley) (Entered: 08/29/2007) |
| 08/29/2007 | **423** | MOTION to Exclude *Expert Testimony of David Martinez* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing # **3** Exhibit 1# **4** Exhibit 2# **5** Exhibit 3a# **6** Exhibit 3b)(Farby, Lesley) (Entered: 08/29/2007) |
| 08/29/2007 | **424** | MOTION to Exclude *Expert Testimony of Denese Shervington* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 9/19/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # |

| | | |
|---|---|---|
| | | **2** Notice of Hearing)(Farby, Lesley) (Entered: 08/29/2007) |
| 08/29/2007 | **428** | Minute Entry for proceedings held before Judge Alma L. Chasez : Motion Hearing held on 8/29/2007 re **389** Joint MOTION for Sanctions *Under Rule 37 Against Plaintiff Lolita Gibson for Failure to Appear for Noticed Deposition* filed by Alphonso - Jackson, C. Donald Babers, U.S. Department of Housing and Urban Development, William C. Thorson, Housing Authority of New Orleans. (car, ) (Entered: 08/30/2007) |
| 08/30/2007 | **425** | Return of Service of Subpoena served on Bobbie Jennings on 8/29/07 by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson.(Robinson, Ashlee) (Entered: 08/30/2007) |
| 08/30/2007 | **426** | Return of Service of Subpoena served on Dr. Nadine Jarmon on 8/27/07 by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson.(Robinson, Ashlee) (Entered: 08/30/2007) |
| 08/30/2007 | **427** | Return of Service of Subpoena served on Emelda Paul on 8/28/07 by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson.(Robinson, Ashlee) (Entered: 08/30/2007) |
| 08/30/2007 | **429** | Witness List by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Chilakamarri, Varu) (Entered: 08/30/2007) |
| 08/30/2007 | **430** | Exhibit List *for the September 17, 2007 Hearing on Plaintiffs' Amended Motion for Class Certification* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Chilakamarri, Varu) (Entered: 08/30/2007) |
| 08/30/2007 | **431** | Witness and Exhibit List by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Robinson, Ashlee) (Entered: 08/30/2007) |
| 08/30/2007 | **432** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages *for Plaintiffs' Combined Reply in Support of Class Certification* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Order # **2** Proposed Pleading Combined Reply# **3** Proposed Pleading Ex. A to Reply# **4** Proposed Pleading Ex. B to Reply# **5** Proposed Pleading Ex. C to Reply# **6** Proposed Pleading Ex. D to Reply)(Bricker, Ross) (Entered: 08/30/2007) |
| 08/30/2007 | **433** | Witness and Exhibit List by all plaintiffs. (Bricker, Ross) (Entered: 08/30/2007) |
| 08/31/2007 | **434** | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandum in Support of Federal Defendants' Motion for Summary Judgment* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order # **2** Proposed Pleading |

| | | Reply Memorandum in Support of Federal Defendants' Motion for Summary Judgment)(Farby, Lesley) (Entered: 08/31/2007) |
|---|---|---|
| 08/31/2007 | **435** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages *for Reply Memorandum in Support of Federal Defendants' Motion for Summary Judgment* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order)(Farby, Lesley) (Entered: 08/31/2007) |
| 08/31/2007 | **436** | EXPARTE/CONSENT MOTION for Leave to File *Combined Reply in Support of Plaintiffs' Motion for Partial Summary Judgment* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Pleading # **2** Proposed Order)(Bricker, Ross) (Entered: 08/31/2007) |
| 08/31/2007 | **437** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages, MOTION for Leave to File *Reply Brief in Support of Second Motion for Summary Judgment* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order # **2** Proposed Pleading # **3** Exhibit 1-5# **4** Exhibit 6-11# **5** Exhibit 12-17)(Lonian, Heather) Modified on 9/4/2007 (gec, ). (Entered: 08/31/2007) |
| 09/04/2007 | 438 | Correction of Docket Entry by Clerk re **437** MOTION for Leave to File Excess Pages MOTION for Leave to File *Reply Brief in Support of Second Motion for Summary Judgment*. Filing attorney did not select category 'Proposed Order' when attaching proposed order. Clerk took corrective action. (gec, ) (Entered: 09/04/2007) |
| 09/06/2007 | **439** | ORDER granting **432** Motion for Leave to File Excess Pages. Signed by Judge Ivan L. R. Lemelle on 9/5/07. (gec, ) (Entered: 09/06/2007) |
| 09/06/2007 | **440** | REPLY to Response to Motion filed by all plaintiffs re **380** MOTION for Partial Summary Judgment. (Attachments: # **1** Exhibit A# **2** Exhibit B# **3** Exhibit C# **4** Exhibit D)(gec, ) Modified on 9/6/2007 to remove link to motion for leave. (gec, ). (Entered: 09/06/2007) |
| 09/06/2007 | **441** | ORDER granting **434** Motion for Leave to File Reply. Signed by Judge Ivan L. R. Lemelle on 9/5/07. (gec, ) (Entered: 09/06/2007) |
| 09/06/2007 | **442** | ORDER granting **435** Motion for Leave to File Excess Pages. Signed by Judge Ivan L. R. Lemelle on 9/5/07. (gec, ) (Entered: 09/06/2007) |
| 09/06/2007 | **443** | REPLY to Response to Motion filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **379** MOTION for Summary Judgment. (gec, ) (Entered: 09/06/2007) |
| 09/06/2007 | **444** | ORDER granting **436** Motion for Leave to File Combined Reply. Signed by Judge Ivan L. R. Lemelle on 9/5/07. (gec, ) (Entered: |

| | | |
|---|---|---|
| | | 09/06/2007) |
| 09/06/2007 | **445** | REPLY to Response to Motion filed by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Lolita Gibson, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul re **380** MOTION for Partial Summary Judgment. (gec, ) (Entered: 09/06/2007) |
| 09/06/2007 | **446** | ORDER granting **437** Motion for Leave to File Reply in Excess of Page limit. Signed by Judge Ivan L. R. Lemelle on 9/5/07. (gec, ) (Entered: 09/06/2007) |
| 09/06/2007 | **447** | REPLY to Response to Motion filed by U.S. Department of Housing and Urban Development, C. Donald Babers, William C. Thorson re **377** Second MOTION for Summary Judgment. (gec, ) (Entered: 09/06/2007) |
| 09/06/2007 | **448** | ORDER denying **264** Motion to Dismiss Party. Signed by Judge Ivan L. R. Lemelle on 9/4/07. (gec, ) (Entered: 09/06/2007) |
| 09/06/2007 | **449** | Minute Entry for proceedings held before Judge Ivan L. R. Lemelle : Status Conference held on 9/6/2007; **424** MOTION to Exclude *Expert Testimony of Denese Shervington* filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development, **419** MOTION to Exclude testimony & opinions of plas' proposed experts filed by C. Donald Babers, William C. Thorson, Housing Authority of New Orleans are DENIED. Class Certification hrg set for 9/17/07 9:30 AM and Status Conference immediately following. (lag, ) (Entered: 09/10/2007) |
| 09/11/2007 | **450** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **411** MOTION to Exclude *the Testimony of Ann Lott*. (Attachments: # **1** Exhibit 1# **2** Exhibit 2)(Chilakamarri, Varu) (Entered: 09/11/2007) |
| 09/11/2007 | **451** | Exhibit List *for Class Certification Hearing* by all plaintiffs. (Attachments: # **1** Exhibit 1-2# **2** Exhibit 3-4# **3** Exhibit 5-6# **4** Exhibit 7-8# **5** Exhibit 9# **6** Exhibit 11# **7** Exhibit 20, 22, 26-29# **8** Exhibit 30-35# **9** Exhibit 36-39# **10** Exhibit 40-42# **11** Exhibit 43-44# **12** Exhibit 45-54, 56-60, 67-71)(Bricker, Ross) (Entered: 09/12/2007) |
| 09/12/2007 | **452** | REPORT AND RECOMMENDATIONS re **389** Joint MOTION for Sanctions *Under Rule 37 Against Plaintiff Lolita Gibson for Failure to Appear for Noticed Deposition* filed by Alphonso - Jackson, C. Donald Babers, U.S. Department of Housing and Urban Development, William C. Thorson, Housing Authority of New Orleans - Objections to R&R due by 9/26/2007. Signed by Judge Alma L. Chasez on 9/11/07.(car, ) (Entered: 09/12/2007) |
| 09/12/2007 | **453** | Return of Service of Subpoena served on Christel Taylor on September 11, 2007 by Housing Authority of New Orleans, C. Donald Babers, |

| | | William C. Thorson.(Wisdom, Rachel) (Entered: 09/12/2007) |
|---|---|---|
| 09/13/2007 | 454 | STIPULATION by all parties re **449** Status Conference dated 9/6/2007. (Wisdom, Rachel) Modified on 9/14/2007 to edit text (cab, ). (Entered: 09/13/2007) |
| 09/14/2007 | 455 | Exhibit List *for Class Certification Hearing* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Exhibit FD 1# **2** Exhibit FD 2# **3** Exhibit FD 3 (part 1)# **4** Exhibit FD 3 (part 2)# **5** Exhibit FD 4# **6** Exhibit FD 5)(Chilakamarri, Varu) (Entered: 09/14/2007) |
| 09/14/2007 | 456 | Exhibit List *for Class Certification Hearing* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Exhibit 1 A-D# **2** Exhibit 1 E# **3** Exhibit 1 F# **4** Exhibit 1 G-J# **5** Exhibit 2-8# **6** Exhibit 9)(Robinson, Ashlee) (Entered: 09/14/2007) |
| 09/14/2007 | 457 | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **382** Amended MOTION to Certify Class *Filed Pursuant to Court's September 6, 2007 Minute Entry*. (Attachments: # **1** Exhibit 1)(Lonian, Heather) (Entered: 09/14/2007) |
| 09/16/2007 | 458 | Exhibit List *supplemental* by Housing Authority of New Orleans. (Attachments: # **1** Exhibit news article)(Wolf, Walter) (Entered: 09/16/2007) |
| 09/17/2007 | 459 | Minute Entry for proceedings held before Judge Ivan L. R. Lemelle : Motion Hearing held on 9/17/2007 re **43** MOTION to Certify Class. (Court Reporter David Zarek.) (lag, ) (Entered: 09/18/2007) |
| 09/18/2007 | 460 | ORDER granting in part and denying in part **382** Motion to Certify Class. Signed by Judge Ivan L. R. Lemelle on 9/17/07. (lag, ) (Entered: 09/18/2007) |
| 09/20/2007 | 461 | EXPARTE/CONSENT MOTION to Stay *proceedings pending appeal* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Memorandum in Support # **2** Exhibit Court's Order of September 17, 2007# **3** Proposed Order)(Wolf, Walter) Modified on 9/21/2007 (lag, ). (Entered: 09/20/2007) |
| 09/21/2007 | 462 | Correction of Docket Entry by Clerk re **461** MOTION to Stay *proceedings pending appeal* ; Not all filers were selected. William Thorson & C. Donald Babers were added as additional filers, by clerk. (lag, ) (Entered: 09/21/2007) |
| 09/21/2007 | 463 | ORDER dismissing as moot **411** Motion to Exclude; **412** Motion to Exclude; **413** Motion to Exclude; **414** Motion to Exclude; **421** Motion to Exclude; **422** Motion to Exclude; **423** Motion to Exclude. Signed by Judge Ivan L. R. Lemelle on 9/19/07. (lag, ) (Entered: 09/21/2007) |
| 09/24/2007 | 464 | NOTICE by Alphonso - Jackson, U.S. Department of Housing and |

| | | |
|---|---|---|
| | | Urban Development *of Filing*. (Attachments: # **1** Exhibit A - September 21, 2007 Approval Memorandum)(Phillips, Heather) (Entered: 09/24/2007) |
| 09/25/2007 | **465** | RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re **461** MOTION to Stay *proceedings pending appeal*. (Attachments: # **1** Exhibit Exhibits to opposition to motion to stay)(Bricker, Ross) (Entered: 09/25/2007) |
| 09/28/2007 | **466** | ORDER denying **461** Motion to Stay. Signed by Judge Ivan L. R. Lemelle on 9/26/07. (lag, ) (Entered: 09/28/2007) |
| 09/28/2007 | **467** | ORDER ADOPTING REPORT AND RECOMMENDATIONS **452**, that claims of Lolita Gibson are dismissed w/prej. Signed by Judge Ivan L. R. Lemelle.(lag, ) (Entered: 09/28/2007) |
| 10/01/2007 | **468** | DEFICIENT MOTION to Alter Judgment **460** Order on Motion to Certify Class ( Motion Hearing set for 10/17/2007 09:00 AM before Judge Ivan L. R. Lemelle.), MOTION to Amend/Correct **460** Order on Motion to Certify Class ( Motion Hearing set for 10/17/2007 09:00 AM before Judge Ivan L. R. Lemelle.), MOTION for Reconsideration re **460** Order on Motion to Certify Class ; ( Motion Hearing set for 10/17/2007 before Judge Ivan L. R. Lemelle.) by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Memorandum in Support # **2** Proposed Order)(Bricker, Ross) Modified on 10/2/2007 (lag, ). (Entered: 10/01/2007) |
| 10/02/2007 | **469** | MOTION to Alter Judgment **460** Order on Motion to Certify Class by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. Motion Hearing set for 10/17/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing # **3** Proposed Order)(Bricker, Ross) (Entered: 10/02/2007) |
| 10/05/2007 | **470** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **469** MOTION to Alter Judgment **460** Order on Motion to Certify Class . (Chilakamarri, Varu) Modified on 10/9/2007 (lag, ). (Entered: 10/05/2007) |
| 10/05/2007 | **471** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **469** MOTION to Alter Judgment **460** Order on Motion to Certify Class . (Wisdom, Rachel) Modified on 10/9/2007 (lag, ). (Entered: 10/05/2007) |

| 10/05/2007 | 472 | DEFICIENT Supplemental Memorandum filed by all plaintiffs, in in support of 469 MOTION to Alter Judgment 460 Order on Motion to Certify Class. (Attachments: # 1 Exhibit)(Bricker, Ross) Modified on 10/9/2007 (lag, ). (Entered: 10/05/2007) |
| --- | --- | --- |
| 10/08/2007 | 473 | DEFICIENT RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re 469 MOTION to Alter Judgment 460 Order on Motion to Certify Class *(response to supplemental filing by plaintiffs)*. (Wisdom, Rachel) Modified on 10/9/2007 (lag, ). (Entered: 10/08/2007) |
| 10/09/2007 | 474 | EXPARTE/CONSENT MOTION for Leave to File *reply memorandum to plaintiffs' memo in support of Rule 59(e) motion* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # 1 Proposed Pleading Reply memorandum# 2 Proposed Order order)(Wolf, Walter) Modified on 10/10/2007 (lag, ). (Entered: 10/09/2007) |
| 10/10/2007 | 475 | Correction of Docket Entry by Clerk re 474 MOTION for Leave to File *reply memorandum to plaintiffs' memo in support of Rule 59(e) motion* ; Not all filers were selected. C. Donald Babers and William C. Thorson were added as additional filers by clerk. (lag, ) (Entered: 10/10/2007) |
| 10/10/2007 | 476 | ORDER dismissing as moot 377 Motion for Summary Judgment; dismissing as moot 379 Motion for Summary Judgment; dismissing as moot 380 Motion for Partial Summary Judgment. Signed by Judge Ivan L. R. Lemelle on 10/5/07. (lag, ) Modified on 10/12/2007 (lag, ). (Entered: 10/11/2007) |
| 10/12/2007 | 477 | EXPARTE/CONSENT MOTION for Leave to File *Plaintiffs' Supplemental Memorandum in Support of Motion to Alter or Amend Judgment* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # 1 Proposed Pleading Supplemental Memorandum in Support of Motion to Alter or Amend Judgment# 2 Proposed Order)(Bricker, Ross) Exhibit attached on 10/15/2007 (gec, ). Modified on 10/15/2007 (gec, ). (Entered: 10/12/2007) |
| 10/15/2007 | 478 | Correction of Docket Entry by Clerk re 477 MOTION for Leave to File *Plaintiffs' Supplemental Memorandum in Support of Motion to Alter or Amend Judgment*. Exhibit to proposed pleading should have been a separate attachment. (gec, ) (Entered: 10/15/2007) |
| 10/16/2007 | 479 | ORDER granting 474 Motion for Leave to File reply. Signed by Judge Ivan L. R. Lemelle on 10/12/07. (lag, ) (Entered: 10/16/2007) |
| 10/16/2007 | 480 | EXPARTE/CONSENT MOTION to Withdraw Lara E. FitzSimmons as Attorney by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda |

| | | |
|---|---|---|
| | | May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Nicole Banks, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank, Kim Paul. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 10/16/2007) |
| 10/16/2007 | **481** | RESPONSE to Motion filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **469** MOTION to Alter Judgment **460** Order on Motion to Certify Class.(lag, ) (Entered: 10/16/2007) |
| 10/16/2007 | **482** | ORDER granting **350** MOTION for Sanctions *Under Rule 37 Against Plaintiffs Bell, Banks and Paul for Failure to Appear for Depositions and Failure to Respond to Interrogatories* ; Kim Paul, Nicole Banks and Cynthia Bell terminated.. Signed by Judge Ivan L. R. Lemelle on 10/11/07.(lag, ) (Entered: 10/16/2007) |
| 10/22/2007 | **483** | ORDER granting **480** Motion to Withdraw as Attorney. Attorney Lara E. FitzSimmons terminated. Signed by Judge Ivan L. R. Lemelle on 10/19/07. (lag, ) (Entered: 10/22/2007) |
| 10/22/2007 | **484** | ORDER amending **482** Order, that only claims of Kim Paul and Nicole Banks are dismissed. Signed by Judge Ivan L. R. Lemelle on 10/17/07.(lag, ) (Entered: 10/22/2007) |
| 10/24/2007 | **485** | MOTION to Alter Judgment *regarding claims of plaintiff Cynthia Bell* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion Hearing set for 11/14/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Exhibit A, Magistrate's Report# **3** Notice of Hearing)(Wisdom, Rachel) (Entered: 10/24/2007) |
| 10/24/2007 | **486** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Motion to Alter or Amend Judgment regarding claims of Plaintiff Cynthia Bell* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Proposed Order)(Wisdom, Rachel) (Entered: 10/24/2007) |
| 10/25/2007 | **487** | EXPARTE/CONSENT MOTION to Substitute *Corrected Exhibit A to HANO's Motion to Alter or Amend Judgment* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. (Attachments: # **1** Exhibit A# **2** Proposed Order)(Wisdom, Rachel) (Entered: 10/25/2007) |
| 10/25/2007 | **488** | MOTION for Sanctions *Under Rule 37 Against Plaintiff Doucet for Failure to Respond to Interrogatories* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 11/14/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit 1# **3** Exhibit 2# **4** Proposed Order # **5** Notice of Hearing)(Chilakamarri, Varu) . (Entered: 10/25/2007) |

| | | |
|---|---|---|
| 10/26/2007 | **489** | ORDER granting **487** Motion to Substitute exhibit.. Signed by Judge Ivan L. R. Lemelle on 10/25/07. (lag, ) (Entered: 10/26/2007) |
| 10/29/2007 | **490** | ORDER granting **486** Motion to Expedite hrg on motion to alter judgment; denying **485** Motion to Alter Judgment. Signed by Judge Ivan L. R. Lemelle on 10/26/07. (lag, ) (Entered: 10/29/2007) |
| 10/30/2007 | **491** | ORDER Setting/Resetting oral argument on **488** MOTION for Sanctions *Under Rule 37 Against Plaintiff Doucet for Failure to Respond to Interrogatories* : Motion Hearing set for 11/14/2007 11:00 AM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez.(car, ) (Entered: 10/30/2007) |
| 10/30/2007 | **509** | ORDER of USCA that petn for leave to appeal is granted; Further Ordered that mtn to stay is denied except as to trial. (HIGGINBOTHAM, STEWART, OWEN) (lag, ) (Entered: 11/02/2007) |
| 11/01/2007 | **492** | ORDER granting **477** Motion for Leave to File Plaintiff's Supplemental Memo in Support of Mtn to Alter Judgment. Signed by Judge Ivan L. R. Lemelle on 10/31/07. (ala, ) (Entered: 11/01/2007) |
| 11/01/2007 | **493** | RESPONSE/MEMORANDUM in Support filed by all plaintiffs re **469** MOTION to Alter Judgment. (Attachments: # **1** Exhibit)(ala, ) (Entered: 11/01/2007) |
| 11/01/2007 | **494** | MOTION to Certify Class *de-certify class* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion Hearing set for 11/28/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Exhibit A-C# **3** Exhibit D-K# **4**)(Wolf, Walter) Modified on 11/2/2007 (lag, ). (Entered: 11/01/2007) |
| 11/01/2007 | **495** | MOTION to Stay *Proceedings* by Housing Authority of New Orleans. Motion Hearing set for 11/28/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support motion to stay proceedings# **2** Exhibit A & B# **3** Notice of Hearing Notice of hearing)(Wolf, Walter) (Entered: 11/01/2007) |
| 11/01/2007 | **496** | EXPARTE/CONSENT MOTION to Expedite *Hearing on HANO's Motion to Stay Proceedings* by Housing Authority of New Orleans. (Attachments: # **1** Proposed Order)(Wolf, Walter) (Entered: 11/01/2007) |
| 11/01/2007 | **497** | Request/Statement of Oral Argument by Housing Authority of New Orleans, William C. Thorson, C. Donald Babers regarding **495** MOTION to Stay *Proceedings*. (Wolf, Walter) Modified on 11/2/2007 (lag, ). (Entered: 11/01/2007) |
| 11/01/2007 | **498** | Request/Statement of Oral Argument by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson regarding **494** MOTION to Certify Class *de-certify class*. (Wolf, Walter) Modified on 11/2/2007 (lag, ). (Entered: 11/01/2007) |

| | | |
|---|---|---|
| 11/01/2007 | **499** | MOTION for Leave to Appeal *under Sec. 1292(b)* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank. Motion Hearing set for 11/28/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Exhibit # **3** Notice of Hearing # **4** Proposed Order)(Bricker, Ross) Modified on 11/20/2007 (lag, ). (Entered: 11/01/2007) |
| 11/01/2007 | **500** | MOTION to Reinstate Claim or in the Alternative, MOTION for Leave to File *Supplemental Pleading* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank. Motion Hearing set for 11/28/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Proposed Pleading # **3** Proposed Order # **4** Notice of Hearing)(Bricker, Ross) (Entered: 11/01/2007) |
| 11/01/2007 | **501** | EXPARTE/CONSENT MOTION to Expedite *Hearing on Motion to Reinstate Claim or in the Alternative for Leave to File Supplemental Pleading* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 11/01/2007) |
| 11/01/2007 | **502** | Second MOTION for Preliminary Injunction, Second MOTION for Temporary Restraining Order by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank. Motion Hearing set for 11/28/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Exhibit # **3** Proposed Order # **4** Notice of Hearing)(Bricker, Ross) (Entered: 11/01/2007) |
| 11/01/2007 | **503** | EXPARTE/CONSENT MOTION to Expedite *Second Motion for a Temporary Restraining Order and a Preliminary Injunction* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 11/01/2007) |
| 11/01/2007 | **504** | Third MOTION to Dismiss *,or Alternatively, For Summary Judgment* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion Hearing set for 11/28/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** |

| | | |
|---|---|---|
| | | Exhibit A# **3** Exhibit B# **4** Exhibit C# **5** Exhibit D# **6** Exhibit E# **7** Notice of Hearing)(Wisdom, Rachel) (Entered: 11/01/2007) |
| 11/01/2007 | **505** | Request/Statement of Oral Argument by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson regarding **504** Third MOTION to Dismiss ,*or Alternatively, For Summary Judgment*. (Wisdom, Rachel) (Entered: 11/01/2007) |
| 11/01/2007 | **506** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages *for Second Motion to Dismiss* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order # **2** Proposed Pleading Second Motion to Dismiss# **3** Proposed Pleading Memorandum Supporting Second Motion to Dismiss# **4** Proposed Pleading Exhibit 1# **5** Proposed Pleading Exhibit 2# **6** Proposed Pleading Exhibit 3# **7** Proposed Pleading Exhibit 4# **8** Proposed Pleading Exhibit 5# **9** Proposed Pleading Exhibit 6# **10** Proposed Pleading Exhibit 7# **11** Proposed Pleading Exhibit 8# **12** Proposed Pleading Notice of Hearing)(Riess, Daniel) (Entered: 11/01/2007) |
| 11/02/2007 | 507 | Correction of Docket Entry by Clerk re **494** MOTION to Certify Class *de-certify class* ; Not all filers were selected. William Thorson and C. Donald Babers were added as additional filers by clerk. (lag, ) (Entered: 11/02/2007) |
| 11/02/2007 | 508 | Correction of Docket Entry by Clerk re **497** Request/Statement of Oral Argument, **498** Request/Statement of Oral Argument ; Not all filers were selected. William C. Thorson & C. Donald Babers were added as additional filers by clerk. (lag, ) (Entered: 11/02/2007) |
| 11/02/2007 | **510** | EXPARTE/CONSENT MOTION to Withdraw Abby J. Clark as Attorney by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy and Gilda Burbank. (Attachments: # **1** Proposed Order)(Bricker, Ross) Modified on 11/5/2007 to edit event and text (cab, ). (Entered: 11/02/2007) |
| 11/05/2007 | 511 | Correction of Docket Entry by Clerk re **510** MOTION for Leave to Withdraw Appearance; Filing attorney selected incorrect event. Correct event is Motion - Withdraw as Attorney. Clerk took corrective action by changing the event. No further action is necessary. (cab) (Entered: 11/05/2007) |
| 11/05/2007 | 528 | USCA Appeal Fees received $ 455 re **509** Notice of Interlocutory Appeal (lag, ) (Entered: 11/14/2007) |
| 11/06/2007 | **512** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **499** MOTION for Certificate of Appealability *under Sec. 1292(b)* MOTION for Certificate of Appealability *under Sec. 1292(b)*. (Chilakamarri, |

| | | Varu) (Entered: 11/06/2007) |
|---|---|---|
| 11/06/2007 | **513** | ORDER granting **510** Motion to Withdraw as Attorney. Attorney Abby J. Clark terminated. Signed by Judge Ivan L. R. Lemelle on 11/5/07. (lag, ) (Entered: 11/06/2007) |
| 11/06/2007 | **514** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **502** Second MOTION for Preliminary InjunctionSecond MOTION for Temporary Restraining Order. (Attachments: # **1** Exhibit 1# **2** Exhibit 2# **3** Exhibit 3)(Robinson, Ashlee) (Entered: 11/06/2007) |
| 11/06/2007 | **515** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **499** MOTION for Certificate of Appealability *under Sec. 1292(b)* MOTION for Certificate of Appealability *under Sec. 1292(b).* (Attachments: # **1** Exhibit A)(Wisdom, Rachel) (Entered: 11/06/2007) |
| 11/07/2007 | **516** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **500** MOTION to Reinstate Claim or in the Alternative MOTION for Leave to File *Supplemental Pleading.* (Wisdom, Rachel) (Entered: 11/07/2007) |
| 11/08/2007 | **517** | ORDER denying **494** Motion to De-Certify Class. Signed by Judge Ivan L. R. Lemelle on 11/6/07. (lag, ) (Entered: 11/08/2007) |
| 11/08/2007 | **518** | ORDER denying **495** Motion to Stay; dismissing as moot **496** Motion to Expedite. Signed by Judge Ivan L. R. Lemelle on 11/6/07. (lag, ) (Entered: 11/08/2007) |
| 11/08/2007 | **519** | ORDER granting **506** Motion for Leave to File Excess Pages. Signed by Judge Ivan L. R. Lemelle on 11/6/07. (lag, ) (Entered: 11/08/2007) |
| 11/08/2007 | **520** | Second MOTION to Dismiss Party Alphonso Jackson, US Dept of Housing & Urban Development by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion Hearing set for 11/28/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Exhibit 1# **3** Exhibit 2# **4** Exhibit 3# **5** Exhibit 4# **6** Exhibit 5# **7** Exhibit 6# **8** Exhibit 7# **9** Exhibit 8# **10** Notice of Hearing)(lag, ) (Entered: 11/08/2007) |
| 11/08/2007 | **521** | ORDER re **503** MOTION to Expedite *Second Motion for a Temporary Restraining Order and a Preliminary Injunction,* **500** MOTION to Reinstate Claim or in the Alternative MOTION for Leave to File *Supplemental Pleading,* **501** MOTION to Expedite *Hearing on Motion to Reinstate Claim or in the Alternative for Leave to File Supplemental Pleading,* **502** Second MOTION for Preliminary Injunction Second MOTION for Temporary Restraining Order, **504** Third MOTION to Dismiss *,or Alternatively, For Summary Judgment* : ORDERED that opposing counsel file response memoranda by 11/9/07. Signed by Judge |

|  | | Ivan L. R. Lemelle on 11/6/07.(lag, ) (Entered: 11/08/2007) |
|---|---|---|
| 11/09/2007 | **522** | ORDER denying **469** Motion to Alter Judgment. Signed by Judge Ivan L. R. Lemelle on 11/7/07. (lag, ) (Entered: 11/09/2007) |
| 11/09/2007 | **523** | ORDER that oppositions to 502] Second MOTION for Preliminary Injunction Second MOTION for Temporary Restraining Order, **503** MOTION to Expedite *Second Motion for a Temporary Restraining Order and a Preliminary Injunction*, **500** MOTION to Reinstate Claim or in the Alternative MOTION for Leave to File *Supplemental Pleading*, **501** MOTION to Expedite *Hearing on Motion to Reinstate Claim or in the Alternative for Leave to File Supplemental Pleading* are due 11/9/07; Opposition to **504** Third MOTION to Dismiss *,or Alternatively, For Summary Judgment* is due within the ordinary time frame. Signed by Judge Ivan L. R. Lemelle on 11/8/07.(lag, ) (Entered: 11/09/2007) |
| 11/09/2007 | **524** | ORDER that pretrial conference set for 11/15/2007 09:00 AM is rescheduled as a Telephone Status Conference. Signed by Judge Ivan L. R. Lemelle on 11/7/07.(lag, ) (Entered: 11/09/2007) |
| 11/09/2007 | **525** | EXPARTE/CONSENT MOTION for Leave to File Excess Pages *for Brief in Opposition to Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. (Attachments: # **1** Proposed Order # **2** Proposed Pleading # **3** Exhibit)(Farby, Lesley) (Entered: 11/09/2007) |
| 11/09/2007 | **526** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **500** MOTION to Reinstate Claim or in the Alternative MOTION for Leave to File *Supplemental Pleading*. (Riess, Daniel) (Entered: 11/09/2007) |
| 11/13/2007 | **527** | MOTION for Sanctions *Against Plaintiff Cynthia Bell For Second Failure To Appear for Deposition* by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 11/28/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Exhibit A# **3** Exhibit B# **4** Exhibit C# **5** Exhibit D# **6** Exhibit E# **7** Exhibit F# **8** Notice of Hearing)(Wisdom, Rachel) (Entered: 11/13/2007) |
| 11/14/2007 | **529** | MOTION for Sanctions *Against Plaintiff Cynthia Bell for Second Failure to Appear for Deposition* by Alphonso - Jackson, U.S. Department of Housing and Urban Development. Motion(s) referred to Alma L. Chasez. Motion Hearing set for 12/5/2007 11:00 AM before Magistrate Judge Alma L. Chasez. (Attachments: # **1** Memorandum in Support # **2** Notice of Hearing)(Farby, Lesley) Modified on 11/15/2007 (lag, ). (Entered: 11/14/2007) |

| 11/14/2007 | **530** | EXPARTE/CONSENT MOTION for Leave to File Reply by all plaintiffs. (Attachments: # **1** Proposed Order # **2** Proposed Pleading)(Bricker, Ross) Modified on 11/15/2007 (lag, ). (Entered: 11/14/2007) |
| --- | --- | --- |
| 11/14/2007 | **536** | Minute Order. Proceedings held before Judge Alma L. Chasez : granting **488** Motion for Sanctions; Motion Hearing held on 11/14/2007 re **488** MOTION for Sanctions *Under Rule 37 Against Plaintiff Doucet for Failure to Respond to Interrogatories* filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development. A R&R will be issued. (car, ) (Entered: 11/16/2007) |
| 11/15/2007 | 531 | Correction of Docket Entry by Clerk re **529** MOTION for Sanctions *Against Plaintiff Cynthia Bell for Second Failure to Appear for Deposition* ; Motion not set for a valid hearing date. Motion reset for hearing 12/5/07 11:00 AM before Magistrate Judge Alma L. Chasez. (lag, ) (Entered: 11/15/2007) |
| 11/15/2007 | 532 | Correction of Docket Entry by Clerk re **530** REPLY to Response to Motion; Wrong event chosen by attorney; Should have been filed as "MOTION for Leave to File Document"; Corrective action taken by clerk. (lag, ) (Entered: 11/15/2007) |
| 11/15/2007 | **533** | ORDER granting **525** Motion for Leave to File Excess Pages. Signed by Judge Ivan L. R. Lemelle on 11/14/07. (lag, ) (Entered: 11/15/2007) |
| 11/15/2007 | **534** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **502** Second MOTION for Preliminary Injunction, Second MOTION for Temporary Restraining Order. (Attachments: # **1** Exhibit)(lag, ) (Entered: 11/15/2007) |
| 11/16/2007 | **535** | ORDER Setting/Resetting ORAL argument on **527** MOTION for Sanctions *Against Plaintiff Cynthia Bell For Second Failure To Appear for Deposition* : Motion Hearing set for 11/28/2007 11:00 AM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez on 11/15/07.(car, ) (Entered: 11/16/2007) |
| 11/16/2007 | **537** | ORDER Setting/Resetting ORAL argument on **529** MOTION for Sanctions *Against Plaintiff Cynthia Bell for Second Failure to Appear for Deposition* : Motion Hearing set for 11/28/2007 11:00 AM before Magistrate Judge Alma L. Chasez.. Signed by Judge Alma L. Chasez.(car, ) (Entered: 11/16/2007) |
| 11/19/2007 | **538** | REPORT AND RECOMMENDATIONS re **488** MOTION for Sanctions *Under Rule 37 Against Plaintiff Doucet for Failure to Respond to Interrogatories* filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development - Objections to R&R due by 12/4/2007. Signed by Judge Alma L. Chasez.(car, ) (Entered: 11/19/2007) |

| 11/19/2007 | **539** | Minute Order. Proceedings held before Judge Ivan L. R. Lemelle : Telephone Status Conference held on 11/15/2007. ORDER denying **500** Motion to Reinstate Claim; granting **500** Motion for Leave to File Supplemental Pleading; denying **502** Motion for Preliminary Injunction; denying **502** Motion for Temporary Restraining Order; denying **504** Motion to Dismiss; denying **520** Motion to Dismiss Party; dismissing as moot **501** Motion to Expedite; dismissing as moot **503** Motion to Expedite. (lag, ) (Entered: 11/20/2007) |
|---|---|---|
| 11/19/2007 | **540** | Certified and Transmitted Record on Appeal to US Court of Appeals re **509** Notice of Interlocutory Appeal. USCA Case Number 07-31008. (lag, ) (Entered: 11/20/2007) |
| 11/27/2007 | **541** | Amended MOTION for Leave to Appeal by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank. Motion Hearing set for 12/12/2007 09:00 AM before Judge Ivan L. R. Lemelle. (Attachments: # **1** Memorandum in Support # **2** Proposed Order # **3** Notice of Hearing)(Bricker, Ross) Modified on 11/29/2007 (lag, ). (Entered: 11/27/2007) |
| 11/27/2007 | **542** | EXPARTE/CONSENT MOTION to Continue *Motion to Certify Questions for Appeal* by Allen Harris, Donna Johnigan, Odessia Lewis, Emelda May, Sylvia Moten, Yolanda Anderson, Hilda Johnson, Cynthia Bell, Judith Watson, Gloria Williams, Mary Ann Wright, Catrice Doucet, Linda DeGruy, Gilda Burbank. (Attachments: # **1** Proposed Order)(Bricker, Ross) (Entered: 11/27/2007) |
| 11/28/2007 | **546** | Minute Order. Proceedings held before Judge Alma L. Chasez : granting **527** Motion for Sanctions; granting **529** Motion for Sanctions; Motion Hearing held on 11/28/2007 re **529** MOTION for Sanctions *Against Plaintiff Cynthia Bell for Second Failure to Appear for Deposition* filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development, **527** MOTION for Sanctions *Against Plaintiff Cynthia Bell For Second Failure To Appear for Deposition* filed by C. Donald Babers, William C. Thorson, Housing Authority of New Orleans. (car, ) (Entered: 11/30/2007) |
| 11/29/2007 | 543 | Correction of Docket Entry by Clerk re **541** MOTION for Certificate of Appealability; Wrong motion relief chosen. Should have been filed as "Motion for Leave to Appeal"; Corrective action taken by clerk. (lag, ) (Entered: 11/29/2007) |
| 11/29/2007 | **544** | Joint Submission regarding Proposed Schedule pursuant to the Court's order dated 11/16/2007 by all parties re **539** . (Wisdom, Rachel) Modified on 11/30/2007 to edit text (cab, ). (Entered: 11/29/2007) |
| 11/29/2007 | **545** | ORDER granting **542** MOTION to Continue Hearing on **541** Amended MOTION for Leave to Appeal : Motion Hearing set for 12/12/2007 |

| | | |
|---|---|---|
| | | before Judge Ivan L. R. Lemelle. FURTHER ORDERED that all opposition to said motion is due 11/30/07. Signed by Judge Ivan L. R. Lemelle on 11/28/07.(lag, ) (Entered: 11/29/2007) |
| 11/30/2007 | **547** | RESPONSE/MEMORANDUM in Opposition filed by Housing Authority of New Orleans, C. Donald Babers, William C. Thorson re **541** MOTION for Leave to Appeal. (Robinson, Ashlee) (Entered: 11/30/2007) |
| 11/30/2007 | **548** | RESPONSE/MEMORANDUM in Opposition filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development re **541** MOTION for Leave to Appeal. (Chilakamarri, Varu) (Entered: 11/30/2007) |
| 12/03/2007 | **549** | REPORT AND RECOMMENDATIONS re **1** Complaint filed by Cynthia Bell, **529** MOTION for Sanctions *Against Plaintiff Cynthia Bell for Second Failure to Appear for Deposition* filed by U.S. Department of Housing and Urban Development, Alphonso - Jackson, **527** MOTION for Sanctions *Against Plaintiff Cynthia Bell For Second Failure To Appear for Deposition* filed by William C. Thorson, C. Donald Babers, Housing Authority of New Orleans - Objections to R&R due by 12/17/2007. Signed by Judge Alma L. Chasez.(car, ) (Entered: 12/03/2007) |
| 12/04/2007 | **550** | ORDER ADOPTING REPORT AND RECOMMENDATIONS **538**, granting **488** MOTION for Sanctions *Under Rule 37 Against Plaintiff Doucet for Failure to Respond to Interrogatories* filed by Alphonso - Jackson, U.S. Department of Housing and Urban Development, and pla's claims will be dismissed if Catrice Doucet fails to respond to discovery requests by 1/10/08. Signed by Judge Ivan L. R. Lemelle.(lag, ) (Entered: 12/05/2007) |
| 12/05/2007 | **552** | Appeal Record on Loan to Rachel Wendt Wisdom re **551** Notice of Interlocutory Appeal - 18 Volumes of Original Record, 3 accordian folders of Exhibits. (cms, ) (Entered: 12/10/2007) |
| 12/06/2007 | **551** | NOTICE OF INTERLOCUTORY APPEAL by all plaintiffs as to **539** Order. Filing fee $ 455. (Bricker, Ross) Modified on 12/7/2007 (lag, ). (Entered: 12/06/2007) |

# HANO

**Housing Authority of New Orleans**

March 28, 2007

**MEMORANDUM**

To:        C. Donald Babers
                Board of Commissioners

From:     Jeffrey Riddel
                Deputy Executive Administrator

Re:        **Development Partner for the St. Bernard Housing Development**
                **RFQ #06-120-10-17**

---

The Housing Authority of New Orleans (HANO) issued a Request for Qualifications (RFQ) on Thursday, October 19, 2006 for the purpose of procuring a development partner for the St. Bernard Housing Development to implement the comprehensive redevelopment project at that site, pursuant to Request for Qualifications Number 06-120-10-17.

The proposal package was prepared and distributed by the Department of Procurement and Contracts. The RFQ was advertised for a total of seventy nine (79) days. The advertisement was published in the Times-Picayune on Thursday, October 19, 2006, Monday, October 23, 2006 and Tuesday, October 31, 2006. Additionally, the advertisement was published in the Wall Street Journal on Tuesday, November 7, 2006, Wednesday, November 8, 2006 and Thursday, November 9, 2006. Additionally, the advertisement was published nationally in the publications and/or websites of NOAAH, HANO, PHADA, CLPHA, and NAHRO. Finally, the solicitation, in its entirety, was posted on the HANO website and made available for download. At least one hundred and fifty three (153) firms received the proposal package. A total of five (5) timely proposals were received from the following firms on Friday, January 5, 2007:

➢ FORE!Kids Foundation/Columbia Residential/Baton Rouge Area Foundation
➢ HRI & Partners Development Team
➢ Lambert Engineers
➢ Picerne Affordable Development
➢ Telesis Corporation

In accordance with the evaluation process outlined in the RFQ, an evaluation committee was established to review the proposals received in response to the solicitation. On Wednesday, January 17, 2007, the evaluation committee met, via teleconference, and was given an overview of the scope of services, and instructed on the proper procedure for proposal evaluation. Upon completion of the training, the committee commenced with a review of the proposals. On Monday, January 29, 2007, the committee reconvened to evaluate and score proposals. The ranking of the respondents is as follows:

4100 Touro Street • New Orleans, LA 70122 • (504) 670-3300 • FAX (504) 286-8771
The Housing Authority of New Orleans is an equal opportunity employer.

HANO 051596

HANO 051781

| Name | Total (110 Points) |
|------|--------------------|
| FORE!Kids Foundation/Columbia Residential/Baton Rouge Area Foundation | 80 |
| HRI & Partners Development Team | 65 |
| Telesis Corporation | 40 |
| Picerne Affordable Development | 31 |
| Lambert Engineers | 12 |

In accordance with the evaluation plan outlined in the RFP, a due diligence review was conducted on FORE!Kids Foundation/Columbia Residential/Baton Rouge Area Foundation and HRI & Partners Development Team. The review consisted of a reference verification, whereby references were contacted to respond to questions regarding the previous performance of the contractors. Additionally, the List of Parties Excluded from Federal Procurement and Non Procurement Programs was checked to ensure that the contractors are not debarred from participation in federally funded contracts. Results from the due diligence review indicate that these respondents are responsible.

Pursuant to the Stage I evaluation process, the following firms were determined to be the most qualified and were included on the short list:

- FORE!Kids Foundation/Columbia Residential/Baton Rouge Area Foundation
- HRI & Partners Development Team

The Evaluation Committee re-convened on Monday, February, February 12, 2007, for presentations/interviews with the short-listed firms. Upon completion of the presentations/interviews, the Evaluation Committee scored the short-listed firms using the same criteria as was used during Stage I evaluations. The results of Stage II evaluations are as follows:

| Name | Total (110 Points) |
|------|--------------------|
| FORE!Kids Foundation/Columbia Residential/Baton Rouge Area Foundation | 68 |
| HRI & Partners Development Team | 67 |

Pursuant to the recommendations of the Director of Procurement and Contracts and the General Counsel, I hereby certify that this procurement was conducted in accordance with all applicable Federal and State regulations and laws, and in accordance with HANO's procurement policy. I further certify that FORE!Kids Foundation/Columbia Residential/Baton Rouge Area Foundation submitted the highest ranked proposal in response to the solicitation. As such, it is recommended that approval be given to begin negotiations of a Master Development Agreement with FORE!Kids Foundation/Columbia Residential/Baton Rouge Area Foundation to implement the comprehensive redevelopment project at the St. Bernard Housing Development.

JHR/MEA/ala

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

YOLANDA ANDERSON, et. al.,    )
     Plaintiffs    )
         )
     v.    )    Civil Action No. 06-3298
         )    SECT. B MAG 5
         )    JUDGE LEMELLE
ALPHONSO JACKSON, et. al.,    )
     Defendants    )

## FIFTH DECLARATION OF AINARS RODINS

I, Ainars Rodins, hereby declare:

1. I am of majority age and otherwise competent to testify as to the matters herein, based on my personal knowledge.

2. I am the Director of HUD's Public and Indian Housing (PIH) Special Applications Center (SAC), located in Chicago, Illinois. I have held this position for the past eight years. I have over 10 years of experience in the area of public and Indian housing demolition and disposition application review.

3. As Director of the SAC, I ensure that applications from public housing authorities (PHAs) for PIH approval to demolish or otherwise dispose of public housing are properly reviewed.

4. Pursuant to Section 18 of the U.S. Housing Act, PHAs must apply for and receive approval from HUD before they can demolish any public housing project. See 42 U.S.C. § 1437p(a). Pursuant to the statute, certain conditions must be met before HUD may approve any demolition application. Accordingly, the SAC will not approve any demolition application unless and until HANO certifies as to the matters set forth in 42 U.S.C. § 1437p(a) and has consulted with tenants and local government officials as described in 42 U.S.C. § 1437p(b). If the PHA meets these requirements, the SAC must approve the application. See id.

5.   On October 16, 2006, the SAC received an incomplete demolition application from HANO relating to the B.W. Cooper, St. Bernard, C.J. Peete, and Lafitte housing projects.  HANO's application lacked critical documentation, including a HANO Board Resolution, an environmental review, a letter from the Mayor regarding consultation with the city, justification for the proposed demolition, information regarding relocation, and information regarding resident consultation.

6.   Given the incomplete demolition application submitted by HANO, on October 20, 2006, I informed HANO that the SAC would not begin processing the demolition portion of HANO's application until information regarding HANO's justification for the demolition, tenant relocation, and resident consultation had been submitted to the SAC.  See October 20, 2006 Letter to HANO, attached to Second Declaration of Ainars Rodins as Exhibit A.

7.   On March 13, 2007, in response to my October 20, 2006 letter to HANO, the SAC received several binders of supplemental application materials, including an inspection report from ECM Consultants, Inc., a letter from Mayor Nagin regarding consultation with the city, and information concerning resident consultation in the form of meetings held on November 29 and December 6, 2006, and a series of tenant outreach meetings during March 2007.  Thereafter, the SAC received additional supplemental materials from HANO, including, but not limited to, the following: an environmental assessment; a physical condition assessment report of the affected properties by Jeffrey Paris of Draper & Associates; a soil sampling report by PPM; the HANO Board Resolution; and additional information regarding resident consultation.  In addition, the SAC received from National Housing Law Project a report by Professor John Emmanuel Fernandez and a declaration by David Martinez.

8.   The SAC generally requires an average of 90 business days to review and render a decision on a demolition application, due primarily to work backlog and applicants' delays in providing supplemental materials to cure application deficiencies.  However, where the applicant

promptly moves to cure application deficiencies, and where the SAC bypasses the backlog and brings an application to the front of the queue, the SAC can review and render a decision on an application in much less than 90 business days. Reviewing materials on a rolling basis, assigning additional staff beyond the one reviewer typically assigned, and lengthening the workday can further expedite the review. For example, in a previous instance calling for expedited review, the SAC was able to review and render a decision on an application submitted by the Philadelphia Housing Authority in three business days.

9. The SAC had originally intended to begin an expedited review of HANO's application once complete information regarding HANO's justification for demolition, tenant relocation, and resident consultation had been received. However, because financing for HANO's redevelopment plan depended, at least in part, on the demolition process, i.e., bid solicitation, etc., commencing by October 1, 2007, in order for approval to be meaningful, the SAC needed to approve HANO's application, if at all, before that date. In order to render a decision by that date, the SAC determined that it would begin review of HANO's supplemental application materials before having received all of them. This expedited review began in late August 2007.

10. On or about September 10, 2007, the SAC intensified its review. Several employees were added to the review effort and the workday was lengthened. Some employees worked up to 14-hour days reviewing the application. The SAC continued to receive materials up until September 20, 2007. By that date, the SAC had already reviewed all other previously-received materials. After reviewing all these materials, and having determined that HANO's application met the standards set forth in Section 18 of the U.S. Housing Act and 24 C.F.R. Part 970, the SAC approved HANO's demolition application in a memorandum issued late in the evening on September 21, 2007 to HANO and HUD's New Orleans field office. Attached hereto as Exhibit A is a true and correct copy of the September 21, 2007 decision memorandum.

I declare under the penalty of perjury that the foregoing is true and correct.


8 NOV 2007
DATED

AINARS RODINS

# Exhibit A



OFFICE OF PUBLIC HOUSING

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

Special Applications Center
77 W. Jackson Blvd., Room 2401
Chicago, Illinois 60604-3507
Phone: (312) 886-9754  Fax: (312) 886-6413

SEP 2 1 2007

MEMORANDUM FOR:  Cheryl Williams, Director, New Orleans Office of Public
                 Housing, 6H

FROM:  Ainars Rodins, P.E., Director, Special Applications Center (SAC), PIA

SUBJECT:  Approval for the Housing Authority of New Orleans' (HANO) Request for the
          Demolition of 40 Dwelling Buildings Containing 521 Units and 1 Non-
          Residential Building and Disposition of 21.30 Acres of Underlying Land at C.J.
          Peete, LA001002; 77 Dwelling Buildings Containing 896 Units and Disposition
          of 27.20 Acres of Underlying Land at Lafitte, LA001005; 40 Dwelling Buildings
          Containing 568 Units and 1 Non-Residential Buildings and Disposition of 27.62
          Acres of Underlying Land at B.W. Cooper, LA001007; 66 Dwelling Buildings
          Containing 671 Units and Disposition of 28.50 Acres of Underlying Land at St.
          Bernard, LA001008; 30 Dwelling Buildings Containing 572 Units and
          Disposition of 22.99 Acres of Underlying Land at B.W. Cooper Extension,
          LA001012; and 61 Dwelling Buildings Containing 720 Units and Disposition of
          20.20 Acres of Underlying Land at St. Bernard Extension, LA001013

     In furtherance of the Housing Authority of New Orleans' (HANO) efforts to rebuild
public housing, HANO submitted an application for the demolition and disposition of the above
referenced public housing developments. The Department's Special Application Center (SAC)
received this application on October 17, 2006, via the Public and Indian Housing Information
Center (PIC), DDA0002290. Supplemental information was received through September 20,
2007. The Environmental Assessment was completed by the Department on September 17, 2007
in accordance with 24 CFR Section 50.

     HANO submitted this application in order to further its plan of revitalizing its ten major
developments (including C.J. Peete, Lafitte, B.W. Cooper and St. Bernard) and providing better
housing and living conditions for HANO residents. Due to the long-standing dilapidated and
substandard conditions of these many of the developments, HANO had embarked on this plan
even prior to Hurricane Katrina. The demolition/disposition proposed in this application will
allow HANO to begin its implementation of a major redevelopment of public housing in New
Orleans. HANO is dedicated to replacing all of its 5,146 units occupied prior to the Hurricane
with affordable housing opportunities and the approval of this demolition/disposition application
will allow HANO to implement the initial redevelopment phases of these four projects, which
will result in the creation of over 2,000 new units, most of which will be affordable housing
serving New Orleans earning up to 60% of area median income (AMI), including 744 public

housing units. As detailed in this Memo, HANO plans to offer extensive relocation assistance, including Housing Choice Vouchers, to current HANO residents. HANO also plans to make certain public housing developments available for HANO residents, on a temporary basis, until redevelopment has concluded. The Department has considered views that oppose this demolition/disposition and is more persuaded by HANO's position that demolition, disposition, and redevelopment of these developments is the correct course of action.

The Department reviewed this application pursuant to Section 18 of the United States Housing Act of 1937, codified at 42 U.S.C. sec 1437p (the "Act") and the Department's implementing regulations at 24 CFR Section 970.

Under 24 CFR Section 970.7(a)(1), in order for a demolition or disposition application to be approved after November 24, 2006, the effective date of this regulation, a Public Housing Agency (PHA) must provide "A certification that the PHA has described the demolition or disposition in the PHA Annual Plan and timetable under 24 CFR Section 903 and that the description in the PHA Annual Plan is identical to the application submitted pursuant to this section and otherwise complies with section 18 of the Act (42 U.S.C. 1437p) and this part." On February 7, 2007, the HUD New Orleans Field Office approved HANO's agency plan, which includes the subject action.

### Description of Proposed Demolition

HANO proposed the demolition of 40 dwelling buildings containing 521 units and 1 non-residential building at C.J. Peete, LA001002; 77 dwelling buildings containing 896 units and 0 non-residential buildings at Lafitte, LA001005; 40 dwelling buildings containing 568 units and 1 non-residential building at B.W. Cooper, LA001007; 66 dwelling buildings containing 671 units at St. Bernard, LA001008; 30 dwelling buildings containing 572 units at B.W. Cooper Extension, LA001012; and 61 dwelling buildings containing 720 units at St. Bernard Extension, LA001013. Details of the proposed demolition are as follows:

| C. J. PEETE, LA001002 DOFA: 01/31/1941 | | | | | |
|---|---|---|---|---|---|
| Bedroom Size | 1-BR | 2-BR | 3-BR | 4+BR | Total |
| Existing Units | 205 | 292 | 24 | 0 | 521 |
| **Proposed Units** | **205** | **292** | **24** | **0** | **521** |
| Number of Dwelling Buildings Proposed | | | | | **40** |
| Number of Non-Dwelling Buildings Proposed | | | | | **1** |

| LAFITTE, LA001005 DOFA: 08/31/1941 | | | | | |
|---|---|---|---|---|---|
| Bedroom Size | 1-BR | 2-BR | 3-BR | 4+BR | Total |
| Existing Units | 355 | 401 | 140 | 0 | 896 |
| **Proposed Units** | **355** | **401** | **140** | **0** | **896** |
| Number of Dwelling Buildings Proposed | | | | | **77** |
| Number of Non-Dwelling Buildings Proposed | | | | | **0** |

3

| B.W. Cooper, LA001007 DOFA: 06/30/1941 | | | | | |
|---|---|---|---|---|---|
| Bedroom Size | 1-BR | 2-BR | 3-BR | 4+BR | Total |
| Existing Units | 225 | 229 | 114 | 0 | 568 |
| **Proposed Units** | **225** | **229** | **114** | **0** | **568** |
| Number of Dwelling Buildings Proposed | | | | | **40** |
| Number of Non-Dwelling Buildings Proposed | | | | | **1** |
| | | | | | |

| St. Bernard, LA001008 DOFA: 05/31/1942 | | | | | |
|---|---|---|---|---|---|
| Bedroom Size | 1-BR | 2-BR | 3-BR | 4+BR | Total |
| Existing Units | 172 | 392 | 94 | 13 | 671 |
| **Proposed Units** | **172** | **392** | **94** | **13** | **671** |
| Number of Dwelling Buildings Proposed | | | | | **66** |

| B.W. Cooper Extension, LA001012 DOFA: 08/31/1954 | | | | | |
|---|---|---|---|---|---|
| Bedroom Size | 1-BR | 2-BR | 3-BR | 4+BR | Total |
| Existing Units | 49 | 511 | 12 | 0 | 572 |
| **Proposed Units** | **49** | **511** | **12** | **0** | **572** |
| Number of Dwelling Buildings Proposed | | | | | **29** |

| St. Bernard, LA001013 DOFA: 06/30/1953 | | | | | |
|---|---|---|---|---|---|
| Bedroom Size | 1-BR | 2-BR | 3-BR | 4+BR | Total |
| Existing Units | 222 | 216 | 133 | 149 | 720 |
| **Proposed Units** | **222** | **216** | **133** | **149** | **720** |
| Number of Dwelling Buildings Proposed | | | | | **61** |

Notwithstanding the proposed demolition of these units, in order to alleviate the severe shortage of affordable housing in New Orleans following Hurricane Katrina, HANO is making available for occupancy by former HANO residents approximately 425 units at B.W. Cooper, LA001007, and 196 units at Lafitte, LA001005. Once HANO identifies which units it will make available for re-occupancy by former HANO residents, HANO will notify the Department to account for the temporary occupancy of these units. The Department acknowledges that HANO has requested a waiver from the Department to permit the units (approved for demolition/disposition) that are used for temporary occupancy to continue to be eligible to receive operating subsidy during any such temporary occupancy.

However, for historic purposes, in accordance with four separate Memoranda of Agreement (MOA) between several agencies – the Department, HANO, the Advisory Council on Historic Preservation and the Louisiana Division of Historic Preservation – the administration building and a limited number of buildings proximate to the administration building will be retained and rehabilitated at each of the four sites. The determination of the specific buildings to be retained will be made at a later date; the future use may not include housing. In addition, to

alleviate the severe shortage of affordable housing, former residents will reoccupy, on a temporary basis, approximately 425 units at B.W. Cooper, LA001007 and 196 units at Lafitte, LA001005. Residents will be relocated by HANO in preparation for demolition and new construction at these sites. To support the re-occupancy effort, HANO is seeking a regulatory waiver from the Department that will allow HANO to receive operating subsidy during temporary re-occupancy. HANO will notify the Department about the temporary occupancy of these units.

### Reasons for Action (Justification)

HANO proposed the demolition based on 24 CFR Section 970.15, which requires the PHA to certify that the project is obsolete as to physical condition, location, or other factors, making it unsuitable for housing purposes, and no reasonable program of modifications is cost-effective to return the public housing project or portion of the project to useful life.

HANO had first approached the Department about the demolition of public housing in New Orleans, including public housing at these developments prior to Hurricane Katrina. Prior to Hurricane Katrina, HANO had embarked on a plan to revitalize its ten major developments, including C.J. Peete, Lafitte, B.W. Cooper and St. Bernard. Prior to Hurricane Katrina, much of HANO's inventory was already functionally and economically obsolete and in need of substantial repair. The inappropriate design and layout of the projects contributed to a sense of isolation and the persistence of crime. The condition of the units consistently received failing scores under the Public Housing Assessment System (PHAS), which led to the Department's administrative receivership of HANO in 2002. The devastation of Hurricane Katrina caused HANO to re-evaluate and accelerate its development plans.

The Department has carefully reviewed all of the analyses and reports provided by HANO evidencing this justification for demolition, as well as the submissions and comments provided by the National Housing Law Project (NHLP) and others regarding the proposed demolition. Specifically, the Department reviewed a number of documents, including but not limited to, the following reports and submissions:

(1) ECM Consultants, Inc. Report ("ECMI Report");
(2) Physical Condition Assessment Report of Lafitte, St. Bernard, C.J. Peete and B.W. Cooper Housing Developments by Jeffrey Paris, AIA, of Draper & Associates ("Draper Report");
(3) A letter to the Department from the National Housing Law Project (and other parties) dated August 31, 2007 ("NHLP Letter");
(4) A report by Professor John Emmanuel Fernandez, dated May 16, 2007, and a supplemental report by Professor John Emmanuel Fernandez, dated June 11, 2007 ("Fernandez Report");
(5) Soil Sampling Report Phase II Environmental Site Assessments, by PPM, dated October 26, 2006 ("PPM Report");
(6) A Declaration by David Martinez dated October 23, 2006, from Anderson vs. Jackson (Civil Action No. 06-3298) ("Martinez Declaration");

(7) Federal Defendants' Motion *In Limine* to Exclude the Expert Testimony of David Martinez dated August 27, 2007, from Anderson vs. Jackson (Civil Action No. 06-3298); and

(8) Federal Defendants' Motion *In Limine* to Exclude the Expert Testimony of John Fernandez dated August 27, 2007, from Anderson vs. Jackson (Civil Action No. 06-3298).

After reviewing HANO's submission, as well as these reports and information, the Department has determined that it accepts HANO's certification that all four of these developments are obsolete as to physical condition, as defined at 24 CFR 970.15, and that no reasonable program of modifications is cost-effective to return the public housing project or portion of the project to useful life.

The Department found the Draper Report to be particularly credible and persuasive and relied heavily on it in making its determination. The Department made this determination in part because the Department found the firm of Draper & Associates, as well as Mr. Paris, to be best qualified to render a report on the physical conditions of these developments. Draper & Associates has extensive experience in assessing affordable housing properties, including public housing. In addition, Draper & Associates has specific experience in overseeing the development of mold and mildew management plans for multifamily housing. Mr. Paris has nearly 30 years of experience as both an architect and contract administrator and decades of actual design and construction experience. Mr. Paris has years of servicing the Atlanta Housing Authority (AHA) within its Real Estate Management Division.

Furthermore, the Department found the methodology used to create the Draper Report to be trustworthy and reliable. To create its report, Draper examined the condition of the developments well beyond the appearance of the exterior shell and selected views of the interiors of the units. The Draper inspection team consisted of experienced consultants, knowledgeable in HUD inspection methodologies. Draper used customized inspection spreadsheet programs and tablet PCs to approximate a HUD REAC inspection, and used a HUD-defined review process to assess the true condition of the units and buildings.

On the other hand, the Department found that Professor Fernandez lacks the qualifications and relevant experience to provide a reliable opinion on the physical condition and the costs of repairing the developments and bringing the sites, buildings, and units to meet HUD minimum standards, as he has little experience in affordable or multifamily housing. Professor Fernandez has little experience that qualifies him to draw the sweeping conclusions he draws or to provide accurate cost estimates for the rehabilitation and modernization of these large multifamily public housing developments. During his deposition in the <u>Anderson v. Jackson</u> litigation, Fernandez admitted that he had no prior experience working on the design and construction of any large multifamily public housing developments. He stated that he could not recall working on any project involving housing that was subject to regulation by the Department of Housing and Urban Development. Fernandez also stated that during his career, he has worked as a senior designer on only one project that involved <u>any</u> type of large multifamily residential development. That work was done approximately fifteen years ago in Jakarta, Indonesia. The

work did not involve public housing or housing intended for low-income persons.  By his own account, Fernandez's role in the design of a large multifamily residential development would have ranged from "helping out with presentation drawings" to "general massing of the overall massing on the design of units."  At his deposition, Fernandez could not recall the approximate budget for the Indonesia project, and could not recall any other example where he provided an estimate of the cost to repair a large multifamily residential development.  Moreover, prior to his engagement by Plaintiffs' counsel in <u>Anderson</u>, Fernandez had never inspected any properties damaged by a hurricane.  Moreover, the Department determined that Professor Fernandez's cost estimates were unreliable, as they omitted several key potential costs, including: (i) the cost of remediation of any potential environmental hazards, including mold, asbestos, and lead-based paint; (ii) the cost of bringing the developments in compliance with current building codes and with the Americans with Disabilities Act, if necessary; and (iii) the cost necessary to repair electrical service panels damaged by the flood or the new equipment necessary for the developments' electrical distribution systems.

The Department determined that neither the scope of work nor the dollar amounts in the Fernandez Report could possibly bring the sites, buildings, and units to the minimum conditions required by HUD regulations.  The Department also determined that the Fernandez Report does not address the use of mandated, stronger materials or the use of energy efficient systems, both of which will make the repairs to the existing structures more costly than that report projects. The Fernandez Report also ignores the costs associated with the need for repairs caused by long-term deterioration, post-storm material scavenging and the impact these items have on the ability to readily occupy these developments.

In addition, the Department found the Draper Report's rebuttal of the Fernandez Report to be convincing and accurate and accepted its conclusions.  Specifically, based on objectively measured evidence, the Draper Report found that the Fernandez Report was based upon incomplete inspections and unsubstantiated assumptions.  The Draper Report found that the Fernandez Report failed to account for long-standing and new laws, and regulations and requirements in its analysis of the appropriate remedies for the developments and the result was a report filled with flawed and unreliable conclusions.  It found that the Fernandez Report appeared to have reached its conclusions based only upon analysis of damage caused by Hurricanes Katrina and Rita and ignored both old and new environmental hazards.  It disregarded HUD regulations and discounted obsolete infrastructure and utility service conditions.  It also did not take into account the long-term management of lead paint hazards and the increased potential lead exposure to residents and workers.  Moreover, it significantly underestimated the amount of effort, manpower, materials, and funds needed to make these units comply with these and numerous other applicable laws and regulations.  It also failed to mention the fact that there is no insulating material within the exterior wall construction of the developments to buffer the residents from temperature extremes.

Overall, the Department agrees with the Draper Report's conclusion that "the shaky facts and inaccurate assumptions on which Fernandez bases his conclusions do not support his assertions that repairing the Big Four Developments is a viable option to meet family requirements, current building codes, and government mandates."

The NHLP Letter included a copy of the Martinez Declaration, which described a report dated October 15, 2006 by Martinez Environmental Consulting, Inc. on mold at the developments. The NHLP Letter noted that Mr. Martinez concluded that "the great majority of the units in these four housing projects could be made environmentally safe and immediately habitable with minor repairs…"However, the Department has determined that it would not rely on the conclusions of Mr. Martinez and would instead rely on the conclusions concerning mold found in the PPM Report. The Department made this determination for the following reasons: (i) the Department agrees with the Draper Report's conclusions that the PPM Report remains objective in its testing methodology, refers back to well-established general industry guidelines, such as those established by the American Industrial Hygiene Association (AIHA), clearly documents the testing and investigation methodology that it uses, and follows ASTM standards for sample collection; (ii) the Draper Report notes that the PPM report, unlike the Martinez report, collected representative indoor and outdoor air samples. Though visual observations only confirm the presence of mold, air sampling provides analytical data to determine the air quality at the time the samples were collected and compare the type and quantity of mold spores identified in the outside air with the indoor air. Moreover, the Draper Report concludes that, based on the air sampling data, mold remediation is not as simple as sanitizing surfaces. Upon removal of the mold-colonized material (furniture, clothes, wood, etc.), the level of air-born mold spores will dramatically increase, further declining the indoor air quality; (iii) the Draper Report notes that Martinez underestimated the level of remediation needed to remove all visible and hidden mold and improve the indoor air quality. The Draper Report notes that although the Martinez report repetitively claims that "the units can be quickly cleaned and sanitized" by wiping down surfaces, this remediation recommendation does not address the removal of personal belongings (furniture, clothes, etc.) left by former residents, which, according to the Martinez report, remain a main source of organic matter that is sustaining mold growth in the units; and (iv) the Martinez Report does not comment on roof damage that has allowed rain/moisture to enter the attic space or flooded crawlspaces that have the potential to be sources of hidden mold within the building.

Finally, the Department has carefully reviewed the information provided in the NHLP Letter and has determined that, with respect to physical conditions at the developments, the NHLP Letter draws its conclusions from the information and data in the Fernandez Report and Martinez Declaration. Accordingly, the Department has considered and rejected the letter's conclusions on these matters in making its determination.

In sum, although the Department did receive information from sources other than HANO that was *allegedly* inconsistent with the information that HANO provided to justify the demolition, pursuant to section 18 of the Act and 24 CFR section 970.29, the Department is not obligated to disapprove HANO's application since, after careful consideration, the Department determined that this other allegedly inconsistent information was neither viable nor trustworthy.

The Department accepted HANO's certification that these developments were obsolete as defined by Section 18 of the Act and 24 CFR section 970.15 based largely on the following general conditions that exist at all of the developments. The Department notes that many of these general conditions pre-existed Hurricane Katrina, and were not caused by it. In many

cases, they represent physical conditions that make the Developments obsolete and unsuitable for housing purposes independent of any damage caused by Hurricanes Katrina and Rita, and independent of any damage caused by subsequent vandalism. The storm-related and preexisting conditions contributing to obsolescence and applicable to all projects include the following:

1. Site building and apartment densities dramatically exceed current practice.
2. Soil subsidence, coupled with mature tree root structures, creates an unsafe pedestrian and vehicular environment.
3. Utility distribution networks have been damaged by the storms, have been pilfered for salvage value, and are unsafe until tested by qualified engineers. In all instances, electrical, natural gas, and water distribution has been discontinued in the unoccupied portions of the housing developments.
4. Penetrations of the exterior shells require substantial replacement and repair. Most windows do not meet current hurricane-resistant design standards. Sills leak water. In most cases, the exterior masonry construction does not have a continuous moisture barrier. Roofs require thorough examination, repair, and replacement to stop the unrestrained damage occurring to the upper level apartments.
5. Buildings fail to meet components of the current building codes. Interior stairways are too steep and not wide enough to expedite emergency egress. Most apartment entry doors do not meet minimum 32-inch clear width compliance. Handrails (stairs and fire escapes) do not conform to child protection measures. (2000 International Building Code with New Orleans Amendments.)
6. Water and finish damage to the existing apartments is substantial, and includes mold in approximately 74 percent of the units, as indicated in the PPM Report. Mold does not fade away and the hazards associated with it do not vanish even after being wiped down with bleach. The remediation/retesting process is complex and expensive.
7. Existing environmental concerns include roof, pipe insulation, and floor tile/ mastic composed of asbestos-containing material, and the widespread presence of lead based paint.
8. The apartment construction materials (that the Fernandez Report cites in support of his opinion on building longevity) limit the feasibility to repair, renovate, or modernize the units. The plaster and tile construction of the buildings is not conducive to repair of damaged or destroyed partitions, or to reconfiguring the units to better meet the needs of the residents. Modifications necessary to upgrade mechanical systems and plumbing systems are problematic.
9. Kitchens have minimal countertop surfaces and cabinetry.
10. Apartment plumbing systems are archaic. As an example, a majority of units use a wall mounted valve to direct water flow either to the tub or the sink. Both fixtures cannot be used simultaneously.
11. Water heaters are located in the kitchen, exposing children to the potential risk of super-heated surfaces.
12. Almost all first floor unit appliances require replacement.
13. Wall-mounted gas-fired furnace units are sometimes placed within bedrooms, in direct conflict to current building codes. No method of air movement is currently supplied in the apartments so some rooms become overheated while others remain cold. No air conditioning is provided for these apartments.

14.    Apartment electrical panels are undersized for the needs of twenty-first century residents. In the 1940s, there were no microwaves ovens, televisions, hair driers, or computers. Outlets are not available on all (or even a majority) of wall surfaces.

15.    Heavy masonry construction and un-insulated roof and attic spaces do not meet current energy conservation standards.

16.    There was evidence of corrosion that ultimately damaged the piping and plumbing systems of the sites.

17.    There was evidence of subsidence of the existing ground throughout the developments and it is estimated that approximately 4" to 6" of additional fill will be required to bring the existing grounds back to original levels.

18.    The moisture barriers (located on the outside face of the interior walls inside the walls' air-space of the exterior walls of the developments) will likely deteriorate over time, increasing the probability that moisture will enter the interior space of the developments. With the numerous water blisters throughout the plaster walls, it is safe to assume that these moisture barriers have failed in a number of locations. The only way to provide new moisture barriers would be to remove the existing brick veneer of all the buildings.

19.    The flooring in all units in the developments was damaged and must be replaced.

20.    The entire interior of the development must be re-painted.

21.    One of the primary conditions causing the mold growth in the units appears to be moisture, which is present in the highly humidified air common in the New Orleans climate. The buildings' envelopes do not effectively eliminate the majority of moisture intrusion into the interior of the spaces. The fact that there is no central air-conditioning system in place at the developments has allowed more humid air into the buildings and is a contributing factor to the buildings' physical obsolescence.

    In addition to the foregoing general deficiencies, the Department has considered the following additional physical deficiencies at each development.

### C.J. Peete (LA001002)

    HANO certified to the Department that C.J. Peete (LA001002) was obsolete based on the findings of the Draper Report, the PPM Report, and the ECMI Report and specifically based its certifications on the following findings of those reports:

1.    Massive amounts of materials have been removed from the development. This includes copper wiring, piping, and flashing. Roof vents appear to have been stolen, leaving holes in the roofs allowing the rain to enter the building unhindered.

2.    Roofing damage was visible and the gutters and downspouts were often missing.

3.    Most piping and electrical cables have been removed. Even pipes located within vertical chases have been removed. Wall surfaces and bathroom fixtures had been destroyed. More exterior wall construction was visible due to this vandalism.

4.    Interior walls have been destroyed to allow access between units. It is possible to walk from unit to unit through holes in walls

5.    There was visible water damage inside the units from leaking roofs and broken windows. The fire escapes exhibited severe rust at most visible surfaces. Fire escape railings were not safe for children (of any age) to use. Some escapes were accessed

through narrow pairs of doors which also violates current life safety code compliance.

6.  A majority of the front entry stoops and steps had sufficient handrails, though very few were installed at the rear doors.
7.  Soil subsidence created uneven stair riser dimensions and sidewalk heaving, buckling. A majority of the glazing units were broken.
8.  Crawl spaces were not secured.
9.  Windows and frames were missing.
10. Paint was peeling down to the base material.
11. Interior walls have been destroyed. Inoperable interior electrical panels were rusted.
12. Much of the electrical systems are damaged and missing
13. There was mold on many of the units. According to the PPM Report, indoor mold spore counts were consistently higher than those found in outdoor air and "marker molds" (that are not typically found in indoor environments and may indicate sustained growth of mold within buildings) were identified in a majority of the units in the development. The PPM Report concluded that the level of remediation needed to remove all visible and hidden mold and improve the indoor air quality is considerable, and the cost of the abatement of that mold would be substantial.


### Lafitte (LA001005)

HANO certified to the Department that Lafitte (LA001005) was obsolete based on the findings of the Draper Report, the PPM Report, and the ECMI Report and specifically based its certifications on the following findings of those reports:

1.  The copper roof flashing at walls and chimneys were in most instances found to be damaged.
2.  There are numerous water blisters throughout the plaster walls.
3.  There is evidence of moderate to extensive mold growth in most of the walls and ceilings. According to the PPM Report, indoor mold spore counts were consistently higher than those found in outdoor air and "marker molds" (that are not typically found in indoor environments and may indicate sustained growth of mold within buildings) were identified in a majority of the units in the development. The PPM Report concluded that the level of remediation needed to remove all visible and hidden mold and improve the indoor air quality is considerable, and the cost of the abatement of that mold would be substantial.
4.  The kitchen appliances have been damaged.
5.  The plumbing throughout the development is substandard and must be updated to today's standard.
6.  Most of the shingle roofing has been damaged and will have to be replaced.
7.  There is extensive water damage to plaster ceilings at the third floor attic locations. This condition is prevalent throughout the site and would indicate there is a possible damage to the substrate and trusses supporting the roofs.
8.  The brick veneer shows signs of cracking and breaking in areas throughout the site.
9.  All exterior and unit entry doors were damaged throughout the site.

10. No grounding wires or lugs were present in the electrical system.
11. The flooring and baseboards were damaged beyond repair.
12. There was evidence of soil subsidence issues at porches and the attached stairs, substantial amounts of soil must be brought on site in order to remedy unsafe walks and the undermined porches and steps.
13. Small portions of the roof tiles/shingles were gone (at least as visible from the ground) though gutters and downspouts exhibited significant damage and failure, sometimes tearing felts and flashing from the eaves. Some roof surfaces remain covered in tarps from FEMA. Roof tiles were found stacked on one portion of the site. At least a couple of windows were broken on each building.
14. Major issues revolve around the mold remediation & crumbling utility infrastructure, including fallen power poles/ transformers.
15. Crawl spaces were not secured.
16. There were holes in walls and plumbing modifications that were not code compliant.

### B.W. Cooper (LA001007)

HANO certified to the Department that B.W. Cooper (LA001007) was obsolete based on the findings of the Draper Report, the PPM Report, and the ECMI Report and specifically based its certifications on the following findings of those reports:

1. Portions of the development had been protected with chain link fencing topped with barb wire.
2. Some units were protected by security panels, although these panels (unlike Lafitte) allowed no air circulation and may have exacerbated mold growth. B.W. Cooper first floor units experienced flood waters ranging from 12 inches – 18 inches depth.
3. There was damage to the buildings' exteriors. Approximately 30% of the windows and cast stone window seals were broken, and need to be replaced.
4. Extensive mold growth in most of the walls and ceilings. According to the PPM Report, indoor mold spore counts were consistently higher than those found in outdoor air and "marker molds" (that are not typically found in indoor environments and may indicate sustained growth of mold within buildings) were identified in a majority of the units in the development. The PPM Report concluded that the level of remediation needed to remove all visible and hidden mold and improve the indoor air quality is considerable, and the cost of the abatement of that mold would be substantial.
5. There were multiple areas of significant roof damage.
6. The kitchen appliances have been damaged due to flooding.
7. The plumbing system throughout is substandard and must be updated to today's standards.
8. Window units were broken throughout.
9. Crawl spaces were not secured.
10. Interior stairs within the units ranged from 36 ½ inches -28 ½ inches wide, code mandates 36 inches minimum (IBC 2000, 1003.3.3.1, Exception 1).

11.  The stair riser height was not uniform.
12.  All front entry doors were 27 inches clear, code mandates 32 inches clear for egress doors (IBC 2000, 1003.3.1.1).
13.  The existing shingles roofing received severe damage, especially the north facing roof slopes.
14.  Evidence of roofing substrate broken and open to the weather in some locations.
15.  All gutters and downspouts need to be replaced.
16.  Building interior walls are plaster finish over masonry walls.  The plaster shows signs of mold, water blisters and damage.
17.  The vinyl asbestos tile flooring and ceramic tile needs to be removed due to extensive deterioration that was accelerated during a period of unoccupied and unconditioned environment.

### St. Bernard (LA001008)

HANO certified to the Department that St. Bernard (LA001008) was obsolete based on the findings of the Draper Report, the PPM Report, and the ECMI Report and specifically based its certifications on the following findings of those reports:

1.  There were crumbling second floor deck surfaces.
2.  Fire escapes exhibited rusted-through horizontal floor surfaces and unsafe fire escape handrail assemblies.
3.  Crawl spaces were not secured.
4.  There were multiple areas of significant roof damage.
5.  The building containing 1501 Sere had substantial precast sill damage.
6.  3919 Foy stoops exhibited through cracks in multiple locations.
7.  Porch columns exhibited multiple layers of questionable paint products.
8.  Evidence existed that there had been many areas of the façade where grout had been recently inserted.
9.  Exposed electrical cables were present where meters had been removed.
10. The two observed playgrounds were unsafe.
11. Internal and external mold was present in large quantities.  According to the PPM Report, indoor mold spore counts were consistently higher than those found in outdoor air and "marker molds" (that are not typically found in indoor environments and may indicate sustained growth of mold within buildings) were identified in a majority of the units in the development.  The PPM Report concluded that the level of remediation needed to remove all visible and hidden mold and improve the indoor air quality is considerable, and the cost of the abatement of that mold would be substantial.
12. There were inconsistent and unsafe riser dimension steps from the stoop to grade.
13. Thresholds and plumbing lines (with crawl spaces) have been scavenged.
14. Site cast iron fencing was often damaged and was occasionally missing sections.
15. No grounding wires or lugs were present in the electrical system.
16. Inoperable interior electrical panels were rusted.
17. The bedroom electrical circuit breaks are not AFCI which and are not code compliant.

18.     There are no outdoor weather proof GFCI outlets.
19.     Windows do not meet hurricane impact requirements per IBC (2003) – 1609.1.4
        for the code requirement.

## B.W. Cooper (LA001012)

HANO certified to the Department that B.W. Cooper (LA001012) was obsolete based on the findings of the Draper Report, the PPM Report, and the ECMI Report and specifically based its certifications on the following findings of those reports:

1.      Electrical (wiring without grounding) – Receptacles throughout do not have a
2.      The bedroom electrical circuit breakers are not AFCI which is also code
        compliant.
3.      The buildings showed numerous signs of decay and disrepair.
4.      Exterior doors are missing at the stairwells and the remaining wood frames have
        extensive termite deterioration.
5.      All aluminum windows show extensive deterioration and must be replaced.
6.      The flat roof systems are at the end of their life expectancy and should be
        replaced.
7.      The site indicates extensive subsidence of the grades throughout the
        development.
8.      The bottom steps of the concrete stoops indicate a least a foot or more of
        subsidence.
9.      The subsidence has caused extreme cracking and breaking of the concrete paving
        throughout the site.
10.     The brick veneer shows signs of cracking and breaking in areas throughout the
        site.
11.     All front entry doors were 27 inches clear, code mandates 32 inches clear for
        egress doors (IBC 2000, 1003.3.1.1).
12.     There is extensive visible mold growth throughout the units.  According to the
        PPM Report, indoor mold spore counts were consistently higher than those found
        in outdoor air and "marker molds" (that are not typically found in indoor
        environments and may indicate sustained growth of mold within buildings) were
        identified in a majority of the units in the development.  The PPM Report
        concluded that the level of remediation needed to remove all visible and hidden
        mold and improve the indoor air quality is considerable, and the cost of the
        abatement of that mold would be substantial.
13.     The kitchen appliances have been damaged.
14.     All flooring in the units is damaged and needs to be replaced.

## St. Bernard (LA001013)

HANO certified to the Department that St. Bernard (LA001013) was obsolete based on the findings of the Draper Report, the PPM Report, and the ECMI Report and specifically based its certifications on the following findings of those reports:

1. Electrical (wiring without grounding) – Receptacles throughout do not have a ground lug; it is a two wire system.
2. The receptacles in the bathrooms and kitchens are not GFCI type.
3. Windows do not meet hurricane impact requirements.
4. Flood water caused flooding of the first floor units by approximately 12 to 24 inches.
5. The crawl spaces were flooded.
6. There was damage to the buildings' exteriors. Approximately 30% of the windows and cast stone window seals were broken, and need to be replaced.
7. The copper roof flashing at walls and chimneys was in most instances damaged.
8. Extensive mold growth in most of the walls and ceilings. According to the PPM Report, indoor mold spore counts were consistently higher than those found in outdoor air and "marker molds" (that are not typically found in indoor environments and may indicate sustained growth of mold within buildings) were identified in a majority of the units in the development. The PPM Report concluded that the level of remediation needed to remove all visible and hidden mold and improve the indoor air quality is considerable, and the cost of the abatement of that mold would be substantial.
9. There were multiple areas of significant roof damage.
10. The kitchen appliances were damaged and will likely need to be replaced.
11. The plumbing system throughout is substandard and must be updated to today's standards.
12. Window units were broken throughout.
13. Crawl spaces were not secured.
14. Interior stairs within the units ranged from 36 ½ inches -28 ½ inches wide, code mandates 36 inches minimum (IBC 2000, 1003.3.3.1, Exception 1).
15. Fire escape railings had been updated in recent years, but the metal surfaces are in dire need of scraping and new paint. It is recommended that the material strength of the escape floor surfaces be tested to ascertain if the heavy rust has diminished their safety.
16. Settlement, soil subsidence (long term or Katrina-based) occurred throughout the development. It may be too early to conclusively state whether this will evolve into a building foundation concern. Regardless, the addition of soil is necessary to make the use of some porch stairs, non-life threatening.
17. The stair riser height was not uniform.
18. All front entry doors were 27 inches clear, code mandates 32 inches clear for egress doors (IBC 2000, 1003.3.1.1).
19. Vinyl Asbestos Tile (VAT) was observed in 1315 Prieur Street. VAT and asbestos containing mastic is likely present beneath more recently installed VCT or sheet vinyl products in a large number of other units. The B.W. Cooper Demolition specifications produced by HANO estimate that VAT covers almost 154,000 square feet of this development.
20. Sink and bathtubs were rusted.
21. Paint has peeled revealing the base surface.
22. There was leakage below intact windows.
23. There were holes in the ceiling where plumbing was accessed for repair.

For all the foregoing reasons, the Department has determined that it accepts HANO's conclusion that developments are obsolete as to physical condition, as defined at 24 CFR 970.15.

<u>Cost-Effectiveness of Repair and Rehabilitation</u>

The Total Development Cost (TDC) limit for the units proposed for demolition is calculated below. The Department used the TDC applicable at the time of submission of this demolition application.

| C.J. Peete, LA001002<br>TDC per PIH 2006-22, Type of Structure: Walk-up<br>Area: New Orleans | | | |
|---|---|---|---|
| Bedroom Size | Number of Unit | TDC/Unit | Total Cost |
| 1-BR | 205 | $102,732.00 | **$21,060,060.00** |
| 2-BR | 292 | $130,904.00 | **$38,223,968.00** |
| 3-BR | 24 | $173,845.00 | **$4,172,280.00** |
| TOTAL | | | **$63,456,308.00** |

HANO provided the cost estimate for the rehabilitation of C.J. Peete, LA001002, rehabilitation based on the existing conditions of the units. The rehabilitation cost was estimated by the ECMI Report to be $82,041,302.00, which is 129.2 percent of the TDC limit.

| Lafitte, LA001005<br>TDC per PIH 2006-22, Type of Structure: Walk-up<br>Area: New Orleans | | | |
|---|---|---|---|
| Bedroom Size | Number of Unit | TDC/Unit | Total Cost |
| 1-BR | 355 | $102,732.00 | **$36,469,860.00** |
| 2-BR | 401 | $130,904.00 | **$52,492,504.00** |
| 3-BR | 140 | $173,845.00 | 24,338,300.00 |
| TOTAL | | | **$113,300,664.00** |

HANO provided the cost estimate for rehabilitation of Lafitte, LA001005, rehabilitation based on the existing conditions of the units. The rehabilitation cost was estimated by the ECMI Report to be $151,272,602.00, which is 133.5 percent of the TDC limit.

| B.W. Cooper, LA001007<br>TDC per PIH 2006-22, Type of Structure: Walk-up<br>Area: New Orleans | | | |
|---|---|---|---|
| Bedroom Size | Number of Unit | TDC/Unit | Total Cost |
| 1-BR | 225 | $102,732.00 | **$23,114,700.00** |
| 2-BR | 229 | $130,904.00 | **$29,977,016.00** |
| 3-BR | 114 | $173,845.00 | **$19,818,330.00** |
| TOTAL | | | **$72,910,046.00** |

HANO provided the cost estimate for the rehabilitation of B.W. Cooper, LA001007, rehabilitation based on the existing conditions of the units. The rehabilitation cost was estimated by the ECMI Report to be $95,496,877.00, which is 130.9 percent of the TDC limit.

| St. Bernard, LA001008 TDC per PIH 2006-22, Type of Structure: Walk-up Area: New Orleans | | | |
|---|---|---|---|
| Bedroom Size | Number of Unit | TDC/Unit | Total Cost |
| 1-BR | 172 | $102,732.00 | $17,669,904.00 |
| 2-BR | 392 | $130,904.00 | $51,314,368.00 |
| 3-BR | 94 | $173,845.00 | $16,341,430.00 |
| 4-BR | 13 | $215,457.00 | 2,800,941.00 |
| TOTAL | | | $88,126,643.00 |

HANO provided the cost estimate for the rehabilitation of St. Bernard, LA001008, rehabilitation based on the existing conditions of the units. The rehabilitation cost was estimated by the ECMI Report to be $120,120,365.00, which is 136.3 percent of the TDC limit.

| B.W. Cooper Extension, LA001012 TDC per PIH 2006-22, Type of Structure: Walk-up Area: New Orleans | | | |
|---|---|---|---|
| Bedroom Size | Number of Unit | TDC/Unit | Total Cost |
| 1-BR | 49 | $102,732.00 | $5,033,868.00 |
| 2-BR | 511 | $130,904.00 | $66,891,944.00 |
| 3-BR | 12 | $173,845.00 | $2,086,140.00 |
| TOTAL | | | $74,011,952.00 |

HANO provided the cost estimate for the rehabilitation of B.W. Cooper Extension, LA001012, rehabilitation based on the existing conditions of the units. The rehabilitation cost was estimated by the ECMI Report to be $99,355,745.00, which is 134.2 percent of the TDC limit.

| St. Bernard Extension, LA001013 TDC per PIH 2006-22, Type of Structure: Walk-up Area: New Orleans | | | |
|---|---|---|---|
| Bedroom Size | Number of Unit | TDC/Unit | Total Cost |
| 1-BR | 222 | $102,732.00 | $22,806,504.00 |
| 2-BR | 216 | $130,904.00 | $28,275,264.00 |
| 3-BR | 133 | $173,845.00 | $23,121,385.00 |
| 4-BR | 149 | $215,457.00 | $32,103,093.00 |
| TOTAL | | | $106,306,246.00 |

HANO provided the cost estimate for the rehabilitation of St. Bernard Extension, LA001013, rehabilitation based on the existing conditions of the units. The rehabilitation cost was estimated by the ECMI Report to be $152,601,988.00, which is 143.5 percent of the TDC limit.

The Department carefully reviewed the cost estimates of rehabilitation that were provided in the ECMI Report and the Draper Report as well as the cost estimates of rehabilitation that were provided in the Fernandez Report and other reports. The Department has determined that it accepts HANO's certifications that the cost estimates of repair and rehabilitation that were provided in the ECMI Report are valid and has used those cost estimates in doing the TDC analysis for the developments. (The Department notes that it would have also accepted the cost estimates in the Draper Report as valid, but since those cost estimates were consistently higher than the cost estimates in the ECMI Report, and the cost estimates of the ECMI Report well exceeded TDC requirements, it would not have changed the conclusions of the Department's TDC analysis).

The Department based its decision to rely on the cost estimates of the ECMI Report and the Draper Report, and not the Fernandez Report for the following primary reasons:

(1)     As indicated in the Draper Report, a large number of the remediation items that the Draper Report found to be critical and necessary were omitted from the Fernandez budget cost calculations for repair of the units;

(2)     Draper also points to discrepancies in unit costs, quantities needed, and source of cost estimates between ECM and Fernandez. The Department finds Draper's determinations on these matters to be the most reasonable.

(3)     Draper notes that ECM did not include a contingency factor in its estimate while Fernandez did. Draper includes a contingency factor of 15%, which the Department finds to be reasonable.

Accordingly, although Department did receive information from sources other than HANO that was *allegedly* inconsistent with the information that HANO provided of the cost estimates of repair and rehabilitation of the developments, pursuant to 24 CFR Section 970.29, the Department is not obligated to disapprove HANO's application since, after careful consideration, the Department determined that this other allegedly inconsistent information was neither viable nor trustworthy.

For all the above reasons, the Department concurs with HANO's certifications that all of the developments, as outlined above, are obsolete as to physical condition, location, or other factors, making them unsuitable for housing purposes. The Department also concurs with HANO's determination that no reasonable program of modifications is cost-effective to return them to their useful life and that demolition and new construction of these developments is the logical and most cost effective remedy to ensure the viability of the C.J. Peete, LA001002; Lafitte, LA001005; B.W. Cooper, LA001007; St. Bernard, LA001008; B.W. Cooper Extension, LA001012; and St. Bernard Extension, LA001013 developments. The Department agrees with

HANO that repairs will not correct all deficiencies and rehabilitation will likely leave structural problems yet to be identified. The Department agrees with HANO that the demolition and new construction of these developments is the remedy to ensure that the future residents of these sites will live in decent, safe and sanitary housing.

## Future Use of Property

HANO has indicated that after demolition, the Central City Partners (CCP) will redevelop the C.J. Peete sites into a mixed-income residential community. The planned redevelopment will include the C.J. Peete, LA001002, and C.J. Peete Extension, LA001010, sites. The LA001010 site is the subject a separate disposition application that was received by the Department on September 13, 2007. A total of 460 rental units and two new community/management buildings are planned for the two sites. The Providence Community Housing and Enterprise Community Partners (PCHECP) will construct a total of 1,500 units on the Lafitte, LA001005, site and in the surrounding neighborhood. The KBK Enterprises (KBKE) and B.W. Cooper Resident Management Corporation (B.W. CRMC) will construct approximately 660 new housing units on the B.W. Cooper, LA001007, and B.W. Cooper, LA001012, sites. The proposed developers for the St. Bernard sites, For Kids Foundation (FKF), Columbia Residential (CR) and Baton Rouge Area Foundation (BRAF), will construct approximately 624 new housing units at the St. Bernard, LA001008, and St. Bernard Extension, LA001013, sites.

## Demolition Cost

The application states that it will cost approximately $3,470,400.00 to demolish the subject units/buildings at C.J. Peete, LA001002; $4,300,800.00 to demolish the subject units/buildings at Lafitte, LA001005; $2,726,400 to demolish the subject units/buildings at B.W. Cooper, LA001007; $3,436,800.00 to demolish the subject units/buildings at St. Bernard, LA001008; $3,801,600.00 to demolish the subject units/buildings at B.W. Cooper Extension, LA001012; and $3,456,000.00 to demolish the subject units/buildings at St. Bernard Extension, LA001013. HANO plans to use funding approved by the Department under Section 901, as well as Capital Funds to cover the cost of demolition.

## Description of Proposed Disposition

HANO proposed the disposition of 21.30 acres of underlying land at C.J. Peete, LA001002; 27.20 acres of underlying land at Lafitte, LA001005; 27.62 acres of underlying land at B.W. Cooper, LA001007; 28.50 acres of underlying land at St. Bernard, LA001008; 22.99 acres of underlying land at B.W. Cooper Extension, LA001012; and 20.20 acres of underlying land at St. Bernard Extension, LA001013. Details of the proposed disposition are shown below. Only the disposition of the entire sites for C.J. Peete, LA001002 and Lafitte, LA001005, are know at this time. The disposition described below for B.W. Cooper, LA001005, B.W. Cooper Extension, LA001012, St. Bernard, LA001008, and St. Bernard Extension, LA001013, are only

for the first phase of the redevelopment projects.  HANO will need to submit a request to the Department's Special Application Center (SAC) to amend its disposition approval as soon as the information regarding the second phase of the disposition becomes available.

| C.J. Peete, LA001002 DOFA: 01/31/1941 | |
| --- | --- |
| Existing Land | 21.30 Acres |
| **Proposed Land** | **21.30 Acres** |

| Latte, LA001005 DOFA: 08/31/1941 | |
| --- | --- |
| Existing Land | 27.20 Acres |
| **Proposed Land** | **27.20 Acres** |

| B.W. Cooper, LA001007 DOFA: 06/30/1941 | |
| --- | --- |
| Existing Land | 27.62 Acres |
| **Proposed Land** | **27.62 Acres** |

| St. Bernard, LA001008 DOFA: 05/31/1942 | |
| --- | --- |
| Existing Land | 28.50 Acres |
| **Proposed Land** | **28.50 Acres** |

| B.W. Cooper Extension, LA001012 DOFA: 08/31/1954 | |
| --- | --- |
| Existing Land | 22.99 Acres |
| **Proposed Land** | **22.99 Acres** |

| St. Bernard Extension, LA001013 DOFA: 05/31/1942 | |
| --- | --- |
| Existing Land | 20.20 Acres |
| **Proposed Land** | **20.20 Acres** |

### Reasons for Action (Justification)

HANO proposed the disposition based on 24 CFR Section 970.17, which requires the PHA to certify that the retention of the property is not in the best interests of the residents or the PHA because HANO has otherwise determined the disposition to be appropriate for reasons that are consistent with the goals of the PHA and the PHA Plan and that are otherwise consistent with the Act.

Following Hurricane Katrina, HANO inspected and analyzed its entire inventory of public housing units to determine the conditions of the units and its capacity to continue providing decent, safe and affordable housing for low-income residents.  Upon inspection, it was found that numerous units in HANO inventory are no longer viable.  Therefore, on

December 20, 2006, the Board of Commissioners authorized HANO to prepare and submit an application for the demolition and disposition of C.J. Peete, LA001002, Lafitte, LA001005, B.W. Cooper, LA001007, St. Bernard, LA001008, B.W. Cooper Extension, LA001012, and St. Bernard Extension, LA001013.

### C.J. Peete

HANO has selected an alliance of firms partnering under the name of Central City Partners (CCP) including McCormack Baron Salazar, KAI Design & Build, and the New Orleans Neighborhood Development Collaborative (NONDC) as the developer for the C.J. Peete site. The CCP will be admitted to the ownership entity that has received the tax credits. The CCP will redevelop the site into a mixed-income residential community. The planned redevelopment site will include a mix of approximately one-third market-rate rental units, one-third tax credit and one-third public housing units. In late 2006, the HANO received an allocation of low-income housing tax credits for a 410-unit project at the C.J. Peete site.

HANO proposed to dispose of the C.J. Peete, LA001002, site (as well as a portion of the C.J. Peete, LA001010 site) for the C.J. Peete III low-income housing tax credit project through a 99-year ground lease with a lease consideration of $10,500,000 of which 10% will be due upon execution of the lease and the remaining 90% will be paid pursuant to the terms of the Promissory Note between HANO and the Owner. Beginning the second year of the lease term an annual rent payment of $10.00 will be due. This redevelopment project will include the entire C.J. Peete, LA001002, and a portion of the C.J. Peete Extension, LA001010, (the C.J. Peete Extension, LA001010, site is currently vacant and is included in a separate request for disposition approval). To preserve the property tax exemption, the disposition will be made through a long term ground lease, in which the land will ultimately be leased to the New Orleans Industrial Development Board (NOIDB), who will sublease the property to the Owner as will be more fully described in the mixed finance evidentiary documents.

The C.J. Peete III tax credit project will be constructed on the C.J. Peete, LA001002, and a portion of the C.J. Peete Extension, LA001010. The C.J. Peete III project will include the construction of 410 mixed income rental units. These units will be in addition to the 50 units to be constructed on C.J. Peete Extension, LA001010, under a separate allocation of tax credits. A total of 460 rental units and two new community/management buildings will be constructed on the two sites. Allocations of tax credits have been received for these units.

The initial planned unit distribution is shown in the table below. The Department acknowledges that these plans are subject to change during the negotiations of the development agreement, and if these plans change, HANO should submit a request to the SAC to amend this disposition approval.

21

## C.J. Peete – Proposed Redevelopment

| Name | ACC UNITS | ACC/TAX CREDITS | SECTION 8 PBV/TAX CREDIT | TAX CREDIT ONLY | MARKET RATE RENTAL | TOTAL |
|---|---|---|---|---|---|---|
| C. J. Peete III to be constructed on C.J. Peete, LA001002 and a portion of C.J. Pete Extension, LA001010, which is currently vacant and is the subject of a separate request for disposition approval | 7 | 147 | 0 | 133 | 123 | 410 |
| C.J. Peete I, to be constructed on C.J. Pete Extension, LA001010, which is currently vacant and is the subject of separate request for disposition approval. | 0 | 39 | 11 | 0 | 0 | 50 |
| Total for combined sites | 7 | 186 | 11 | 133 | 123 | 460 |

## Lafitte

HANO has selected to Providence Community Housing and Enterprise Community Partners (PCHECP) to redevelop the Lafitte site. The PCHECP will redevelop the site into a mixed-income residential community and anticipates constructing 1,500 new housing units on the site and in the neighborhood. The planned redevelopment will include both rental and homeownership units affordable to a mix of low- and moderate-income families and seniors.

HANO proposed the disposition of a portion of Lafitte, LA001005, via a 65-year ground lease with a lease consideration of $11,000,000, of which 10% will be due upon execution of the lease and the remaining 90% will be paid pursuant to the terms of the Balance of Total Rent Payment Note between HANO and the Owner. To preserve the property tax exemption, the disposition will be made through a long term ground lease, in which the land will ultimately be leased to NOIDB, who will sublease the property to the owner as will be more fully described in the mixed finance evidentiary documents. As the anticipated rent for the site is nominal, no net proceeds are anticipated. An allocation of low-income housing tax credits was awarded in late 2006 for the first phase of construction.

The HANO anticipates a portion of the Lafitte site will be developed with homeownership units. This portion of the site will be sold to the homebuyer. HANO should to submit a request to the SAC to amend this disposition request for this disposition activity once more information is known.

The initial planned unit distribution is shown in the table below. The Department acknowledges that these plans are subject to change during the negotiations of the development agreement, and if these plans change, HANO should submit a request to the SAC to amend this disposition approval.

**Lafitte – Proposed Redevelopment**

| Name | ACC/TAX CREDIT | SECTION 8 PBV | TAX CREDIT ONLY | Homeownership 60% – 80% AMI | Homeownership 80% - 120% AMI | TOTAL |
|---|---|---|---|---|---|---|
| Phase 1 On-Site Rental – Senior | 100 | | | | | 100 |
| Phase 1 On-Site Rental – Family | 176 | | 100 | | | 276 |
| Phase 1 Off-Site Rental - Family | | 192 | | | | 192 |
| Phase 1 On-Site Homeownership | | | | 40 | 140 | 180 |
| Phase 1 Off-Site Homeownership | | | | | 64 | 64 |
| Phase 2 Off-Site Rental | 100 | 232 | | | | 332 |
| Phase 2 Homeownership | | | | | 356 | 356 |
| Total for combined sites | 376 | 424 | 100 | 40 | 560 | 1,500 |

**B.W. Cooper, LA001007 and B.W. Cooper Extension, LA001012**

HANO has selected KBK Enterprises (KBKE) and the B.W. Cooper Resident Management Corporation (B.W. CRMC) as the developer for the B.W. Cooper site. Initial plans are to construct approximately 660 new housing units on the Cooper sites. The planned redeveloped site will include a mixed-income residential community comprising approximately one-third market-rate units, one-third low-income housing tax credits units and one-third public housing units. In late 2006, HANO received an allocation of low-income housing tax credits for a 410-unit project at the B.W. Cooper site.

HANO proposed the disposition of B.W. Cooper, LA001007, and B.W. Cooper, LA001012, for the B.W. Cooper I low-income housing tax credit project through a 99-year ground lease with a lease consideration of $10,500,000 of which 10% will be due upon execution of the lease and the remaining 90% will be paid pursuant to the terms of the Promissory Note between HANO and the Owner. Beginning the second year of the lease term an annual rent payment of $10.00 will be due. To preserve the property tax exemption, the disposition will be made through a long term ground lease to NOIDB, who will sublease the property to the Owner as more fully described in the mixed finance evidentiary documents.

The remaining portion of B.W. Cooper will be disposed of to the developer under separate negotiations. HANO should submit a request to the SAC to amend this disposition approval for the remaining portion of the B.W. Cooper sites.

The initial planned unit distribution is shown in the table below.  The Department acknowledges that these plans are subject to change during the negotiations of the development agreement, and if these plans change, HANO should submit a request to the SAC to amend this disposition approval.

### B.W. Cooper – Proposed Redevelopment

| Name | ACC Only | ACC/Tax Credit | Tax Credit Only | Market Rental | Total |
|---|---|---|---|---|---|
| **Cooper I** (to be constructed on parts of B.W. Cooper, LA001007, and B.W. Cooper, LA001012) [tax-credit allocation received] | 7 | 147 | 133 | 123 | 410 |
| **Cooper II** (to be constructed on parts of B.W. Cooper, LA001007 and B.W. Cooper Extension, LA001012) | 0 | 66 | 87 | 97 | 250 |
| **Total on Combined Cooper Sites** | 7 | 213 | 220 | 220 | 660 |

### St. Bernard, LA001008 and St. Bernard Extension, LA001013

HANO selected a partnership that includes For Kids Foundation (FKF), Columbia Residential (CR), and the Baton Rouge Area Foundation (BRAF) as the developer for the St. Bernard site.   Initial plans are to construct 624 new housing units on the St. Bernard sites. The planned redevelopment site will include a mixed-income residential community comprising approximately one-third market-rate units, one-third low-income housing tax credits units and one-third public housing units.  In late 2006, the HANO received an allocation of low-income housing tax credits for a 465-unit project at the St. Bernard sites.

HANO proposed the disposition of St. Bernard, LA001008, and St. Bernard, LA001013 for the St. Bernard I low-income housing tax credit project through a 99-year ground lease with a lease consideration of $11,500,000 of which 10% will be due upon execution of the lease and the remaining 90% will be paid pursuant to the terms of the Promissory Note between HANO and the Owner.  Beginning the second year of the lease term an annual rent payment of $10.00 will be due.  To preserve the property tax exemption, the disposition will be made through a long term ground lease, in which the land will ultimately be leased to NOIDB, who will sublease the property to the owner as will be more fully described in the mixed finance evidentiary documents.

The remaining portion of St. Bernard will be disposed of to the developer under separate negotiations. HANO should submit a request to the SAC to amend this disposition approval for the remaining portion of the St. Bernard sites.

The initial planned unit distribution is shown in the table below.  The Department acknowledges that these plans are subject to change during the negotiations of the development agreement, and if these plans change, HANO should submit a request to the SAC to amend this disposition approval.

24

**St. Bernard – Proposed Redevelopment**

|  | ACC Only | ACC/Tax Credit | Tax Credit Only | Market Rental | Total |
|---|---|---|---|---|---|
| **St. Bernard I** (to be constructed on parts of St. Bernard, LA001008 and St. Bernard Extension, LA001013 [tax-credit allocation received] | 7 | 153 | 160 | 145 | 465 |
| **St. Bernard II** (to be constructed on parts St. Bernard, LA001008, and St. Bernard Extension, LA001013) | 0 | 48 | 48 | 63 | 159 |
| **Total on Combined St. Bernard Sites** | 7 | 201 | 160 | 208 | 624 |

We concur with HANO's determination that the disposition of these six developments, as outlined above, is in the best interests of the residents and the PHA because HANO has otherwise determined the disposition to be appropriate for reasons that are consistent with the goals of the PHA and the PHA Plan and that are otherwise consistent with the Act.

### Appraisal

HANO submitted an estimate of the Fair Market Value (FMV) of each housing development with the application. The estimates were prepared by Mr. R. Dunbar Argote, MAI, and Mr. Arthur L. Schwertz, independent appraisers. As required by 24 CFR Section 970.19(d), the Department has determined that this method of valuation is acceptable to establish an estimate of the FMV for the subject properties. The estimated FMV for C.J. Peete, LA001002, is $8.5 million; Lafitte, LA001005, is $11.0 million; B.W. Cooper (including LA001007 and LA001012) is $34.3 million; and St. Bernard, LA001008 and St. Bernard Extension, LA001013, are $13.5 million.

### Negotiated Sale

For the C.J. Peete III low-income housing tax credit project, HANO proposed the disposition via a negotiated sale via a 99-year ground lease, with a lease consideration of $10,500,000 and an annual lease payment of $10.00. For the Lafitte site, LA001005, HANO proposed the disposition of the site via a negotiated sale to PCHECP via a 65-year ground lease with a lease consideration of $11,000,000. For the B.W. Cooper I low-income housing tax credit project, HANO proposed disposition via a negotiated sale to KBKE and B.W. CRMC via a 99-year ground lease, with a lease consideration of $10,500,000 and an annual lease payment of $10.00 year for portions of B.W. Cooper Extension, LA001012, and B.W. Cooper, LA001007. For the St. Bernard I low-income housing tax credit site, HANO proposed disposition via a negotiated sale to FKF, CR and BRAF via a 99-year ground lease with a lease consideration of $11,500,000 and an annual lease payment of $10.00 for portions of St. Bernard, LA001008, and St. Bernard Extension, LA0010012. To preserve the property tax exemption, the disposition will

be made through a long term ground lease, in which the land will ultimately be leased to NOIDB, who will sublease the property to the owner as will be more fully described in the mixed finance evidentiary documents.

### Commensurate Public Benefits

An allocation of Low Income Housing Tax Credits were approved for the proposed sites, ensuring that affordable rental units will be constructed for families with incomes at or below 60 percent of area median income. Additional units will be constructed for families with incomes at or below 80% of area median income. The redevelopment plan for C.J. Peete, B.W. Cooper, St. Benard and Lafitte will include 897 units that will be under the Annual Contributions Contract (ACC) and 1,245 will be affordable rental non-ACC units. Therefore, although the negotiated sale price is less than FMV, because of the benefits arising from the negotiated sale, the negotiated sale is in the best interest of the public housing residents and the PHA, and will result in a commensurate public benefit, as required in 24 CFR Section 970.19.

### Use of Proceeds

According to the Office of the Chief Financial Officer, there is no outstanding debt for C.J. Peete, LA001002, Lafitte, LA001005, B.W. Cooper, LA001007, St. Bernard, LA001008, B.W. Cooper Extension, LA001012, and St. Bernard Extension, LA001013. HANO will realize net proceeds from this disposition. In the application, HANO proposes to use the proceeds of sale to leverage funds for constructing affordable rental units that benefit residents of HANO. The Department has determined that this use of proceeds meets the requirements of Section 18(a)(5) of the Act.

### Relocation

At the time HANO submitted its application to the Department, only 30 of the units proposed for demolition were occupied. All 30 of the units that were occupied were located at B.W. Cooper, LA001007. 24 CFR section 970.21(a) only requires HANO to offer comparable housing to the residents of the dwelling units proposed for demolition/disposition that are occupied on the day the application is submitted. However, HANO has indicated that it will offer comparable housing to all residents who were residing in the units proposed for demolition prior to Hurricane Katrina.

In addition, to help alleviate the shortage of affordable housing in New Orleans following Hurricane Katrina, HANO is temporarily making available for occupancy by former HANO residents, approximately 425 units at B.W. Cooper, LA001007, and 196 units at Lafitte, LA001005. These units will be temporarily occupied subject to receipt of necessary regulatory waivers.

HANO has submitted the certification regarding relocation required by 24 CFR Sections 970.21(e) and (f). HANO estimated the relocation cost for the remaining 30 residents at B.W. Cooper, LA001007 to be $20,430.00 (or approximately $681 per family), which includes moving expenses and counseling/advisory services. The funds for relocation are allocated under Section

901 funds. In addition, HANO will pay all reasonable moving expenses and counseling/advisory services necessary to permanently relocate the following families into comparable housing: (i) the families who will temporarily occupy the 425 units at B.W. Cooper, LA001007, and the 196 units at Lafitte, LA001005; and (ii) the families who were residing in the developments prior to Hurricane Katrina.

For purposes of 24 CFR Section 970, comparable housing means housing: (1) that meets housing quality standards (HQS); (2) that is located in an area that is generally not less desirable than the displaced resident's original development; and (3) which may include: (i) tenant-based assistance (housing choice voucher); (ii) project-based assistance; or (iii) occupancy in a unit owned, operated, or assisted by the PHA at a rental rate paid by the resident that is comparable to the rental rate applicable to the unit from which the resident is vacating.

Taking into consideration the extenuating circumstances created by Hurricane Katrina, and the subsequent inability to repopulate the developments, the Department has determined that HANO is eligible to apply for tenant protection vouchers for all units planned for demolition that were occupied prior to Hurricane Katrina. HANO should submit its application for such vouchers in response to HUD's current notice outlining the application procedures.

The Department considers comparable housing offered in the form of tenant-based assistance vouchers to be comparable housing only upon the actual relocation of the resident to private housing with that voucher. In interpreting Section 18(a)(4)(A)(iii)(II) of the Act, the Department will consider that its requirements have been satisfied when displaced residents are relocated into private housing with their vouchers, regardless of whether that housing is in New Orleans or in other neighborhoods that are generally not less desirable than the displaced resident's original development.

### Resident Consultation

1. Projects Specific Resident Organizations:  HANO Residents (HANOR)

2. HANO-wide Resident Organization: Resident Organizations (RO)

3. Resident Advisory Board in accordance with 24 CFR, Section 903.13: RAB

24 CFR Section 970.4(a) requires that an application for disposition be developed in consultation with the residents of the developments involved, any resident organization at the developments involved and any HANO-wide organizations that will be affected by the activity.

Using Pre-Katrina mailing addresses as well as FEMA and KDHAP mailing addresses, HANO notified all affected residents, HANOR, RO, and the RAB to attend a consultation meeting on the proposed demolition and disposition of certain HANO public housing properties. The meeting was held on November 29, 2006. HANO allowed all residents and non-residents participants attending the meeting to sign-in and provide comments. Also, HANO made available to residents at this meeting a list of affected properties and a sheet setting forth frequently asked questions and answers.

Over two hundred people attended, including at least three plaintiffs' counsel, and over 70 interested persons from the community including representatives of political, advocacy and community groups and other organizations. In addition, HANO subsequently held a pre-board resident leaders meeting on December 6, 2006. HANO continues to communicate with present and former resident organizations regarding its plans. The HANOR, RO and RAB questions were answered during these meetings. HANO provided, in its application, copies of the notifications and sign-in sheets of these meetings.

In addition, in March, 2007, HANO conducted a series of outreach meetings in several Texas cities – including Houston, San Antonio, Dallas and Fort Worth, among others – for displaced HANO residents. The purpose of the meetings, attended by approximately 500 persons, was to personally and directly meet with residents to tell them that HANO wanted them to come home. Additionally, the meetings provided a forum to outline the travel arrangements and stipends that would be arranged for them to facilitate their return, if they so chose.

Although HANO has directly contacted many public housing residents to determine the number that seek to return to New Orleans, there are differing opinions regarding the number who seek to return. Accordingly, HANO has selected a contractor to conduct an independent third party survey of 100% of former residents, even those who have already returned to New Orleans, to determine their housing preferences.

### Offer for Sale to the Resident Organization

24 CFR section 970.9 requires that HANO provide the resident organization at the development affected by the proposed disposition with the appropriate opportunity to purchase the property proposed for disposition. HANO has not provided such an opportunity here based on the exception found in 24 CFR section 970.9 (3)(ii). That section states that no such opportunity need be provided when the "PHA seeks (the) disposition outside the public housing program to privately finance or otherwise develop a facility to benefit low-income families (e.g., day care center, administrative building, mixed-finance housing under 24 CFR Section 941 subpart F, or other types of low-income housing)." The Department concurs with HANO's determination that it has complied with the requirements of 24 CFR Section 970.9.

### Board Resolution

As required by 24 CFR Section 970.7(13), HANO's Board of Commissioners approved the submission of the application for demolition of the proposed property on December 20, 2006, via Resolution Number 2006-76. The last resident consultation was on December 6, 2006. The consultation with the local government took place on December 12, 2006.

### Mayor/Local Government Consultation

Local government consultations meetings were held between HUD/HANO the Mayor of New Orleans and other City officials to discuss the Agency's proposed demolition and disposition activity as well as other aspects of HANO's PHA plans and recovery initiatives. The

consultations meetings were held in Washington, D.C. on December 7, 2006, and in New Orleans on December 12, 2006. As required by 24 CFR Section 970.7 (14), the application package includes a letter of support from the Honorable C. Ray Nagin, Mayor of the City of New Orleans, dated December 14, 2006.

### Replacement Housing

HUD's adoption of 24 CFR section 970.31 eliminated the requirement for one-for-one replacement of public housing units. Therefore, HANO is not required to provide for one-for-one replacement housing, and the Department is under no obligation to fund one-for-one replacement of public housing units.

### Approval

We have reviewed the application and find it to be consistent with Section 18 of the Act, and the implementing regulations, 24 CFR Section 970, including requirements related to resident consultation, relocation and opportunity to purchase the property by the resident organization. Based upon our review and finding that the requirements of 24 CFR Section 970 and Section 18 of the Act have been met, the proposed demolition/disposition, as described in the application and identified below, is hereby approved. The use of proceeds for the leveraging of funds for the construction of affordable rental units is also approved.

| C. J. PEETE, LA001002 Acres: 21.30 | | | |
|---|---|---|---|
| Total Units to be Redeveloped **410** | Less than 80% of Area Median Income | | |
| | **ACC** | **Non-ACC** | **Market Rate** |
| Rental | 154 | 133 | 123 |
| Proposed Acquiring Entity (Rental Units) | **Central City Partners (CCP)** | | |
| Method of Sale | **Ground Lease for 99 Years** | | |
| Lease Price | **Initial payment of $10,500,000.00 then $10 per year** | | |
| Purpose | **The CCP will redevelop the site into a mixed-income residential community.** | | |

| Lafitte, LA001005 Acres: 27.20 | | | |
|---|---|---|---|
| Total Units to be Redeveloped **556** | Less than 80% of Area Median Income | | |
| | ACC | Non-ACC | Market Rate |
| Rental | 276 | 100 | 0 |
| For Sale | | | 180 |
| Proposed Acquiring Entity (Rental Units) | **Providence Community Housing and Enterprise Community Partners** | | |

29

| | (PCHECP) |
|---|---|
| Proposed Acquiring Entity (For Sale Units) | **PCHECP** |
| Method of Sale | **Ground Lease for 65 Years** |
| Lease Price | **$11,000,000.00** |
| Purpose | **The PCHECP will redevelop the site into a mixed-income residential community.** |

| **B.W. Cooper, LA001007** **B.W. Cooper Extension, LA001012** **Acres: 50.6** | | |
|---|---|---|
| Total Units to be Redeveloped **410** | Less than 80% of Area Median Income | |
| | ACC | Non-ACC | Market Rate |
| Rental | **154** | **133** | **123** |
| Proposed Acquiring Entity (Rental Units) | **KBK Enterprises (KBKE) and the B.W. Cooper Resident Management Corporation (B.W. CRMC)** | |
| Method of Sale | **Ground Lease for 99 Years** | |
| Lease Price | **Initial payment of $10,500,000.00 then $10 per year** | |
| Purpose | **The KBKE and B.W. CRMC will redevelop the site into a mixed-income residential community.** | |

| **St. Bernard, LA001008** **St. Bernard Extension, LA001013** **Acres: 48.7** | | |
|---|---|---|
| Total Units to be Redeveloped **465** | Less than 80% of Area Median Income | |
| | **ACC** | **Non-ACC** | **Market Rate** |
| Rental | **160** | **160** | **145** |
| Proposed Acquiring Entity (Rental Units) | **For Kids Foundation (FKF), Columbia Residential (CR), and the Baton Rouge Area Foundation (BRAF)** | |
| Method of Sale | **Ground Lease for 99 Years** | |
| Lease Price | **Initial payment of $11,500,000.00 then $10 per year** | |
| Purpose | **The FKF, CP and BRAF will redevelop the site into a mixed-income residential community.** | |

The approval requires that the disposition documents include a clause stipulating that the lease will terminate, if the purpose for which this disposition was approved is not met.

The Department acknowledges that although vacant units that have been approved by the Department for demolition and/or disposition are not typically reoccupied, in order to alleviate the severe shortage of affordable housing in New Orleans following Hurricane Katrina, HANO is making available for occupancy by former HANO residents approximately 425 units at B.W. Cooper, LA001007, and 196 units at Lafitte, LA001005. Once HANO identifies which units it will make available for re-occupancy by former HANO residents, HANO will notify the Department.

The Department also acknowledges that HANO is seeking a waiver to permit units (approved for demolition/disposition) that are used for temporary occupancy to continue to be eligible to receive operating subsidy during any such temporary occupancy.

### Operating Subsidy

The demolition of these units will affect HANO's operating subsidy eligibility significantly. HANO was advised to contact the HUD financial analyst in the local Regional/Field Office for additional information. The Field Office must insure that HANO's annual formula characteristics report is updated properly to reflect these changes.

### PIC and Monitoring

The PHA must enter the "actual" dates of demolition directly into the Inventory Removals sub-module in PIC, for Regional/Field Office approval so that the status of the units in PIC is changed to "removed from inventory"

It is the responsibility of the Field Office to monitor this activity based on its latest risk assessment. The Field Office must verify that the actual data is being entered by HANO as the actions occur to ensure the Department is not over paying in operating subsidy, and the Capital Fund formula data is correct. Since this action expects to generate net proceeds, it is the responsibility of the Field Office to verify the funds were used as approved, and HANO's records are adequately clear to support this assertion.

In accordance with 24 CFR § 970.35, HANO is required to inform the Field Office of the status of these developments approved for demolition/disposition (i.e., delays, actual disposition or other problems). When the demolitions/disposition are complete, please submit a report to the Field Office confirming the action and certifying compliance with all applicable requirements. Files must be maintained which are sufficient for audit purposes and must be made available upon request.

Once this transaction is entered and an application is approved in PIC, HANO must enter the "actual" dates of disposition directly into the Inventory Removals sub-module of PIC for approval by the Field Office so that the status of the units in PIC is changed to "removed from inventory." For land, the disposition dates and number of acres should also be recorded by HANO in the Inventory Removals sub-module, after this feature is made operational in PIC in an upcoming release. This applies to the disposition of vacant land as well as to land with public housing units.

31

Upon completion of disposition, the Regional/Field Office has the responsibility to amend the Annual Contributions Contract and/or to release the parcel from the Declaration of Trust, as applicable, and update PIC to reflect the approved action as appropriate.

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3      ****************************************************************

 4  YOLANDA ANDERSON, ET AL.
                               DOCKET NO. 06-3298 "B"
 5  V.                         NEW ORLEANS, LOUISIANA
                               THURSDAY, NOVEMBER 15, 2007, 9:30 A.M.
 6  ALPHONSO JACKSON, SECRETARY
    OF THE UNITED STATES
 7  DEPARTMENT OF HOUSING AND
    URBAN DEVELOPMENT; ET AL.
 8
        ****************************************************************
 9

10                    TRANSCRIPT OF MOTION PROCEEDINGS
           HEARD BEFORE THE HONORABLE IVAN L. R. LEMELLE
11                    UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:

14  FOR THE PLAINTIFFS:        LOYOLA LAW SCHOOL CLINIC
                               BY:  WILLIAM P. QUIGLEY, ESQUIRE
15                             7214 ST. CHARLES AVENUE
                               NEW ORLEANS LA  70119
16

17                             THE LOUISIANA JUSTICE INSTITUTE
                               BY:  TRACIE L. WASHINGTON, ESQUIRE
18                             1631 ELYSIAN FIELDS AVENUE
                               NEW ORLEANS LA  70117
19

20                             ADVANCEMENT PROJECT
                               BY:  MONIQUE L. DIXON, ESQUIRE
21                             1730 M. STREET, NW, #910
                               WASHINGTON DC  20036
22

23                             JENNER & BLOCK
                               BY:  ADAM H. MORSE, ESQUIRE
24                             330 N. WABASH AVENUE
                               CHICAGO IL  60611
25
```

```
 1   FOR THE DEFENDANTS:        U. S. DEPARTMENT OF JUSTICE
                                FEDERAL PROGRAMS BRANCH, DC
 2                              CIVIL DIVISION
                                BY:  HEATHER R. PHILLIPS, ESQUIRE
 3                              200 MASSACHUSETTS AVENUE NW
                                ROOM 7214
 4                              WASHINGTON DC  20530

 5
                                STONE PIGMAN WALTHER WITTMANN LLC
 6                              BY:  RACHEL W. WISDOM, ESQUIRE
                                546 CARONDELET STREET
 7                              NEW ORLEANS LA  70130
                                (504) 581-3200
 8

 9

10   OFFICIAL COURT REPORTER:      CATHY PEPPER, CCR, RPR, CRR
                                   500 POYDRAS STREET, ROOM B406
11                                 NEW ORLEANS, LOUISIANA 70130
                                   (504) 589-7779
12

13

14   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.
15

16

17

18

19

20

21

22

23

24

25
```

1                     **P-R-O-C-E-E-E-D-I-N-G-S**

2                 THURSDAY, NOVEMBER 15, 2007

3                   (IN CHAMBERS VIA TELEPHONE)

4

5

6            THE COURT:  Okay.  Who is on the line, please?  Let's

7   do this.  Whenever I ask for who is online, let's begin like we

8   would at oral argument.  Plaintiffs first, then defendants.  Who

9   is representing plaintiffs on this?

10           MR. QUIGLEY:  Bill Quigley, representing the plaintiffs.

11           THE COURT:  Who is representing HUD?

12           MS. PHILLIPS:  Heather Phillips, Your Honor.

13           THE COURT:  Who is representing HANO?

14           MS. WISDOM:  Rachel Wisdom.

15           THE COURT:  Is there anyone else online?

16           MS DIXON:  Monique Dixon for the plaintiff.

17           MR. MORSE:  And Jenner & Block for the plaintiff.

18           MS WASHINGTON:  Tracie Washington for plaintiffs.

19           THE COURT:  I've got several matters to discuss with

20   everyone.  We have a court reporter present and my law clerk

21   present for this particular conference.

22            As you recall, this is the date originally set for the

23   pretrial conference of this case, but in view of the present

24   appeal on the Court's certification on the voucher matters, the

25   trial is effectively stayed, so we converted the pretrial

1  conference to a status conference to discuss the pending motions.

2        The pending motions that I have are as follows:

3  Plaintiff's motion to reinstate claims relative to demolition or

4  on the alternative, leave to file supplemental pleadings on that

5  at record document 500 and 501.

6        Also plaintiff's motion for a temporary restraining

7  order and preliminary injunction, record document 502 and 503.

8        In addition, there also are pending motions by

9  plaintiff to certify questions for appeal, as well as HANO's, I

10  believe, third Motion to Dismiss or alternative moving for

11  Summary Judgment.

12        We have, I believe, too, a HUD Motion to Dismiss as

13  well.

14        The status conference, I want to first of all resolve

15  some issues that, I think, require some expedited consideration

16  and that's the plaintiff's motion to reinstate and their motion

17  for a temporary restraining order.

18        Who is handling that for the plaintiffs?

19      MR. QUIGLEY:  Bill Quigley.

20      THE COURT:  All right.  On your motions in that regard,

21  there is an order, as you point out, and I believe attached to

22  your pleadings that the Court issued a while back concerning

23  whether or not the plaintiffs have some private right of action

24  regarding the demolition claims.  I didn't see anything new in

25  that, in the set of motions that I have now other than, I

1    believe, you both point out, and your opponent has filed its

2    response, which indicates that HANO's application for demolition

3    has received approval from HUD.  And I forget whether it was the

4    plaintiffs or it might have been the defendants that said that

5    the demolition plans would not go into effect until, is it after

6    December 2007?  Did you get that impression, Bill?

7         MR. QUIGLEY:  Not formally.

8         MS. WISDOM:  Your Honor, this is Rachel Wisdom, if I

9    may.  Currently the plans are to commence demolition in December

10   of 2007.  Mid-December.

11        THE COURT:  And when you say demolition plans, we're

12   talking about for all of those in the so-called big four or is it

13   limited or what?

14        MS. WISDOM:  It's to start at all of the big four.  It

15   does, however, include some demolition that was approved prior to

16   Katrina and is not the subject of the demolition application that

17   the plaintiff's motion addresses.

18        THE COURT:  Mr. Quigley.

19        MR. QUIGLEY:  That's what we have heard informally, and

20   that's the reason, you know, part of the reasons that we think it

21   needs to be dealt with on an expedited basis.  In terms of the

22   private right of action issue, we filed a reply yesterday

23   afternoon.

24        THE COURT:  I have it.

25        MR. QUIGLEY:  It points out our recusal on that and as

1    the Court will recall, it's always been the position of HUD and

2    HANO that we couldn't even join them in that, it wasn't even

3    approved, and that, you know, once HANO completed their

4    application, HUD was going to take 100 days or so to look at it

5    and consider objections, et cetera, et cetera.  And only at that

6    point was it, you know, even possible for someone to raise

7    anything.

8            I think we're at that point now.  As you know, the 100

9    days have collapsed into one day and we, nor, neither the

10   plaintiffs nor anybody else had a chance to participate in the

11   HUD decision-making process at all.

12           So at this point, they think that they have, you know,

13   the authority to go forward to demolish these thousands of

14   apartments unless this Court takes action.

15           And so we want to maintain the status quo.  We want the

16   Court to preserve these things, and so that's why we asked for

17   the hearing on the TRO and the preliminary injunction, which is

18   intertwined with the motion to reinstate or remand.

19           THE COURT:  In response to your allegations of no

20   participation by the residents in the planning or application

21   process for the demolition, your opponent cites to various

22   exhibits and materials in that regard, and you recall we had a

23   hearing in court some months ago dealing with the issue of

24   getting a public hearing and input from the residents.

25           As I recall, that hearing occurred, although as you may

1  recall, and maybe you were there, press accounts and from what

2  I'm getting from your opponents, it was somewhat disrupted by

3  people in attendance.  Do you want to respond to that?

4      MR. QUIGLEY:  Absolutely.  It was a public hearing in

5  the sense that it was held in a public building, but it really

6  wasn't a hearing.  The other part about it, Judge, if you recall,

7  and we provided you with a transcript of that, so you have that?

8      THE COURT:  Yes.

9      MR. QUIGLEY:  That people came up to a microphone and

10  said, These are the questions we have.  How are we going to get

11  back?  How many houses are going to be left?  How many are going

12  to be available for us?  How much is it going to cost?

13      There were no responses given by the Housing Authority

14  at that time, and that public hearing, even if this Court would

15  say that that is sufficient for HANO's participation, which we

16  obviously vigorously would disagree, but even if that's the case,

17  there was no opportunity at all once HUD received the application

18  from HANO, which we think is fatally flawed.

19      Once they received it, then there was supposed to be a

20  deliberative process to review and evaluate factually,

21  financially and legally the HANO plan.  And that HANO plan, they

22  have said in open court and said to the media and everything, HUD

23  has, that the HUD counsel that has been in front of the court,

24  that that was 100 working days at least and show it was

25  deliberative and this and that, but there was no opportunity for

1    anybody to speak.  There was no hearing, there was no

2    information, and it wasn't till that complete application was put

3    in that it was clear that 82 percent of the public housing that's

4    the subject of this demolition is never going to be

5    reconstructed.

6           So this continuous suggestion by HANO and HUD that

7    residents are in favor of, that some residents are in favor of

8    redevelopment is, no resident has ever said, nor will they ever

9    say that they are in favor of a redevelopment where 82 percent of

10   the people who lived there before Katrina can't come back.

11          They were told, look, we're going to build a new house

12   for you, and you're going to be able to come home.  You're going

13   to be able to have the same sort of subsidy but you're going to

14   be in a nicer place.

15          And people couldn't and wouldn't object to that, but it

16   turns out that that is not true.  And it's not true, it wasn't

17   true at the time they had the public hearing and it's not true

18   now that they have made the submission and they are spending

19   $400,000 per apartment and going to end up with 82 percent fewer

20   houses, which means that overwhelmingly, our residents, our

21   plaintiffs are not going to be able to come home to similar,

22   affordable housing.  So that's why we want to have this hearing.

23          THE COURT:  Both sides, have, I think, pointed out to me

24   several cases, including ones that we already dealt with in prior

25   hearings.  In addition, there is this *Vieux Carré Property*

1    *Owners, Residents and Associates, Inc., versus Brown* case out of

2    the Fifth Circuit in 1991.  I think a case cited by plaintiffs in

3    support of their position here concerning the process and

4    demolition, but from my review of that case, it seems as if any

5    objections that you may have concerning the process, you're

6    pointing out, both HANO and now HUD, as somehow you believe it

7    was deficient.  And particularly you're telling me about HUD, it

8    seems as if in that case they allowed the demolition,

9    reconstruction to go forward, and at the same time still consider

10   for review the process for allowing that construction or

11   demolition to occur.  Do you want to respond to that?

12           MR. QUIGLEY:  Well, Judge, I think that factually where

13   you're talking about over 4,000 apartments, if this Court gives

14   the green light to allow HUD and HANO to demolish these

15   apartments, we will suffer irreparable damage.  There is not a

16   way for them to be able to come back or for you to be able to

17   come back or the Fifth Circuit to come back and say, You know, I

18   think you didn't really follow the law, that I don't think

19   24 hours is quite the deliberative process that the law suggests.

20           And at that point, the houses will be gone, and they

21   are talking about spending three-quarters of a billion dollars to

22   make 1,800 apartments.  Where are the other, we're going to get

23   another billion or $2 billion to construct brand-new apartments

24   for everyone else?

25           Their own documents show that, they say it will cost,

1  the estimate at this point, three-quarters of a billion to tear

2  them down and build back up 1,800, of which less than 800 our

3  clients would be eligible for.

4      THE COURT:  But are you counting in that number the ones

5  that are already up and running?

6      MR. QUIGLEY:  I'm sorry, I didn't understand your

7  question.

8      THE COURT:  Are you counting in that number, I think you

9  said 1,800 or so, the units that are already occupied?

10     MR. QUIGLEY:  In these big four?  No.  This is counting

11 within the scope of these four developments, what at the end of

12 the day is going to be available.  There will be less than 800,

13 750 or so that are available for public housing-eligible people.

14 There will be some others that will be market rate.  There will

15 be some that are tax credit mixed income.  But at the end of the

16 day, we're still going to, the City of New Orleans is going to

17 end up with, even if you count all of them, with 2,000 affordable

18 apartments gone forever.  And this Court, by that time, would

19 have its hands tied and be unable, really, to give people an

20 apartment.

21     And this is not the kind of thing that we think is, the

22 kind of thing that a ruling in a, after houses are down will

23 actually have any impact.

24     THE COURT:  Well, it sounds like your argument is based

25 upon numbers that the plans that you refer to that HUD has

1    approved are insufficient in terms of meeting the numbers of

2    residents who might want to return to public housing in

3    New Orleans.

4            MR. QUIGLEY:  That's part of it.  Absolutely.

5            THE COURT:  HUD or HANO wants to respond?

6            MS. WISDOM:  Your Honor, this is Rachel Wisdom.  I think

7    that the points that Mr. Quigley is making are not even really

8    relevant to the present motion, but I will address them.

9            It's absolutely factually wrong that there will be

10    insufficient numbers of low-income housing units in New Orleans

11    at the end of the reconstruction process.

12            As you know, and I'm sure the plaintiffs would agree,

13    there were 5,146 occupied public housing units at the time

14    Katrina hit.  When HANO's plans are finished, there will be about

15    5,050, which will include project based, Section 8, those are

16    onsite Section 8 apartments and public housing units.  They will

17    be spread out.  They will not all be clumped together on the

18    sites of the big four.  They will be dispersed in a better way

19    throughout the community, and they will be in mixed-income

20    developments along the lines of River Gardens and the old Desire,

21    but that will be the total number, and it does include low-income

22    units that are not traditional public housing units.  However,

23    they still will be available to people who previously were on

24    public housing.

25            However, that isn't really the issue.  The issue is, do

1    they even have a right of action, which they do not.  We briefed

2    that to Your Honor.  I'm not sure you're interested in hearing

3    any more about that.  Will they suffer irreparable harm?  They

4    will not.  Their remedy under the law, if they have any, is

5    damages for whatever harm they claim to have suffered by being

6    housed in a unit through a voucher versus being in a public

7    housing unit at one of these sites.

8            And there is no need to address that with an injunction

9    because they have an adequate remedy of law as you found in

10   February of this year.

11           On top of that, the real harm that will occur if a

12   restraining order is entered is to HANO and to the other public

13   housing residents who support redevelopment because it

14   jeopardizes the governmental funding that is available for HANO.

15           HANO was able to get extensions throughout this

16   litigation in part because of this litigation.  But there isn't

17   going to be any more room from that.  We have been advised by the

18   Louisiana Housing Finance Agency that, you know, time is up.

19   Move.  They need to spend the money, and so does HANO.  The

20   process has to get started, and we're ready to go.

21           The public interest will not be served because

22   essentially what will happen is the public housing in New Orleans

23   will lose, you know, millions and millions of dollars in funding

24   and will lose completely the ability to put back online any

25   number of public housing units or other low-income units that are

1    sufficient to address the needs of this community.

2            And you are absolutely correct, Your Honor, about the

3    *Vieux Carré* case.  What the Court did in that case in the face of

4    a similar complaint was to allow the demolition/redevelopment to

5    proceed because, in essence, the complaint is not aimed at the

6    substance of the plans but at the process that occurred along the

7    way.  We believe the process was absolutely fine, and we believe

8    that both HANO and HUD adhere to what the law requires them to

9    do.

10            The plaintiffs obviously disagree.  I think that they

11    are more of the view that they have a right of veto or some kind

12    of collective bargaining right, but that is not supported at all

13    by the law, Your Honor.

14        THE COURT:  I'm familiar with the history of the process

15    as it relates to HANO, but this new development of the approval

16    by HUD is something new since we last heard this particular

17    issue.  I would like to hear from HUD on what's the process HUD

18    had to use and did use, if any, in approving this application.

19        MS. PHILLIPS:  This is Heather Phillips, a federal

20    defendant.

21            But as we outlined in our brief, I think Mr. Quigley's

22    description of the process is entirely inaccurate.  I mean, there

23    was no 24-hour turnaround.  Instead, obviously as you know this

24    case has been going for quite a long time and HANO has been

25    submitting portions of its application.  The application was

1    almost submitted in its entirety some time in around March or so
2    I think.

3          But in any event, although HUD was not going to look at
4    the application until it had received critical parts of it,
5    because of the importance of the case and the fact that there are
6    timing deadlines, once the certain critical elements had been
7    submitted, HUD did begin to review those things.  So there was no
8    one-day turnaround.

9          Instead, and ordinarily, as it states in Mr. Rodin's
10   fifth declaration, ordinarily there would be one person assigned
11   to the review, but given the importance of this case, there were
12   many folks assigned and these people were working very, very long
13   hours and reviewing all the materials.  And Your Honor has before
14   you the 31-page decision that is very detailed and very complete
15   and discusses all of the factors that went into the decision.

16         So the characterization that this was just some rubber
17   stamp is entirely inaccurate and totally belied by the record.

18         THE COURT:  Does HUD invite any public comment from
19   those that might be affected or the general public to the
20   application once you receive the final application?

21         MS. PHILLIPS:  Well, Your Honor, as you know, the
22   statute itself requires that the Housing Authority do that sort
23   of discussion.

24         THE COURT:  I'm talking about once you receive the
25   completed application from HANO, is there any, is there anything

1  that HUD does to invite or receive public comment?

2      MS. PHILLIPS:  I don't know that there is an expressed

3  invitation.  However, the statute does provide that if the

4  secretary is made aware of other contrary information, he needs

5  to take that into account.  And, in fact, there was other

6  information submitted that he took into account, and discussed in

7  his decision memorandum.

8      THE COURT:  Going back to the issue of financing and the

9  windows of opportunity to take advantage of certain financial

10  benefits if you go forward with this project, I recall that being

11  urged to me before, but as you recall, I said then and I'll

12  repeat again, that's not to me a valid basis for reviewing the

13  claims here.

14      You may have urged it as a, I think, someone said

15  public policy matter, but that, that really doesn't hold sway

16  with me, mainly in part because, and I think I've said this

17  before, there was some foot dragging, at least some evidence of

18  foot dragging by parties here in addressing some of the housing

19  needs, but it didn't amount to, in my view at the time at least,

20  to anything actionable.  But at the same time, I'm not impressed

21  by an argument that, Well, this Court should deny the requested

22  relief here on the basis that if I didn't, then there is going to

23  be some loss of financial opportunities.  That's not a valid

24  basis for me to consider, and I don't.

25      But going back to the plaintiffs, Mr. Quigley, do you

1  want to respond to what both counsel have just said for HANO and

2  HUD?

3        MR. QUIGLEY:  Yes.  I think HANO counsel and HUD's

4  counsel have, you know, raised some factual issues, first of all.

5  You know, what number is actually, what is planned, what is

6  funded.  Whether it is comparable housing, that sort of stuff,

7  plus honestly, this is the first that I heard that the secretary,

8  after the application was in, considered some comments from

9  people, and we didn't know that.  And we would like to find out

10  whose comments were considered in that 24 hours, and, you know,

11  try, you know, to understand what those comments were.

12        We believe that the statute can't be complied with in

13  24 hours and that HUD and HANO for the last, almost two years,

14  have been saying, we are premature, you're premature, you're

15  premature.  Now they are saying, Okay, you were premature, now

16  you're too late.

17        Those are legal questions and they are factual

18  questions, and I think that's why we asked for a hearing on this

19  to be able to present this to the Court and be able to present

20  evidence on that, and to go into the questions that you have

21  raised today in a little more depth on the legal issues.

22        THE COURT:  But the primary legal issue that I'm

23  confronted with here is this issue of irreparable harm.  You

24  know, from my reading of that case and some other cases that both

25  sides have submitted to me, the request for injunctive relief on

1  the demolition claims, from my reading, particularly of that

2  *Vieux Carré* case, as well as some other ones that I've cited

3  before in a previous order, would say there is not irreparable

4  harm because there may be adequate remedy at law, whether that's

5  for damages or what have you in the process.  Or even if you're

6  saying that HUD did not comply with certain due process

7  requirements prior to approving this application, then, you know,

8  a post-deprivation remedy might very well be adequate under law,

9  as opposed to what you're seeking, injunctive relief.

10      For instance, you recall that, I think it was either

11  HUD or maybe HUD and the plaintiffs said, Well, look, HANO needs

12  to do, you know, some hearing or receive public comment.  And

13  that was directed.  That was done.  You gave me the transcript on

14  it.

15      The issue of sufficiency of it is another issue, but at

16  the same time, it seems as if, if you're saying that HUD or that

17  the secretary should have done something else to consider, I

18  don't know, opposition or comment to the application that it

19  eventually approved, where is the irreparable harm if, say, the

20  Court agrees with you and directs the secretary then to give you

21  what information it used to, in its decision letter that said,

22  Well, we considered other factors.

23      It's a question of is there really irreparable harm

24  here that requires injunctive relief, or is there adequate remedy

25  under law.

1     MR. QUIGLEY:  Well, first of all, Judge, I would like to

2 have the occasion to brief that.  But secondly, factually, once

3 these 4,000-plus apartments come down, it is, to say later, Well,

4 we're going to give you some damages to the fact that you're not

5 going to be able to come back, you're never going to be able to

6 get back into a similarly subsidized unit, that 82 percent of you

7 are not going to be able to come back, I don't see how is there

8 an adequate remedy of damages for people for that alone.  And I

9 don't, it would be much better than, it would be much better that

10 money goes into creating housing than goes into individual

11 people's pockets.

12          And I just, I think that the whole idea of the statute,

13 the demolition, I mean, the normal course of events is that

14 people are in a place, they decide on a plan, the residents

15 participate in that, everybody decides on a plan, maybe not

16 everybody is happy.  We never have a process where everybody is

17 happy.  Decide on a plan, people get alternative housing, and

18 they take those houses down and they come up with, and then they

19 implement this new plan that everybody has participated in.  Like

20 here it is that the information was submitted, the completed

21 application was submitted one day, HUD approved it the next day,

22 and only now are the residents and everybody else finally

23 discovering that 82 percent of these families cannot come back.

24 Will not be able to come back to similarly subsidized units.  And

25 you're talking 4,000 families.

1          And so I think that factually, if you decide in

2    6 months or the Fifth Circuit decides in 6 months, Gee, this was

3    fatally flawed and you have to do this over, what remedy do

4    people have at that point?  They can't come home.  They can't

5    come back.  And I think that at that point the decision of the

6    Court is more of an advisory position at that point.

7          So we think that the, they have to stay up till this

8    Court says, That is a legitimate, it's a legitimate process, it's

9    a legitimate outcome, it's a legitimate plan.  It comports with

10   whatever their statute requires on both HANO and HUD's part.  And

11   if this Court says that HANO and HUD have done it fairly and have

12   come to a statutorily reasonable conclusion, then at that point,

13   you actually do give the green light to demolish and then we have

14   to take whatever action we have to take.  But the, we're not to

15   that point yet.  And saying, You can go ahead and demolish while

16   we're still looking through, you know, what HUD did, while we're

17   still trying to figure out which version of the facts is actually

18   correct, I think would deprive the Court of any meaningful remedy

19   other than an advisory opinion, you know, after the fact.

20         And certainly deprive us, our people of that as well.

21   And that's why I think we need to have a hearing, so all of this

22   is put on before you and then you can decide what's fair.

23         THE COURT:  Well, that's in part what I'm doing now, is

24   to hear exactly, you know, what the positions of the parties are.

25   And as I've stated earlier, it doesn't it seem as if you're,

1  well, yes, you're attacking demolition because you believe that

2  there was some problem in the process, it really raises questions

3  of not only this issue of right of action and standing, but also

4  the issue of other remedies that may be available.

5          I think that both sides have adequately briefed it, and

6  the only reason why I entertained in connection with this

7  particular status conference call some oral argument on those

8  points was because I wanted to address some questions that I had

9  and to get clarification from the parties on some of the things

10 that I had questions about after I reviewed their pleadings on

11 these two motions.

12         It certainly is correct that the plaintiffs'

13 alternative request to file supplemental pleading, that is, to

14 add not only in their claim that the, that HANO should not be

15 allowed to proceed with demolition, and that now, that there has

16 been approval of that plan by HUD, I think it would be

17 appropriate to allow the plaintiffs to file their proposed

18 pleading to make the record complete that we not only have the

19 application by HANO to HUD, which we already knew about before,

20 but we also now have this new fact, and that is, the approval of

21 that application for demolition that HUD has approved.

22         The question of whether or not, however, the Court

23 should either reconsider, reverse its previous orders regarding

24 demolition, in view of this new fact that demolition plans are

25 approved by HUD, however, doesn't lead me, based upon my reading

1  of the pleadings and as clarified now in what limited argument I
2  wanted on those points, to change my prior orders.
3         I think I at least twice dealt with this particular
4  issue and now this issue of approval.  In the context of the
5  temporary restraining order and preliminary injunction requests
6  cited to me by the plaintiffs, the Court's prior orders will
7  stand.  Those demolition claims are dismissed.  The TRO,
8  injunctive relief being requested is being denied.  I'm going to
9  issue written opinions regarding all of this.
10         On the basis in part of that case that I referred to,
11  the *Vieux Carré* case, both sides have cited to me, as well as the
12  issues involving the process itself.
13         I'm satisfied that HANO, after some urgings by the
14  plaintiff and some urgings by the Court and perhaps even by HUD,
15  has indeed complied with the due process requirements to get its
16  application done and completed and submitted to HUD in that
17  regard.
18         This issue of whether or not HUD has conformed with any
19  requirements of law or regulations, once it received the
20  application and approved the application for demolition, while I
21  knew, based upon what I have here from both sides in exhibits
22  that you have submitted to me, does not indicate that there has
23  been a due process violation in that regard.
24         And even if there is some requirements that HUD should
25  have gone through in approving of this plan, it would not lead to

1   irreparable harm in the sense that, as I stated before in a prior

2   ruling, the plaintiffs have adequate remedy at law.

3       Whether that deals with being displaced, vouchers or

4   other remedies at law, that would not lead to irreparable harm by

5   denying the injunctive relief claims here as relates to

6   demolition.  But I will require that the secretary provide the

7   plaintiffs with whatever supportive documentation he has, to show

8   that he did consider some other comments or aspects to the

9   application other than just what was submitted by HANO.  And that

10  should be submitted within 10 days to the plaintiffs.

11      The other, and I'm going to issue a written opinion on

12  both the, both motions that I just dealt with.  On these motions

13  to certify questions for appeal and also the defendant's motions

14  to either dismiss or seek summary judgment, that sets a hearing

15  on November 28, 2007, in light of my ruling today, I would

16  imagine the plaintiffs might want to redo their Motion to Certify

17  to include now this new issue regarding the HUD approval and my

18  denial of the efforts to stop demolition.  I would probably

19  certify that but not in the context of what the plaintiff has

20  submitted for certification.

21      For instance, when you certify a question to the

22  Fifth Circuit Court of Appeals on an interlocutory ruling, even

23  though I think this is a dispositive ruling, it deals basically

24  with certifying the question on points of law.  For instance, the

25  rulings that I had concerning whether or not the individual

1  tenants had a private right of action under 1437, the

2  Fifth Circuit, again, I'm no authority on Fifth Circuit rules or

3  procedures, even though I've sat there a couple of times by

4  designation, they want a very clean question.  When you engage in

5  a long narrative, that might present some issues with them, so I

6  would suggest to you, I'm not requiring it, but I would suggest

7  to you that you might want to redo your motion to certify

8  questions for appeal.

9         If you don't want to, that's fine.  I'll make a

10 decision on that by November 28th, the date set for hearing.

11        HANO's Motion to Dismiss or for Summary Judgment and

12 the federal defendant's Motion to Dismiss that's set for

13 November 28th also, it seems as if, for instance, the HUD motion,

14 second Motion to Dismiss is premised upon some idea that, Well,

15 look, HUD does not administer the voucher systems, HANO does.

16 But HANO, I recall from our prior hearings, and including the

17 certification hearings, that HANO can only operate pursuant to

18 federal regulations, which are promulgated by HUD.

19        And if those regulations dealing with vouchers, for

20 instance, are the basis that causes disparate treatment or

21 disparate impact on residents, then those claims against HUD, in

22 my view, would still survive that motion.

23        I didn't see anything to the contrary on that, and I'm

24 going to deny at this time, because I don't need oral argument on

25 that one, the defendant's Motion to Dismiss, the federal

1 defendant's Motion to Dismiss.

2 　　　　To the extent HANO's Motion to Dismiss or for Summary

3 Judgment seeks again to dismiss those claims relative to

4 vouchers, I'm denying those motions.  To the extent that the

5 Motion to Dismiss or for summary judgment brings in again

6 consideration of the demolition claims or other claims that I've

7 previously dismissed in an order, it's, to me it's moot or to the

8 extent it wasn't developed before, it doesn't need my

9 consideration.  To me, the whole motion for HANO really should be

10 dismissed as moot and denied outright regarding the voucher

11 claims.

12 　　　　I am then only left to consider plaintiff's Motion to

13 Certify.  I do intend on certifying issues for the plaintiff or

14 appeal to the Fifth Circuit, but I would suggest that after

15 today's hearing and discussion of some fine points regarding the

16 present motions that I've dealt with, they might want to resubmit

17 that or what have you.

18 　　　　Defendants should be given a chance to respond to any

19 supplemental motions that plaintiffs file regarding

20 certifications to the Fifth Circuit.

21 　　　　One other thing, too, that I wanted to discuss or at

22 least get some insight on, you-all recall that I had allowed

23 additional discovery on the matters that I certified, and while I

24 know you-all have given me some extra materials since then, it

25 seems as if there is a need for further discovery on the claims

1  certified.  While the Fifth Circuit has not stopped any pretrial

2  proceedings, including discovery or even, you know, any attempts

3  to mediate or settle, I would ask the parties to get together and

4  submit to me by November 28th a plan for discovery regarding the

5  remaining claim, and submit that to me in writing.  It doesn't

6  have to be filed, and we'll go from there.

7          I had denied, I think, I had denied the request to stay

8  pretrial proceedings before, so I intend on having you-all still

9  work on the remaining claim because the Fifth Circuit has only

10  stayed the trial of the case, not pretrial matters, including

11  what we did here today.

12          Thanks, everybody, for your briefs and your answers to

13  the questions that I had, and we'll hear from you later.

14          MR. QUIGLEY:  This is Bill Quigley for the plaintiffs.

15  Since obviously this is not the end of this, is it possible that

16  this Court would ask the defendants to, once they know when

17  demolition is actually going to start, to file a notice with the

18  Court saying what day that would be in terms of us seeking relief

19  in the Fifth Circuit and other places?

20          THE COURT:  Well, she said it would be mid-December when

21  they are going to start, Bill.  What else do you want?

22          MR. QUIGLEY:  Well, that sounds -- we'll do what we need

23  to do then.

24          THE COURT:  All right.  Thank you.  Good-bye.

25          (WHEREUPON, the proceedings at 10:10 a.m. were

1    concluded.

2                              *    *    *

3

4

5                      REPORTER'S CERTIFICATE

6

7        I, Cathy Pepper, Certified Realtime Reporter, Registered

8    Professional Reporter, Certified Court Reporter, Official Court

9    Reporter, United States District Court, Eastern District of

10   Louisiana, do hereby certify that the foregoing is a true and

11   correct transcript, to the best of my ability and understanding,

12   from the record of the proceedings in the above-entitled and

13   numbered matter.

14

15

16                            _____

17                            Cathy Pepper, CCR, RPR, CRR

18                            Official Court Reporter

19                            United States District Court

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| YOLANDA ANDERSON, et al., | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-3298 |
| | ) | SECT. B MAG 5 |
| | ) | JUDGE LEMELLE |
| ALPHONSO JACKSON, et al., | ) | |
| Defendants | ) | |

### DECLARATION OF DAVID A. VARGAS

I, David A. Vargas, hereby declare:

1. I am of majority age and otherwise competent to testify as to the matters herein, based on my personal knowledge.



2. I am currently the Director, Office of Housing Voucher Programs, Office of the Assistant Secretary for Public and Indian Housing, United States Department of Housing and Urban Development ("HUD"). I have managed voucher programs for HUD since September 16, 2004. I make the following statements based on my personal knowledge or on the basis of information made available to me in my capacity as the Director of the Office of Housing Voucher Programs.

Background

3. Following Hurricane Katrina, many of HANO's displaced public housing tenants received (and continue to receive) Disaster Voucher Program ("DVP") assistance from funds appropriated to HUD under Pub. L. 109-148, December 30, 2005. By the terms of that appropriation, these funds could not be obligated after September 30, 2007, and HUD had

implemented this program as ending on that date. See PIH Notice 2006-3. Subsequently, Congress passed the U.S. Troop Readiness, Veterans Care, Katrina Recovery, and Iraq Accountability Appropriations Act, 2007, Pub. L. No. 110-28, extending HUD's ability to grant administrative waivers through December 31, 2007. Accordingly, HUD has modified the terms of its program in PIH Notice 2007-17 to allow families to remain on DVP through that date. Pursuant to PIH Notice 2007-17, after December 31, 2007, tenants who were receiving Housing Choice Vouchers prior to Katrina, and who now receive DVP assistance, will resume their Housing Choice Voucher assistance under HANO's Housing Choice Voucher program. Approximately 3,600 families currently receiving DVP assistance will not be eligible for conversion to the Housing Choice Voucher program because they were not part of HANO's Housing Choice Voucher program pre-Katrina. These ineligible families must remain in the DVP program until those funds run out. HUD projects that it will have funds sufficient to continue DVP assistance to these families through June 2008, provided those families do not move outside of their current Public Housing Agency's ("PHA") jurisdiction. Thereafter, beginning in July 2008, displaced tenants currently receiving DVP assistance that cannot be covered under the Housing Choice Voucher program will need to receive housing assistance from another source.

4. As of August 10, 2007, approximately 3,572 displaced HANO public housing families have registered to receive DVP assistance. DVP assistance consists of rental assistance in the private market of 100 percent of the fair market rents ("FMRs") in the area where the family resides. Though DVP assistance does not provide an allowance for utilities, to the extent

2

recipients' rent includes utilities and does not exceed the FMR, utilities are covered. DVP recipients are only responsible for any rent in excess of the FMR and utilities not covered as part of the rent. As of July 3, 2007, approximately 2,616 of these families were receiving DVP assistance under a lease. Of this number, approximately 1,112 were receiving DVP assistance under a lease in the City of New Orleans. In addition, approximately 758 families are shown on HUD's records as having an expired DVP lease as of July 3, 2007; of this number, 101 families are shown as having an expired lease in the City of New Orleans. HUD believes that, in most cases, the families shown on its records as having an expired lease are continuing to rent month to month at the pre-expiration location using DVP assistance. Finally, available records show that as of June 1, 2007, an additional 1,453 pre-Katrina HANO public housing families are currently residing in HANO public housing, while approximately 60 such families are currently residing in public housing in other cities. Thus, the vast majority of HANO's approximately 5,251 pre-Katrina public housing residents are continuing to receive some form of housing assistance.

5. Upon the termination of DVP assistance at the end of June 2008, most displaced public housing residents who are currently receiving that assistance will need to transition to the recently announced HUD/FEMA temporary program called the Disaster Housing Assistance Program (DHAP). DHAP will require families to pay a minimum rent of $250 at the time of transition in July 2008, and the rent will increase by $50 per month every month (e.g. $300 in August, $350 in September, etc.) until the program ends on March 1, 2009 or when no further subsidy is paid on behalf of the family, whichever comes first. The next three paragraphs of this

3

declaration will consider the only three possible sources of housing assistance for these families once DHAP ends.

6. HANO receives limited funding to issue Housing Choice (Section 8) Vouchers under its Annual Contributions Contract ("ACC") with HUD. Under the Housing Choice Voucher program, the PHA determines a payment standard that is the amount generally needed to rent a moderately-priced dwelling unit in the local housing market. Housing Choice Voucher recipients must pay thirty percent of their monthly adjusted gross income for rent and utilities, and, if the unit rent is greater than the PHA's payment standard, the recipient must pay the additional amount. HUD's ability to issue such vouchers is limited by the availability of funds and by rules governing the Section 8 program. As explained above, after December 31, 2007, tenants who were receiving Housing Choice Vouchers prior to Katrina and who now receive DVP assistance will resume their Housing Choice Voucher assistance under HANO's Housing Choice Voucher program. HANO's displaced public housing families that were not receiving Housing Choice Voucher assistance prior to Katrina, by contrast, have no automatic right to receive Housing Choice Vouchers from HANO. Moreover, HANO has only a very limited capability of making such vouchers available to those families. The reason comes down to money. HANO does not have sufficient funds to make Housing Choice Voucher assistance available to its former public housing tenants, and HUD is not empowered to make additional funds for that purpose available to HANO. The situation is exacerbated by the increase to approximately 140 percent of pre-Katrina FMRs for the New Orleans FMR area. While the purpose of this increase was to make apartment units in New Orleans affordable to DVP and Housing Choice Voucher holders, and the

4

increase has been effective in achieving that purpose, this increase also means that HANO can issue fewer Housing Choice Vouchers because the cost of assistance per resident—the cost of each voucher—is higher. For these reasons, the vast majority of persons who were HANO public housing tenants prior to Katrina and who are currently receiving DVP assistance are quite unlikely to receive Section 8 assistance from HANO after June 30, 2008, the date by which HUD expects DVP funds to have been exhausted.

7. Former HANO public housing residents who now reside in other cities and who remain income eligible have the right to apply to PHAs in those cities for Housing Choice Voucher assistance. However, these families have no statutory or regulatory preference for the receipt of such vouchers. Funds are limited, and in many large cities there is a long waiting list.

8. HUD's only viable authority to issue Housing Choice Voucher assistance to these displaced public housing tenants arises under Section 18(h) of the U.S. Housing Act of 1937, 42 U.S.C. § 1437p(h). That section provides that, "Of the amounts appropriated for tenant-based assistance under section 8 in any fiscal year, the Secretary may use such sums as are necessary for relocation and replacement housing for dwelling units that are demolished and disposed of from the public housing inventory...." Vouchers issued under this section are Housing Choice vouchers and through portability can be used across the United States, thus giving recipients freedom to choose where to live. The properties that HANO intends to demolish (in whole or in part) are Lafitte, St. Bernard, C.J. Peete, and B.W. Cooper. In the HANO context, only tenants who formerly resided in one of these properties prior to the hurricanes and whose building has been approved by HUD for demolition will be eligible to receive voucher assistance under this

5

provision. If a court order were to bar HUD from approving demolition of these properties, HUD would be legally prohibited from making voucher assistance available to the displaced tenants from these projects under its Section 18(h) authority.

9. For the reasons explained above, the majority of HANO's displaced public housing tenants are unlikely to receive any housing assistance from any source after February 28, 2009, if the demolition of the four HANO projects listed above were to be enjoined.

Under the penalty of perjury, I, David A. Vargas, declare that the foregoing declaration is true and correct to the best of my knowledge, information, and belief.

_____
David A. Vargas

_____
8 | 10 | 07
Date

6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

YOLANDA ANDERSON, et al.,     )
     Plaintiffs           )
                        )
   v.                   )     Civil Action No. 06-3298
                        )     SECT. B MAG 5
                        )     JUDGE LEMELLE
ALPHONSO JACKSON, et al.,   )
     Defendants          )

**DECLARATION OF ANN LOTT**

I, Ann Lott, hereby declare:

1. I am of majority age and otherwise competent to testify as to the matters herein, based on my personal knowledge.

2. I am the President and Chief Executive Officer of the Dallas Housing Authority (DHA). I have served in this capacity for six years and oversee the administration and professional work involved in the planning, directing and coordination of low-income housing assistance programs that consist of approximately 23,000 public housing and Section 8 families.

3. My tenure with the housing authority began in 1985 as a management clerk in the George Loving Place public housing development. Over the past 21 years, I have had the opportunity to work in eight positions, all of which required direct interaction with the low-income families served by the Dallas Housing Authority.

4. During my tenure, DHA has demolished or disposed of eight properties to include: George Loving Place, Edgar Ward Place, Elmer Scott Place, Frazier Courts,

Frazier Courts Addition, Roseland Homes, Oakland Apartments and Simpson Place. The disposition and demolition of these properties required the relocation of approximately 3,000 assisted families to other DHA sites or rental housing through the Section 8 program.

5.  Regulations established by the U.S. Department of Housing and Urban Development (HUD), require housing authorities to meet and consult with residents impacted by the disposition and demolition of assisted housing units.  During such meetings, I have had the opportunity to speak with hundreds of families to gauge their housing and relocation preferences.  My experience suggests there are always families who do not want to move out of public housing.  Such individuals have generally lived in public housing for over ten years – many of them 20 to 30 years – and have strong ties to the community.  Such residents often wield influence in the development and surrounding community and are very vocal about their desire to remain in public housing.

6.  However, while such families are generally vociferous, they do not represent the sentiment of all their neighbors.  Rather, the majority of families, when given the choice, choose to move out of public housing with the assistance of Section 8 vouchers.  The applicants' and residents' preference for Section 8 assistance is widespread and generally accepted by housing professionals, and was acknowledged by a federal district court in *Walker, et al. v. HUD, et al.*, CA3-85-2710 in the United States District Court for the Northern District of Texas, Dallas Division.

2

7.  In 1987, DHA entered into the *Walker Consent Decree,* which called for the demolition of 3,500 units at George Loving Place, Edgar Ward Place and Elmer Scott Place, collectively referred to as West Dallas.  Once considered to contain one of the largest concentrations of low-rise public housing in the nation, West Dallas was the poster child for how not to build public housing.  Constructed in part to solve what was referred to at the time as the "Negro Housing Problem" in Dallas, the dense community was a city within a city.  A federal district court ordered all of the units - most of which were vacant and boarded up - to be demolished and replaced with Section 8 certificates and vouchers as a remedy in a class action discrimination lawsuit.

8.  There were approximately 50 families that vehemently objected to the consent decree.  They believed a conspiracy was evolving to move them out of West Dallas so "rich, white developers" could benefit from valuable land located minutes from downtown.  These residents threatened to throw themselves in front of the bull dozer to block the demolition of the sites.  The individuals in question were long term residents and very influential within the community - so influential they convinced U.S. Representative Martin Frost to introduce legislation to block the demolition of all public housing in West Dallas.  While these residents were passionate in their fight, they did not represent the overwhelming majority of residents in the community.  I was a counselor at the time the decree was signed and part of the team that assisted 900 displaced families in locating private market housing with their Section 8 certificates and vouchers.  Counseling and briefing sessions with hundreds of families revealed a

3

majority of them never wanted to live in West Dallas but they lacked the means to move. The rental vouchers gave them the resources needed to relocate to housing that suited their individual needs. DHA was eventually allowed to demolish the 3,500 units and has since replaced them with 874 public housing units, 305 single-family homes, and 900 Section 8 vouchers.

9. The desire to move out of West Dallas was prevalent in part because the housing was too concentrated and located in a high crime, high poverty area, with environmental hazards, and inadequate infrastructure and commercial services. Such conditions also existed in Frazier Courts, a public housing complex located in the heart of a deteriorated south Dallas community. In 2002, DHA received a $20 million HOPE VI grant to demolish 550 units of obsolete public housing in Frazier Courts and Frazier Courts Addition. DHA surveyed the families living at the site to determine their housing needs and preferences. Of the 455 families surveyed, 87% stated a desire to move out of public housing, with 72% specifically requesting that their housing assistance be provided through the Section 8 voucher program. Development of this site is occurring over several phases and when complete, replacement housing will consist of 310 multi-family town homes, 51 single family homes, six scattered site homes, and 282 Section 8 vouchers.

10. My experience leads me to conclude that the desire of families to move out of public housing tends to exist regardless of the condition of the housing. However, if the public housing is located in a desirable area and/or the heritage of the community is

4

rich, such feelings are not as deep-seated. In 1998, DHA received a $35 million HOPE VI grant to demolish 611 units of public housing at Roseland Homes, a complex located in a well-established community with a 60-year history that proudly reflects a heritage of African-American ingenuity and entrepreneurship. Originally known as Freedmantown, Roseland was established in 1869, when newly freed African-Americans began buying property in an area right outside of Dallas.

11. When DHA surveyed the families living at Roseland to determine their housing needs and preferences, we found that 48.8% of the families wanted to remain on the site and 11.3% wanted to move to public housing near the original site. Additionally, 28.21% stated they wanted a Section 8 voucher to lease housing in the Roseland neighborhood. Interviews with the residents revealed an affinity for their community due to its proud history. Approximately 27% of the residents at Roseland were over the age of 62. Many of them had resided at Roseland for an extended period of time. One resident had lived in the complex for over 50 years and often shared stories of a time when Roseland was the heart of the Black community in Dallas.

12. My experience also leads me to conclude that public housing residents value mobility as much as "decent, safe and sanitary" housing. In 2006, DHA contemplated the sale of 102 units at Little Mexico Village, a public housing site with a contemporary architectural design that was in good condition, and located in an affluent part of the city. Families residing at the site were involved in the planning process and DHA solicited their input regarding the disposition of the property. Specifically,

residents were queried as to whether DHA should demolish Little Mexico and rebuild on the site, or sell the site and provide vouchers for relocation. In the survey, 44% of the families advised us to keep the site and 56% of the families wanted Section 8 vouchers. Conferences with the families involved in this planning process revealed that while they loved their housing, they wanted to move closer to their jobs, churches and/or families.

13. Surprisingly, the desire for mobility is prevalent among older residents. In 2006, DHA vacated two of its elderly complexes, Oakland Apartments and Simpson Place. This disposition was necessitated by the age and deterioration of the buildings. The residents were given the opportunity to transfer to another DHA complex or receive a Section 8 voucher. Approximately 92% of the residents at Oakland, and 73% of the residents at Simpson requested vouchers.

14. Based on my years of experience working with low-income families, it is my opinion that half of the residents displaced by Hurricane Katrina, if given the choice, would not move back to public housing.

15. DHA had the opportunity to provide housing assistance through the Federal Emergency Management Agency (FEMA) and HUD to approximately 6,000 families displaced by Hurricane Katrina. Approximately 1,200 of the Katrina evacuee families served by DHA were clients of the Housing Authority of New Orleans (HANO). During the administration of the Katrina Disaster Housing Assistance Program and the Disaster Voucher Program, I had an opportunity to speak with hundreds of families displaced from HANO's public housing. My conversations with HANO's families confirm my

6

opinion that half of the families that formally resided in public housing that was damaged by Hurricane Katrina do not want to return to public housing in New Orleans.

16.  For example, in a meeting conducted March 16, 2007 officials from HUD and HANO informed approximately 70 families they would have to return to New Orleans if they wanted to continue to receive housing assistance.  The families stated they wanted to keep their Section 8 vouchers and expressed concern they were being forced to return to a community that did not have adequate public facilities to provide a decent quality of life.  No one in the meeting expressed a desire to return to New Orleans.

17.  In addition, my staff recently conducted outreach of former New Orleans residents who are currently residing in Dallas and are either receiving assistance through the Disaster Voucher Program or are residing in public housing.  On July 26, July 27, and August 1, 2007, my staff attempted to contact 59 of these residents, some in-person and some via telephone.  The residents were asked whether they wanted to "stay in Dallas," "return to New Orleans," or were "undecided."  Of the 53 residents who responded, 64% stated that they wanted to stay in Dallas, whereas 17% stated that they wanted to return to New Orleans, and the remaining 19% were undecided.  See Exhibit 1, attached.

18.  In summary, my experience in working with public housing families generally, and with Katrina evacuees in particular, leads me to conclude that many families live in public housing because it is the only affordable housing available to

7

them at critical points in their lives.  Give them options and they will move.  The exception tends to be with individuals who have resided in public housing for extended periods of time, or who are older individuals living in a public housing community with a rich cultural background.

19.  I also conclude, as HUD and HANO move forward to address the housing needs of the low-income families in New Orleans, they should develop a broad range of housing assistance programs that will offer displaced families an optimal level of choice and mobility.  HANO's Recovery Plan calls for the redevelopment of approximately 60% of its public housing inventory.  Given my experience working in the federally assisted public housing industry, this is sufficient to meet the needs of families wanting to return to New Orleans.  Families who do not want to return to public housing should be issued Section 8 vouchers.  HANO would do well to continue its course of developing units for homeownership and building lower density multi-family units in mixed-income communities, with an architectural design that compliments the surrounding neighborhood.

I declare under the penalty of perjury that the foregoing is true and correct.

_8/1/2007_
DATED

_Ann Lott_
ANN LOTT

8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

YOLANDA ANDERSON, et al.,     )
    Plaintiffs                        )
                       )
    v.                                )     Civil Action No. 06-3298
                       )     SECT. B MAG 5
                       )     JUDGE LEMELLE
ALPHONSO JACKSON, et al.,       )
    Defendants                        )

## DECLARATION OF GUY RANKIN

I Guy Rankin, hereby declare:

1. I am of majority age and otherwise competent to testify as to the matters herein, based on my personal knowledge.

2. I am currently the CEO and Executive Director for the Harris County Housing Authority ("HCHA") in Houston, Texas. I have held that position for four (4) years. I have been employed by HCHA for four (4) years, as CEO and Executive Director. HCHA oversees 1848 Housing Choice Vouchers (HCV) and approximately 700 Disaster Voucher Program (DVP) vouchers. HCHA facilitates a highly effective and unique range of affordable housing programs, including the *Housing Choice Voucher Program*; *Affordable Housing Development Program*, aggressively building innovative tax-credit housing developments by partnering with the region's best private sector partners, these are often full service, specialized developments for seniors; *Independence Homeownership Program* which is designed to expand homeownership opportunities

for HCHA Housing Choice Voucher (HCV) participants; and Single Residency Occupancy (SRO) communities which address the needs of the area's large homeless population.

3. In the aftermath of Hurricane Katrina, HCHA was the lead agency in housing more than 25,000 people in 20 days in Harris County, Texas. HCHA expertly managed approximately 1500 KDHAP/ DVP vouchers in Houston and Harris County, Texas. As explained below; of the 700 families currently under HCHA assistance, some 288 are were public housing residents. A survey of those 288 families show that more than 70% wanted to remain in Houston and another 15% did not know where they wanted to live in the next 12 months.

4. On September 1, 2005, more than 600 people came to the HCHA for emergency housing assistance just after hurricane Katrina. HCHA began housing these families in a low-income housing tax credit property that had just recently been opened. HCHA also immediately contracted with 19 other local properties and housed more evacuees immediately after the storm.

5. According to our records regarding the approximately 1500 KDHAP and DVP persons that we had some contact with, about 975 families, or approximately 67% of the total number of displaced residents came from New Orleans, Louisiana. 53% of those families were already on Public Housing and 46% were on a Voucher Program prior to the hurricane.

In early 2007, a review of our Disaster Voucher Program ("DVP") public housing clients found that most did not want to return to their pre-disaster location. Many residents cited crime, schools, and inadequate housing choices as the reasons they did not want to return. Many clients had received letters informing them that they would lose their assistance if they did not return to some of the most devastated areas of the storms. The large majority of these clients requested that they be allowed to stay in Harris County, Texas.

6. On May 2, 2007, I sent a letter to Milan Ozdenic, Deputy Assistant Secretary for the Office of Public Housing and Voucher Programs at HUD, informing him of the information discussed above in paragraphs 2-5. Attached hereto as Exhibit A is a true and correct copy of the May 2, 2007 letter.

7. HCHA commissioned Mir, Fox, and Rodriguez, Certified Public Accountants, to conduct a needs assessment of public housing residents/disaster voucher program beneficiaries. On June 20, 2007, HCHA received the results of the survey of 288 Public Housing Resident/Disaster Voucher Program Beneficiaries. Attached hereto as Exhibit B is a true and correct copy of the HCHA survey.

8. The results of this survey confirmed that the majority of our DVP clients that previously resided in New Orleans do not wish to return to public housing in New Orleans. Instead, they wished to remain in the Houston area. Although the attached

HCHA survey is not broken down by the former residence of the evacuees, in the

process of conducting the survey, HCHA obtained that information.

9. Under penalty of perjury, I, Guy Rankin, declare that the foregoing declaration

is true and correct to the best of my knowledge, information, and belief.

Guy Rankin

9/13/07

Date

# EXHIBIT  A



# HARRIS COUNTY HOUSING AUTHORITY

8410 Lantern Point
Houston, Texas 77054
Tel: 713-578-2100  Fax: 713-578-2200

May 2, 2007

Mr. Milan Ozdinec
Deputy Assistant Secretary
Office of Public Housing and Voucher Programs
US Department of Housing and Urban Development
451 7th Street, SW, Room 4204
Washington, DC  20410

Dear Mr. Ozdinec:

On behalf of the employees of the Harris County Housing Authority (HCHA), we would like to thank the Office of Public Housing and Voucher Programs for the opportunity to manage the Disaster Housing Assistance Program (DHAP) in Harris County, Texas.  The HCHA is able to manage the 11,000 DHAP vouchers in Houston and Harris County, Texas, and looks forward to managing this effort.

As you know, on September 1, 2005 more than 600 people came to the HCHA for emergency housing assistance just after hurricane Katrina.  HCHA developed the nation's first emergency housing voucher system and on September 1, 2005, began housing those families in a low-income housing tax credit property that had recently opened.   HCHA immediately contracted with 19 other local properties and housed more evacuees immediately after the storm. Additionally, HCHA housed more than 27,000 people in 20 days, the largest mass housing effort in U.S. history, by developing a Housing Choice Center in Reliant Park.

It would give us great pleasure to assist hurricane disaster families again. We believe we can transfer the majority of the 11,000 families to self-sufficiency through aggressive case management. However, we will have a certain percent at the end of this 18 month program that will not be able to meet this goal, and Seniors and the disabled whose primary source of income is Supplemental Security Income (SSI) or other fixed income programs will need to be protected. HCHA will actively work to transition these individuals into its properties or programs for seniors and or the disabled. Moreover, HCHA has the disaster experience and community social service knowledge to create a model program on moving families to self-sufficiency.

In a related matter, a recent review of our Disaster Voucher Program (DVP) **clients indicated that they <u>did not</u> want to return to their pre-disaster location.  Many residents cited crime, schools and inadequate housing choices as the reasons they do not want to return to their pre-disaster location.**   Many clients have received letters stating they would lose their assistance if they did not return to some of the most devastated areas of the storms. The large majority of these clients are requesting that they be allowed to stay in Harris County, Texas.

Page two
Mr. Milan Ozdinec
May 2, 2007

After several visits to New Orleans and the surrounding area with staff and elected officials, I believe it is not realistic to force families back to devastated areas. **Your assistance in developing a longer-term solution to working with families of the hurricanes who do not want to return would be of great value to families, seniors and the disabled.**

In conclusion, HCHA agrees to coordinate with the City of Houston Housing Authority to manage all 11,000 separately to meet the needs of all individuals affected. We need to begin immediately to set-up our processes to manage the DHAP program. Hopefully, we can lease space and start setting up an office by July 1, 2007.

If we can do anything to assist you between now and the beginning of this project, please do not hesitate to call me at 713-578-2045.

Sincerely,

Guy Rankin
CEO & Executive Director

GR/yw

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA


YOLANDA ANDERSON, et al.        * CIVIL ACTION
            Plaintiffs,         *
                                * NO. 06-3298
VERSUS                          *
                                * SECTION "B"
ALPHONSO JACKSON,               *
SECRETARY OF THE UNITED         * JUDGE
STATES DEPARTMENT OF            * IVAN LEMELLE
HOUSING AND URBAN               *
DEVELOPMENT; et al              * MAGISTRATE
            Defendants.         * ALMA CHASEZ
                                *

    *   *   *   *   *   *   *   *    *


            Videotaped deposition of DONNA MARIE
LABAT JOHNIGAN, 1221 South Galvez Street, New
Orleans, Louisiana  70125, taken at the United
States District Court, Magistrate Chasez'
Chambers, 3rd Floor, 500 Poydras Street, New
Orleans, Louisiana, on Monday, the 2nd day of
July 2007, commencing at 12:17 p.m.

APPEARANCES:

        TRACIE L. WASHINGTON, ESQUIRE
        Suite 1400
        650 Poydras Street
        Post Office Box 15107 (70175-5107)
        New Orleans, Louisiana  70130
            (Attorneys for the Plaintiffs)

        U.S. DEPARTMENT OF JUSTICE
        (By:  Lesley R. Farby, Esquire)
        Room 7119
        20 Massachusetts Avenue
        Washington, D.C.  20001
            (Attorney for the Defendant,
            Department of Housing &
            Urban Development)

(504)525-1753   HUFFMAN & ROBINSON, INC.   (800)749-1753
ONE SHELL SQUARE,#250 CERTIFIED COURT REPORTERS NEW ORLEANS, LA 70139

1e7de7d8-afae-4898-a958-9a6c97ab20a1

1   discussion?

2          A.    No.   Just that I was called by my

3   attorneys to say that HUD and HANO had asked for

4   me to do a deposition.   And, otherwise, all they

5   asked was -- you know, gave me their support --

6          Q.    Okay.

7          A.    -- and everything else.   We didn't

8   know directly what -- they asked me did I know

9   about any of the questions or anything that was

10  going to be asked.   I told them no, because I had

11  not talked to my attorney at that time.   That was

12  on Friday.

13         Q.    Okay.

14         A.    I didn't talk to my attorney until

15  Sunday evening, so I had no -- you know -- you

16  know, I hadn't talked to any more of my board

17  members, except for this morning, who's the

18  president, Yvonne Marrero, that just wished me

19  good luck.

20         Q.    Okay.   And when you say board, what

21  board is that?

22         A.    That's -- I'm -- I'm vice president

23  of B. W. Cooper's Resident Management, vice

24  president of programs.

25         Q.    Okay.   It is my understanding, based

(504)525-1753   HUFFMAN & ROBINSON, INC.   (800)749-1753
ONE SHELL SQUARE,#250 CERTIFIED COURT REPORTERS NEW ORLEANS, LA 70139

1e7de7d8-afae-4898-a958-9a6c97ab20a1

1  on a motion --

2          THE COURT REPORTER:

3                  Excuse me.

4                  (Whereupon, there was a discussion

5          held off the record.)

6          THE COURT REPORTER:

7                  Okay.

8  EXAMINATION BY MS. WISDOM:

9          Q.    Okay.  Ma'am, do you -- do you wish

10 to remain a plaintiff in this case?

11         A.    I want to.  I'm still -- I still

12 want to remain a plaintiff, but not in front row,

13 like I was before, not in namesake, but only as a

14 resident.

15         Q.    Okay.  So is it -- is it correct,

16 then, to say that you don't want to be a Class

17 Representative any longer?

18         A.    Right.  Like in namesake purposes.

19         Q.    Okay.  Do you still wish to recover

20 anything through this lawsuit?

21         A.    No.  I can never recover what I've

22 lost; no.

23                Let me answer that again.  Except to

24 stay in -- in my apartment -- so let's go back --

25 anything else is it -- I cannot replace personal

Page 11

1    things and things that I lost.

2                The only thing I want, I would want

3    to do, is to go back and stay in my apartment.

4        Q.    Are you in that apartment currently?

5        A.    Yes.  I am.

6        Q.    You mentioned that you had your

7    deposition taken before.

8                For what reason?

9        A.    I think, I did.  I don't know if --

10   if maybe I said the wrong word deposition.  When

11   I did this piece when -- at the -- Waters and

12   them came, maybe it's something different, that I

13   sat with some people and they -- they told me,

14   you know, what to expect, what to do, and we went

15   over a few things, and all of that.  Maybe it

16   wasn't a deposition, but we spent a lot of time

17   the day before she arrived, and went over,

18   basically, a lot of questions and things

19   pertaining to the lawsuit and the struggle that

20   we're still having in public housing.

21       Q.    Okay.  So you made -- made a

22   statement?

23       A.    Yes.  I did.

24       Q.    Okay.  Have you ever been involved

25   in any lawsuit before this one?

Page 157

1   Just because I'm back home, I still have family

2   and friends that need to be back home.  I'm

3   just -- I just not need to be so much in the

4   front role all the time.  I need to sit back and

5   look, because, again, I have an obligation to

6   Cooper and Cooper residents to make a change.

7            And the litigation right now is one

8   of the real reasons we can't move forward.  And

9   it's no disrespect to none of my other housing

10  developments, because I've been president of

11  Citywide for a long time.

12           So I don't fight just for Cooper, I

13  have an obligation to public housing in the city.

14           But at this time, I need to step

15  back so that we can start the progress of B. W.

16  Cooper so my families could know that we're

17  working to get them back, and not just being a

18  part of something that's causing them, you know,

19  to stay where they are, because they -- you know,

20  we sent out a Cooper Courier once -- twice a

21  month, that notifies the residents step by step

22  where we are, and where we're going.

23           And, of course, everybody's not

24  going to come back, y'all, let's -- let's be

25  real.  We know a lot of families are not coming

(504)525-1753    HUFFMAN & ROBINSON, INC.    (800)749-1753
ONE SHELL SQUARE,#250 CERTIFIED COURT REPORTERS NEW ORLEANS, LA 70139

1e7de7d8-afae-4898-a958-9a6c97ab20a1

1   back. But at the same time, we need -- make sure

2   that they know we're fighting for them.

3            And it should be their decision.

4   They should say I don't want to come back, or I

5   don't want to be in this thing, not nobody else

6   in the newspaper or telephone and tell somebody

7   else, they need to know that they should have

8   been a part of this decision to take away our

9   homes. That's all we ever asked, you know.

10           Just, it was done, really -- people

11  saying Alphonso Jackson -- because, you know, we

12  met with Mr. Jackson -- he's always stood on the

13  platform of better housing. But still him -- and

14  he has a boss over him -- it still should have

15  been done in a better way. We have always did

16  demolition in phases.

17           We have always knew public housing,

18  at some point, it's not going to be existent,

19  just like welfare went, everybody say, they ain't

20  going to have no more welfare, yeah, it's going

21  to go. Y'all ain't going to use no little debit

22  cards. And look what happened. So we know about

23  change. But make the change where we are part of

24  the change -- consistently being a part of it,

25  not only when you need me, in a -- not in your

(504)525-1753    HUFFMAN & ROBINSON, INC.    (800)749-1753
ONE SHELL SQUARE,#250 CERTIFIED COURT REPORTERS NEW ORLEANS, LA 70139

1e7de7d8-afae-4898-a958-9a6c97ab20a1

Page 233

1   board meeting that Ms. Marrero called together,

2   and she gave us a draft copy of it, and said she

3   was sending it on behalf of the Board, and we

4   looked at it, and it was approved --

5          Q.    Okay.

6          A.    -- yeah.  And if -- and this is Ms.

7   Marrero's signature.

8          Q.    All right.  Do you know why Ms.

9   Marrero wanted to send this letter?

10         A.    I think, I said it in -- in one of

11  my earlier statements, that B. W. Cooper had

12  already start looking at redeveloping LA-112.  We

13  knew that we needed to make a change.  We knew

14  what was going on with the environment, with

15  other issues.

16              Long ago, again, HUD had stopped

17  giving us money to keep up that site, and Ms.

18  Marrero made it known that this Board was ready

19  to go -- to continue the work that we had

20  started.

21              That's why I made the statement

22  earlier, when I said I'm speaking about B. W.

23  Cooper, not the other public housing sites, when

24  I said we can't hold up the litigation on B. W.

25  Cooper, because we were already in the process of

(504)525-1753    HUFFMAN & ROBINSON, INC.    (800)749-1753
ONE SHELL SQUARE,#250 CERTIFIED COURT REPORTERS NEW ORLEANS, LA 70139

1e7de7d8-afae-4898-a958-9a6c97ab20a1

Page 234

1    doing that.  And I was speaking about Cooper, not

2    any other site.  Because what it does, being in a

3    lawsuit, in the litigation, it stops the work

4    that we had already started.

5                And, again, when I made -- when we

6    got involved in the lawsuit, at that time, nobody

7    told us that we were just going to come back and

8    take over.  We were all angry residents -- prior

9    to what I told you before -- that we found out

10   through letters, and on the news that B. W.

11   Cooper was one of the Big Fours, so, of course,

12   we got involved, because, at that time, we were

13   fighting for our housing -- and what we still

14   doing.

15               Q.    Okay.

16               A.    But then after coming back, and --

17   and us doing what we're doing, and -- and HANO

18   gave us the opportunity to look at what we were

19   doing, and that we can start the process again,

20   that's when I, myself, called my attorney and

21   told her:  "I think, that I should take a back

22   seat to the lawsuit, and I should look at what

23   we're doing."

24               Because now we have gotten a

25   developer, my Board has signed it, my president,

Page 235

1    and that means I cannot be a -- named on a big

2    lawsuit, without hindering what's going on in

3    Coop -- in B. W. Cooper.

4              And Tracie looked at it, she gave me

5    a call --

6         MS. WASHINGTON:

7              Wait.  Wait.  Wait.  You can't

8         testify about our --

9         THE WITNESS:

10             Okay.

11        MS. WASHINGTON:

12             -- conversations.

13        THE WITNESS:

14             All right.

15   EXAMINATION BY MS. WISDOM:

16        Q.   Don't tell me what your lawyer told

17   you.  It's all privileged.

18        A.   No.  She didn't tell me.  I'm just

19   saying --

20        MS. WASHINGTON:

21             Ms. Johnigan.

22        THE WITNESS:

23             All right.

24        MS. WASHINGTON:

25             Thank you.

Page 311

1       A.    Only, again, the name and -- and

2  being in meetings.

3       Q.    Okay.  What about Linda DeGruy?

4       A.    I might.  I don't -- the name's not

5  familiar.

6       Q.    Okay.  And Kim Paul?

7       A.    I've heard of Kim.  And I don't

8  think she's related to Ms. Paul, but I know Kim

9  is kind of somebody that -- that -- that will

10  verse her opinion a lot in meetings.  And, I

11  think, she's really more of a tenant, than a -- a

12  leader, if I'm not mistaken.

13       Q.    I think, you mentioned that you've

14  been to some of the other projects in New Orleans

15  since Katrina.

16              You were at Fisher, is that right?

17       A.    Well, I go to Fisher only for

18  meetings.  Never been in the apartments -- not

19  that we didn't want to -- but we just -- when we

20  go to Fisher, we go straight to where the

21  meetings are.

22              And I told you I dropped by one --

23  and I didn't want to call Ms. Paul's name then,

24  but when I went just to speak to her, she was

25  already coming out of her door.  That's when I

(504)525-1753    HUFFMAN & ROBINSON, INC.    (800)749-1753
ONE SHELL SQUARE,#250 CERTIFIED COURT REPORTERS NEW ORLEANS, LA 70139

1e7de7d8-afae-4898-a958-9a6c97ab20a1

Page 312

1    found out she was living there, cause I hadn't

2    saw her in a while.  But, then, we just talked

3    briefly and we walk right around to where the

4    meeting is in -- in Fisher's community center.

5         Q.    Okay.

6         A.    Yeah.  I've been to Iberville --

7         Q.    When --

8         A.    -- not to look in apartments, but

9    they had a meeting there -- at least, it was

10   across the street from Iberville at St. Jude

11   Center, but walked over to Iberville just to get

12   a look at it.  Didn't go into any apartments, you

13   know, just looked around for familiar faces and

14   stuff.

15        Q.    Do you remember when that was?

16        A.    When they had a -- I can't remember

17   the date.  What's the group name?  Fighting for

18   Iberville, the friends and families of Iberville,

19   or whatever the group is, they had a meeting

20   there right after one of the -- the Board of

21   Commissioners meeting.  It could have been at the

22   first of the year, or whatever, but it was the

23   group that fights for Iberville.

24        Q.    This year, 2007, or --

25        A.    No.  It had to be prior to that,

Page 337

1    could have been when -- when Mr. Babers was

2    there.  But they just were meeting.

3                You know, HANO had to come up with

4    meetings to let residents know, occasionally,

5    what was going on.  You know, you couldn't just

6    let people, you know, just out and not knowing

7    what was going on in the city.

8           Q.    At any of the meetings you attended,

9    did any residents say that they didn't want to

10   return?

11          A.    Very few, very few.  And -- and --

12   and like I said, those are some of the ones that,

13   I think, being where they are, a lot of them had

14   an opportunity to buy homes, some who had a lot

15   of kids maybe with special needs.

16               And here in the city, they still not

17   a real good school or place that deal with

18   children with physical or mentally disabilities,

19   a lot of them.

20               And proud to say a lot of young

21   women who stepped up to the plate and said here's

22   an opportunity for me to do something better for

23   myself and my children, who are employed, and

24   working, and satisfied with where they are.

25               Yeah, I'm not going to say a

(504)525-1753    HUFFMAN & ROBINSON, INC.    (800)749-1753
ONE SHELL SQUARE,#250 CERTIFIED COURT REPORTERS NEW ORLEANS, LA 70139

1e7de7d8-afae-4898-a958-9a6c97ab20a1

Page 338

1    hundred -- out of a hundred percent, I'll say

2    maybe 30 or 40 percent, maybe less than that,

3    actually, have made a decision to stay where they

4    are, and to rebuild somewheres else besides New

5    Orleans.

6                 And I -- we got some that's in the

7    New Orleans that -- honestly, that say if they

8    can keep their Section 8s and stuff, and stay

9    somewheres, that they're willing -- that they're

10   willing to do it.

11                So, in all honesty -- but we have

12   such another large percent of who just want to

13   come back, you know, to where they are.  And

14   those numbers are more than the numbers, that

15   people who don't want to come back.

16        MS. WASHINGTON:

17                Let me stop you for a second.

18                (Whereupon, there was a discussion

19        held off the record.)

20        MS. FARBY:

21                Let me just take a quick look.

22                I think, that's all I have.  Thank

23        you very much.

24        VIDEOGRAPHER:

25                Off the record.

(504)525-1753    HUFFMAN & ROBINSON, INC.    (800)749-1753
ONE SHELL SQUARE,#250 CERTIFIED COURT REPORTERS NEW ORLEANS, LA 70139

1e7de7d8-afae-4898-a958-9a6c97ab20a1

## INDEX TO EXHIBITS

1      Docket Sheet in <u>Anderson v. Jackson</u>, No. 06-cv-03298 (E.D. La) (Lemelle, J.)

2      Letter from Jeffrey Riddel to C. Donald Babers (March 28, 2007)

3      Fifth Declaration of Ainars Rodins (November 8, 2007).  (HUD Decision Memorandum attached thereto as Exhibit A)

4      Transcript of November 15, 2007 hearing before <u>Anderson</u> court

5      Declaration of David Vargas (August 10, 2007)

6      Declaration of Ann Lott (August 1, 2007)

7      Declaration of Guy Rankin (September 13, 2007)

8      Deposition of Donna Johnigan (July 2, 2007)